TYLER LAW, LLP
Robert H. Tyler, Esq. (SBN 179572)
rtyler@tylerlawllp.com
Nathan R. Klein (SBN 306268)
nklein@tylerlawllp.com
Mariah Gondeiro (SBN 323683)
mgondeiro@tylerlawllp.com
25026 Las Brisas Road
Murrieta, California 92562
Tel:  (951) 600-2733
Fax: (951) 600-4996

Attorneys for Defendants
**Garrett Ziegler** and **ICU, LLC**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HUNTER BIDEN, an individual,<br><br>  Plaintiff,<br><br>  vs.<br><br>GARRETT ZIEGLER, an individual; ICU, LLC, a Wyoming limited liability company d/b/a Marco Polo, and DOES 1 through 10, inclusive,<br><br>  Defendant(s) | Case No.: 23-cv-07593-HVD-KS<br><br>*Honorable Hernan D. Vera*<br>*Magistrate Judge Karen L. Stevenson*<br><br>**GARRETT ZIEGLER'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(1), 12(b)(2), 12(b)(3), AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Date:  February 15, 2024<br>Time:  10:00am<br>Dept.:  5B |

I, Garrett Ziegler, declare as follows:

1. I am a Defendant in this Action. I am also the founder and chairman of the board of directors of Defendant ICU, LLC. Unless otherwise stated, I have personal knowledge of the facts set forth herein that if called as a witness I could and would testify competently thereto.

1

2.  From February 2019 through January 2021, I worked in the White House. First, I worked as a Policy Analyst and, later, as an Associate Director in the Office of Trade and Manufacturing Policy. I worked under the supervision of Dr. Peter Navarro, an Assistant to the President. In this role, my duties involved researching and writing policy briefs for Dr. Navarro.

3.  After I left the White House, I continued researching policy issues and other matters of public importance, particularly corruption, and publicly reported on the findings of my research.

4.  On July 8, 2021, I organized ICU, LLC as a Wyoming limited liability company. ICU, LLC is a tax-exempt, non-profit 501(c)(3) doing business under the name *Marco Polo* (hereafter, ICU, LLC shall be referred to as "*Marco Polo*"). *Marco Polo* is a research group whose mission is to expose corruption and blackmail. Specifically, *Marco Polo* identifies, researches, analyzes, and reports on corruption in both the public and private sectors. A chief focus of *Marco Polo* is analyzing, researching, and publicly reporting on information obtained from a computer abandoned by Robert Hunter Biden, the son of President Joseph R. Biden Jr. From news articles that I read and programs that I watched, it was clear to me that the computer was the subject of intense media attention and scrutiny during the 2020 election. That scrutiny emerged after the *New York Post* published a story about the contents of the device on October 14, 2020. I observed that, after this article, Hunter Biden's laptop became referred to in the press as the "Biden Laptop" or sometimes as "the Laptop from Hell."

5.  I received a copy of the hard drive of the abandoned Biden Laptop in 2021 from an associate of former New York City mayor Rudy Giuliani. I accessed the information from the copy of the hard drive in Virginia. I have never seen or accessed Hunter Biden's original laptop (which, as discussed below, is in the custody of the Federal Bureau of Investigation).

6.  From September 2021 through October 2022, *Marco Polo* analyzed the voluminous material from the Biden Laptop. During the course of this analysis, *Marco Polo* began writing a comprehensive report about the material and, specifically, evidence of criminal activity.

7.  On October 19, 2022, *Marco Polo* published a 644-page report entitled *Report on the Biden Laptop* (hereafter, the *Report on the Biden Laptop* shall be referred to as the

"*Report*").  The *Report* is a comprehensive dossier detailing 459 verifiable violations of state and federal laws and regulations identified from information on the Biden Laptop; the *Report* contains 2,020 footnotes.

8. *Marco Polo* published the report in a "reader view" available on its website[1], made it available for the public to download from its website in a PDF format, and published it in paperback format available through its website.

9. *Marco Polo* also promoted the *Report on the Biden Laptop* widely on X, formerly known as Twitter, and other social media platforms. I have also been interviewed numerous times on shows and podcasts, and I have given numerous public speeches about the *Report*.

10. Indeed, our investigations and the *Report* have been cited over 300 times by mainstream publications. *Marco Polo*'s research has been referenced by U.S. senators and congressmen and has been the basis for numerous questions at U.S. congressional hearings.

11. In addition to the *Report*, *Marco Polo* also created and published an online searchable database of 128,000 emails found on the Biden Laptop.

12. As a result of *Marco Polo*'s research and voluminous publishing on corruption surrounding the Bidens and their associates, both *Marco Polo* and I have become widely known for our anti-corruption investigations and reporting. Indeed, more than six million unique IP addresses have reviewed the *Report* on the *Marco Polo* website.

13. I have hired no employees or independent contracts to conduct business in California, nor do any of *Marco Polo*'s board members reside in California.

14. *Marco Polo* does not have an agent for service of process in California or any California license or incorporation.

15. *Marco Polo* does not charge users, nor has it ever received for-profit sales. It relies solely on donations from individuals.

---

[1] The *Report* is available at bidenreport.com

3
DECLARATION OF GARRETT ZIEGLER

16. *Marco Polo* does not intentionally target California residents. Indeed, less than 10% of *Marco Polo*'s supporters reside in California.

17. I worked on the *Report* primarily in my hometown in Illinois, which is where the evidence is located. All decision-making regarding what to post on the website occurred in Illinois, the nerve center of operations.

18. As to the statements ascribed to me in paragraph 29 of the Complaint regarding an interview that occurred in or around December 2022, I have a recording of each interview I have given. I have reviewed all interviews from December 2022, and I did not discuss the Plaintiff's iPhone backup file in any of those interviews.

19. Paragraph 29 falsely casts my comments to imply that I and Defendant *Marco Polo* "hacked" into Plaintiff's iPhone backup file.

20. In the case of the iPhone backup file referred to in paragraph 29, I received a copy of an iPhone backup file which existed as part of the copied files.

21. Also contained on the external hard drive given to me were files containing passcodes, which are essentially similar in function to passwords designed to allow access to password-protected files. Although it took months of examination, we were able to locate the passcode which allowed access to the iPhone backup file. Those files existed on the external hard drive when it was first given to me.

22. Neither I nor any person associated with *Marco Polo* have accessed, or attempted to access, any computer, device, service, or system owned or controlled by Plaintiff. We are not hackers; we are simply publishers, and the Plaintiff is attempting to chill our First Amendment rights and harass us through a frivolous and vexatious lawsuit.

23. The *Report* prepared by *Marco Polo* is just that – a report concerning the materials found in our copy of Plaintiff's files duplicated from his original Laptop, which is now in the possession of the FBI. We had no need to access additional information (and would not do so even if we were able to do so), as the contents of the duplicated files were voluminous enough.

24. The metadata concerning the duplicated iPhone backup file on our external hard drive indicates that the last backup made of the iPhone file to the plaintiff's laptop, which he left at the repair shop of John Paul Mac Isaac on April 12, 2019, occurred on February 6, 2019, while still in the plaintiff's possession based upon all of the facts known to me to be provably true beyond dispute.

25. Based on our analysis, we concluded the same as digital forensic investigators at Maryman & Associates and digital forensic expert Gus Dimitrelos—the duplicate of the plaintiff's laptop is authentic, the files have not been altered in any way, and the copied laptop files contain information which are matters of public interest worthy of our efforts to accurately report.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed December 21, 2023.

_____
Garrett Ziegler