TYLER LAW, LLP
Robert W. Tyler (SBN 179572)
rtyler@tylerlawllp.com
Nathan R. Klein (SBN 306268)
nklein@tylerlawllp.com
Mariah R. Gondeiro (SBN 323683)
mgondeiro@tylerlawllp.com
25026 Las Brisas Road
Murrieta, California 92562
Telephone:   (951) 600.2733
Facsimile:   (951) 600.4996

Attorneys for Attorneys for Defendants **Garrett Ziegler** and **ICU, LLC**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HUNTER BIDEN, an individual, | Case No.: 2:23-cv-07593-HVD-KS |
| Plaintiff(s) | *Honorable Hernan D. Vera*<br>*Magistrate Judge Karen L. Stevenson* |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** |
| GARRETT ZIEGLER, an individual; ICU, LLC, a Wyoming limited liability company d/b/a Marco Polo, and DOES 1 through 10, inclusive, | Date:   March 21, 2024<br>Time:   10:00 a.m.<br>Ctrm:   5B |
| Defendant(s) | |

## I. INTRODUCTION

Plaintiff's opposition brief parrots the same conclusory allegations as stated in the Complaint. Plaintiff's Opposition to Defendants' Mot. to Dismiss ("Opp'n"), ECF No. 30. Plaintiff claims Defendants knowingly accessed unauthorized files contained on Hunter Biden's abandoned laptop without explaining how or when. *Id.* at 15-21. Plaintiff ignores that information from the infamous "Biden Laptop" had been widely circulated prior to Defendants' publication of their investigatory report ("Biden Report") and that Hunter Biden abandoned his laptop at a shop in Delaware. (Defs' RJN, Ex. 1, ¶ 19). Plaintiff's allegations are not sufficient under either the federal Computer Fraud and Abuse Act ("CFAA") or the California Comprehensive Computer Data Access and Fraud Act ("CCDAFA") because he does not show that Defendants intentionally obtained unauthorized data from a laptop owned or possessed by Hunter Biden. This Court should dismiss Plaintiff's barebone allegations for failure to state a claim under the CCDAFA and CFAA, as well as Plaintiff's unfair business practices claim because it is predicated upon the CCDAFA and CFAA.

Moreover, this Court should dismiss this case for lack of jurisdiction and venue. Plaintiff selectively chose California to gain home-state advantage, even though the Complaint demonstrates that the allegations in the Complaint did not transpire in California, nor do Defendants have any ties to California. The original sources of the Biden Report derive from copies of a hard drive that contained information about Hunter Biden. Defendant Ziegler accessed these copies in Virginia. All decisions regarding content for the Biden report were made in Illinois, where Defendant Ziegler resides. Thus, this Court should dismiss this case under Rule 12(b)(2) and 12(b)(3).

Finally, Plaintiff's lawsuit is a quintessential SLAPP action. Plaintiff brought this lawsuit in retaliation against Defendants for publishing incriminating evidence regarding Plaintiff and his father. Plaintiff claims Defendants' collection of data is not protected activity (Opp'n at 24), but Defendants' compilation of information involving a sitting president and his son constitutes newsgathering, which is protected activity. *See Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 166 (2003). Plaintiff's lawsuit is subject to dismissal under Rule 12(b)(6) and California Code of Civil Procedure § 425.16 because Defendants' investigatory reporting was in furtherance of matters of significant public interest.

## II. ARGUMENT

**A. Plaintiff's Lawsuit Is Subject To Dismissal Under Rule 12(b)(2) For Lack Of Personal Jurisdiction.**

Plaintiff does not dispute that the Court lacks general jurisdiction over Defendants but rather focuses on specific personal jurisdiction. Opp'n at 9-10. Courts look at three requirements to determine whether a non-resident defendant may be subjected to specific jurisdiction:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

*Gordy v. Daily News, L.P.*, 95 F.3d 829, 831–32 (9th Cir. 1996).

*First*, as to element one, Plaintiff's brief focuses on the purposeful direction test. Opp'n at 9-11. The test "requires that the defendant allegedly have: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 802, 803 (9th Cir. 2004) (citations omitted). Plaintiff must show "individualized targeting" of California residents by Defendant. *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

Plaintiff erroneously asserts that Defendants had sufficient contacts with the forum state because Defendants allow individuals to donate funds to obtain a hardcopy of the Biden Report. Opp'n at 10. Plaintiff mistakenly relies on *Stomp, Inc. v. NeatO, LLC*, where defendant operated a "highly commercial" website. 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999). "[A] substantial portion of the site [was] dedicated to allowing the consumer to purchase NeatO's products on-line." *Id.* Here, Defendants did not operate their website for commercial purposes. Defendants do not charge users or engage in for-profit sales of products. (Ziegler Decl. at ¶ 15; Ziegler Supp. Decl. at ¶ 3).

The mere fact that individuals can donate funds to obtain a hard copy of the Biden Report is insufficient to establish jurisdiction in California. In analyzing Internet contacts, the Ninth Circuit has adopted a "sliding scale" approach under which jurisdiction is "directly proportionate to the

nature and quality of commercial activity that an entity conducts over the Internet." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997). A mere web presence is insufficient to establish jurisdiction. Thus, "passive" websites, which the Ninth Circuit has described as those that merely post information, or on which consumers cannot make commercial transactions, do not give rise to jurisdiction. *Bancroft & Masters*, 223 F.3d at 1086; *Cybersell*, 130 F.3d at 418.

The undisputed evidence shows that Defendants' website primarily operated for informational purposes. Plaintiff claims that 600,000 people may have viewed the report from California. Opp'n at 11. However, even if this were true, this does not establish that individuals from California donated funds to obtain a hard copy of the Biden Report. In any event, Defendants have never received for-profit sales. (Ziegler Decl. at ¶ 15; Ziegler Supp. Decl. at ¶ 3).

Plaintiff's cited case supports Defendants' position. Opp'n at 11 (citing *College Source, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1071 (9th Cir. 2011). There, the Ninth Circuit found that the expressly aimed prong of the purposeful direction test was satisfied because plaintiff had alleged that "defendant individually targeted him by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum." *Id.* at 1077 (cleaned up).

There is no evidence that Defendants intentionally targeted California. Defendants created their website to expose Government corruption. (Ziegler Decl. at ¶ 4). The Biden Report is available to anyone. Plaintiff's reliance on interviews that indicate Defendants relied on sources in California are subject to evidentiary objections, as they lack foundation and authenticity and constitute hearsay. Opp'n at 13; *see* Defendants' Objections to Plaintiff's Evidence ("Defs' Objections"). Even if this Court could accept this information, it does not establish personal jurisdiction.

For instance, in *Gordy v. Daily News, L.P.*, the case the Plaintiff erroneously relies upon, the defendant regularly circulated its publication to California and frequently sent reporters to California because of its emphasis on the entertainment industry. 95 F.3d 829, 831 (9th Cir. 1996); Opp'n at 12. The distribution of 13 to 18 defamatory copies to paid subscribers in California constituted sufficient contacts because the defamatory statement was targeted at California. *Id.* at 833-34.

Unlike *Gordy,* Plaintiff does not bring a defamation claim. As Plaintiff concedes, "Plaintiff

3
DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

did not sue Defendants for creating a website, for publishing their 'Report,' or for any of the many false, defamatory, and malicious statements they have made about Plaintiff over the past two-plus years." Opp'n at 24. Plaintiff's claims hinge on Defendants access and use of computer files. *Id.* The content and original sources for the Biden Report came from copies of the hard drive from the abandoned Biden Laptop, which was accessed in Virginia. (Ziegler Decl. at ¶ 5). Defendants do not have paid subscribers in California either. (Ziegler Supp. Decl. at ¶ 3). Because Plaintiff cannot show purposeful direction towards California, he fails to satisfy the first prong.

*Second*, even if Plaintiff satisfied the first prong, he cannot satisfy the second prong, which requires he show that his claims would not have arisen but for Defendants' contacts with California. *Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997). Plaintiff's reliance on *Rio Properties, Inc. v. Rio Int'l Interlink* is misplaced because there, the defendant's maintenance, and promotion of a gambling website in Nevada injured plaintiff in Nevada. 284 F.3d 1007, 1021 (9th Cir. 2002); Opp'n at 13. The defendant specifically competed with the plaintiff in Nevada by targeting Nevada consumers in radio and print media. *Rio Properties, Inc.*, 284 F.3d at 1021.

Unlike *Rio Properties Inc.*, Plaintiff's alleged injury would have transpired regardless of whether Defendants made contacts with California. Defendant Ziegler originally accessed the copies of the hard drive in Virginia, and all business decisions related to content for the website were made in Illinois. (Ziegler Decl. at ¶¶ 5, 17). Defendants would have compiled the Biden Report and displayed it on their website regardless of whether the website was accessible in California. Thus, Plaintiff cannot satisfy the second element.

*Third*, litigating this case in California is not reasonable. Defendant Ziegler has not repeatedly and intentionally targeted California, nor did the alleged data breaches occur in California. (Ziegler Decl. at ¶¶ 5, 16-17). Litigating this case in Illinois also serves the interests of justice because the evidence is located in Illinois. (*Id.* at ¶ 17). Even if litigating outside the state will inconvenience Plaintiff, neither the Supreme Court nor Ninth Circuit gives much weight to this factor. *Core-Vent*, 11 F.3d at 1490. Plaintiff has not met the burden of proving that he is unable to sue Defendants in Illinois. Thus, the factors tip in Defendants' favor.

**B.      Plaintiff's Lawsuit Is Subject To Dismissal Under Rule 12(b)(3) For Improper Venue.**

Plaintiff does not dispute that courts consider the entire sequence of events underlying the claim to determine the appropriate venue. Opp'n at 14-15. "[S]ignificant events or admissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, No. 11-cv-02460-LHK, 2011 WL 2607158, at *10 (N.D. Cal. July 1, 2011). Only events "that directly give rise to a claim are relevant…[and] only those locations hosting a 'substantial part' of the events are to be considered." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003).

Plaintiff argues venue is appropriate in this district because Defendant Ziegler purportedly made calls to individuals in the Central District and visited the Chateau Marmont to promote the Biden Report. Opp'n at 14. As established above, these facts are dubious and not admissible. The picture of Defendant Ziegler in front of the Chateau Marmont was taken when he was in California to meet with his attorneys. (Ziegler Supp. Decl. at ¶ 6).

Even if Plaintiff's evidence was admissible or relevant, they do not support Plaintiff's preferred venue because they are not material to Plaintiff's underlying claims. Plaintiff's causes of action are predicated upon Defendants alleged unlawful access of materials found on Plaintiff's laptop. (Compl. at ¶¶ 33-52). While Plaintiff is allegedly a California resident, none of the *material* events occurred in California. The alleged data breaches did not occur in California. Defendants did not obtain copies of Plaintiff's hard drive in California or access his iPhone back-up in California. (Compl. at ¶ 18; Ziegler Decl. at ¶ 5). All decision-making related to the report and website occurred in Illinois, the nerve center of operations for ICU and the place where Ziegler resides. (Ziegler Decl. at ¶ 17). Therefore, this Court should dismiss this lawsuit or transfer the case to Illinois. *See Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009).

**C.      Plaintiff Does Not State A Claim Under The Computer Fraud And Abuse Act, 18 U.S.C. § 1030.**

As a preliminary matter, Plaintiff falsely asserts that he properly brought his claim for violation of the CFAA within the statute of limitations. *See* Opp'n at 8. Plaintiff misconstrues the

plain language of the statute. A plaintiff must bring a CFAA action within two years from either: the date of defendant's act or the date plaintiff discovers the unauthorized computer access or damage. 18 U.S.C. § 1030(g). Plaintiff should have filed this action by July 2023 as it is obvious that he knew or became aware that Defendant Ziegler possessed incriminating information about him when Ziegler discussed the contents of his laptop in a public interview. (Defs' RJN, Ex. 18).

Plaintiff argues that Defendants violated the CFAA, but the cited paragraphs of the Complaint in his Motion are conclusory statements and repetitions of the statutory language of the CFAA. *See* Opp'n at 16; Compl. ¶¶ 34-36. While all material allegations in the pleadings are taken as true and construed in the light most favorable to the non-moving party, (*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)), the Court is not required to accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id*. In addition, the Court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

Plaintiff concedes that he must *show* that Defendants intentionally accessed a computer without authorization and that the Defendants obtained the information from a protected computer. Mot. at 16-19 (citing 18 U.S.C. § 1030(a)). Yet, Plaintiff fails to plead any such allegations or refute Defendants' arguments that Plaintiff's Laptop and iPhone backup do not satisfy the "computer" definition of the statute or that Defendant's accessed Plaintiff's Laptop and iPhone backup. *See* Defendants' Motion to Dismiss ("Mot.") at 14-15, ECF No. 23. Further, Plaintiff's Complaint is devoid of any factual allegations that Defendants accessed and received Plaintiff's data over the internet. Indeed, Plaintiff admits that the "data at issue was sent and received over the internet *before* Defendants accessed it." Opp'n at 18. And Defendant Ziegler explained that he did not access Plaintiff's data over the internet, but rather received *copies* of the data from a third-party entity. (Ziegler Decl. at ¶¶ 5, 20, 22).

Moreover, Plaintiff's Complaint does not demonstrate that Plaintiff owned the Laptop at the time Defendants received copies of the data because Plaintiff had previously abandoned the Laptop. Indeed, Plaintiff abandoned the Laptop at a Delaware repair shop, (Defs' RJN, Ex. 1, ¶ 19-25), and

the electronics are currently in the possession of the FBI. (*Id.*, Ex. 4, pp. 3, 12-16). *See State v. Benge*, 2003 WL 21526885, at *2 (Del. Super. Ct. June 26, 2003) ("To abandon an item, . . . defendant must 'voluntarily discard[ ] the property, [leave] it behind, or otherwise relinquish[ ] his interest therein under circumstances indicative of his foregoing any further reasonable expectation of privacy with regard to it at the time of the search.'"); *see also State v. Mills*, No. 1708012318, 2022 WL 17248930, at *1 (Del. Super. Ct. Nov. 28, 2022), *aff'd*, 304 A.3d 191 (Del. 2023) (holding that defendant relinquished his expectation of privacy in the phone by leaving it in someone else's backyard and running away from it). Plaintiff clearly abandoned his Laptop at John Paul Mac Isaac's shop and relinquished any ownership rights in the Laptop. (RJN, Ex. 1, ¶ 20; Ex. 2).

If there is any liability under CFAA, such liability would be attributed to the individuals or entities who accessed Hunter Biden's laptop. Indeed, Defendants never accessed or received Plaintiff's laptop or iPhone—Defendants only received copies of the data that were purportedly attributed to these devices. *Id.* Plaintiff's Complaint fails to allege that Defendants accessed Plaintiff's computer and that Defendants accessed the data without authorization. This failure is fatal given that the third-party entities or individuals provided the copies of the data to Defendant Ziegler and never forbade him from publishing the information. (Ziegler Decl. at ¶ 5). Furthermore, all equivalent data was already released by other publications; nothing was new as a category – not emails, photos, videos, calendar events, etc.

Plaintiff claims that the "Complaint includes many factual allegations establishing the unauthorized and unlawful nature of Defendants' data access." Opp'n at 19. Yet, again, Plaintiff fails to plead anything more than "conclusory, unwarranted deductions of fact." *Sprewell*, 266 F.3d at 988. The data at issue in this matter had already been posted and publicized on various public platforms. Defendants simply compiled the already-public data onto a single online, searchable platform. That Defendant Ziegler accessed some of the copied data using passwords is immaterial and belied by Plaintiff's own cited case law. (Mot. at 17; *cf. also Netapp, Inc. v. Nimble Storage*, 41 F. Supp. 3d 816, 829 (N.D. Cal. 2014) (holding that "scope of authorized computer access for purposes of the CFAA does not depend entirely on circumvention of a technological barrier."))

Plaintiff repeatedly regurgitates the statutory law (Opp'n at 16-19) but fails to identify any supporting facts in his Complaint that support a claim that Defendants violated the CFAA or that Plaintiff suffered any "recoverable loss." Defendants raised this point in their Motion to Dismiss (Mot. at 16)), but in his Motion, Plaintiff again only cites the statutory definition of "loss." Opp'n at 19. Plaintiff pleads nothing more than a bare conclusion that Defendants' caused Plaintiff "recoverable loss." The CFAA does not provide for recovery of legal expenses, lost profits, or other consequential damages untethered to a service interruption or restoration and/or response effort. *See* 18 U.S.C. 1030(e)(11). The CFAA prohibits unauthorized access to a computer, not misuse of information obtained therefrom. *See Van Buren*, 141 S. Ct. at 1659–60. Plaintiff's single reference to "direct costs, incurred during any one-year period, of investigating and responding to Defendants' violations of the CFAA" is conclusory and unsupported by any factual allegations. (Compl. at ¶ 37).

Because Plaintiff does not allege recoverable damages or any facts sustaining a claim under the CFAA, this Court should dismiss Plaintiff's CFAA claim under Rule 12(b)(1) and 12(b)(6).

### D.  Plaintiff Does Not State A Claim Under The Comprehensive Computer Data Access And Fraud Act.

Plaintiff argues that Defendants violated the CCDAFA (Opp'n at 20-22), but Plaintiff fails to refute Defendants' arguments that they acted "without permission" (Mot. at 17). The chain of custody is critical to the Plaintiff's CCDAFA claim. The fact that Defendants accessed publicly available data sufficiently refutes any claim that Defendants acted without permission in accessing the copies of data. As with the CFAA claim, if there is any liability, the liability would attach to any entity or individual that first obtained the data at issue here, not the entity that accessed and publicized data already made available to the public. Defendants did not possess or access Plaintiff's computer or devices, let alone his original files; the Defendants, again, only possess copies. And Plaintiff has not asserted (and logically cannot assert) that he ever owned or exercised any right of control over the copies Defendants received.

Plaintiff argues that CCDAFA's broad definition of the term "access" is applicable here because Plaintiff "owe[ned] 'data' that Defendants 'knowingly accessed' and used 'without

8

permission.'" Opp'n at 21. The Complaint does not sufficiently demonstrate that the files and data that Defendants received ever belonged to Hunter Biden. Plaintiff refuses to attempt to identify which particular files and data are his – he wants to "have his cake and eat it too." Even if such copies were considered to belong to Plaintiff, he cannot argue that Defendants knowingly accessed the data given the fact that they received the data from a third-party entity or individual that permitted them to review and publicize the copied files. Again, the Complaint blithely disregards the publication and possession of the Biden Laptop files, including entities that possessed and circulated the data long before Defendants ever obtained a copy. RJN, Exhs. 6-8.

Because Plaintiff does not allege recoverable damages or any facts stating a claim under the CCDAFA, this Court should dismiss this claim under Rule 12(b)(1) and 12(b)(6).

### E. Plaintiff's Lawsuit Is Subject To Dismissal Under Rule 12(b)(6) And California Code Of Civil Procedure § 425.16.

#### 1. Plaintiff's Claims Arise from Protected Activity

Plaintiff erroneously claims that the anti-SLAPP statute does not apply because his claims are not based on Defendants protected free speech or petitioning activity. Opp'n at 23-24. However, Defendants' collection of information involving the sitting president and his son constitutes newsgathering, which "can be constructed as undertaken in furtherance of the news media's right to free speech." *Lieberman*, 110 Cal. App. 4th at 166. Indeed, mainstream media has cited Defendants' report over 300 times. (Ziegler Decl. at ¶ 10). More than six million unique IP addresses have reviewed the report on Defendants' website. (*Id.* at ¶ 12).

Importantly, "[i]t is not the defendant's burden in bringing a SLAPP motion to establish that the challenged cause of action is constitutionally protected as a matter of law." *Lieberman*, 110 Cal. App. 4th at 165 (citations omitted). "Once the defendant shows that the cause of action arose from acts done in furtherance of an exercise of free speech, it becomes the plaintiff's burden to establish that the acts are not protected by the First Amendment." *Id.* (citations omitted). Plaintiff has not established that Defendants' newsgathering is not protected.

Plaintiff's cited cases are distinguishable. Opp'n at 24 (citing cases). In *Hudson Martin v.*

*Forsyth*, while the court did not find that the defendant's alleged unauthorized access of computer data was protected activity, it did find that the use of the data in a divorce proceeding was protected. 7 WL 1315576, at *3 (N.D. Cal. Apr. 7, 2017). In *Malin v. Singer,* the court did not find that the anti-SLAPP statute applied when an attorney (Gaims) allegedly hired an investigator to conduct illegal wiretapping activities of his client's opponent. 217 Cal. App. 4th 1283, 13003 (2013).

It is undisputed that Defendants' use of the information found on the Biden Laptop is protected activity. Defendants' access and collection of the data is also protected because unlike the defendants in *Malin*, Defendants was not attempting to unlawfully acquire incriminating evidence for litigation purposes. (Ziegler Supp. Decl. at ¶ 5). Defendant Ziegler acquired the information from the Biden Laptop to inform the public of foreign compromise in government that could implicate President Joe Biden's "character and fitness for public office…." *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1015-16 (2005) (collecting cases). Defendants' conduct is protected because any incriminating information that implicates the president of the United States is a matter of significant public importance.

Indeed, even if this Court were to conclude that Defendants unlawfully accessed data belonging to Plaintiff, their conduct would still be protected. For instance, in *Bartnicki v. Vopper*, the media acquired and published the contents of illegally intercepted cellular telephone conversations between a teacher's union president and the union's labor negotiators concerning collective bargaining matters. 532 U.S. 514, 518-19 (2001). The Court concluded that criminalizing the conversations would "implicate the core purposes of the First Amendment because it imposes sanctions on the publication of truthful information of public concern." *Id.* at 533-34. Similarly, this Court cannot punish Defendants for investigating foreign corruption and publishing incriminating evidence on the President of the United States and his son.[1]

### III. CONCLUSION

Considering the foregoing, this Court should dismiss the Complaint with prejudice.

---

[1] For the reasons stated above and in Defendants' opening brief, Plaintiff will not prevail on the merits.

| | | |
|---|---|---|
| DATED:  March 7, 2024 | | TYLER LAW, LLP |
| | By: | /s/ Robert H. Tyler |
| | | Robert Tyler, Esq.<br>Attorneys for Defendants **Garrett Ziegler** and **ICU, LLC** |