TYLER LAW, LLP
Robert H. Tyler (SBN 179572)
rtyler@tylerlawllp.com
Nathan R. Klein (SBN 306268)
nklein@tylerlawllp.com
Mariah R. Gondeiro (SBN 323683)
mgondeiro@tylerlawllp.com
25026 Las Brisas Road
Murrieta, California 92562
Telephone:   (951) 600.2733
Facsimile:   (951) 600.4996

Attorneys for Attorneys for Defendants **Garrett Ziegler** and **ICU, LLC**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HUNTER BIDEN<br><br>　　　　Plaintiff(s)<br><br>　v.<br><br>GARRETT ZIEGLER, an individual; ICU, LLC, a Wyoming limited liability company,<br><br>　　　　Defendant(s) | Case No.: 2:23-cv-07593-HDV-KS<br><br>*Honorable Hernan D. Vera*<br>*Magistrate Judge Karen L. Stevenson*<br><br>**DEFENDANTS' MOTION FOR RECUSAL**<br><br>Date:　　April 25, 2024<br>Time:　　10:00 a.m.<br>Ctrm:　　5B |

**TO EACH PARTY AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 25, 2024, at 10:00 a.m., in Courtroom 5B of the above-mentioned courthouse, Defendants Garrett Ziegler and ICU, LLC, doing business as Marco Polo, will and hereby respectfully move to recuse and disqualify the Honorable Hernan D. Vera from this case.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on February 20, 2024.

This motion is made pursuant to 28 U.S.C. § 455(a) and is supported by the concurrently filed memorandum of points and authorities, request for judicial notice and exhibits attached thereto, declarations of Garrett Ziegler, Nathan R. Klein, and Emma F. Plotnik and exhibits attached thereto, the [proposed] order, oral argument to be presented at the time of the hearing, and on all other such items the Court may consider.

DATED: March 7, 2024

TYLER LAW, LLP

By: /s/ Robert H. Tyler
Robert H. Tyler, Esq.
Attorneys for Defendants **Garrett Ziegler** and **ICU, LLC**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants Garrett Ziegler and ICU, LLC, doing business as Marco Polo (collectively "Defendants") respectfully request that the Honorable Hernan D. Vera recuse himself from the present proceedings pursuant to 28 U.S.C. § 455(a) because Judge Vera's impartiality will be reasonably questioned. Recusal is warranted because Judge Vera made donations to Joseph Biden's campaign for president; because Judge Vera was appointed to the Central District Court by President Joseph Biden just three months before this lawsuit was filed by President Biden's son, Hunter Biden, and one day after Speaker Kevin McCarthy announced a presidential impeachment inquiry had commenced in Congress; because the relief requested in the Complaint would prevent and inhibit the public, media and Congress from accessing highly relevant evidence to the impeachment inquiry of President Biden; and because the district court rulings in this case may affect the impeachment inquiry along with the future presidency of Joseph Biden, toward which Judge Vera made a financial investment and for which Judge Vera has an obvious interest and affinity.

Plaintiff Robert Hunter Biden ("Plaintiff") alleges that Defendant Garrett Ziegler ("Ziegler") is "a zealot who has waged a sustained, unhinged and obsessed campaign against Plaintiff and the entire Biden family for more than two years" to "advance his right-wing agenda" and seeks to enjoin Defendants from "accessing, tampering with, manipulating, or copying Plaintiff's data" and aims to restore any money or property Defendants acquired by obtaining Plaintiff's data. Complaint ("Compl."), ¶ 1; Prayer for Relief (F)(1)-(2), ECF No. 1. Contrary to Plaintiff's mischaracterizations, Defendants prepared a credible investigative report ("Biden Laptop Report") based on widely circulated data found on Plaintiff's abandoned laptop ("Biden Laptop"). The purpose was not to wage a campaign against Plaintiff, but rather to expose instances of foreign compromise by Plaintiff and his father, President Joe Biden, which are matters of great public interest and concern. Declaration of Garrett Ziegler ("Ziegler Decl."), ¶ ¶ 3-4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Plaintiff's allegations pertaining to violations of the Computer Fraud and Abuse Act and the Comprehensive Computer Data and Access Fraud Act as well as an allegation of unfair business practices. Compl. at ¶¶ 34, 40, 50, ECF No. 1. Plaintiff, a public figure and son of current U.S. President Joe Biden, alleges that Defendants altered, manipulated, and tampered with the data linked to Plaintiff's infamous laptop and accuses Defendants of accessing, taking, and using data from Plaintiff's devices or "cloud" storage, computer service, or protected computer. *Id.* at ¶¶ 35, 40-42.

Plaintiff abandoned his laptop computer at a Delaware computer repair shop. Req. for Judicial Notice in support of Mot. to Dismiss (RJN Mot. to Dismiss), Ex. 1, ¶ 19, ECF No. 24-1. Following the abandonment, the shop owner turned the Biden Laptop over to the FBI on or around October 2019 after discovering disturbing material. *Id.*, Ex. 4, p. 12, ECF No. 24-4. Soon after, media outlets gained access to emails and documents found on the Biden Laptop, resulting in a media storm of allegations against Hunter Biden and President Biden regarding potential foreign compromise. *Id.*, Ex's. 6-8; Compl. at ¶ 18, ECF No. 1. By April 2021, Plaintiff appeared in a TV interview discussing the Biden Laptop files found in Delaware and distributed to media outlets. RJN Mot. to Dismiss, Ex. 18, ECF No. 24-18.

Nearly three years after the dissemination of files emanating from an abandoned laptop, Plaintiff filed this lawsuit to censor Defendants one day after an impeachment inquiry into the Plaintiff's father was announced by House Speaker Kevin McCarthy and during the middle of Plaintiff's father's re-election campaign. Declaration of Garrett Ziegler ("Ziegler Decl."), ¶ 6. Plaintiff's challenges are largely premised on the Biden Laptop Report that Marco Polo prepared about the Plaintiff and his family as part of Defendant Marco Polo's mission of exposing foreign compromise within the government and private sector. *Id* ¶ 3; Req. for Judicial Notice in support of Motion to Recuse ("RJN Mot. to Recuse"), Ex. 1.

In preparing the Biden Laptop Report, Defendant Ziegler relied on copies of files from the Biden Laptop that had already been widely circulated since at least October 2020 to numerous media outlets. Ziegler Decl. ¶¶ 4, 7. Defendants' website, www.BidenLaptopEmails.com has been accessed

2
DEFENDANTS' MOTION FOR RECUSAL

1 by over 4 million Americans since its inception in May of 2022. *Id.*, ¶ 8. Further, Defendants' website, www.BidenLaptopMedia.com has been accessed by over 5 million Americans since its inception in June of 2023. *Id.* Additionally, over 8 million Americans have accessed the free digital version of the Biden Laptop Report at www.MarcoPolo501c3.org, which was made available in November 2022, with millions more reading posts about the contents of the Biden Laptop Report on social media. *Id.* Additionally, there have been at least 441 citations to Marco Polo's work by media outlets. *Id.*, ¶ 8; RJN Mot. to Recuse, Ex. 2.

Evidence of Plaintiff's foreign compromise as referenced in the Biden Laptop Report has led to pending criminal proceedings against Plaintiff in the United States District Court for the Central District of California due to suspected federal tax evasion resulting from Plaintiff's overseas business dealings. RJN Mot. to Dismiss, Ex. 13, ECF No. 24-13. The United States House of Representatives has commenced a formal impeachment inquiry against President Biden based on Plaintiff's dealings with foreign governments. Ziegler Decl. ¶¶ 5-6; RJN Mot. to Recuse, Ex. 10.

Marco Polo's investigative reporting is prominent and influential within the presidential impeachment inquiry. Notably, Defendant Marco Polo provided background research to the Oversight, Judiciary, and Ways and Means Committees in the U.S. House of Representatives ("Committees") related to the impeachment inquiry. Ziegler Decl. ¶ 10. Defendants work product published on Marco Polo's websites (which Plaintiff requests this Court to shut down) and Marco Polo itself were expressly named and referenced as a source of evidence at a congressional hearing of the House Oversight & Accountability Committee related to Plaintiff's refusal to attend a congressional deposition pertaining to his father's impeachment inquiry. *Id.* Congresswoman Margarie Taylor Greene presented demonstrative exhibits of evidence that she and her staff received directly from Defendants. *Id.* The exhibits are copies taken directly from pages of the Biden Laptop Report. Congressman Jamie Raskin then requested that Democrats on the committee be provided the Biden Laptop files. *Id.* Congresswoman Anna Paulina Luna then interjects that she can provide every Democrat member a copy of the Biden Laptop because "Marco Polo has the actual entire publication." Chairman James Comer then commented to Congressman Raskin, "you mentioned you wanted to read some stuff, that would probably be something good to read, the Marco Polo

3
DEFENDANTS' MOTION FOR RECUSAL

1  Report.... It's public record." *Id.*; RJN Mot. to Recuse, Ex. 11. Defendant Ziegler and his websites
2  have also been referenced in interviews pertaining to the impeachment inquiry. RJN Mot. To Recuse,
3  Exs. 4-6; Plotnik Decl., ¶ ¶ 3-5.

4     Plaintiff himself indirectly referenced the contents of the Biden Laptop Report in his private
5  deposition related to the Impeachment Inquiry on February 28, 2024, by testifying that specific texts,
6  emails, financial records, and other communications obtained by the House Oversight, Judiciary,
7  and Ways and Means Committees have been taken "out of context," "altered," and "cherry-picked"
8  by Republicans as part of "baseless and MAGA-motivated conspiracies about [Plaintiff's] father."
9  RJN Mot. to Recuse, Ex. 3 at pp. 13-15; Plotnik Decl., ¶ 2.

10    Defendants filed a Motion to Dismiss pursuant to 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6)
11 of the Federal Rules of Civil Procedure and Section 425.16 of the California Code of Civil
12 Procedure. Mot. to Dismiss at p. 2, lines 7-9, ECF No. 23. After filing the Motion to Dismiss,
13 Defendants discovered that Judge Vera may have a personal bias in favor of President Biden that
14 could affect the outcome of the litigation, calling into question Judge Vera's impartiality. Ziegler
15 Decl., ¶ 11. Judge Vera was nominated to the Central District Federal Court by President Biden and
16 approved by an 11 to 10 vote in the U.S. Senate Judiciary Committee—along strict party lines—
17 after having been blocked twice before by that same Committee. The eventual vote in the full U.S.
18 Senate was, again, along strict party lines, with a 51 to 48 vote and was assigned to this case three
19 months after his appointment by President Biden to the federal court. RJN, Mot. to Recuse, Exs. 8-
20 9; Plotnik Decl., ¶ ¶ 7-8. Public records reveal that Judge Vera had a personal interest in the 2020
21 election of President Biden and, likely, the re-election of President Biden. According to Federal
22 Election Commission records, Judge Vera contributed at least $1,600 collectively to the "Biden for
23 President" campaign and the "Biden Victory Fund" during the 2020 election year. RJN, Mot. to
24 Recuse, Ex. 7; Plotnik Decl., ¶ 6.

25    The outcome of this litigation could affect the outcome of the presidential impeachment
26 inquiry. If Judge Vera grants the injunction, it would prevent the public, media, and Congress from
27 accessing Defendants' investigative reporting and contents on the Biden Laptop, possibly impacting
28 the impeachment investigation. A reasonable person would question whether Judge Vera has a bias

in ensuring that President Biden stays in office, given his political contributions to President Biden's 2020 presidential election campaign and his appointment to the federal court by President Biden just three months before this case was assigned to him.

Defendants do not bring this Motion based on the mere fact that Judge Vera made a political contribution to support the sitting President, because he contributed to a political party, or because Judge Vera was merely appointed by President Biden. Rather, this Motion is brought because the subject matter of the litigation, the relief sought, and the surrounding facts and circumstances would cause a reasonable observer to question whether Judge Vera's decisions in this case will be impartial.

### III. LEGAL ARGUMENT

**A.  Recusal Is Mandatory Pursuant To 28 U.S.C. § 455(a) Because Judge Vera's Impartiality Might Reasonably Be Questioned In Light Of The Relief Sought By Plaintiff Combined With Judge Vera's Contributions And Perceived Bias, Given The Facts And Circumstances Surrounding This Case.**

Under 28 U.S.C. § 455(a), "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Additionally, "Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *Matter of Mason*, 916 F.3d 384, 385 (7th Cir. 1990). Thus, recusal under 28 U.S.C. § 455(a) does <u>not</u> require actual bias but rather a mere appearance of bias or prejudice. *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993). The issue of whether there is an appearance of bias or partiality "is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000). A fact-specific analysis is performed on a case-by-case basis when recusal motions are brought pursuant to 28 U.S.C. § 455(a). *In re Boston's Children First*, 244 F.3d at 171 (1st Cir. 2001).

When it was implemented, "Subsection (a) . . . was an entirely new 'catchall' recusal provision, covering both "interest or relationship" and "bias or prejudice" grounds . . .'" *Liteky v. U.S*, 510 U.S. 540, 548 (1994). Further, "Scienter is not an element of a violation of § 455(a). The judge's lack of knowledge of a disqualifying circumstance . . . does not eliminate the risk that his

'impartiality might reasonably be questioned' by other persons."' *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859 (1988). The "[a]dvancement of the purpose of the provision – to promote public confidence in the integrity of the judicial process does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew." *Id.* at 859-60. In other words, the permissive use of the word "might" in the text of 28 U.S.C. § 455(a) constitutes a *de minimus* threshold for disqualification. Therefore, "when a judge harbors any doubts concerning whether his disqualification is required, he should resolve the doubt in favor of disqualification." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988). The rationale underlying the flexible standard set forth under 28 U.S.C. 455(a) "also pervades the Code of Judicial Conduct and the ABA Code of Professional Responsibility" and is rooted in establishing "the recognized need for an unimpeachable judicial system in which the public has unwavering confidence." *Potashnick v. Port City Const. Co.,* 609 F.2d 1101, 1111 (5th Cir. 1974). Unbiased, impartial adjudicators are the cornerstone of any system of justice worthy of the label." *In re Al-Nashiri*, 921 F.3d 224, 233–34 (D.C. Cir. 2019).

Moreover, pursuant to 28 U.S.C. § 453, a federal judge is required to take an oath stating, "I will faithfully and impartially discharge and perform all duties incumbent upon me . . . under the Constitution and laws of the United States. So help me God." *U.S. v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008); 28 U.S.C. 453. Canon 2(A) of the Code of Conduct for United States Judges provides in pertinent part that, "[a] judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Here, recusal is necessary because an objective "reasonable observer who is informed of all the surrounding facts and circumstances" would certainly have reason to question whether Judge Vera was free from bias or partiality. *Microsoft Corp. v. United States*, 530 U.S. at 1302. This Motion is not intended to impugn the Court or to assert that Judge Vera would not be able to be impartial. But the "ability to be impartial" is not the applicable standard.

The "surrounding facts and circumstances" reveal that Plaintiff's goal is to avenge his family by obtaining injunctive relief that would effectively shut down significant portions of Marco Polo's websites that contain information found on the Biden Laptop related to the impeachment inquiry, among other aspects of Plaintiff's business dealings and President Biden's relationships thereto. *Id.*; Compl. at ¶ 1, Prayer for Relief (F)(1)-(2); ECF No. 1.

The remedies sought are not just for Plaintiff's own purposes, but for the purposes of his entire family, including President Biden. This is evident in the first paragraph of Plaintiff's complaint:

"Ziegler is a zealot who has waged a sustained, unhinged, and obsessed campaign against Plaintiff and the entire Biden family for more than two years. While Defendant Ziegler is entitled to his extremist and counterfactual opinions, he has no right to engage in illegal activities to advance his right-wing agenda." Compl. at ¶ 1, ECF No. 1.

Plaintiff's angst toward Defendants is understandable. Defendants' investigative reporting and the evidence published on Defendants' websites regarding the contents of the Plaintiff's abandoned laptop have had a direct impact on the public, media, and Congress in relation to the impeachment inquiry. Over 17 million members of the public have accessed Marco Polo's websites. Ziegler Decl. ¶ 8. Media has cited or referred to the websites 441 times as of this writing. *Id.* ¶ 9; RJN Mot. to Recuse, Ex. 2. And Marco Polo has provided research data and the Biden Laptop Report directly to staff on the Oversight, Judiciary, and Ways and Means Committees in the U.S. House of Representatives. *Id.* ¶ 10.

Committee members in a recent congressional hearing before the House Oversight & Accountability Committee expressly relied on Marco Polo's work product and referred members of the committee to Marco Polo. *Id.* Congresswoman Anna Paulina Luna stated that she would provide every Democrat member a copy of the Biden Laptop because "Marco Polo has the actual entire publication." *Id.* Chairman James Comer then commented to Congressman Jamie Raskin, "you mentioned you wanted to read some stuff, that would probably be something good to read, the Marco Polo Report.... It's public record." *Id.*

If the relief requested by Plaintiff is granted, Defendants may be forced to shut down the websites. There is no other website accessible to the public that contains this important information.

Ziegler Decl. ¶ 12. An injunction would eliminate access of the public, media, and members of Congress to the information on the websites that implicate matters of national and international concern – the potential foreign compromise and criminal wrongdoing of the First Family of the United States. Furthermore, an injunction might substantially impede the impeachment inquiry as well.

Considering the magnitude of the relief requested, a reasonable observer would call into question Judge Vera's impartiality considering all the surrounding facts and circumstances. Judge Vera made significant $1,600 political contributions during the 2020 presidential election to the "Biden for President Campaign" and the "Biden Victory Fund." RJN, Mot. to Recuse, Ex. 7; Plotnik Decl., ¶ 6. Judge Vera's appearance of bias is heightened when a reasonable observer considers that Judge Vera was assigned to this case just three months after he was appointed to this Court by President Biden and after he was blocked twice by the Senate Judiciary Committee on partisan grounds. RJN, Mot. to Recuse, Exs. 8-9; Plotnik Decl. ¶¶ 8-9. Plaintiff's lawsuit was strategically filed just one day after Speaker Kevin McCarthy announced that a presidential impeachment inquiry had commenced in Congress highlighting the political relevance of this case. RJN, Mot. to Recuse, Ex. 10. If Plaintiff is granted the relief requested, Judge Vera's ruling would prevent and inhibit the public, media, and Congress from accessing highly relevant evidence to the impeachment inquiry of President Biden that is not available anywhere else. Ziegler Decl. ¶ 12.  The district court rulings may, therefore, substantially affect the impeachment inquiry due to the potential for censorship and may also impact the future presidency of Joseph Biden, whether it be the success or failure of the impeachment effort or the success or failure of President Biden's campaign for a second term as president. Lastly, in light of the politically charged rematch between President Biden and President Trump, another consideration is that Defendant Ziegler previously worked for President Trump, Biden's two-time political opponent, and the Complaint contains allegations that Defendants only rendered the Biden Laptop to advance a right-wing agenda. Compl. at ¶ 1.

In summary, Judge Vera made a financial investment toward the success of the Biden presidency, his appointment was close in time to the filing of this lawsuit by President Biden's son, and this case was brought to vindicate the entire Biden family, including President Biden. Any

reasonable observer knowing these facts would assume that Judge Vera has an obvious interest and affinity toward the President such that his ability to be impartial should be seriously questioned. Judge Vera should therefore recuse himself to further ensure that the public has unwavering confidence in the judiciary.

To be clear, Defendants do not take issue with the fact that Judge Vera donated to a sitting President's campaign. Defendants do not contend that political contributions render a judge disqualified. Nor do Defendants contend that Judge Vera's appointment by President Biden alone serves as a basis for recusal. Rather, the facts in this case are unique, considering all the "surrounding facts and circumstances," including the relief requested and its relation to the political contribution, the timing of Judge Vera's appointment, and the familial relationship of the parties, among other matters stated above. *Microsoft Corp. v. United States*, 530 U.S. at 1302. If Judge Vera had contributed to the earlier campaigns for President Obama or President Clinton, Defendants would have no need to file the present Motion. But now, the discontent among political rivals seems unprecedented and fortifying the public's faith in all three branches of government is essential to the welfare of our country.

> [T]he degree of cynicism and distrust infecting the decisions of all branches of government is disheartening. Worse, such lack of trust is dangerous to our evolving experiment in self-governance through a representative democracy. As Justice Breyer observed, confidence in the integrity and impartiality of federal judges "is a public treasure . . . . It is a vitally necessary ingredient of any successful effort to protect basic liberty and, indeed, the rule of law itself" . . . . This court has no desire to contribute to the prevailing level of cynical distrust of pronouncements by public officials, but instead to confirm the integrity and impartiality of most members of the federal judiciary.

*U.S. v. Bobo*, 323 F.Supp. 2d 1238, 1242 (N.D. Ala. 2004) (citing *Bush v. Gore*, 531 U.S. 98, 157-58 (2000) (Breyer, J., dissenting)).

### IV. CONCLUSION

Given the low threshold and permissive standard to be met under 28 U.S.C. § 455(a) to determine whether Judge Vera's impartiality *might* reasonably be questioned, this Motion should be resolved in favor of disqualification. *Parker v. Connors Steel Co.*, 855 F.2d at 1524. For the

foregoing reasons, Defendants respectfully request that the Honorable Hernan D. Vera recuse himself from this case and direct the Clerk to randomly assign this matter to another District Judge.

DATED: March 7, 2024

TYLER LAW, LLP

By: /s/ Robert H. Tyler
Robert H. Tyler, Esq.
Attorneys for Defendants **Garrett Ziegler** and **ICU, LLC**