PAUL B. SALVATY (SBN 171507)
PSalvaty@winston.com
GREGORY A. ELLIS (SBN 204478)
GAEllis@winston.com
WINSTON & STRAWN LLP
333 S. Grand Ave., 38th Flr.
Los Angeles, CA  90071
Telephone: (213) 615-1700
Facsimile:    (213) 615-1750

ABBE DAVID LOWELL (pro hac vice)
AbbeLowellPublicOutreach@winston.com
WINSTON & STRAWN LLP
1901 L St., N.W.
Washington, DC 20036-3508
Telephone: (202) 282-5000
Facsimile:  (202) 282-5100

[ADDITIONAL COUNSEL NEXT PAGE]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ROBERT HUNTER BIDEN,

          Plaintiff,

    vs.

GARRETT ZIEGLER, an individual, ICU, LLC, a Wyoming limited liability company d/b/a Marco Polo, and DOES 1 through 10, inclusive,

          Defendants.

**Case No. 2:23-cv-07593-HVD-KS**

*Motion to be heard by the Honorable Mónica Ramírez Almadani*

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECUSAL**

Hearing Date:  April 25, 2014
Time:         1:30 p.m.
Courtroom:    10B

BRYAN M. SULLIVAN (SBN 209743)
bsullivan@earlysullivan.com
ZACHARY C. HANSEN (SBN 325128)
EARLY SULLIVAN WRIGHT GIZER
& McRAE LLP
6420 Wilshire Boulevard, 17th Fl.
Los Angeles, CA 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676


Attorneys for Plaintiff
ROBERT HUNTER BIDEN

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................... 2

    A.    The Parties ................................................................................................ 2

    B.    Plaintiff's Allegations of Defendants' Illegal Data Access ......................... 3

    C.    Relevant Procedural History ...................................................................... 5

III.  ARGUMENT ....................................................................................................... 7

    A.    Legal Standard on a Motion to Recuse ...................................................... 7

    B.    Defendants Present Nothing to Suggest That a Reasonable Person Would Question Judge Vera's Partiality ............................................................... 9

        1.    Judge Vera's Appointment by President Biden Has No Weight in the Recusal Analysis. .................................................................. 9

        2.    Judge Vera's Pre-Appointment Political Contributions Do Not Support Recusal. ...................................................................... 10

        3.    The "Surrounding Facts and Circumstances" Are Not "Unique" and Do Not Support Recusal. ........................................................ 12

IV.   CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Al-Nashiri,*
    921 F.3d 224 (D.C. Cir. 2019)..........................................................................15

*Arkansas State Conference NAACP v. Arkansas Board of Apportionment,*
    578 F. Supp. 3d 1011 (E.D. Ark. 2022)...........................................11, 12, 15, 16

*In re Boston Children First,*
    244 F.3d 164 (1st Cir. 2001)......................................................................14, 15

*Burton v. Arkansas Sec'y of State,*
    2015 WL 11090414 (E.D. Ark. Feb. 26, 2015)....................................11, 12, 15

*Cano v. Biden,*
    2022 WL 1239861 (S.D. Cal. Apr. 27, 2022) .................................................8, 9

*Clemens v. United States Dist. Ct. for Cent. Dist. of California,*
    428 F.3d 1175 (9th Cir. 2005) .............................................................2, 8, 9, 16

*In re Executive Office of the President,*
    215 F.3d 25 (D.C. Cir. 2000)..........................................................................9, 13

*Garity v. Donahoe,*
    2014 WL 4354115 (D. Nev. 2014).................................................................8, 15

*Klayman v. Judicial Watch,*
    628 F. Supp. 2d 98 (S.D. Cal. 2009).......................................................9, 10, 11

*Konarski v City of Tucson,*
    716 F. App'x 609 (9th Cir. 2017) .......................................................................7

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) ..............................................................................6

*Liljeberg v. Health Services Acquisition Corp,*
    486 U.S. 847 (1988)..........................................................................................15

*Matter of Mason*,
  916 F.2d 384 (7th Cir. 1990) ..............................................................*passim*

*McKee v. United States Dept. of Justice*,
  253 F. Supp. 3d 78 (D.D.C. 2017) ................................................................9

*Parker v. Connors Steel Co.*,
  855 F.2d 1510 (11th Cir. 1988) ..................................................................15

*Perry v. Schwarzenegger*,
  630 F.3d 909 (9th Cir. 2011) ........................................................8, 15, 16

*Perry v. Schwarzenegger*,
  790 F. Supp. 2d 1119 (N.D. Cal. 2011) ........................................................7

*Potashnick v. Port City Const. Co.*,
  609 F.2d 1101 (5th Cir. 1974) ....................................................................15

*Straw v. United States*,
  4 F.4th 1358 (Fed. Cir. 2021) ..................................................................9, 13

*Theofel v. Farey-Jones*,
  359 F.3d 1066 (9th Cir. 2004) ......................................................................6

*Trump v. Clinton*,
  599 F. Supp. 3d 1247 (S.D. Fla. 2022) ..............................1, 8, 13, 16

*United States v. Bell*,
  79 F. Supp. 2d 1169 (E.D. Cal. 1999) ..........................................................7

*United States v. Bobo*,
  323 F. Supp. 2d 1238 (N.D. Ala. 2004)..........................................14, 15, 16

*United States v. Cerceda*,
  188 F.3d 1291 (11th Cir. 1999) ....................................................................8

*United States v. Holland*,
  519 F.3d 909 (9th Cir. 2008) ......................................................7, 13, 14, 16

*United States v. Nixon*,
  267 F. Supp. 3d 140 (D.D.C. 2017) ..............................................................8

*United States v. State of Alabama*,
  574 F. Supp. 762 (N.D. Ala. 1983) ............................................................11

*United States v. Studley*,
   783 F.2d 934 (9th Cir. 1986) ..................................................................9

*United States v. Trump*,
   --F. Supp. 3d--, 2023 WL 6284898 (D.D.C. 2023) ....................................7, 8, 16

*United States v. Trump*,
   Case No. 9:23-cr-80101-AMC (S.D. Fla.) (filed June 8, 2023) ........................1, 9

*Yagman v. Republic Ins. Co*,
   987 F.2d 622 (9th Cir. 1993) ..............................................................7, 9

**Statutes**

18 U.S.C. § 1030 ..................................................................................5

28 U.S.C. § 455(a) ............................................................................1, 7

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ...................................................6

Cal. Civ. Proc. Code § 425.16 ..................................................................6

Cal. Pen. Code § 502 ..............................................................................5

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ..........................................................................6

Fed. R. Civ. P. 12(b)(2) ..........................................................................6

Fed. R. Civ. P. 12(b)(3) ..........................................................................6

Fed. R. Civ. P. 12(b)(6) ..........................................................................6

General Order No. 23-05 ........................................................................10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendants offer three reasons why recusal of the Honorable Hernan D. Vera is "mandatory" under 28 U.S.C. § 455(a), none of which has any merit: (1) Judge Vera was appointed to the federal bench by Plaintiff's father, President Joseph R. Biden; (2) prior to his appointment, Judge Vera made political contributions to the 2020 Biden presidential campaign; and (3) this is a "unique" case with "facts and circumstances" that somehow suggest that "Judge Vera may have a personal bias in favor of President Biden that could affect the outcome of the litigation, calling into question Judge Vera's impartiality." *See* Mot. at 4-5, 9.

None of Defendants' arguments comes close to supporting the law's standard for establishing a basis for recusal in this case. There is no support whatsoever—in the Ninth Circuit or anywhere else—for the contention that a judge can be disqualified based simply on the identity of the President who appointed him.[1] This is particularly true where, as here, the appointing President is not himself a party to the litigation and the judge being challenged has no direct connection to any actual litigant. *See Trump v. Clinton*, 599 F. Supp. 3d 1247, 1249-50 (S.D. Fla. 2022) (denying recusal because "the law is well settled" that appointment to the bench by a litigant, let alone appointment by a litigant's spouse, does not create reasonable perception of impartiality). Similarly, the courts uniformly have rejected motions to recuse based on pre-appointment political donations. Thus, Defendants would have no grounds to recuse Judge Vera even if President Biden himself was a party to this case—they certainly have no grounds for recusal in a case involving President Biden's son, with whom there is no allegation of any connection to Judge Vera at all. Finally, there is nothing "unique" about this case that somehow requires recusal or raises any reasonable questions about Judge Vera's ability

---

[1] Indeed, recusal is not required even where a party before a judge is the person who appointed that judge. *See United States v. Trump*, Case No. 9:23-cr-80101-AMC (filed June 8, 2023) (S.D. Fla.).

1    to be fair.  Ultimately, the crux of Defendants' argument is that they do not like Judge

2    Vera's biography, making them unduly suspicious of him, which has been expressly

3    rejected as a ground for recusal.   *See Clemens v. United States Dist. Ct. for Cent. Dist. of*

4    *California*, 428 F.3d 1175, 1178 (9th Cir. 2005) (quoting *Matter of Mason*, 916 F.2d 384,

5    386 (7th Cir. 1990) (recognizing that a party being a "hypersensitive or unduly suspicious

6    person" is not ground for recusal of a judge)).  Defendants' arguments to the contrary are

7    invented, baseless speculation that provide no basis for the relief they seek.

8    ## II.    BACKGROUND

9        Defendants' summary of the "factual and procedural background" of this dispute is

10   inaccurate, incomplete, and misleading.  Accordingly, Plaintiff provides below an

11   accurate and comprehensive description of the largely undisputed relevant facts based on

12   the factual allegations set forth in the operative complaint.

13       ### A.    The Parties

14       Plaintiff is an attorney and businessman and is the second-born son of President

15   Joseph R. Biden, Jr.  Although Plaintiff is and always has been a private citizen, political

16   opponents of President Biden have used him as a surrogate to attack his father.  For the

17   past several years, Plaintiff has been the target of relentless personal attacks and the

18   subject of countless baseless conspiracy theories, particularly from extreme right-wing

19   members of Congress, right-wing media, and so-called right-wing activists.

20       Defendant Ziegler is a former Trump White House aide who worked from

21   February 2019 until January 2021 as a Policy Analyst and, later, as an Associate Director

22   of the Office of Trade and Manufacturing Policy under the supervision of Dr. Peter

23   Navarro.  (Compl. ¶ 15.)  Since having his White House credentials revoked in or around

24   January 2021, Ziegler, by his own admission, has devoted most of his waking time and

25   energy to accessing, tampering with, manipulating, altering, copying, and otherwise using

26   data contained on a copy of a hard drive that Defendants claim to be from Plaintiff's

27   "laptop" computer.  (*Id*. ¶ 16.)

28

2

On or about July 8, 2021, Defendant Ziegler organized Defendant ICU and caused Defendant ICU to begin doing business under the name "Marco Polo." (*Id.* ¶ 20.) Defendants claim to have spent at least 13 months—from September 2021 through October 2022—"analyzing the voluminous material from the Biden Laptop," and their unlawful access, manipulation, and analysis of Plaintiff's data continues to this day. (*Id.* ¶ 21.)

## B. Plaintiff's Allegations of Defendants' Illegal Data Access

Although the precise manner by which Defendants obtained Plaintiff's data remains unclear,[2] there is no dispute that once Plaintiff's data was in their custody, they accessed, tampered with, analyzed, and manipulated the data over an extended period of time. (Compl. ¶¶ 17-18.)  Defendant Ziegler admitted he used Plaintiff's data to create a voluminous report entitled "Report on the Biden Laptop" ("Report"), which Defendants first published on or about October 19, 2022.  (*Id.* ¶ 22.)  Defendants have sold and sent copies of the Report throughout the United States, including California.  In addition, in or around May 2022, Defendants used Plaintiff's data to create what Defendant Ziegler has described as "an online searchable database of 128,000 emails found on the Biden Laptop." (*Id.*)  Plaintiff has never authorized or consented to any access of his data by any Defendant or anyone working with any Defendant at any time or for any purpose.  To the contrary, Plaintiff notified Defendants that they are not authorized to access any of his data, that they should cease doing so, and that they should return any of Plaintiff's data to Plaintiff immediately.  (Compl. ¶ 30.)

Defendants regularly brag about their illegal access of Plaintiff's data in interviews with members of the media, on social media, and on right-wing podcasts.  For example,

---

[2] Defendants are vague on this point, having stated only that Ziegler "received a copy of the hard drive . . .from an associate of former New York City mayor Rudy Giuliani." (12/21/23 Ziegler Decl. (Dkt. 23-1), ¶ 5.)  In published reports, Ziegler has claimed to have obtained one copy of a hard drive containing Plaintiff's data from Jack Maxey, a former co-host on convicted felon Steve Bannon's War Room podcast, and another copy of a hard drive containing Plaintiff's data from another source.  (Compl. ¶ 18.)

1    in December 2022, Ziegler described the activities of his team, which he said includes

2    "digital forensics folks," as follows: "[I]t took us a year to go through [the data] . . .

3    Usually, when you have this much data to go through, it's as if it's after a presidential

4    library has been opened, right?"  (Compl. ¶¶ 23-24.)  In another interview published in or

5    around June 2023, Ziegler discussed his and his team's efforts to create a website to

6    house "almost 10,000 photos" that he claims to have extracted from Plaintiff's data.  (*Id*.)

7        According to Ziegler, Defendants spent "a couple of months" going through photos

8    stored in Plaintiff's data, organizing and modifying the photos (through what he

9    characterizes as "redactions"), and subjecting the data to a "photo viewing app" to allow

10   Defendants and others to "view the metadata in the photos."  (*Id*. ¶ 25.)  Ziegler claims

11   these activities are designed to allow members of the public who log onto Defendants'

12   website and access Defendants' servers "to be able to see where the photo was taken,

13   what time it was taken, if it has latitude and longitude coordinates attached to it. . .

14   They're going to be able to see if it has metadata like aperture, lighting."  (*Id*.)  Ziegler

15   further has stated that Defendants' efforts to upload videos from Plaintiff's data to

16   Defendants' website required more time and effort than uploading photos from Plaintiff's

17   data because Defendants needed "to use AI tools" on the data to "censor" portions of

18   videos that Defendants consider to be "pornographic." (*Id*. ¶ 26.)

19       The data Defendants have unlawfully accessed, manipulated, and damaged

20   includes tens of thousands of emails, thousands of photos, and dozens of videos and

21   recordings.  (*Id*. ¶ 27.)  The data also includes Plaintiff's credit card details, Plaintiff's

22   financial and bank records, and information of the type contained in the files of a

23   consumer reporting agency.  (*Id*.)  At least some of the data originally was stored on

24   Plaintiff's iPhone and backed up to Plaintiff's iCloud storage.  (*Id*. ¶ 28.)  By their own

25   admission, Defendants gained unlawful access to Plaintiff's iPhone data by

26   circumventing technical or code-based barriers that were specifically designed and

27   intended to prevent such access.  (*Id*. ¶¶ 28-29.)

28

In an interview that occurred in or around December 2022, Defendant Ziegler bragged that Defendants had hacked their way into data purportedly stored on or originating from Plaintiff's iPhone: "And we actually got into [Plaintiff's] iPhone backup, we were the first group to do it in June of 2022, we cracked the encrypted code that was stored on his laptop."  (*Id*. ¶ 29.)[3]  After "cracking the encrypted code that was stored on [Plaintiff's] laptop," Defendants illegally accessed the data and then uploaded it to their website, where it remains accessible to this day.  (*Id*.)  It appears that data Defendants uploaded to their website from Plaintiff's encrypted "iPhone backup," like data Defendants uploaded from their copy of the hard drive of the purported "laptop," has been manipulated, tampered with, altered, and/or damaged by Defendants.  (*Id*.)[4]

Defendants have refused to comply with Plaintiff's demands to cease and desist. As recently as September 2023, Defendant Ziegler declared on social media that efforts by Plaintiff to serve him with legal process in the future would be met with violence: "If the US pResident's [sic] son sends a proxy [i.e., a process server] to illegally trespass on my property I will blow their f---ing brains out."  (*Id*. ¶ 31.)

### C.    Relevant Procedural History

Plaintiff commenced this lawsuit on September 13, 2023.  The Complaint alleges one federal claim and two state claims: (1) Violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (2) Violation of California's Comprehensive Computer Data Access and Fraud Act ("CCDAFA"), Cal. Penal Code § 502; and (3) Violation of

---

[3] Defendant Ziegler has confirmed this improper access of Plaintiff's iPhone backup under oath in this litigation.  In his declaration accompanying Defendants' pending motion to dismiss, Ziegler admits that he obtained "passcodes, which are essentially similar in function to passwords," and after "months of examination, we were able to locate the passcode which allowed access to [Plaintiff's] iPhone backup file."  (12/21/23 Ziegler Decl. (Dkt. 23-1), ¶ 21.)

[4] The nature and extent of Defendants' manipulation, tampering, alteration, and damage to Plaintiff's data, either from their copy of the hard drive of the claimed "Biden laptop" or from Plaintiff's encrypted "iPhone backup" (or from some other source), is unknown to Plaintiff due to Defendants' continuing refusal to return the data to Plaintiff.  (Compl. ¶ 29.)

California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200 *et seq.*

On December 21, 2023, Defendants filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(3) and 12(b)(6) and Section 425.16 of the California Code of Civil Procedure ("Motion"), which Plaintiff opposed on February 29, 2024. Defendants' primary argument in support of dismissal—namely, their claim that they cannot be held responsible for their actions because, according to them, they accessed, tampered with, and manipulated a "copy" of Plaintiff's data while it was stored on a "hard drive" they obtained from a third party, rather than accessing Plaintiff's data while it was stored on a "computer" or "device" that was "owned" and "exclusively controlled" by Plaintiff himself—is contrary to Ninth Circuit and California law.  *See, e.g., Theofel v. Farey-Jones,* 359 F.3d 1066, 1078 (9th Cir. 2004) (plaintiff may seek redress under CFAA regardless of ownership or control where he is "proximately harmed by unauthorized access, particularly if [he has] rights to the data stored on it").[5]  None of Defendants' other arguments has any merit either.  The Motion to Dismiss has been fully briefed and is ready to be argued and decided after the present Motion has been resolved.

On March 7, 2024, Defendants filed the Motion.  Defendants offer no explanation for waiting nearly six months to raise their purported concerns about Judge Vera's impartiality.  Although they claim to have "discovered that Judge Vera may have a personal bias in favor of President Biden" after filing their Motion to Dismiss, they offer nothing to support this explanation.  *See* Mot. at 4, *citing* 3/7/24 Ziegler Decl. ¶ 11.  The purported "facts" upon which the Motion is based have been publicly available from the outset.  More importantly, none of the Defendants' "facts" provides any basis whatsoever for impugning Judge Vera or seeking recusal.

---

[5] In addition, while Defendants' assertions have no merit, they are not ones that can be decided on a motion to dismiss and would require fact discovery.  *See, e.g., Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'") (internal citation omitted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   <u>ARGUMENT</u>

#### A.   **Legal Standard on a Motion to Recuse**

Defendants seek to disqualify Judge Vera pursuant to 28 U.S.C. § 455(a), which states that a judge "shall disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned."  Defendants argue that the use of the word "might" in the statute "constitutes a *de minimus* [sic] threshold for disqualification," citing no caselaw to support their argument, and ignoring the qualifier "reasonably" in the statute.  (Mot. at 6:6-7.)  Defendants' proposed standard is wrong.

Under Ninth Circuit law, the recusal analysis "begin[s] with the general proposition that, in the absence of a legitimate reason to recuse himself, 'a judge should participate in cases assigned.'"  *United States v. Holland* (cited by Defendants), 519 F.3d 909, 912 (9th Cir. 2008) (quoting *Maier v. Orr*, 758 F.2d 1578, 1583 (Fed. Cir. 1985)).  Importantly, federal judges are *presumed* to be impartial.  *See, e.g., Konarski v City of Tucson,* 716 F. App'x 609, 611 (9th Cir. 2017).  Thus, far from imposing only a *de minimis* standard for recusal, under Section 455(a), "the party seeking disqualification bears *a substantial burden* to show that the judge is biased."  *Perry v. Schwarzenegger* ("*Perry I*"), 790 F. Supp. 2d 1119, 1129 (N.D. Cal. 2011 (emphasis added) (internal quotations and citation omitted); *United States v. Bell*, 79 F. Supp. 2d 1169, 1171 (E.D. Cal. 1999); *cf. United States v. Trump*, --F. Supp. 3d--, 2023 WL 6284898, at *3 (D.D.C. 2023) (party seeking recusal bears burden by clear and convincing evidence).

Under Section 455(a), courts examine "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned."  *Holland*, 519 F.3d at 913 (internal quotations and citation omitted); *see also, e.g., Yagman v. Republic Ins. Co*, 987 F.2d 622, 626 (9th Cir. 1993) (same) (cited by Defendants).  A reasonable person in this context "is not a 'partly informed man-in-the-street,' but rather someone who 'understand[s] all the relevant facts' and has examined the record and the law."  *Holland*, 519 F.3d at 914 (quoting *LoCascio v. United*

*States*, 473 F.3d 493, 496 (2d Cir. 2007)).  The "'reasonable person' in this context means a 'well-informed, thoughtful observer,' as opposed to a 'hypersensitive or unduly suspicious person.'" *Clemens*, 428 F.3d at 1178 (quoting *Matter of Mason*, 916 F.2d at 386); *United States v. Cerceda*, 188 F.3d 1291, 1293 (11th Cir. 1999) ("Recusal cannot be based on unsupported, irrational or highly tenuous speculation.") (internal quotations and citation omitted).  "The standard must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Cano v. Biden*, 2022 WL 1239861, at *2 (S.D. Cal. 2022) (internal quotations and citation omitted); *cf. United States v. Nixon*, 267 F. Supp. 3d 140, 148 (D.D.C. 2017) (noting that courts are "<u>not</u>" to use "the standard of mere suspicion" on recusal motions) (emphasis in original) (internal quotations and citation omitted).

Moreover, a judge "must not simply recuse out of an abundance of caution when the facts do not warrant recusal." *Garity v. Donahoe*, 2014 WL 4354115, at *2 (D. Nev. 2014).  Otherwise, "it would be too easy for those who seek judges favorable to their case to disqualify those that they perceive to be unsympathetic merely by publicly questioning their impartiality." *Perry v. Schwarzenegger*, 630 F.3d 909, 916 (9th Cir. 2011) ("*Perry II*") (Reinhardt, J.) (denying motion to recuse).  *See also Matter of Mason*, 916 F.2d at 386 (noting that "putting disqualification in the hands of a party, whose real fear may be that the judge will *apply* rather than disregard the law, could introduce a bias into adjudication.") (emphasis in original); *Trump*, 2023 WL 6284898, at *4 (noting that in the wrong hands, "a disqualification motion is a procedural weapon" raising multiple risks, including that of "judge shopping") (internal quotations and citations omitted); *Trump v. Clinton*, 599 F. Supp. 3d at 1249 ("[i]n the real world, recusal motions are sometimes driven more by litigation strategies than by ethical concerns.") (internal quotations and citation omitted).  Indeed, a judge "has 'as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require.'"

1    *Clemens*, 428 F.3d at 1179 (quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995));

2    *see also Cano*, 2022 WL 1239861, at *2.

3         A court's decision on a motion to recuse is reviewed for abuse of discretion.  *See*

4    *Yagman*, 987 F.2d at 626; *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986).

5    **B.    Defendants Present Nothing to Suggest That a Reasonable Person**

6           **Would Question Judge Vera's Partiality.**

7           **1.    *Judge Vera's Appointment by President Biden Has No Weight in the***

8                  ***Recusal Analysis.***

9         "There is no support whatsoever for the contention that a judge can be disqualified

10   simply on the identity of the President who appointed him."  *Straw v. United States*, 4

11   F.4th 1358, 1363 (Fed. Cir. 2021) (citing multiple authorities).  This is true even where

12   the president who appointed the judge is a party to the proceeding.  *See In re Executive*

13   *Office of the President*, 215 F.3d 25, 25 (D.C. Cir. 2000).  "Even in cases (unlike this

14   one) in which the appointing President is a party, neither the recusal statute nor the Code

15   of Conduct for United States Judges requires a judge's recusal from the case on that

16   basis."  *McKee v. United States Dept. of Justice*, 253 F. Supp. 3d 78, 81 (D.D.C. 2017);

17   *see also United States v. Trump et al.,* Case No. 9:23-cr-80101-AMC (S.D. Fla.) (filed

18   June 8, 2023) (pending criminal case against former President Trump, presided over by

19   appointee of former President Trump).

20        The identity of an appointing president is also irrelevant even where a party is

21   known to be a staunch political opponent of that president.  In *Klayman v. Judicial*

22   *Watch*, the plaintiff sought recusal on the ground that the judge was appointed by

23   President Clinton, "against whom 'Plaintiff was a strong and controversial advocate.'"

24   628 F. Supp. 2d 98, 110 (S.D. Cal. 2009).  The court noted that the plaintiff provided no

25   legal authority to support his position, "and for good reason–the case law is clear that

26   recusal is not warranted in this circumstance."  *Id.*  Rather, "in the federal system, judges

27

28

separate themselves from politics when going on the bench, and their life tenure reduces any felt reliance on political patrons." *Id.* at 111 (internal citation omitted).

Defendants themselves concede that the identity of the appointing president is an insufficient basis to disqualify Judge Vera. (Mot. at 9:7-8) ("Nor do Defendants contend that Judge Vera's appointment by President Biden alone serves as a basis for recusal"); *see also id.* at 5 (same). The fact that President Biden appointed Judge Vera cannot support recusal.[6]

### 2. *Judge Vera's Pre-Appointment Political Contributions Do Not Support Recusal.*

In *Matter of Mason*—a case Defendants rely upon (Mot. at 5)—the Seventh Circuit directly addressed the issue of whether a judge's pre-appointment campaign contributions warranted recusal, and squarely held that recusal was *improper.* There, the district judge made campaign contributions to two of the named defendants in the case, and the plaintiff's counsel ran against one of the named defendants while the case was pending. 916 F.2d at 385. The district court denied plaintiffs' motion to disqualify the judge, and the Seventh Circuit denied the plaintiff's request for a writ of mandamus. *Id.* at 388. The Seventh Circuit noted that "[c]ourts that have considered whether pre-judicial political activity is also prejudicial regularly conclude that it is not." *Id.* at 386. The court observed that "[t]here are not enough political eunuchs on the federal bench to resolve all cases with political implications." *Id.* at 387. More importantly, the court explained that even politically connected federal judges "regularly cast partisan interests aside and resolve cases on the facts and law. *Judges with tenure need not toady, and don't."* *Id.* (emphasis added).

---

[6] Defendants also argue that an "appearance of bias is heightened" because Judge Vera was assigned this case three months after his appointment. (Mot. at 8.) But as this Court knows, civil cases in this District are randomly assigned to judges, except for a small subset of directly assigned cases that do not cover the present action. *See* General Order No. 23-05 (superseded after the present case was filed), at 9-15. Defendants present no evidence that this case deviated in any way from the normal random assignment process set forth in General Order 23-05.

More recently, in *Arkansas State Conference NAACP v. Arkansas Board of Apportionment*, the district court ruled that a recusal argument based on campaign contributions analogous to those here "borders on the frivolous." 578 F. Supp. 3d 1011, 1017 (E.D. Ark. 2022). In *Arkansas State Conference*, the district judge made a campaign contribution to a named defendant in January 2018, four years before the motion was decided and nearly two years before the judge took the bench in November 2019. *Id.* The district court ruled that the contribution did not "trigger recusal under the objective reasonable-person standard." *Id.* Here, Judge Vera did not make a campaign contribution to a party to the case. He made his last contribution in September 2020, nearly three years before taking the federal bench in June 2023, and one year longer than the parallel time frame in *Arkansas State Conference*. (*See* RJN Ex. 7; Ellis Decl., Ex. A (noting that Judge Vera received his commission on June 15, 2023).)[7] Similarly, in *Burton v. Arkansas Sec'y of State*, before being appointed to the bench, the district judge co-hosted a fundraising reception for a political opponent of one of the named defendants. 2015 WL 11090414, at *1 (E.D. Ark. 2015). Citing *Klayman* and *Matter of Mason* among other authorities, the court concluded that recusal was not warranted, and that "[t]he fact of past political activity alone will rarely require recusal." *Id.* at *6-7 (internal quotations and citation omitted)*; see also United States v. State of Alabama*, 574 F. Supp. 762, 764 & n.2 (N.D. Ala. 1983) (concluding that motion to recuse was "devoid of legal merit" when based on judge's past campaign contributions to former United States Senator who recommended his appointment).

As with their "appointment" argument, Defendants admit the "contribution" argument is flimsy at best, admitting that there would be no basis for recusal if Judge Vera made donations to Presidents Obama or Clinton. (Mot. at 9:11-13.) *Matter of Mason, Arkansas State Conference*, and *Burton* all make clear that political contributions

---

[7] Defendants' Request for Judicial Notice erroneously asserts that Judge Vera took the bench on June *13*, 2023, the day he was confirmed by the Senate, rather than the day he received his commission. (RJN ¶¶ 21, 23, 25, 28 & Exs. 8, 9.)

to a party to the case (or a party's political opponent) are insufficient to warrant recusal. At most, Defendants could argue that the contributions here are larger than the $100 contributions at issue in *Matter of Mason* or the $500 contribution in *Arkansas State Conference* (the amounts at issue in *Burton* are unclear). But Judge Vera's $1,600 contributions are a drop in the bucket compared to the over one billion dollars President Biden raised in his 2020 presidential campaign. *See* Ellis Decl., Ex. B. Thus, Judge Vera's contributions to the President's election campaign do not support recusal.

### 3. The "Surrounding Facts and Circumstances" Are Not "Unique" and Do Not Support Recusal.

Although none of the facts Defendants identify with respect to Judge Vera warrant recusal, Defendants attempt the legal equivalent of multiplying by zero, and argue that when *taken together* under the circumstances, their deficient facts somehow *mandate* that Judge Vera be recused. The "surrounding facts and circumstances" Defendants point to include Plaintiff's purported motive "to avenge his family" via this lawsuit (Mot. at 7); and the "magnitude of the relief requested"—*i.e.*, an injunction preventing Defendants from further accessing or tampering with Plaintiffs' data, which Defendants claim could affect the pending impeachment inquiry of President Biden and impede public access to the data. (Mot. at 8.) Defendants' arguments are imaginary and baseless—and in many respects counterfactual—and they are based on inapposite caselaw.

First, the attributed motive behind this suit is false and irrelevant. The sole basis Defendants point to for "motive" is paragraph 1 of the Complaint, which notes that *Ziegler* has pursued Plaintiff and his family for years—a point which Ziegler himself regularly trumpets on social media and expressly confirms in his own court filings. *See, e.g.,* 3/7/24 Ziegler Decl. (Dkt. 35-3), ¶ 10 (Ziegler admits that Defendants collaborated with Congressional staff and members supporting impeachment by providing them with data at issue in this case.). The *substance* of the Complaint has nothing to do with "aveng[ing Plaintiff's] family," but is limited to seeking legal redress for specific and

pervasive misconduct that Defendants committed directly against Plaintiff, by wrongfully accessing and tampering with his personal data.  (*See* Compl.)  In any event, Plaintiff's motive for bringing the suit, and his relationship to President Biden, have nothing to do with *Judge Vera's* partiality in presiding over the case, and Defendants' argument is simply a recasting of their failed argument that the identity of an appointing president requires recusal.  *Trump v. Clinton* is instructive.  There, former President Trump sued former Secretary of State Hillary Clinton, then moved to recuse the district judge on the ground that he was appointed by President Bill Clinton.  599 F. Supp. 3d at 1248.  The judge "equate[d] the interests of the Clintons for the sake of analysis here," and concluded that there was no basis for recusal, citing *In re Executive Office of the President* and *Straw.  Id.* at 1249.

Second, although Defendants claim that a ruling in Plaintiff's favor "might substantially impede the impeachment inquiry," (Mot. at 8:4), they never explain *how* this might occur (or whether there is even an impeachment inquiry still remaining to impede).  Nor can they possibly do so.  Defendants' own evidence establishes that they already provided the "Report" and other stolen "research data" to Congressional staff supporting the impeachment inquiry, and that the proponents of impeachment have already "used" the data (to the extent it is "useful" to them) in their purported (and frivolous) investigation.  (Mot. at 3-4, 7.)  The impeachment inquiry appears to be approaching its ignominious end, while this case is still in its infancy.  More importantly, there is nothing to suggest that a finding of liability against Defendants here would have any impact whatsoever on the impeachment activities of President Biden's opponents in Congress.  Nor is Plaintiff seeking relief in this case that would have any bearing on the impeachment investigation.  Thus, a reasonable person—who "understand[s] all the relevant facts" (*Holland,* 519 F.3d at 914)—would know that Plaintiff's efforts to seek redress in this litigation for the unlawful hacking activities of Defendants have nothing to

do with the so-called "impeachment investigation" of President Biden by right-wing House Republicans.

Third, Defendants claim that an injunction, if entered in this case, would inhibit the public from accessing relevant data.  (Mot. at 1, 7-8.)  This argument is a red herring; the contention of lack of merit to the claims or the made-up concerns about public access have no bearing on a recusal motion.  The issue in this case is whether Defendants' ongoing access of Plaintiff's data violates applicable state and federal anti-hacking laws. The relief that Plaintiff seeks—including but not limited to injunctive relief—is directed at Defendants, not anyone else.  Thus, while Defendants may well be enjoined from continuing to engage in their unlawful data-related activities, there would be no "injunction" against the "public" or the "media" at large.  More importantly, Defendants' purported concerns about the "magnitude of the relief" sought against them has absolutely nothing to do with Judge Vera's ability to be fair or about whether Judge Vera's partiality could be reasonably questioned.  Indeed, even if Judge Vera were to enter the injunction sought in this case, that ruling could not serve as grounds for recusal, because the "extrajudicial source" rule "generally requires as the basis for recusal something *other than* rulings, opinions formed or statements made by the judge during the course of trial."  *Holland*, 519 F.3d at 913-14 (emphasis added) (internal quotations and citation omitted).  Ultimately, Defendants' arguments about the possible entry of an injunction against them amount to "rumor, speculation, beliefs. . . and similar non-factual matters" that cannot form the basis of recusal.  *Id.* at 914 n.5 (internal quotations and citation omitted).

Defendants close their "surrounding facts and circumstances" argument by referring dramatically to the need to protect the public's trust in all three branches of government, and by citing to a single case to support their position: *United States v.*

1  *Bobo,* 323 F. Supp. 2d 1238 (N.D. Ala. 2004).[8]  In *Bobo,* a former governor of Alabama

2  was a criminal defendant; the district judge was related to the current governor, who

3  defeated the defendant in a previous election.  323 F. Supp. 2d at 1239.  The judge made

4  no contributions to his relative's campaign.  *Id.* at 1240.  Moreover, the judge concluded

5  that he "has not said or done anything that requires recusal" and that no relevant facts

6  "would impair this judge from a fair, thorough, and impartial review of the facts and law

7  pertinent to this case."  *Id.* at 1241.  Curiously, the court proceeded to a "Part II" of its

8  discussion, where it ruminated that "we live in a 'cynical world,'" and that recent

9  "spurious suggestions for recusal" reflected "an unstated lack of confidence in the

10  impartiality and capacity" of the judiciary.  *Id.* at 1242-1243 (internal citation omitted).

11  The judge then recused himself *sua sponte* "[f]or all of the reasons stated in Part II of this

12  opinion."  *Id.* at 1243.

13       *Bobo* is an out-of-circuit district court case at odds with governing Ninth Circuit

14  law.  In particular, "Part II" of the court's discussion does not mention the objective

15  reasonable person standard at all.  By recusing *sua sponte,* even where no specific facts

16  warranted recusal, the *Bobo* court engaged in a textbook recusal "out of an abundance of

17  caution" that is improper under Ninth Circuit law.  *See Garity,* 2014 WL 4354115, at *2;

18

19
20  [8] Elsewhere in their motion, Defendants identify, but do not analyze, other cases holding
21  that recusal was warranted.  All these cases are out-of-circuit and distinguishable.  In *In re Boston Children First,* the district judge wrote a letter to the editor and gave an
interview about her rulings in a pending case, which could have been misinterpreted as a
22  preview of her ultimate ruling on the merits.  *See* 244 F.3d 164, 165-166, 168-170 (1st
Cir. 2001).  In *Liljeberg v. Health Services Acquisition Corp,* the judge in a bench trial
23  was the trustee of a university with a substantial personal stake in the case.  *See* 486 U.S.
847, 852-855 (1988).  Similarly, the judge in *Potashnick v. Port City Construction Co.*
24  did business with the plaintiff's counsel and was the son of a partner at the firm
representing the plaintiff.  *See* 609 F.2d 1101, 1104, 1110, 1112 (5th Cir. 1980).  *In re Al-*
25  *Nashiri* involved a military judge who applied for a job with the Department of Justice
while presiding over a criminal case prosecuted by the Department.  *See* 921 F.3d 224,
26  226-227 (D.C. Cir. 2019).  Finally, in *Parker v. Connors Steel Co.,* the court held that a
failure to recuse was *harmless* error, where the judge's law clerk was the son of the
27  partner in a firm representing a party.  855 F.2d 1510, 1523, 1525-1526 (11th Cir. 1988).
In contrast to these cases, Judge Vera has not made any public comment about the present
28  case, nor does he have business or familial connections with parties or counsel that
warrant recusal.

*Perry II*, 630 F.3d at 916.  More recent cases have distinguished and questioned *Bobo*.  In *Burton*, the court noted that *Bobo* involved a criminal case rather than a civil case.  2105 WL 11090414, at *8.  The court in *Arkansas State Conference* noted the same distinction, and went further, explaining that by recusing even though no facts compelled him to do so, the *Bobo* judge "seems to ignore the concomitant duty a judge has to sit in cases where recusal is not *required*."  578 F. Supp. 3d at 1023 (emphasis in original).  The duty to sit applies equally in the Ninth Circuit, *see Clemens*, 428 F.3d at 1179, and *Bobo's* failure to recognize that duty is a further flaw in its reasoning.  In any event, the *Bobo* judge's decision to recuse is not binding here, as each recusal motion is driven by the particular facts at issue.  *See Holland*, 519 F.3d at 913.  Under these circumstances, the better approach to recusal is illustrated by *Trump v. Clinton*.  After disposing of the arguments (paralleling Defendants' here) relating to the appointing president's relationship to the parties, the court explained:

> I have considered whether the nature of this lawsuit–acutely politically charged as it is–might provide some additional cause to question my qualification to preside, but I see no impediment there either.  Every federal judge is appointed by a president who is affiliated with a major political party, and therefore every federal judge could *theoretically* be viewed as beholden, to some extent or another.  <u>As judges, we must all transcend politics</u>.

599 F. Supp. 3d at 1250 (italics in original, underlined emphasis added).  Here, Defendants have not presented evidence to show that a reasonable person would have any legitimate reason to think Judge Vera will be unable to transcend politics.

Finally, Defendants' admissions that their stated grounds for recusal are insufficient on their own and their hyperbolic arguments about the purported "importance" of their unlawful activities to the impeachment investigation suggest that this Motion was brought for strategic rather than substantive purposes, as many courts have cautioned may be the case when ruling against recusal.  *See, e.g., Perry II*, 630 F.3d at 916; *Trump*, 2023 WL 6284898 at *4.  The Motion does not evidence any appearance of bias on Judge Vera's part, but instead demonstrates Defendants' "real fear. . . that the

judge will *apply* rather than disregard the law." *Matter of Mason*, 916 F.2d at 386 (emphasis in original).  It also appears to have been filed as a means of providing "red meat" to Defendants' social media base.  *See* Ellis Decl., Ex. C at 6-7 (January 2024 interview with Ziegler, noting intent to seek recusal and asserting, among other things, that Judge Vera "is not a disinterested guy" based on his pre-appointment work for "left wing" organizations, including Public Counsel and La Raza).

## IV.   **CONCLUSION**

Defendants' reliance on hollow platitudes like "fortifying the public's faith in all three branches of government," and their insinuation that recusal "is essential to the welfare of our country" (Mot. at 9:14-15) are insufficient to carry their burden on this motion.  Rather, Defendants needed to present facts showing that a *reasonable person* would doubt Judge Vera's partiality.  Defendants have failed to do so, and accordingly, the Motion must be denied.

Dated: April 4, 2024                          Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Paul B. Salvaty*
     Paul Salvaty
     Abbe David Lowell
     Gregory A. Ellis
     Attorneys for Plaintiff


EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By: */s/ Bryan M. Sullivan*
     Bryan M. Sullivan
     Zachary C. Hansen
     Attorneys for Plaintiff

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Robert Hunter Biden, certifies that this brief contains 6,000 words which complies with the word limit of L.R. 11-6.1.

Dated: April 4, 2024

WINSTON & STRAWN LLP

By: */s/ Paul B. Salvaty*
Paul Salvaty

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECUSAL
CASE NO. 2:23-cv-07593-HVD-KS