UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HUNTER BIDEN,<br><br>                Plaintiff,<br><br>   v.<br><br>GARRETT ZIEGLER, et al.,<br><br>                Defendants. | Case No. 2:23-cv-07593-HDV-KS<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR RECUSAL [ECF 35]**<br><br>*Referred to the Hon. Mónica Ramírez Almadani pursuant to C.D. Cal., Gen. Order No. 23-15* |

Before the Court is Defendants' Motion for Recusal of the Honorable Hernán D. Vera from the above-captioned civil action. ECF 35. The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. For the reasons stated herein, the Court **DENIES** the Motion.

I.    <u>**RELEVANT FACTUAL & PROCEDURAL BACKGROUND**</u>

On September 13, 2023, Plaintiff Hunter Biden filed an action against Defendants Garrett Ziegler and ICU, LLC, alleging that Defendants violated the Computer Fraud and Abuse Act, California Penal Code § 502(c)(1), and the California Business & Professions Code, by "accessing, tampering with, manipulating, altering, copying and damaging computer data that they do not own and that they claim to have obtained from hacking into

Plaintiff's iPhone and from scouring a copy of the hard drive of what they claim to be Plaintiff's 'laptop' computer." ECF 1 at 2. For these claims, Plaintiff seeks damages, disgorgement, prejudgment interest, attorneys' fees, and injunctive relief. *Id.* at 13.

On December 21, 2023, Defendants filed a Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) and California Code of Civil Procedure Section 425.16. ECF 23. Plaintiff filed his Opposition to the Motion to Dismiss on February 29, 2024. ECF 30. The hearing on the Motion to Dismiss was set to take place on March 21, 2024, before Judge Vera. ECF 29. The hearing was taken off calendar due to the pending Motion for Recusal (hereinafter the "Motion"), which Defendants filed on March 7, 2024. ECF 35, 39.

Defendants maintain that "[t]his Motion is not intended to impugn the Court or to assert that Judge Vera would not be able to be impartial." ECF 35 at 8. They argue that "[r]ecusal is warranted because Judge Vera made donations to Joseph Biden's campaign for president [during the 2020 presidential election]; because Judge Vera was appointed to the Central District Court by President Joseph Biden just three months before this lawsuit was filed by President Biden's son, Hunter Biden, and one day after [then] Speaker Kevin McCarthy announced a presidential impeachment inquiry had commenced in Congress; because the relief requested in the Complaint would prevent and inhibit the public, media and Congress from accessing highly relevant evidence to the impeachment inquiry of President Biden; and because the district court rulings in this case may affect the impeachment inquiry along with the future presidency of Joseph Biden, toward which Judge Vera made a financial investment and for which Judge Vera has an obvious interest and affinity." *Id.* at 3. They therefore insist that, "[c]onsidering the magnitude of the relief requested, a reasonable observer would call into question Judge Vera's impartiality considering all the surrounding facts and circumstances." *Id.* at 10.

On March 14, 2024, pursuant to the General Orders of the District Court for the Central District of California, the Motion was randomly referred to Judge Ramírez Almadani for determination. ECF 38; C.D. Cal., Gen. Order No. 23-15 (Nov. 29, 2023)

("If the assigned judge determines that the motion to disqualify should be referred to another judge, the assigned judge may refer the motion to the Clerk for random assignment to another district judge in the same division from a division-specific Motions to Disqualify Deck.").

Plaintiff filed an Opposition to the Motion on April 4, 2024, arguing that Defendants "have no grounds to recuse Judge Vera . . . in a case involving President Biden's son, with whom there is no allegation of any connection to Judge Vera at all." ECF 41 at 7. Plaintiff explains that "[t]here is no support whatsoever—in the Ninth Circuit or anywhere else—for the contention that a judge can be disqualified based simply on the identity of the President who appointed him." *Id.*

Defendants filed their Reply in Support of the Motion on April 11, 2024, clarifying that "[they] do not bring this Motion on the mere fact that Judge Vera made a political contribution to the sitting President, because he contributed to a political party, or because [he] was merely appointed by President Biden." ECF 43 at 3 (citing the Motion at 5) (emphasis in original)). These facts are "not necessarily independent grounds alone, supporting recusal." *Id.* Instead, Defendants insist that the "Motion is brought because the subject matter of the litigation, the relief sought, and the surrounding facts and circumstances would cause a reasonable observer to question whether Judge Vera's decisions in this case will be impartial." *Id.* at 2-3.

## II.   DISCUSSION

### A.   Legal Standard for Recusal

The general proposition is that, "in the absence of a legitimate reason to recuse [oneself], a judge should participate in cases assigned," because "[w]ithout this proposition, we could recuse ourselves for any reason or no reason at all; we could pick and choose our cases, abandoning those that we find difficult, distasteful, inconvenient or just plain boring." *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008) (citations and internal quotations omitted). We as judges take an oath to "faithfully and impartially discharge and perform [our] duties," and to "administer justice without respect to persons,

and do equal right to the poor and to the rich." 28 U.S.C. § 453. We therefore "are as bound to recuse ourselves when the law and facts require as we are to hear cases when there is no reasonable factual basis for recusal." *Holland*, 519 F.3d at 912.

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify [themselves] in any proceeding in which [their] impartiality might reasonably be questioned." This is a reasonable-person standard that evaluates impartiality "on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance." *United States v. Carey*, 929 F.3d 1092, 1104 (9th Cir. 2019) (quoting *Liteky v. United States*, 510 U.S. 540, 548 (1994)). Specifically, "[s]ection 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *Holland*, 519 F.3d at 913 (citations omitted). To be clear, "[t]he 'reasonable person' is not someone who is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer." *Miles v. Ryan*, 697 F.3d 1090, 1091 (9th Cir. 2012) (quoting *Holland*, 519 F.3d at 913); *see also Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993) ("[R]ecusal is appropriate where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.") (citation omitted).

The Court is "mindful that section 455(a) claims are fact driven, and as a result, the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." *Clemens v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 428 F.3d 1175, 1178 (9th Cir. 2005) (per curiam) (citation omitted).

### B. Recusal is Not Warranted

Here, the Court is not persuaded that a "reasonable person," with knowledge of all the facts and circumstances of this case, "perceives a significant risk" that Judge Vera will not resolve the case based solely on the merits. *Holland*, 519 F.3d at 913. First, Defendants do not point to any evidence that Judge Vera has any connection to any litigant in this case.

Defendants do not claim, for example, that Judge Vera knows or has a relationship with Plaintiff or his father, President Joseph Biden, who is not himself a party to the litigation. They also do not claim that Judge Vera has made any public comment about the present case or demonstrated any bias in any form. Nor is there any evidence to indicate that Judge Vera has a financial stake or interest in the outcome of this case, and Defendants make no such argument. The only connection between Judge Vera and Plaintiff is the fact that Plaintiff's father appointed Judge Vera to the federal bench in 2023, ECF 36-8 (Ex. 8), and that Judge Vera donated to the President's 2020 campaign, ECF 36-7 (Ex. 7).[1]

However, Defendants concede, as they must, that Judge Vera's appointment and past campaign contributions alone and together do not warrant disqualification. ECF 35 at 3. *See also* Richard E. Flamm, *Judicial Disqualification: Recusal and Disqualification of Judges* 555 (3d ed. 2017) ("As the Second Circuit Court of Appeals has pointed out, moreover, even though judges generally have political backgrounds, to one degree or another, they must be presumed, absent evidence to the contrary, to be impartial. For this reason, and because many judges were involved in politics before taking the bench, and either held political office themselves or helped others to do so, many courts—including panels of the Fifth, Tenth and District of Columbia Circuit Court of Appeal—have made it clear that a judge's past political activity alone, or the views she expressed as a political figure prior to becoming a judge, will rarely require the judge to recuse herself from presiding over a pending proceeding, or provide the basis for a well-founded disqualification motion."); Charles Gardner Geyh, FED. JUD. CTR., *Judicial Disqualification: An Analysis of Federal Law* 26 (Kris Markarian ed., 3d ed. 2020) ("[S]hared political affiliation is not enough, by itself, to require disqualification.").

---

[1] Defendants also argue that "Judge Vera's appearance of bias is heightened" given that he was assigned to this case "just three months after he was appointed." ECF 35 at 10. This information is of no consequence. As Plaintiff points out in his Opposition, cases in this District are randomly assigned to judges, and "Defendants present no evidence that this case deviated in any way from the normal random assignment process set forth in General Order 23-05." ECF 41 at 16.

As a way around this legal barrier, Defendants attempt to steer the Court in a different direction, arguing in effect that Judge Vera's rulings would be seriously questioned in *this* case, unlike in other cases, because of the subject matter of the litigation and the remedies sought by Plaintiff. Specifically, they argue that the case "implicate[s] matters of national and international concern—the potential foreign compromise and criminal wrongdoing of the First Family of the United States," and "might substantially impede the impeachment inquiry as well." ECF 35 at 10. They insist that, "if Judge Vera enjoins Defendants from maintaining their websites including the Biden Laptop Report and supporting data (the subject of this litigation)," he would prevent Congress, the media, and the public from accessing the same data which is relevant to the impeachment inquiry. ECF 43 at 3. Defendants argue that outcome—considering Judge Vera's appointment and past political contributions to President Biden's presidential campaign—would be questioned.

It is not reasonable, however, to suspect that Judge Vera's ability to preside impartially would be affected by the subject matter of the litigation or the remedies sought. Defendants do not point to any rulings by Judge Vera in this case that display bias, favoritism, or antagonism that would make a reasonable observer question Judge Vera's impartiality. As the Supreme Court explained in *Liteky v. United States*, 510 U.S. 540, 555 (1994), "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," and "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgement impossible."

Moreover, as the Ninth Circuit explained in *Clemens*, "[i]n determining whether disqualification is warranted under § 455(a), we also apply the general rule that questions about a judge's impartiality must stem from 'extrajudicial' factors, [] that is, from sources other than the judicial proceeding at hand." 428 F.3d at 1178 (citing *Liteky*, 510 U.S. at 554, and *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 885 (9th Cir.1991)). Here,

Defendants do not provide any evidence of bias stemming from extrajudicial factors. In fact, they concede that President Biden's appointment of Judge Vera and Judge Vera's past political contributions—which do not concern the judicial proceeding at hand—are <u>not</u> disqualifying factors.

Finally, without explanation or legal support, Defendants claim that "in light of the politically charged rematch between President Biden and President Trump, another consideration is that Defendant Ziegler previously worked for President Trump, Biden's two-time political opponent, and the Complaint contains allegations that Defendants only rendered the Biden Laptop to advance a right-wing agenda." ECF 35 at 8. That a case may be "politically charged" or sensitive and, for the sake of analysis, arguably involve the President who appointed the presiding judge, is insufficient to mandate recusal.

The Court agrees with Plaintiff that *Trump v. Clinton*, 599 F. Supp. 3d 1247 (S.D. Fla. 2022), is instructive here. There, former President Donald Trump sued former Secretary Hillary Clinton, alleging that she violated several federal laws, including the Computer Fraud and Abuse Act, the Stored Communications Act, and the Racketeer Influenced and Corrupt Organizations Act. Former President Trump argued that former Secretary Clinton conspired to "disseminate patently false and injurious information about Donald J. Trump and his campaign, all in the hopes of destroying his life, his political career and rigging the 2016 Presidential Election in favor of Hillary Clinton." *Id.* at 1248. President Trump moved to recuse the district judge on the ground that he was appointed by President Bill Clinton, the defendant's husband. The district court "equate[d] the interests of the Clintons for the sake of analysis," but denied the recusal motion despite the "acutely politically charged" nature of the lawsuit. *Id.* at 1249-50. Relying on *In re Executive Office of the President*, 215 F.3d 25 (D.C. Cir. 2000), *Straw v. United States*, 4 F.4th 1358, 1362 (Fed. Cir. 2021), and *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 38 (2d Cir. 1998), the court aptly explained that "[e]very federal judge is appointed by a president who is affiliated with a major political party, and therefore every federal judge could *theoretically* be viewed as beholden, to some extent or another. As judges, we

must all transcend politics." 599 F. Supp. 3d at 1250. *See In re Executive Office of the President*, 215 F.3d at 25 (explaining that hearing a case involving the President who appointed the Circuit Judge would not create "in reasonable minds . . . a perception that [his] ability to carry out judicial responsibilities with integrity, impartiality, and competence would be impaired" in part because of his life-tenured position) (citations omitted); *MacDraw*, 138 F.3d at 38 (explaining that, in the federal system, "judges separate themselves from politics when going to the bench, and their life tenure reduces any felt reliance on political patrons").

To rule in favor of recusal here would require that any federal judge appointed by President Biden who made political contributions to his presidential campaign in the past would need to recuse themselves from this case despite random assignment. That is, under Defendants' reasoning, no judge under these circumstances could be reasonably perceived as impartial given the nature of the litigation. As already explained, and Defendants accept, "[t]here is no support whatsoever for the contention that a judge can be disqualified simply on the identity of the President who appointed [them]." *Straw*, 4 F.4th at 1363 (Fed. Cir. 2021) (citing *MacDraw*, 138 F.3d at 38; *McKee v. U.S. Dep't of Just.*, 253 F. Supp. 3d 78, 81 (D.D.C. 2017); *Armenian Assembly of Am., Inc. v. Cafesjian*, 783 F. Supp. 2d 78, 93 (D.D.C. 2011)); *see also United States v. Gordon*, 974 F.2d 1110, 1114 (9th Cir. 1992) (finding it "not reasonable to suspect that [the judge's] ability to preside impartially would be affected by the fact that President Regan appointed him" in a case where President Reagan was the victim and a potential witness), *overruled on other grounds by United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011); *Klayman v. Jud. Watch, Inc.*, 744 F. Supp. 2d 264, 277 (D.D.C. 2010) (finding recusal not supported where the judge was appointed by President Clinton and movant claimed that judge had connection to the Democratic party); *Larson v. C.I.A.*, No. 1:10-CV-01774 OWW JLT, 2010 WL 4623923, at *1 (E.D. Cal. Nov. 5, 2010) ("As a matter of law, there is no 'personal bias or prejudice' created when a federal judge presides over a matter involving the President who appointed that judge. Neither a judge's political affiliation nor his or her appointment by a particular

President are grounds for recusal."). Moreover, such a result would have damaging consequences, including, for example, parties readily filing recusal motions to wrongly forum-shop their cases.

"Even in cases (unlike this one) in which the appointing President *is* a party, neither the recusal statute nor the Code of Conduct for United States Judges requires a judge's recusal from the case on that basis." *McKee*, 253 F. Supp. 3d at 81 (emphasis added); *see also In re Executive Office of the President*, 215 F.3d at 25-26 (recalling that Justices Ginsburg and Breyer participated in a case where President Clinton who appointed them to the Supreme Court was a named party, and that Chief Justice Burger and Justices Blackmun and Powell, among other judges, participated in cases where President Nixon who appointed them was a named party). For all these reasons, there is no reasonable factual basis for recusal of Judge Vera from this case.

### C. Requests for Judicial Notice

Defendants filed a Request for Judicial Notice in Support of the Motion, ECF 36, which Plaintiff opposes in part, ECF 42. Defendants request judicial notice of 11 exhibits, including excerpts from Defendants' "Biden Laptop Report" (Ex. 1); screenshots from Defendants' website purporting to identify online articles (Ex. 2); Congressional committee interview transcripts (Ex. 3-6); documents showing Judge Vera's 2020 campaign contributions and discussing his confirmation (Ex. 7-9); and other materials pertaining to the impeachment inquiry of President Biden (Ex. 10-11).

Federal Rule of Evidence 201 "permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)-(2)). Even if not subject to reasonable dispute, "an irrelevant fact cannot be classified as an adjudicative fact for purposes of Rule 201." *Waterkeeper v. Clay*, No. CV 8:18-00333 DOC (DFM), 2023 WL 6787811, at *2 (C.D. Cal. Aug. 25, 2023). Under

Federal Rule of Evidence 401(b), evidence is relevant if "the fact is of consequence in determining the action." *See also Taleff v. Sw. Airlines Co.*, 554 F. App'x 598, n.1 (9th Cir. 2014) (declining to take judicial notice of materials that were "either inappropriate for judicial notice under Federal Rule of Evidence 201 and/or irrelevant under Rule 401").

The Court declines to take judicial notice of most of Defendants' exhibits because they were of no consequence to resolving the pending Motion. Specifically, Exhibits 1 and 2 do not bear upon Judge Vera's impartiality, nor do Exhibits 3-6 or 11. The Court takes judicial notice of Exhibits 7 and 8 as evidence of Judge Vera's political contributions and confirmation and appointment to this Court, but not of Exhibit 9, which contains irrelevant information about Judge Vera's career and confirmation process.

Defendants also filed Objections to Evidence attached to Plaintiff's Opposition to the Motion. ECF 44. Plaintiff submitted a declaration and exhibits containing Judge Vera's biographic information, President Biden's 2020 presidential campaign fundraising data, and an interview transcript of Defendant Ziegler discussing Judge Vera and this case. *Id.* The Court denies Defendants' Objection as moot because the evidence objected to was immaterial in deciding the Motion. *See Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x 380, n.1 (9th Cir. 2020) ("Because we would reach the same conclusions regardless of whether we considered such documents, the request for judicial notice on appeal is denied as moot."); *Habelt v. iRhythm Techs., Inc.*, No. 21-CV-00776-EMC, 2022 WL 971580, at *6 (N.D. Cal. Mar. 31, 2022) (denying requests for judicial notice as moot when it was unnecessary to refer to those documents), *appeal dismissed*, 83 F.4th 1162 (9th Cir. 2023).

//
//
//

### III. CONCLUSION

For the foregoing reasons, the Motion for Recusal (ECF 35) is **DENIED**. Defendants' Request for Judicial Notice, ECF 36, is DENIED as to Exhibits 1-6 and 9-11, and GRANTED as to Exhibits 7 and 8. Defendants' Objections to Plaintiff's Evidence Filed in Support of Plaintiff's Opposition to Motion for Recusal, ECF 44, are DENIED as moot.

**IT IS SO ORDERED.**

Dated: April 26, 2024

HON. MÓNICA RAMÍREZ ALMADANI
UNITED STATES DISTRICT JUDGE