1    JENNIFER L. HOLLIDAY SBN 261343

2        JLHolliday@Proton.me

3    7190 W. Sunset Blvd. #1430
     Los Angeles, CA 90046

4    (805)622-0225

5    **ATTORNEY FOR DEFENDANTS**

6

7

8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10

11    ROBERT HUNTER BIDEN,

             Case No. 2:23-CV-07593-HDV-KSx

12         Plaintiff,

13    v.                        **DEFENDANTS GARRETT ZIEGLER'S AND ICU, LLC'S (a.k.a. MARCO POLO'S) OPPOSITION TO EX PARTE APPLICATION AND MOTION TO VOLUNTARILY DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(A)(2) WITHOUT PREJUDICE**

14    GARRETT ZIEGLER, ICU, LLC

15    (d/b/a Marco Polo),

16         Defendants.

17

18

19                          **THE HON. HERNÁN D. VERA**

20

21                          **JURY TRIAL:  SEPT. 9, 2025**

22                          **FPTC: AUG. 19, 2025**

23

24

25

26

27

28

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Defendants Garrett Ziegler and ICU, LLC hereby respectfully oppose Plaintiff's Ex Parte Application and Motion to Voluntarily Dismiss Action Pursuant to Federal Rule of Civil Procedure 41(a)(2) on the following grounds: (1) There is no exigency warranting ex parte relief; and (2) Defendants will suffer actual legal prejudice if the motion is granted and the case is dismissed without prejudice.

In light of Mr. Biden's apparent financial distress and the prejudice Defendants would suffer if the case is dismissed without prejudice, Defendants offered to participate in this Court's *free* ADR Program, but Mr. Biden rejected that offer and has abruptly sought to dismiss the case without prejudice by way of an *ex parte* application for which there is no apparent exigency.

If the case is dismissed, Defendants should be awarded fees and costs and the dismissal should be with prejudice and with proper conditions in place.  Defendants note that on February 26, 2025, Mr. Biden agreed to appear at deposition next week.

Defendants' Opposition is supported by the attached Memorandum of Points & Authorities, the Declaration of Jennifer Holliday, the Declaration of Robert Tyler, the papers on file in this case, and any additional evidence that may be presented at any hearing on this application or motion.


DATE:  MARCH 6, 2025                              JENNIFER L. HOLLIDAY


                                                  /s/_____

                                                  JENNIFER L. HOLLIDAY

                                                  Attorney for Defendants

2

1

## **TABLE OF CONTENTS**

2  Table of Authorities

3  Memorandum of Points & Authorities

4  I.    Introduction

5  II.    Authority & Argument

6      A. **There is no exigency warranting *ex parte* relief.**

7          1. Plaintiff does not make a showing of irreparable prejudice

8          2. Plaintiff does not show that he is without fault in creating

9              a crisis that requires *ex parte* relief, or that the crisis

10              occurred as a result of excusable neglect.

11          3. The Palisades Fire did not create exigency

12

13      B. **Defendants will suffer actual prejudice if the motion is granted.**

14          1. Dismissal would prejudice Marco Polo's legal right to

15              summary judgment in its favor.

16          2. Dismissal would prejudice Defendants' rights to attorney

17              fees under Cal. Penal Code § 502.

18          3. Dismissal would prejudice Defendants' legal right to seek

19              contempt sanctions against Morris.

20          4. Dismissal would prejudice Defendants' legal right to seek

21              discovery sanctions  under Federal Rule of Civil Procedure

22              37 against Biden.

23      C. **If the Court dismisses the case, the Court should condition dismissal**

24          **on the payment of fees and additional terms.**

25

26  III.    Conclusion

27

28

3

1 | # TABLE OF AUTHORITIES

2 | **CASES**

3 | *Hamilton v. Firestone Tire Rubber Co.,*

4 |      679 F.2d 143, 145 (9th Cir. 1982)

5 | *Hay v. Marinkovich,*

6 |      329 Cal.Rptr.3d 558 (2025)

7 | *Hyde Drath v. Baker,*

8 |      24 F.3d 1162, 1169 (9th Cir. 1994)

9 | *Mission Power Engineering Co. v. Continental Cas. Co.,*

10 |      883 F. Supp. 488 (C.D. Cal. 1995)

11 | *Stevedoring Servs. of Am. v. Armilla Int'l B.V.,*

12 |      889 F.2d 919, 921 (9th Cir. 1989)

13 | *Westlands Water District v. U.S.,*

14 |      100 F.3d 94, 96 (9th Cir. 1996)

16 | **STATUTES**

17 | Cal. Pen. Code § 502

18 | **RULES**

19 | Fed. R. Civ. Proc. 37

20 | Fed. R. Civ. Proc. 41(a)(2)

21 | Fed. R. Civ. Proc. 56

22 | C.D. Rule 7-19

23 | **OTHER AUTHORITY**

24 | Standing Order, available at:

25 | https://www.cacd.uscourts.gov/sites/default/files/documents/HDV/AD/HDV%20-

26 | %20Civil%20Standing%20Order%20%288-22-23%29.pdf

1

2

3    **<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

4    **I.      <u>INTRODUCTION</u>**

5    Defendants oppose Plaintiff's Ex Parte Application because there is no exigency

6    warranting ex parte relief, and Defendants will suffer prejudice if the motion is

7    granted.  See *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp.

8    488 (C.D. Cal. 1995); *Westlands Water District v. U.S.*, 100 F.3d 94, 96 (9th Cir.

9    1996)

10   **II.      <u>AUTHORITY AND ARGUMENT</u>**

11   A. **<u>There is no exigency warranting *ex parte* relief.</u>**  See *Mission Power*

12   *Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995)

13   A party seeking ex parte relief must make a showing that "the moving party's

14   cause will be irreparably prejudiced if the underlying motion is heard according to

15   regular noticed motion procedures. Second, it must be established that the moving

16   party is without fault in creating the crisis that requires ex parte relief, or that the

17   crisis occurred as a result of excusable neglect." *Mission Power*, 883 F. Supp. at 492

18   "[E]x parte motions are inherently unfair, and they pose a threat to the

19   administration of justice. They debilitate the adversary system. Though the

20   adversary does have a chance to be heard, the parties' opportunities to prepare are

21   grossly unbalanced… This is due primarily to gamesmanship." *Mission Power,* 883

22   F. Supp. at 490 Further, the court explained that filing an ex parte application "is the

23   forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had

24   better be a fire." *Id.* at 492

25         1.  <u>Plaintiff does not make a showing of irreparable prejudice</u>

26   Plaintiff asserts:

27

28                                    5

1

"Exigent circumstances and good cause justify the *ex
parte* relief sought herein because the fact discovery cut-
off is April 1, 2025 and the Parties have not taken any
depositions in this matter and if this relief were sought
via a noticed motion on the statutory notice timeline, it
would be mid-April before a resolution is reached, which
would be after the non-expert discovery cut-off and the
Parties would incur significant fees dealing with
discovery issues that may not be necessary if this
Application is granted on an *ex parte* basis." [ECF 85, p.
4:6-12]

Mr. Biden fails to meet the standard set forth in *Mission Power* because he

does not establish that he will be *irreparably prejudiced* if the motion to dismiss per

Rule 41(a)(2) is heard according to regular noticed motion procedures. Mr. Biden

may be inconvenienced with "significant" fees that "may not be necessary," but that

does not rise to the level of "irreparable prejudice" required to justify relief.

Moreover, demonstrating the lack of irreparable prejudice, Mr. Biden's concerns

could ostensibly be addressed simply by modifying the scheduling order to reset the

discovery deadlines by thirty days so that his motion could be heard on regular

noticed motion before discovery cutoff – but more disturbingly, Mr. Biden admits

**he has not yet consulted an expert witness** with only one month left prior to the

deadline to produce an expert report in a highly technical case.

A reasonable investigation of the facts of a claim under the Computer Fraud

and Abuse Act – primarily a federal *criminal* statute with very serious penalties

including up to ten years in federal prison - would necessarily involve qualified

experts who would examine forensic data, internet protocol (IP) addresses and logs,

IMEI numbers, computer serial numbers, and more.  Instead, Mr. Biden admits he

has not even conducted a single deposition and strategically decided only a few

days ago to abandon the litigation when he realized he would have to spend money

on an expert witness. [ECF-85-1, p. 3:10-21]. The *first* thing – not the last thing –

6

Mr. Biden's team should have done was to consult a qualified expert to determine whether Mr. Biden's speculative and conclusory allegations and accusations had any evidentiary support.  They do not, and confronted with this reality, Mr. Biden and his counsel seek to avoid the consequences of bringing a meritless action.  Even in his ex parte application, Mr. Biden still continues to make the baseless allegation that Mr. Ziegler "hacked" his computer – but refuses to participate in discovery or even consult a qualified expert.  Defendants' expert witness is a highly qualified former federal agent who worked for the Department of Homeland Security for approximately twenty years. [Decl. of Holliday ¶ 5, Ex. B]

In his declaration supporting his application, Mr. Biden states, "Defendant Ziegler admitted to hacking my iCloud in multiple public statements…" [ECF 85-1:7-8] **but then** quotes Mr. Ziegler in a December 2022 interview as stating, "And we actually got into his iPhone *backup*…we cracked the encrypted code that was *stored on his laptop*." [ECF 85-13-14] (emph. added). It would appear that Mr. Biden's entire case is based solely upon this purported out-of-court statement, the context of which is unknown, and that his attorneys failed to conduct a reasonable investigation into the highly technical aspects of what these terms actually mean. It is clear Mr. Biden has been grossly misinformed as to the actionability of the statement he cites.  Mr. Biden has had years – since at least 2022 – to consult a qualified expert and determine whether and how Mr. Ziegler violated the CFAA, but he has not done so. [See ECF-85-1, p.3:20-22]

There is no apparent exigency supporting this application, Mr. Biden admits his financial problems are not sudden, his lack of diligence in discovery is admitted and documented, and there is no basis for *ex parte* relief.

       2. <u>Plaintiff does not show that he is without fault in creating a crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect.</u>

7

1    The Court in *Mission Power* explained, "As Judge Rymer warned, 'Ex parte

2    applications are not intended to save the day for parties who have failed to present

3    requests when they should have. . . .' *Mission Power* at 883 F. Supp. at 493 quoting

4    *In re Intermagnetics America, Inc.,* 101 B.R. 191 (C.D.Cal. 1989)

5    Here, Mr. Biden created the alleged exigency by engaging in dilatory tactics

6    to obstruct discovery and cites the timing and financial consequences of those tactics

7    as a basis for emergency relief.  There is no evidence that Mr. Biden has filed

8    bankruptcy, and Mr. Biden does not actually admit he is "millions" of dollars in debt

9    – only that the press *reports* that he is millions of dollars in debt. [ECF 85-1] It is

10   well documented that Mr. Biden has troubles with the Internal Revenue Service and

11   that he received a Presidential pardon, but these factors weigh in favor of finding

12   that Mr. Biden was at fault in creating the crisis that requires ex parte relief.  There

13   is no indication of excusable neglect.

14   3.   The Palisades Fire did not create exigency.

15   Mr. Biden details ongoing financial troubles exacerbated by the Palisades Fire

16   (which occurred two months ago, affording Mr. Biden ample opportunity to dismiss

17   this case earlier), but citing merely fees and expenses, Mr. Biden offers **no**

18   **allegations or evidence of any genuine *exigency*** entitling Mr. Biden to circumvent

19   Local Rule 7-1 et seq. and afford the Court and Defendants an opportunity to

20   meaningfully address his motion.  For this reason alone, the Court should deny the

21   ex parte application citing *Mission Power*.

22   Mr. Biden's ongoing strategic, dilatory tactics and discovery obstruction are

23   the only basis for ex parte relief, and it is outrageous to blame the Palisades Fire –

24   where an entire community of families lost everything – as a basis for seeking to

25   avoid his litigation responsibilities in a case Mr. Biden recklessly brought without

26   conducting a reasonable investigation.

27

28

1    This Court entered a Civil Trial Order on November 15, 2024, and

2    Defendants produced discovery responses only a few weeks later in December.

3    Defendants propounded discovery requests in January, the same month as the

4    Palisades Fire, and there was no objection that Mr. Biden needed an extension

5    based on complications from the Palisades Fire at that time.

6    Further, Mr. Biden admits he received discovery requests on January 31,

7    2025 and deposition notices on February 11, 2025, yet Mr. Biden blames the fact

8    that "the Parties have not taken any depositions in this matter" as the basis for ex

9    parte relief.  The Parties have not taken any depositions in this matter only because

10    Mr. Biden has actively obstructed Defendants' efforts to take depositions.  [See e.g.

11    ECF 83, "The Court held a telephonic conference with counsel for Plaintiff and

12    Defendants regarding discovery dispute concerning third party witness P. Kevin

13    Morris's ("Morris") failure to appear for a deposition on 2/26/2025, pursuant to

14    Defendant's Rule 45 Subpoena."] While Mr. Biden agreed to appear for deposition

15    the week of March 10, 2025, which was the only basis for Mr. Ziegler's agreement

16    to temporarily postpone Mr. Biden's properly noticed deposition on February 28,

17    2025, he attempts to use his discovery gamesmanship and obstruction as a basis for

18    ex parte relief.

19    In other words, the basis for ex parte relief is *caused by* Mr. Biden in

20    obstructing every effort Mr. Ziegler has made in this case to obtain evidence – and

21    the reason becomes immediately apparent upon even a cursory review of Defendant

22    ICU, LLC's Motion for Summary Judgment – there is simply no evidence of a

23    CFAA violation. [See Decl. of Holliday, Ex. A]. To attempt to cover up this case-

24    dispositive deficiency, Mr. Biden continues in his moving papers to make baseless,

25    unsupported accusations that Mr. Ziegler made public statements that he *admitted*

26    to "hacking his iCloud," demonstrating how Mr. Biden and his legal team have

27    failed to conduct a reasonable investigation into basic facts of this case and have no

28

9

1  meaningful understanding of the complex facts underlying their allegations –

2  because they never consulted a qualified witness or conducted a reasonable

3  investigation.

4      B.  **Defendants will suffer actual prejudice if the motion is granted.**  See

5          *Westlands Water District v. U.S.*, 100 F.3d 94, 96 (9th Cir. 1996)

6  "Federal Rule of Civil Procedure 41(a)(2) allows a plaintiff, pursuant to an order

7  of the court, and subject to any terms and conditions the court deems proper, to

8  dismiss an action without prejudice at any time." *Westlands Water District v. U.S.*,

9  100 F.3d 94, 96 (9th Cir. 1996) citing Fed.R.Civ.P. 41(a)(2); *Stevedoring Servs. of*

10 *Am. v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th Cir. 1989).  This does not mean,

11 however, that a district court must grant such a motion on an ex parte basis given the

12 factual determinations necessary to rule on such a motion.  See e.g. *Westlands Water*

13 *District v. U.S.*, 100 F.3d 94, 97 (9th Cir. 1996).

14 "When ruling on a motion to dismiss without prejudice, the district court must

15 determine whether the defendant will suffer some plain legal prejudice as a result of

16 the dismissal." *Hyde Drath v. Baker*, 24 F.3d 1162, 1169 (9th Cir. 1994); *Hamilton*

17 *v. Firestone Tire Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982).  To determine

18 whether there is legal prejudice sufficient to deny a voluntary dismissal without

19 prejudice, Courts in the Ninth Circuit "focus on the rights and defenses available to

20 a defendant in future litigation." *Westlands Water District v. U.S.*, 100 F.3d 94, 97

21 (9th Cir. 1996) The Ninth Circuit has held that "legal prejudice" means "prejudice to

22 some legal interest, some legal claim, [or] some legal argument." *Westlands Water*

23 *Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996).

24 In the Ninth Circuit, "a district court properly identified legal prejudice when the

25 dismissal of a party would have rendered the remaining parties unable to conduct

26 sufficient discovery to untangle complex fraud claims and adequately defend

27

28
                                    10

themselves against charges of fraud." *Westlands Water District v. U.S.*, 100 F.3d 94, 97 (9th Cir. 1996) citing See *Hyde Drath*, 24 F.3d at 1169.

Here, Mr. Biden claims,

> "Defendants will not suffer any legal prejudice by this voluntary dismissal without prejudice because they will not lose any rights or defenses and already took the opportunity to attack the pleadings on their motion to dismiss and anti-SLAPP motion, but lost. Since then, very limited discovery has occurred. (Declaration of Bryan M. Sullivan ("Sullivan Decl."), ¶¶ 2-4). In fact, Defendant did not propound any discovery until January 31, 2025 and it was not until February 11, 2025 that Defendants first served a deposition notice on Plaintiff and requested acceptance of service of a subpoena on Kevin Morris, Esq. (Sullivan Decl., ¶ 3). Indeed, Defendant just recently brought in new counsel in this action on February 21, 2025—less than two weeks ago. (Sullivan Decl., ¶ 4)." [ECF-85, p. 2:1-10]

Mr. Biden misses the Court's entire point in its ruling on the Motion to Dismiss where the Court *expressly* stated that Defendants' objections would benefit from "post-discovery briefing." [ECF 50, p. 2:9-10]. Plaintiff cannot survive post-discovery briefing, so he seeks to dismiss.

1. <u>Dismissal would prejudice Marco Polo's legal right to summary judgment in its favor.</u>

The Standing Order of this Court requires a party seeking judgment under Rule 56 to serve its opening brief on the responding party who has fourteen days to respond with his contributions in opposition, and then file the entire document along with joint appendices as one omnibus filing. See Standing Order, available at: https://www.cacd.uscourts.gov/sites/default/files/documents/HDV/AD/HDV%20-

11

1    %20Civil%20Standing%20Order%20%288-22-23%29.pdf    The Order commands

2    sixty-three days' notice.  In strict compliance with this Order, Defendant Marco

3    Polo served its Opening Brief on Plaintiff and await Plaintiff's contributions. [See

4    Decl. of Holliday, Ex. A]  In fact, new counsel for Marco Polo immediately raised

5    this issue in compliance with Local Rule 7-1 et seq. by sending a letter on February

6    21, 2025 demanding to meet and confer on the motion. [Decl. of Holliday ¶ 4]

7    Plaintiff's counsel stated he would respond later but never did.

8        Dismissal on Mr. Biden's terms prevents this Court from hearing Marco Polo's

9    legal arguments on the merits, and as this Court stated in its Order on the Motion to

10    Dismiss:

11    **"Defendants' objections raise factual questions that are best addressed in**

12    **post-discovery briefing." [ECF 50, p. 2:9-10].**

13        On that basis, the Court denied Defendants' motion *and* granted over $17,000 in

14    legal fees which should be returned to Defendants now that Plaintiff seeks a

15    dismissal that *prevents* Mr. Ziegler from addressing the factual questions this Court

16    found to be best addressed in post-discovery briefing.

17        The Court also found on the Motion to Dismiss:

18            "Further, Plaintiff admits 'Plaintiff did not sue
19            Defendants for creating a website, for publishing
             their 'Report,' or for any of the many false,
20            defamatory, and malicious statements they have
             made about Plaintiff over the past two-plus years.
21            Plaintiff carefully pleaded his claims to ensure that
             they are based solely on Defendants' 'accessing,
22            tampering with, manipulating, altering, copying
23            and damaging of Plaintiff's computer data,' and
             not on Defendants' free speech.'" [ECF 52, p.
24            4:20-24]
25

26        A crucial issue here, however, is that the Computer Fraud and Abuse Act

27    contemplates **protected** *computers*, not protected *data*.  Mr. Biden's team's willful

28

ignorance on this point, exacerbated by their failure to retain an expert witness to conduct a reasonable investigation into the basic facts of the lawsuit, is one of the reasons his case must fail.  Mr. Biden believes that because he sees photographs and e-mails that were once on one of his devices that Mr. Ziegler must have violated the Computer Fraud and Abuse Act. But Mr. Biden has never been able to connect the dots – because, as he now admits at this late hour, <u>he failed to conduct a reasonable investigation.</u>  Not only did Mr. Biden fail to retain an expert, but he has not even suggested deposing Mr. Ziegler about his "admissions" that he "hacked" Mr. Biden's computer until *last week* and then hastily sought to dismiss the case.

The dismissal Mr. Biden seeks prevents Mr. Ziegler from making the arguments raised in the Motion to Dismiss but in a post-discovery context where the Court can consider the evidence – not just Mr. Biden's conjecture, speculation, and baseless allegations.  Specifically, Mr. Biden's mistaken attempt to conflate a "protected computer" as specifically defined in the federal statute with "protected data" cannot be litigated with Mr. Ziegler's legal arguments if Mr. Biden is allowed to hastily retreat at this stage.

    2.  <u>Dismissal would prejudice Defendants' rights to attorney fees under Cal. Penal Code § 502.</u> See *Hay v. Marinkovich*, 329 Cal.Rptr.3d 558 (2025)

Plaintiffs asked this Court to exercise supplemental jurisdiction over state law claims including their claim under Penal Code section 502, and Defendants have a right to seek attorney fees as the prevailing party.  *Hay v. Marinkovich*, 329 Cal.Rptr.3d 558 (2025) Dismissal would impact this important legal right, and the Court should not preemptively determine that Mr. Biden cannot pay Mr. Ziegler's fees based solely on vague admissions that Mr. Biden is in debt.

    3.  <u>Dismissal would prejudice Defendants' legal right to seek contempt sanctions against Morris.</u>

Mr. Morris, a third-party witness in this case, did not appear at his deposition, did not move to quash the subpoena, and did not move for a protective order.  While Magistrate Judge Stevenson explained that the Scheduling Order and discovery cutoff date affected Defendants' ability to file a motion and brief the issue of whether Mr. Morris or Mr. Biden properly asserted attorney-client privilege, Defendants will lose their legal right to pursue this relief if the case is dismissed without prejudice.

If dismissal is contemplated, to mitigate the prejudice to Defendants, the Court should condition dismissal on Mr. Morris showing cause why he is not in contempt of the subpoena.

4. <u>Dismissal would prejudice Defendants' legal right to seek discovery sanctions under Federal Rule of Civil Procedure 37 against Biden.</u>

Mr. Biden has not complied with his discovery obligations, asserting boilerplate and baseless objections to basic discovery requests.  Although Mr. Biden still has time to supplement those responses, fact cutoff is scheduled for April 1, 2025.  As Mr. Biden has failed to produce evidence, he faces the consequences of that conduct: summary judgment under Rule 56 or a motion under Rule 37.

Dismissal prevents Defendants from being able to pursue these important legal rights.  If the Court dismisses this case under Rule 41, the Court should dismiss with prejudice as Defendants lose the ability to demonstrate to the Court the Plaintiff's complete failure of proof.

C. <u>If the Court dismisses the case, the Court should condition dismissal on the payment of fees and additional terms.</u>

Although Defendants have offered to attend a mediation or settlement conference to work out reasonable terms of dismissal, Plaintiff has pushed for immediate relief and an unqualified, unconditional dismissal, and this is fundamentally unfair.

14

Defendants have incurred *at least* $196,565.20 in attorney's fees and $1,070.20 in costs and expenses related to defending this case. [See Decl. of Tyler ¶ 4]. This does not include additional fees for Ms. Holliday and the deposition costs of approximately $10,000. [See Decl. of Holliday ¶ 6]

The Court in *Westlands* explained that financial harm, alone, is not sufficient legal prejudice to avoid dismissal altogether, **but it is a factor in the Court determining whether to condition dismissal on the payment of fees.** *Westlands Water District v. U.S.*, 100 F.3d 94, 97 (9th Cir. 1996) ("The defendants' interests can be protected by conditioning the dismissal without prejudice upon the payment of appropriate costs and attorney fees.") citing Fed. R. Civ. P. 41(a)(2); *Hamilton*, 679 F.2d at 146.

The dismissal should be with prejudice, and the Court should only condition dismissal on reasonable terms.

## **CONCLUSION**

There is no basis for ex parte relief, and it is fundamentally unfair on the Court and on Defendants to bring what is essentially an ambush: a case-dispositive motion without sufficient notice or opportunity to brief the issues and no legally cognizable exigency.  It is similarly unreasonable that Mr. Biden refused Defendants' offer to stipulate to a free mediation or settlement conference.

Further, it is unclear whether Mr. Biden, himself, is seeking to avoid his responsibilities, or whether his attorneys, who appear to have failed to conduct even the most rudimentary investigation into the basic claims in this case and also represent Mr. Morris, who will avoid a motion for contempt of a Rule 45 subpoena if this motion succeeds, have made unreasonable financial demands on this litigation that have contributed to Mr. Biden's financial status and his stated inability to continue.

Given the seriousness of these *criminal* accusations, repeated in the moving papers, the Court should deny the ex parte and allow Mr. Biden to proceed by noticed motion for hearing after having an opportunity to hear from the expert witness.  Alternatively, the Court should condition dismissal on Mr. Morris showing cause why he is not in contempt, dismissing the case with prejudice, and awarding reasonable fees and costs to Defendants.

Dated: March 4, 2025.                          Respectfully submitted,

_/s/_____

JENNIFER L. HOLLIDAY

Attorney for Defendants
Garrett Ziegler and ICU, LLC

16