1  JENNIFER L. HOLLIDAY SBN 261343
2  JLHolliday@Proton.me
   7190 W. Sunset Blvd. #1430
3  Los Angeles, CA 90046
4  (805)622-0225

5  **ATTORNEY FOR DEFENDANTS**

6

7

8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  ROBERT HUNTER BIDEN,                )   Case No. 2:23-CV-07593-HDV-KSx
                                        )
12         Plaintiff,                   )   **DECLARATION OF JENNIFER L.**
                                        )   **HOLLIDAY IN OPPOSITION TO**
13  v.                                  )   **PLAINTIFF'S EX PARTE**
                                        )   **APPLICATION AND MOTION TO**
14  GARRETT ZIEGLER, ICU, LLC           )   **DISMISS WITHOUT PREJUDICE**
                                        )   **PURSUANT TO F.R.C.P. 41(a)(2)**
15  (d/b/a Marco Polo),                 )
                                        )
16         Defendants.                  )   **THE HON. HERNÁN D. VERA**
                                        )
17                                      )   **JURY TRIAL:  SEPT. 9, 2025**
                                        )
18                                      )
                                        )   **FPTC: AUG. 19, 2025**
19                                      )
                                        )
20                                      )
                                        )
21                                      )
                                        )
22                                      )
                                        )
23                                      )
                                        )
24                                      )
                                        )
25                                      )
                                        )
26  _____    )

27

28

                                    1

1

**DECLARATION OF JENNIFER LINSLEY HOLLIDAY**

2

1.  I am counsel of record for Defendants ICU, LLC and Garrett Ziegler in this

3

action.  I submit this declaration in opposition to Plaintiff's *Ex Parte*

4

Application to Voluntarily Dismiss Action Pursuant to Fed. Rule Civ. Proc.

5

41(A)(2).  If called as a witness, I could and would testify truthfully to the

6

matters contained herein.

7

2.  I first appeared in this action on February 19, 2025 pursuant to Defendants'

8

request for a substitution of counsel [ECF 75], and this Court granted the

9

request on February 20, 2025. [ECF 76]  I am informed and believe that prior

10

to my involvement, Defendants' counsel served a deposition notice on Mr.

11

Biden for February 28, 2025, and served a subpoena under Rule 45 on Mr. P.

12

Kevin Morris for February 26, 2025.

13

3.  On February 21, 2025, I met and conferred with Mr. Biden's counsel on

14

outstanding discovery matters including Mr. Biden's deposition set for

15

February 28, 2025.  Mr. Lowell communicated that Mr. Biden would be in

16

trial in an unrelated matter in this Court (*Biden v. Byrne*, C.D. Cal. Case no.

17

2:23-cv-09430) during the first two weeks of March and therefore could not

18

appear for his deposition scheduled for February 28, 2025. Mr. Lowell

19

explained Mr. Biden would be on the East Coast preparing for trial (despite

20

the fact that the trial was to take place in Los Angeles).  Mr. Lowell also

21

requested an extension of the discovery deadlines and requested to postpone

22

Mr. Biden's deposition to mid-March following the trial.  I asked Mr. Lowell

23

to please send a proposed schedule, but I never received one.  Instead, at a

24

hearing on February 24, 2024 on the unrelated matter, Mr. Biden's trial was

25

taken off calendar, obviating the conflict with Mr. Biden's deposition as

26

originally noticed.  Mr. Biden's team did not immediately contact me, and

27

instead, when I inquired about the vacated trial on February 26, 2025,

28

2

explained that Mr. Biden had "other" conflicts that would prevent him from appearing on February 28, 2025 as scheduled.  On Mr. Biden's counsel's representation that Mr. Biden would appear the week of March 10, 2025, I agreed to reset the deposition and contacted our vendors to reschedule.

4.  On February 21, 2025, I sent a letter pursuant to Local Rule 7-3 requesting to meet and confer with Mr. Biden's counsel on Defendants' contemplated Motion for Summary Judgment.  Mr. Biden's counsel did not respond and set a time to meet and confer within the seven-day deadline.  I served a copy of the Opening Brief on Mr. Biden on March 4, 2025.  A true and correct copy of our Opening Brief and Joint Statement of Uncontested Facts and Conclusions of Law is attached as **Exhibit A** hereto, and I will separately file a copy of Defendants' Proposed Joint Appendix which has not yet been edited by the Parties to include only the relevant portions of the record to comply with the Court's Standing Order. The Rule 7-3 letter precedes the Opening Brief.

5.  Defendants have retained an expert witness, Craig Bowling.  A copy of Mr. Bowling's *curriculum vitae* is attached as **Exhibit B**.

6.  On February 21, only five days prior to the deposition date, Mr. Biden's attorneys first communicated they intended to move to quash the Rule 45 subpoena or seek a protective order to prevent Mr. Morris's deposition from going forward. Mr. Biden's attorneys, however, did not take either of these actions.  Defendant Mr. Ziegler traveled from his home in Illinois to Los Angeles to attend the properly noticed depositions, incurring substantial burden and expense.

7.  Mr. Morris' deposition was set for 9:00 AM on February 26, 2025.  Mr. Morris, who shares the same counsel as Mr. Biden, did not appear at his deposition, objecting through counsel to the subpoena on the basis of "attorney-client privilege" and sending a letter at 9:10 AM stating that Mr.

3

1    Morris was out of the country.  Mr. Morris claims to be Mr. Biden's "general

2    counsel" and also objected on the basis that his testimony may impact his

3    other pending lawsuit against Mr. Ziegler.  I am counsel of record for Mr.

4    Ziegler in that matter in the Court of Appeal of the State of California, Second

5    Appellate District, Division P (*Morris v. Ziegler*, Court of Appeal No.

6    B333812.

7    8.  In that case, Mr. Morris openly admits to having made the following threats

8    against Mr. Ziegler via text message: **"Watch your eyes… Because the**

9    **latest thing in prisons is eye socket fucking…We have 8 SDNY**

10   **prosecutors on our team…All this took was a phone call…8 lawyers with**

11   **10+ years as AUSA's in SDNY… You're going to prison and we're going**

12   **to get all of the money your family has and you will work for us for the**

13   **rest of your life… We will follow you to the ends of the earth."**  Mr.

14   Morris includes a copy of these text messages as Exhibit A to the Complaint

15   in the action.  Mr. Morris is represented by the same counsel as Mr. Biden in

16   this action: Bryan Sullivan and Zachary Hansen.  A copy of our Opening

17   Brief is attached as **Exhibit C**.

18   9.  Mr. Morris's admitted threats of legal action have a direct bearing on this

19   litigation.

20   10. Mr. Ziegler also arranged for the depositions, scheduling a certified court

21   reporter and videographer, and renting a conference room.  The costs and

22   expenses for the missed depositions, including the conference room rental, the

23   Certified Court Reporter and the Videographer, and Mr. Ziegler's expenses

24   are estimated to exceed $10,000.

25   11. As of now, Mr. Ziegler and ICU, LLC have the legal right to bring a motion

26   against Mr. Morris for contempt of the Rule 45 Subpoena.  Defendants

27   requested to meet and confer with Chief Magistrate Judge Karen L. Stevenson

28

4

according to her pre-filing requirements, and the meeting took place on March 3, 2025. Magistrate Judge Stevenson explained that the issue of attorney-client privilege would require full briefing, and that in light of the discovery cutoff deadline of April 1, 2025, Defendants would have to seek leave of Court to modify the Scheduling Order to properly notice a motion for contempt.

I swear under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct. Executed at Los Angeles, California.

Dated: March 6, 2025

___/s/_____

JENNIFER L. HOLLIDAY
ATTORNEY FOR DEFENDANTS
Garrett Ziegler and ICU, LLC

5

# EXHIBIT A

# JENNIFER L. HOLLIDAY

LAW OFFICE OF JENNIFER L. HOLLIDAY

7190 W. SUNSET BLVD. #1430 LOS ANGELES, CALIFORNIA 90046

**VIA EMAIL ONLY**

Abbe Lowell
Paul Salvaty
Winston & Strawn LLP
        abbelowellpublicoutreach@winston.com
        psalvaty@winston.com

Bryan M. Sullivan
Zachary Hansen
Early Sullivan Wright Gizer & McRae LLP
        bsullivan@earlysullivan.com
        zhansen@earlysullivan.com

**Re: Hunter Biden v. Garrett Ziegler, et al.**
Case No. **2:23-cv-07593-HDV-KS**
United States District Court, Central District of California

**NOTICE OF REQUEST TO MEET AND CONFER PURSUANT TO LOCAL RULE 7-3**

Dear Mr. Lowell,

Pursuant to Local Rule 7-3 of the United States District Court for the Central District of California, Defendants Garrett Ziegler and ICU, LLC request to meet and confer regarding their intent to file Motions for Summary Judgment in the above-referenced case. We believe that a conference on this matter may facilitate a resolution of the issues before moving forward with formal motion practice and appreciate your anticipated cooperation. As we discussed earlier today in our telephone conference, we have concerns about the discovery cutoff date, the motion cutoff date, and the lack of progress in this case. Although Mr. Biden filed this case in 2023, we are perplexed as to why no efforts have been made by Plaintiff to set depositions for the witnesses Mr. Biden disclosed in the Rule 26 Report. Given Plaintiff's lack of diligence, we do not see any good faith basis to modify the Scheduling Order or extend deadlines. This case continues to cause an undue burden on my clients who have a right to resolve the matter expeditiously.

## Grounds for Summary Judgment

Defendants intend to seek summary judgment on all claims asserted in Plaintiff's Complaint based on the following grounds:

1.      No Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030) – There
is no triable issue of material fact, and Defendants are entitled to judgment as a matter of
law because it is not subject to reasonable dispute that Defendants did not access any
protected computer, lack authorization, or cause damages exceeding the statutory
threshold.

2.      No Violation of the California Computer Data Access and Fraud Act (Cal.
Penal Code § 502) – Plaintiff cannot demonstrate that Defendants engaged in unauthorized
access of a computer or system, nor has Plaintiff substantiated damages arising from
Defendants' conduct.

3.      No Violation of California's Unfair Competition Law (Bus. & Prof. Code §
17200 et seq.) – Plaintiff's claim lacks a cognizable economic injury.

4.      No Liability for ICU, LLC as a Nonprofit Entity – ICU, LLC is a nonprofit
research organization, and there is no evidence that it engaged in any unlawful conduct,
and there is no evidence to support a finding of vicarious liability.

5.      No Triable Issues of Material Fact – Plaintiff's allegations rely on speculation
rather than admissible evidence. Defendants did not access a protected computer, nor did
they act with fraudulent intent or exceed any authorized access as a matter of law.

<u>Request for Conference</u>

Under Local Rule 7-3, the parties must confer at least seven (7) days before the filing of a
motion to discuss the grounds for the motion and determine whether a resolution can be
reached without court intervention. Accordingly, we propose meeting via Zoom or
telephone conference on Thursday, February 27, 2025 at 3:00 PM PST or at your earliest
convenience, but in no event later than February 28, 2025.

Please confirm your availability or suggest an alternative time. If we are unable to reach an
agreement during the conference, Defendants intend to proceed with filing the Motion for
Summary Judgment on or before the deadline set forth in the Scheduling Order as
discussed.

We look forward to your response and a productive discussion.

Sincerely,

/s/
Jennifer L. Holliday
Attorney for Defendants
Garrett Ziegler & ICU, LLC

1   JENNIFER L. HOLLIDAY SBN 261343
2        JLHolliday@Proton.me
    7190 W. Sunset Blvd. #1430
3   Los Angeles, CA 90046
4   (805)622-0225

5   **ATTORNEY FOR DEFENDANTS**

6

7

8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  ROBERT HUNTER BIDEN,                    )   Case No. 2:23-CV-07593-HDV-KSx
                                            )
12       Plaintiff,                         )   **DEFENDANT ICU, LLC'S (a.k.a.**
                                            )   **MARCO POLO'S) NOTICE OF**
13  v.                                      )   **MOTION AND MOTION FOR**
                                            )   **SUMMARY JUDGMENT [OPENING**
14  GARRETT ZIEGLER, ICU, LLC               )   **BRIEF]; F.R.C.P. 56; L.R. 56-1 ET**
                                            )   **SEQ; EVIDENTIARY APPENDIX**
15  (d/b/a Marco Polo),                     )   **AND JOINT APPENDIX OF**
                                            )   **UNDISPUTED FACTS FILED**
16       Defendants.                        )   **CONCURRENTLY**
                                            )
17                                          )
                                            )
18                                          )
                                            )
19                                          )   **DATE:          MAY 15, 2025**
                                            )   **TIME:          10:00AM**
20                                          )   **COURTROOM:  5B**
                                            )
21                                          )
                                            )
22                                          )   **THE HON. HERNÁN D. VERA**
                                            )
23                                          )   **JURY TRIAL:  SEPT. 9, 2025**
                                            )
24                                          )
                                            )   **FPTC: AUG. 19, 2025**
25                                          )
                                            )
26  _____        )

27

28
                                   1

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on MAY 15, 2025 at 10:00 A.M., or as soon thereafter as this matter may be heard, before the Honorable Hernán D. Vera in Courtroom 5B of the United States District Court for the Central District of California, located at First Street Courthouse, 350 W. 1st Street, 5th Floor, Los Angeles, California 90012, Defendant ICU, LLC, d/b/a MarcoPolo ("MARCO POLO") will, and hereby does move the Court to enter summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure, Local Rule 56-1 et seq., and the Civil Standing Order of this Court.

This Motion seeks summary judgment in favor of MARCO POLO of Plaintiff's claims under (1) the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030; and (2) the California Computer Data Access and Fraud Act (Cal. Penal Code § 502) ; and (3) California Business and Professions Code § 17200. This Motion is based on the following grounds:

(1) **No Basis for and Lack of Evidence of a CFAA Claim.**

(2) **No Basis for and Lack of Evidence of a UCL Claim.**

(3) **No Basis for and Lack of Evidence of a State Law Data Privacy Violation.**

(4) **Alter Ego Allegations and other Vicarious Liability Theories Are Meritless.**

This Motion is based on this Notice and Motion as well as the concurrently filed Joint Memorandum of Points and Authorities ("Joint Brief"), the Joint Appendix of Uncontroverted Facts and Genuine Disputes / Conclusions of Law and Relevant Facts, the Joint Evidentiary Appendix, the Proposed Judgment, any other documents submitted in support of this Motion, the documents on record in this action, and any further evidence or argument that may be presented at the hearing.

2

1        Pursuant to Local Rule 7-3 and this Court's Standing Order, Defendant sent a

2    letter formally requesting to meet and confer about this Motion with Plaintiff on

3    February 21, 2025.  To date, despite initially indicating he would respond, Plaintiff's

4    counsel has not set a time to meet and confer. Defendant has therefore been unable

5    to determine whether Plaintiff opposes this Motion.

6        Because this Court's Standing Order requires the parties to submit joint

7    documents, Defendant anticipates that the parties will meet and confer throughout

8    the process and in advance of filing.

9        Dated:  March 4, 2025                    Respectfully Submitted,

10                                                      __/s/_____

11                                                      JENNIFER L. HOLLIDAY

12                                                      ATTORNEY FOR DEFENDANTS

3

1
2

## TABLE OF CONTENTS

3

**MOVING PARTY'S OPENING BRIEF**

4

      **NOTICE OF MOTION AND MOTION**..................................2

5

      **MEMORANDUM OF POINTS AND AUTHORITIES**...............tbd

      **TABLE OF AUTHORITIES**...............................................tbd

6

      **I.**       **INTRODUCTION**..........................................................tbd

7

      **II.**     **STATEMENT OF FACTS**.............................................tbd

      **III.**    **AUTHORITY**................................................................tbd

8

      **IV.**    **ARGUMENT**................................................................tbd

9

            a.  No Evidence Supporting a CFAA Claim.

10

            b.  No Evidence Supporting a UCL Claim

11

            c.  No Evidence Supporting a Claim under the CDAFA

12

            d.  No Evidence Supporting Vicarious Liability Theories

13

            e.  Alternatively, the Court Should Decline to Exercise Jurisdiction over State Law Claims

      **V.**      **CONCLUSION**.......................................................... tbd

14
15

**OPPOSING PARTY'S OPPOSITION BRIEF**..................................tbd

16

    **[TO BE INSERTED]**

17

**MOVING PARTY'S REPLY BRIEF**...............................................tbd

18

    **[TO BE INSERTED]**

19

**JOINT STATEMENT OF DISPUTED FACTS**...............................tbd

20

**JOINT EVIDENTIARY APPENDIX**.............................................tbd

**PROPOSED JUDGMENT**..............................................................tbd

21
22
23
24
25
26
27
28

4

1

2

## MOVING PARTY'S MEMORANDUM OF POINTS AND AUTHORITIES

3

## TABLE OF AUTHORITIES

4

## CASES

5

6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 250 (1986)……………………………………………….

7

8

*Birdsong v. Apple, Inc.*,
    590 F.3d 955, 958-60 (9th Cir. 2009)…………………………………….

9

10

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 322 (1986)……………………………………………..

11

12

*Daewoo Elecs. Am. Inc. v. Opta Corp.*,
    875 F.3d 1241, 1250 (9th Cir. 2017)…………………………………….

13

14

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055, 1063 (9th Cir. 2012)…………………………………….

15

16

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127, 1137 (9th Cir. 2009)…………………………………….

17

18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574, 587 (1986)……………………………………………..

19

20

*NetApp, Inc. v. Nimble Storage, Inc.,* No. 5:13-CV-05058-LHK,
    2015 WL 400251, at 14 (N.D. Cal. Jan. 29, 2015)………………………

21

22

*P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC,*
    428 F.3d 504, 508 (3d Cir. 2005)…………………………………….

23

24

*Ryanair DAC v. Booking.com BV,*
    1:20-cv-01191-WCB (D. Del. Jan. 22, 2025)…………………………..

25

26

*Shamrock Foods Co. v. Gast*,
    535 F. Supp. 2d 962, 964 (D. Ariz. 2008)…………………………………

27

28

5

*Theofel v. Farey-Jones*,
    359 F.3d 1066, 1078 (9th Cir. 2004)……………………………………

*United States v. Christensen*,
    828 F.3d 763, 789 (9th Cir. 2016)…………………………………..

*United States v. Nosal*,
    844 F.3d 1024, 1037 (9th Cir. 2016)………………………………….

*Van Buren v. United States,*
    141 S. Ct. 1648, 1660 (2021).......................................................

*Williams v. Yamaha Motor Co.,*
    851 F.3d 1015, 1028-29 (9th Cir. 2017)………………………………


**STATUTES**

18 U.S. Code § 1030 (The Computer Fraud and Abuse Act) ………………
18 U.S.C. § 1030(a)(1)-(7)……………………………………………
18 U.S.C. § 1030(a)(2)………………………………………………….
18 U.S.C. § 1030(a)(5)(B)(i)…………………………………………..
18 U.S. Code § 1030(c)(4)(A)(i)(I))………………………………………
18 U.S.C. § 1030(g)……………………………………………………..
Cal. Bus. & Prof. Code § 17200………………………………………..
Cal. Penal Code § 502 (The California Computer Data Access and Fraud Act) …

**RULES**

Fed. R. Civ. P. 56

C.D. Cal. R. 56-3.

**OTHER AUTHORITY**

CIVIL STANDING ORDER

6

1

2

## I.    INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Rule 56-1 et seq., and the Civil Standing Order of this Court, Defendant ICU, LLC ("Marco Polo") moves for summary judgment in its favor on Plaintiff's claims under The Computer Fraud and Abuse Act (18 U.S.C. § 1030); The California Computer Data Access and Fraud Act (Cal. Penal Code § 502); The California Business & Professions Code § 17200 on the grounds that there is no evidence in the record that Marco Polo, a corporate entity, accessed a protected computer system in violation of the CFAA, violated the California Computer Data Access and Fraud Act, or engaged in any unfair, unlawful or fraudulent business practices.  Furthermore, there is no evidence, and Plaintiff has produced no evidence, that MARCO POLO, a limited liability company, is directly or vicariously liable for any of the conduct alleged.   Defendant is therefore entitled to summary judgment. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**Plaintiff simply has no evidence to support essential elements of his claims in this case.** Since there is no evidence in the record to support the essential elements of Plaintiff's claims, this Court should grant summary judgment in favor of MARCO POLO.

## II.    STATEMENT OF FACTS
### a.  Parties

Defendant MARCO POLO is an adequately capitalized limited liability company, has a board of directors, and maintains all corporate formalities. [SS-1, 2, 3] MARCO POLO is organized as a 501(c)(3) non-profit. [SS-9]  Plaintiff included claims against unnamed "Doe" defendants, but Plaintiff did not amend his

7

1    Complaint to identify such Doe defendants[1] before the cutoff date as set forth in the
2    Scheduling Order.

3         There is no evidence in the record that Plaintiff owned any computer at issue in
4    this case, but Plaintiff left his computer in the custody of a computer repair shop in
5    Delaware subject to a bailment contract. [SS-30]  Claiming that it is "not relevant to
6    the subject matter of this action," Plaintiff objected to a discovery request to state
7    the physical location and/or uniform resource locator ("URL") address of each and
8    every computer which Plaintiff alleged the Defendants "hacked" in violation of the
9    CFAA. [SS-36].  On the same basis, Plaintiff refused to disclose any items of fact or
10   information in his possession which he claims shows or tends to show any violation
11   of the CFAA occurred. [SS-37]

12        By failing to timely retrieve his computer, Plaintiff forfeited any ownership
13   claim to his computer and any data residing on that computer pursuant to the terms
14   of the bailment contract. [SS-31] The Federal Bureau of Investigation took
15   possession of the abandoned computer in 2019 pursuant to a valid warrant. [SS-32]
16   Multiple copies of the abandoned computer were distributed to various media
17   outlets and /or individuals associated with media outlets. [SS-33]. The record is
18   silent as to whether Plaintiff ever publicly acknowledged that he owned the
19   computer.

20        There is no evidence in the record that Plaintiff owned the hard drive allegedly
21   accessed in this case – a copy of the laptop purportedly belonging to Plaintiff and
22   abandoned in Delaware. [SS-12] In 2014, Plaintiff joined the board of a Ukrainian
23   energy company in a move Plaintiff describes as an unmistakable "f*ck you" to
24   Vladimir Putin [SS-28], and U.S. intelligence officials initially dismissed Plaintiff's

25

26   _____

27   [1] The Doe defendants should be dismissed pursuant to the Court's Standing Order and
     Federal Rule of Civil Procedure 4m

28                                          8

1   computer at issue in this case as Russian disinformation, raising legitimate reasons

2   why investigative journalists would seek to follow up on the story. [SS-29]

3   **b. Background**

4   In an unverified complaint signed by an attorney who abandoned the litigation

5   without seeking leave of Court to withdraw after Plaintiff received a presidential

6   pardon, Plaintiff alleged that Defendant Marco Polo "intentionally accessed a

7   computer without authorization or exceeding authorized access, thereby obtaining

8   information contained in financial records of one or more financial institutions or

9   one or more card issuers as defined in section 1602(n) of title 15 or contained in one

10  or more files of a consumer reporting agency on a consumer, as such terms are

11  defined in the Fair Credit Reporting Act (15 U.S.C. 1681 et seq.)" [SS-53]

12  Plaintiff further alleged that Marco Polo intentionally accessed a computer

13  without authorization or exceeding authorized access, and thereby obtained

14  information from any protected computer which, pursuant to the CFAA, is a

15  computer used in or affecting interstate commerce or communication." [SS-52]

16  **c. Plaintiff Failed to Produce Evidentiary Support**

17  Plaintiff has no evidence that MARCO POLO accessed a computer. [SS-4]

18  Plaintiff has no evidence that MARCO POLO engaged in any unfair or fraudulent

19  business practice. [SS-5] In fact, Plaintiff has not even alleged any specific facts that

20  MARCO POLO engaged in any unlawful, unfair, or fraudulent business practice.

21  [SS-6] Plaintiff has not alleged any specific facts that MARCO POLO engaged in

22  any conduct involving data. [SS-7] Plaintiff has not alleged any specific facts

23  regarding Plaintiff's ownership of any specific data. [SS-8] Plaintiff has no evidence

24  that MARCO POLO has profited off of the use of any data. [SS-10] Plaintiff has not

25  alleged any specific facts that he owned any of the computers at issue in this case.

26  [SS-11] Plaintiff has no evidence that any potential violation of the CFAA by

27  MARCO POLO resulted in damages of $5,000 or greater in a one-year period. [SS-

28

9

13] Plaintiff has no evidence that MARCO POLO intentionally directed, encouraged or induced anyone to access a computer or data without authorization or exceeding authorization. [SS-14] Plaintiff has no evidence that MARCO POLO recklessly caused Damage to a protected computer. [SS-15]

Plaintiff has no evidence that MARCO POLO caused both Damage to a protected computer and Loss by way of access to a hard drive containing any of Plaintiff's data. [SS-16]  Plaintiff has no evidence that MARCO POLO knowingly and with an intent to defraud directed, encouraged, or induced a third party to access a Protected Computer without authorization and by means of such conduct furthered intended fraud and obtained something of value to MARCO POLO. [SS-17] Plaintiff has no evidence that the value of the use of a protected computer exceeded $5,000 in a one year period. [SS-18]

Plaintiff has no evidence that any of MARCO POLO's conduct resulted in "any impairment to the integrity or availability of data, a program, a system, or information." [SS-19] Plaintiff has no evidence that MARCO POLO's conduct resulted in any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service. [SS-20]

Plaintiff has no evidence that MARCO POLO intended to defraud Plaintiff. [SS-21] Plaintiff has no evidence that MARCO POLO "intentionally accessed a computer without authorization or exceeded authorized access, thereby obtaining information contained in financial records of one or more financial institutions or one or more card issuers as defined in section 1602(n) of title 15 or contained in one or more files of a consumer reporting agency on a consumer, as such terms are defined in the Fair Credit Reporting Act (15 U.S.C. 1681 et seq.)" [SS-22]

10

Plaintiff has no evidence that MARCO POLO violated any law or engaged in unfair business practices. [SS-23] Plaintiff has no evidence of consumer harm or market impact related to any purported unauthorized or wrongful access of his computer or data. [SS-24] Plaintiff has no evidence that MARCO POLO ever accessed Plaintiff's data. [SS-25]. Plaintiff has no evidence that he owns, or ever owned, any of the data at issue in this case. [SS-26] Plaintiff has no evidence that he owns, or ever owned, any of the computers at issue in this case. [SS-27]

As required under the Court's Standing Order, Defendant has submitted a thorough Appendix of Uncontested Facts and Conclusions of Law further supplementing this brief.

## III.    AUTHORITY

### a.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Rule 56(c) mandates the entry of summary judgment, after sufficient time for discovery and upon motion, against a party who fails to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial. See *Celotex*, 477 U.S. at 322-323.

On an issue as to which the nonmoving party bears the burden of proof at trial, the party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). If the moving party carries its burden, the nonmovant must respond by presenting

11

1    specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus.*
2    *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

3       "Once the moving party with the burden of proof makes a showing that there is
4    no genuine factual issue, that party is entitled to summary judgment "unless the non-
5    moving party comes forward with probative evidence that would demonstrate the
6    existence of a triable issue of fact."  citing *Celotex*, 477 U.S. at 322–23; *Anderson v.*
7    *Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

8       A nonmovant's burden at summary judgment is to "identif[y] the evidence
9    establishing a genuine issue of material fact in its opposition to summary
10   judgment." *LVRC Holdings LLCv. Brekka,* 581 F.3d 1127, 1137 (9th Cir. 2009); *see*
11   *also* Fed. R. Civ. P. 56; C.D. Cal. R. 56-3.

12      "[A] party's allegations…must describe more than merely `conjectural and
13   hypothetical' injuries." *Williams v. Yamaha Motor Co.,* 851 F.3d 1015, 1028-29 (9th
14   Cir. 2017)  Moreover, Plaintiff must produce evidence to demonstrate actual injury
15   to maintain cognizable claims under California's unfair competition
16   laws. *See Birdsong v. Apple, Inc.,* 590 F.3d 955, 958-60 (9th Cir. 2009) (requiring
17   proof of injury and causation under California unfair competition laws).

18      The Court in *Brekka* granted summary judgment in favor of the defendants on
19   the plaintiff's claims under the CFAA because, *inter alia,* LVRC failed to establish
20   the existence of a genuine issue of material fact. See *Brekka*, 581 F.3d at 1129.

21             **b.  LEGAL STANDARDS FOR PLAINTIFF'S CLAIMS**
22               i.  COMPUTER FRAUD AND ABUSE ACT

23      "The CFAA was enacted in 1984 to enhance the government's ability to
24   prosecute computer crimes." *Brekka*, 581 F.3d at 1130-31 "The act was originally
25   designed to target hackers who accessed computers to steal information or to disrupt
26   or destroy computer functionality, as well as criminals who possessed the capacity
27   to 'access and control high technology processes vital to our everyday lives. . . .' *Id.*

28

<div align="center">12</div>

quoting H.R. Rep. 98-894, 1984 U.S.C.C.A.N. 3689, 3694 (July 24, 1984). "The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." *Id.* citing 18 U.S.C. § 1030(a)(1)-(7).

The Computer Fraud and Abuse Act also includes a *limited* private right of action. *Id.* (emph. added) citing 18 U.S.C. § 1030(g):

> "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (I), (ii), (iii), (iv), or (v) of subsection (a)(5)(B)." 18 U.S.C. § 1030(g).

As the Court in *Brekka* explained, "[A] private plaintiff must prove that the defendant violated one of the provisions of § 1030(a)(1)-(7), and that the violation involved one of the factors listed in § 1030(a)(5)(B)." *Id.*

In this case, Plaintiff, like LVRC, claims that the conduct at issue involved the factor described in subsection (a)(5)(B)(i), which proscribes conduct that causes "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." *Id.* quoting 18 U.S.C. § 1030(a)(5)(B)(i).  As in *Brekka*, plaintiff also brought a claim under Section 1030(a)(2). [See Compl. ¶ 34] The Court in *Brekka* explained, "to bring an action successfully under 18 U.S.C. § 1030(g) [the statute providing a private right of action] based on a violation of 18 U.S.C. § 1030(a)(2), [plaintiff] must show that [a defendant] (1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that he (3) thereby obtained information (4) from any protected computer (if the conduct involved an

13

1    interstate or foreign communication), and that (5) there was loss to one or more

2    persons during any one-year period aggregating at least $5,000 in value." *Id.*

3        Plaintiff also brought an action under Section 1030(a)(4). [See Compl. ¶ 36]

4    To bring an action successfully under Section 1030(g) based on a violation of

5    Section 1030(a)(4), [plaintiff] must show that [defendant]: "(1) accessed a

6    'protected computer,' (2) without authorization or exceeding such authorization that

7    was granted, (3) 'knowingly' and with 'intent to defraud,' and thereby (4)

8    'further[ed] the intended fraud and obtain[ed] anything of value,' causing (5) a loss

9    to one or more persons during any one-year period aggregating at least $5,000 in

10   value." *Brekka*, 581 F.3d at 1132 citing 18 U.S.C. § 1030(a); citing *P.C. Yonkers,*

11   *Inc. v. Celebrations the Party and Seasonal Superstore, LLC,* 428 F.3d 504, 508

12   (3d. Cir. 2005); *Theofel v. Farey-Jones,* 359 F.3d 1066, 1078 (9th Cir. 2004).

13   **IV.   ARGUMENT**

14       The Ninth Circuit's analysis of *Brekka* is instructive as the case is

15   procedurally indistinguishable from the case at bar. See *LVRC Holdings LLC v.*

16   *Brekka,* 581 F.3d 1127 (9th Cir. 2009)  In that case, after dismissing the claims under

17   the CFAA citing the lack of evidentiary support, the Court declined to exercise

18   subject matter jurisdiction over the state law claims. *Id.* at 1137. Given the potential

19   complexities under state law if this case were to go forward, the Court should

20   dismiss the remaining claims for lack of subject matter jurisdiction after entering

21   judgment for Defendant on the CFAA claim.

22       As set forth in detail in the concurrently filed Joint Appendix of Uncontested

23   Facts, Plaintiff cannot meet his evidentiary burden on essential elements of his

24   claims.

25           **a.  No Evidence Supporting a CFAA Claim.**

26       Plaintiff has not – and more critically *cannot*, consistent with his obligations

27   under Rule 11 and the duty of candor, meet his burden of proof in this case to

28                                     14

establish a violation of the CFAA.  Plaintiff has no apparent evidence that MARCO POLO (or anyone named in this case) intentionally accessed Plaintiff's computer without authorization (or exceeded authorized access) and that it obtained information from a protected computer resulting in a loss aggregating at least $5,000 in the past year.  Plaintiff simply has produced no evidence supporting any of his conclusory, speculative allegations in the unverified Complaint, and more importantly, Plaintiff will not be able to produce any such evidence because none exists.  Having had ample opportunity over the past two years – and an obligation under the Discovery Rules – to produce evidence to support his claims, Plaintiff has failed to produce any evidence to support the claims in his unverified complaint.

Summary Judgment should be entered in favor of Defendant MARCO POLO.

### b.  No Evidence Supporting a Claim under the CDAFA

Plaintiff alleges violations of California Computer Data Access and Fraud Act (Cal. Pen. Code § 502) but fails to produce any evidence that MARCO POLO acquired, used, or disclosed Plaintiff's data without authorization or that MARCO POLO misused any protected consumer data.

### c.  No Evidence Supporting a UCL Claim

To prevail under California Business & Professions Code § 17200, Plaintiff must prove MARCO POLO engaged in unlawful business conduct, unfair business conduct harming competitors or consumers, or fraudulent business conduct – misleading or deceiving the public.  Bus. & Prof. Code § 17200  Here, there is no evidence that MARCO POLO engaged in any unlawful business conduct, unfair business conduct, or fraudulent business conduct.

Here, Plaintiff has not produced any evidence that MARCO POLO violated any law or engaged in unfair business practices, and nor could he because **he has not produced evidence explaining the basis for his claim of ownership of his data or of any particular device accessed by any defendant.**  There is simply no

15

1    evidence that MARCO POLO ever accessed Plaintiff's data, and there is no

2    evidence of any consumer harm or market impact associated with any of MARCO

3    POLO's conduct.  There is no evidence of any fraudulent misrepresentations, and

4    none have even been identified by Plaintiff.  Judgment should be entered in favor of

5    Defendant.

6    ### d.  No Evidence Supporting Vicarious Liability Theories

7    Marco Polo is a Limited Liability Company with 501(c)(3) status. [SS___]

8    Plaintiff failed to allege any facts that would suggest Marco Polo is directly liable

9    for the conduct at issue and has failed to allege any facts that would support a

10   finding that piercing the corporate veil would be appropriate in this case.  Plaintiff

11   has failed to produce any evidence supporting a finding of vicarious liability.

12   Plaintiff's theories of vicarious liability are not pleaded with any factual

13   specificity, but nevertheless these theories fail because Plaintiff lacks evidence that

14   MARCO POLO is an alter ego or agent of any individual defendant or that MARCO

15   POLO ratified the conduct.

16   Further, there is no evidence that MARCO POLO disregarded corporate

17   formalities such that piercing the corporate veil would be appropriate even if

18   Plaintiff could demonstrate a violation by any person.  There is simply no evidence

19   of personal and business finances being intermingled and no evidence of fraud or

20   injustice that would justify piercing the corporate veil.

21   ### e.  Alternatively, the Court Should Decline to Exercise Jurisdiction

22   ### over State Law Claims

23   Defendant is entitled to summary judgment on all claims as Plaintiff has

24   failed to produce evidence to support any of his claims alleged in the unverified

25   complaint.  Nevertheless, if the Court enters judgment on the CFAA claim in favor

26   of Defendant, the Court should reconsider its exercise of subject matter jurisdiction

27   over the state law claims, particularly given the complexity of the allegations, and

28

16

1  dismiss the remaining claims for lack of subject matter jurisdiction.  See e.g.

2  *Brekka*, 581 F.3d at 1137 (affirming the district court's entry of summary judgment

3  on the CFAA claim and dismissal of state law claims declining to exercise

4  supplemental jurisdiction).

5  **V.     CONCLUSION**

6      Because Plaintiff has produced no evidence that Marco Polo violated the

7  CFAA, UCL, or any data privacy law, and no evidence supporting a theory of

8  vicarious liability, Defendant respectfully requests this Court grant summary

9  judgment in its favor and dismiss all claims with prejudice.  Alternatively,

10  Defendant requests that this Court enter summary judgment on the CFAA claim and

11  decline to exercise subject matter jurisdiction over the state law claims.

12

13  Dated: March 4, 2025.                  Respectfully submitted,

14

15                                          _/s/_____

16                                          JENNIFER L. HOLLIDAY

17                                          Attorney for Defendants
                                            Garrett Ziegler and ICU, LLC
18

19

20

21

22

23

24

25

26

27

28

1  JENNIFER L. HOLLIDAY SBN 261343
2         JLHolliday@Proton.me
   7190 W. Sunset Blvd. #1430
3  Los Angeles, CA 90046
   (805)622-0225
4

5  **ATTORNEY FOR DEFENDANTS**

6

7

8                **UNITED STATES DISTRICT COURT**
9                **CENTRAL DISTRICT OF CALIFORNIA**

10
                                      )    Case No. 2:23-CV-07593-HDV-KSx
11 ROBERT HUNTER BIDEN,              )
                                      )
12         Plaintiff,                 )    **DEFENDANT ICU, LLC'S (a.k.a.**
                                      )    **MARCO POLO'S) [JOINT]**
13 v.                                 )    **APPENDIX OF UNCONTROVERTED**
                                      )    **FACTS AND GENUINE DISPUTES;**
14 GARRETT ZIEGLER, ICU, LLC          )    **CONCLUSIONS OF LAW AND**
                                      )    **RELEVANT FACTS**
15 (d/b/a Marco Polo),                )
                                      )
16         Defendants.                )
                                      )    **DATE:          MAY 15, 2025**
17                                    )    **TIME:          10:00AM**
                                      )    **COURTROOM: 5B**
18                                    )
                                      )
19                                    )
                                      )    **THE HON. HERNÁN D. VERA**
20                                    )
                                      )    **JURY TRIAL: SEPT. 9, 2025**
21                                    )
22                                         **FPTC: AUG. 19, 2025**
23 _____

24

25

26

27

28

## JOINT APPENDIX OF UNDISPUTED FACTS

| UNCONTESTED FACT | STATUS | OPPOSITION | REPLY |
|---|---|---|---|
| 1.　ICU, LLC is a limited liability company organized under the laws of Wyoming.<br><br>JA-Exhibit I | | | |
| 2.　ICU, LLC is adequately capitalized.<br><br>JA-Exhibit I | | | |
| 3.　ICU, LLC maintains all corporate formalities.<br><br>JA-Exhibit I | | | |
| 4.　ICU, LLC has an organized board of directors.<br><br>JA-Exhibit I | | | |
| 5.　Plaintiff has no evidence that ICU, LLC accessed a computer.<br><br>JA-Exhibit F ¶ 2: Biden asserts that he never authorized access, but he does not provide evidence that ICU, LLC actually accessed any of his computers or data. | | | |
| 6.　Plaintiff has no evidence that ICU, LLC engaged in any unfair or fraudulent business practice. | | | |

| | | | |
|---|---|---|---|
| 7.     Plaintiff has not alleged any specific facts that ICU, LLC engaged in any unlawful, unfair, or fraudulent business practice. | | | |
| 8.     Plaintiff has not alleged any specific facts that ICU, LLC engaged in any conduct involving data. | | | |
| 9.     Plaintiff has not alleged any specific facts regarding Plaintiff's ownership of any specific data. | | | |
| 10.   ICU, LLC is organized as a 501(c)(3) non-profit<br><br>JA-Exhibit I | | | |
| 11.    Plaintiff has no evidence that ICU, LLC has profited off of the use of any data. | | | |
| 12.   Plaintiff has not alleged any specific facts that he owned any of the computers at issue in this case. | | | |
| 13.   Plaintiff did not own the hard drive allegedly accessed in this case. | | | |
| 14.   Plaintiff has no evidence that any potential violation of the CFAA by ICU, LLC resulted in damages of $5,000 or greater in a one-year period. | | | |
| 15.    Plaintiff has no evidence that ICU, LLC intentionally directed, encouraged or induced anyone to access a computer or data without authorization or exceeding authorization. | | | |
| 16.    Plaintiff has no evidence that ICU, LLC recklessly | | | |

| | | | |
|---|---|---|---|
| caused Damage to a protected computer. | | | |
| 17.   Plaintiff has no evidence that ICU, LLC  caused both Damage to a protected computer and Loss by way of access to a hard drive containing any of Plaintiff's data. | | | |
| 18.   Plaintiff has no evidence that ICU, LLC knowingly and with an intent to defraud directed, encouraged, or induced a third party to access a Protected Computer without authorization and by means of such conduct furthered intended fraud and obtained something of value to ICU, LLC. | | | |
| 19.    Plaintiff has no evidence that the value of the use of a protected computer exceeded $5,000 in a one year period. | | | |
| 20.    Plaintiff has no evidence that any of ICU, LLC's conduct resulted in "any impairment to the integrity or availability of data, a program, a system, or information." | | | |
| 21.    Plaintiff has no evidence that ICU, LLC's conduct resulted in any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred | | | |

4

| | | | |
|---|---|---|---|
| because of interruption of service. | | | |
| 22.   Plaintiff has no evidence that ICU, LLC intended to defraud Plaintiff. | | | |
| 23.   Plaintiff has no evidence that ICU, LLC "intentionally accessed a computer without authorization or exceeding authorized access, thereby obtaining information contained in financial records of one or more financial institutions or one or more card issuers as defined in section 1602(n) of title 15 or contained in one or more files of a consumer reporting agency on a consumer, as such terms are defined in the Fair Credit Reporting Act (15 U.S.C. 1681 et seq.)" | | | |
| 24.   Plaintiff has no evidence that ICU, LLC violated any law or engaged in unfair business practices. | | | |
| 25.   Plaintiff has no evidence of no consumer harm or market impact related to any purported unauthorized or wrongful access of his computer or data. | | | |
| 26.   Plaintiff has no evidence that ICU, LLC ever accessed Plaintiff's data. | | | |
| 27.   Plaintiff has no evidence that he owns, or ever owned, any of the data at issue in this case. | | | |
| 28.   Plaintiff has no evidence that he owns, or ever owned, | | | |

5

| | | | |
|---|---|---|---|
| any of the computers at issue in this case. | | | |
| 29.    In 2014, Plaintiff joined the board of a Ukrainian energy company in a move Plaintiff describes as an unmistakable "fuck you" to Vladimir Putin. | | | |
| 30.    U.S. intelligence officials initially dismissed Plaintiff's computer at issue in this case as Russian disinformation. | | | |
| 31.    Plaintiff voluntarily left his computer in the custody of a computer repair shop in Delaware subject to a bailment contract.<br><br>Claiming it was irrelevant to the action, Plaintiff refused to deny this fact.<br><br>JA-Exhibit C, No. 1 | | | |
| 32.    By failing to timely retrieve his computer, Plaintiff forfeited any ownership claim to his computer and any data residing on that computer by the terms of the bailment contract. | | | |
| 33.    The Federal Bureau of Investigation took possession of the abandoned computer in 2019 pursuant to a valid warrant.<br><br>Claiming it was irrelevant to the action, Plaintiff refused to deny this fact.<br><br>JA-Exhibit C, No. 2 | | | |

| | | | |
|---|---|---|---|
| | | | |
| 34.    Multiple copies of the abandoned computer were distributed to various media outlets and /or individuals associated with media outlets. | | | |
| 35.    No individual has been prosecuted under the Computer Fraud and Abuse Act for any alleged conduct associated with this case. | | | |
| 36.Claiming that it is not relevant to the subject matter of this action, Plaintiff objected to a discovery request to state the physical location and/or uniform resource locator ("URL") address of each and every computer which Plaintiff alleged the Defendants "hacked" in violation of the CFAA. JA-Exhibit A, No. 3 | | | |
| 37.    Plaintiff refused to disclose any items of fact or information in his possession which he claims shows or tends to show any violation of the CFAA occurred. JA-Exhibit A, No. 10 | | | |
| 38.    Claiming it is not "relevant" to the action, Plaintiff refused to disclose the Internet Protocol ("IP") addresses he or his internet service provider recorded or obtained showing any violations of any act or | | | |

| occurrence which Plaintiff claims Defendants violated the CFAA by accessing any data storage facility or communications facility directly related to operating in conjunction with Plaintiff's computers.

JA-Exhibit A, No. 11 | | | |
|---|---|---|---|
| 39.    On the basis that the request was irrelevant to the action, Plaintiff refused to disclose any IMEI numbers, UID numbers, ISL AlwaysOn identifiers, serial numbers or any other hardware or device identification numbers of any devices used to commit any alleged violations by Defendants of the CFAA.

JA-Exhibit A, No. 12 | | | |
| 40.    Plaintiff refused to describe how he believes Defendants committed each specific violation of the CFAA raised in his complaint.

JA-Exhibit A, No. 13 | | | |
| 41.    Claiming it is irrelevant to this action, Plaintiff refused to provide IP addresses to the files Defendant allegedly "hacked" or the name of the internet service provider that operates the data storage and/or communication facility where the hacked data | | | |

| | | | |
|---|---|---|---|
| was stored at the time Plaintiff contends the "hack" took place.<br><br>JA-Exhibit A, No. 14 | | | |
| 42.    Claiming it was not relevant to this action, Plaintiff refused to disclose the physical location and/or uniform resource locator (URL) address of each and every "protected computer" he alleges Defendant hacked.<br><br>JA-Exhibit A, No. 16 | | | |
| 43.    Claiming it was not relevant to the action, Plaintiff refused to disclose the model number, manufacturer, serial number, hardware number, UID and/or IMEI number for each computer or device he alleged Defendant hacked in violation of the CFAA.<br><br>JA-Exhibit A, No. 17 | | | |
| 44.    Claiming that this were not relevant to the action, Plaintiff refused to describe each occurrence in which he claimed his data was "hacked" by any party named in the Complaint or any third party not named in the Complaint.<br><br>JA-Exhibit A, No. 19 | | | |
| 45.    Claiming it is not relevant to the action, Plaintiff refuses to disclose the date on which he first became aware that his data | | | |

| | | | |
|---|---|---|---|
| may have been stolen or hacked as alleged in his complaint.<br><br>JA-Exhibit A, No. 21 | | | |
| 46.    There is nothing in the record indicating that Plaintiff's "data" as that term is repeatedly used in his Complaint is a "Computer" as contemplated by the CFAA.<br><br>Plaintiff objected to a request to admit or deny this fact. See JA-Exhibit C, RFA 4. | | | |
| 47.    There is nothing in the record indicating that Plaintiff's data as that term is repeatedly used and alleged in his Complaint, is a "protected computer" as contemplated by the CFAA.<br><br>Plaintiff objected to a request to admit or deny this fact.<br>See JA-Exhibit C, No. 5 | | | |
| 48.    There is nothing in the record indicating that Plaintiff's "data" as that term is used in his Complaint is a "Computer System" as contemplated by the California Data Abuse and Fraud Act, Penal Code section 502.<br><br>Claiming this was irrelevant to this action, Plaintiff objected to a request that he admit or deny | | | |

| | | | |
|---|---|---|---|
| this fact. See JA-Exhibit C, No. 6 | | | |
| 49.    Plaintiff has no evidence that he suffered at least $5,000 in damages for investigating an alleged violation of the CFAA, and Plaintiff objected to a request to provide a description of any technical investigation of the alleged intrusion/hacking/damage/access as alleged in the Complaint.<br><br>See JA-Exhibit D, No. 2 | | | |
| 50.    Plaintiff has no evidence that the alleged violations of the CFAA occurred within the past two years.<br><br>Claiming it is not relevant to the action, Plaintiff objected to a request to disclose the dates on which any technical investigation of the alleged hacking took place.  See JA Exhibit D, No. 3 | | | |
| 51.    There is no evidence in the record regarding the amount of money paid by Plaintiff for any remedial and/or protective measures taken or made due to the alleged intrusion/hacking/damages as alleged in the Complaint.<br><br>Claiming it is not relevant to the action, Plaintiff objected to a | | | |

11

| | | | |
|---|---|---|---|
| request to disclose this information.<br>See JA-Exhibit D, No. 5, 6, 7, 8, 9 | | | |
| **52.** Plaintiff alleged that Defendant Marco Polo "intentionally accessed a computer without authorization or exceeding authorized access, thereby obtaining information contained in financial records of one or more financial institutions or one or more card issuers as defined in section 1602(n) of title 15 or contained in one or more files of a consumer reporting agency on a consumer, as such terms are defined in the Fair Credit Reporting Act (15 U.S.C. 1681 et seq.)"<br><br>JA-Exhibit G | | | |
| 53. Plaintiff filed an unverified complaint signed by an attorney who abandoned the litigation without seeking leave of Court to withdraw after Plaintiff received a presidential pardon.<br><br>JA-Exhibit G | | | |
| 54. The record shows Plaintiff objected to requests to produce documents on grounds of relevance, leaving the record devoid of any documents and communications supporting Plaintiff's claims. | | | |

| | | | |
|---|---|---|---|
| See JA-Exhibit E, 1-11; JA-Exhibit B, 1-81 | | | |
| 55.    Plaintiff has not established ICU, LLC accessed a protected computer without authorization.<br><br>JA-Exhibit F ¶ 3: Referring to cease-and-desist letters does not establish unauthorized access—it merely states Plaintiff's assertion that he did not authorize access. | | | |
| 56.    Plaintiff testified he does not know if anyone had access to his computer.<br><br>JA-Exhibit H, p. 146:22 | | | |
| 57.    Plaintiff testified that things obtained from his laptop were either hacked, fabricated, stolen or manipulated, and his attorney Abbe Lowell referred Congress to "litigation in Delaware," involving Rudy Guiuliani and Bob Costello, not to this litigation, to which Mr. Biden responded, "Yes."<br><br>JA-Exhibit H, p. 147-148 | | | |

## CONCLUSIONS OF LAW AND RELEVANT FACTS

A Plaintiff asserting a civil CFAA claim must establish:

1. **Unauthorized access or exceeding authorized access** to a **protected computer** (18 U.S.C. § 1030(a)(2) or (a)(4)). *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009)

2. **Intentional access**. *United States v. Nosal*, 844 F.3d 1024, 1037 (9th Cir. 2016) ("The CFAA is not a 'misuse statute'—it is an 'unauthorized access statute.' A person must have intentionally accessed a protected computer without permission.")

3. **Obtaining information, causing damage, or furthering a fraud.** *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2016) ("A violation of the CFAA requires evidence that the defendant not only accessed the computer but obtained information, caused harm, or furthered a fraudulent purpose.")

4. **Damage or loss of at least $5,000 in a one-year period** (18 U.S.C. § 1030(c)(4)(A)(i)(I)).

5. **Causation** – linking Defendants' conduct to Plaintiff's alleged damages. *Multiven, Inc. v. Cisco Sys., Inc., 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010).* ("A plaintiff cannot sustain a CFAA claim without evidence that the alleged unauthorized access caused actual harm or loss.")

A Plaintiff asserting vicarious liability under the civil CFAA statute must establish:

1. **An agency relationship** (i.e., the alleged hacker acted as an agent, employee, or under the direction of ICU, LLC).

2. **Control or authorization** (i.e., ICU, LLC had the right to control the specific conduct alleged).

3. **Knowledge and intent** (i.e., ICU, LLC knew or should have known about the unauthorized access and failed to stop it).

| CONCLUSIONS OF LAW | RELEVANT FACTS |
|---|---|
| **(1) No Evidence of Unauthorized Access or Exceeding Authorized Access**<br><br>• The CFAA applies only to unauthorized access of a protected computer. If Plaintiff lacks evidence that ICU, LLC accessed any computer, data, or a protected computer, the claim fails as a matter of law. See e.g. *LVRC Holdings LLC v. Brekka,* 581 F.3d 1127, 1135 (9th Cir. 2009)). ("The plain language of the CFAA targets the unauthorized procurement or alteration of information, not its misuse or misappropriation.") | • **Fact 5**: *Plaintiff has no evidence that ICU, LLC accessed a computer.*<br><br>• **Fact 8**: *Plaintiff has not alleged any specific facts that ICU, LLC engaged in any conduct involving data.*<br><br>• **Fact 12**: *Plaintiff has not alleged any specific facts that he owned any of the computers at issue in this case.*<br><br>• **Fact 26**: *Plaintiff has no evidence that ICU, LLC ever accessed Plaintiff's data.*<br><br>• **Fact 27**: *Plaintiff has no evidence that he owns, or ever owned, any of the data at issue in this case.*<br><br>• **Fact 28**: *Plaintiff has no evidence that he owns, or ever owned, any of the computers at issue in this case.*<br><br>• **Fact 31**: *Plaintiff voluntarily left his computer in the custody of a computer repair shop in Delaware subject to a bailment contract.*<br><br>• **Fact 32**: *By failing to timely retrieve his computer, Plaintiff forfeited any ownership claim to his computer and any data residing on that computer by the terms of the bailment contract.*<br><br>• **Fact 33**: *The FBI took possession of the abandoned computer in 2019 pursuant to a valid warrant.*<br><br>• **Fact 47**: *There is nothing in the record indicating that Plaintiff's data, as that term is used in his Complaint, is* |

| | | |
|---|---|---|
| | | *a "protected computer" as contemplated by the CFAA.* |
| | **(2) No Evidence of Damage or Loss ($5,000 Threshold)** | • **Fact 14**: *Plaintiff has no evidence that any potential violation of the CFAA by ICU, LLC resulted in damages of $5,000 or greater in a one-year period.* |
| | • 18 U.S.C. § 1030(g) requires a Plaintiff to show at least $5,000 in damages to bring a civil claim under the CFAA. If Plaintiff cannot establish this threshold, the claim must be dismissed. See e.g. *Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010) | • **Fact 19**: *Plaintiff has no evidence that the value of the use of a protected computer exceeded $5,000 in a one-year period.* |
| | | • **Fact 21**: *Plaintiff has no evidence that ICU, LLC's conduct resulted in any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.* |
| | | • **Fact 49**: *Plaintiff has no evidence that he suffered at least $5,000 in damages for investigating an alleged violation of the CFAA, and Plaintiff objected to a request to provide a description of any technical investigation of the alleged intrusion.* |
| | | • **Fact 51**: *There is no evidence in the record regarding the amount of money paid by Plaintiff for any remedial and/or protective measures taken or made due to the alleged intrusion.* |

| (3) **No Causation – No Link Between Defendants and Alleged CFAA Violations** | • **Fact 15**: *Plaintiff has no evidence that ICU, LLC intentionally directed, encouraged, or induced anyone to access a computer or data without authorization or exceeding authorization.* |
|---|---|
| If Plaintiff cannot show ICU, LLC caused the access or any harm, the CFAA claim fails. See e.g. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) Even if unauthorized access occurred, Plaintiff must show that ICU, LLC was responsible for it. See *Multiven, Inc. v. Cisco Sys., Inc., 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010).* ("A plaintiff cannot sustain a CFAA claim without evidence that the alleged unauthorized access caused actual harm or loss.") | • **Fact 16**: *Plaintiff has no evidence that ICU, LLC recklessly caused damage to a protected computer.*<br><br>• **Fact 17**: *Plaintiff has no evidence that ICU, LLC caused both damage to a protected computer and loss by way of access to a hard drive containing any of Plaintiff's data.*<br><br>• **Fact 18**: *Plaintiff has no evidence that ICU, LLC knowingly and with an intent to defraud directed, encouraged, or induced a third party to access a protected computer without authorization.* |
| **(4) No Ownership or Standing to Sue**<br><br>• If Plaintiff does not own the computer or data, he lacks standing to sue under the CFAA.<br><br>• The CFAA does not provide a cause of action for abandoned property. | • **Fact 12, 13, 27, 28**: *Plaintiff did not own the computer, hard drive, or data.*<br><br>• **Fact 31, 32**: *Plaintiff voluntarily left the computer at a repair shop and forfeited ownership under a bailment contract.*<br><br>• **Fact 33**: *The FBI lawfully took possession of the computer in 2019.* |
| **(5) Claims under the CFAA must be provided within two years of the alleged incident.** | **Fact 36-46, 49-51**: *Plaintiff refused to provide:* |

| | |
|---|---|
| | • *IP addresses, hardware identifiers, or details about alleged hacking.* |
| | • *Dates of the alleged CFAA violations.* |
| | • *Details about damages or investigations.* |
| **(6) Plaintiff must show that ICU, LLC "intentionally accessed a protected computer without authorization or exceeded authorized access"** (§ 1030(a)(2)).<br><br>Plaintiff must prove that ICU, LLC accessed his computer or data, not just allege unauthorized access. See e.g. *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 964 (D. Ariz. 2008) Since Plaintiff admits he did not personally witness ICU, LLC accessing his data, and provides no technical evidence (e.g., logs, forensic analysis), this does not create a material factual dispute. | **Fact 5:** *Biden asserts that he never authorized access, but he does not provide evidence that ICU, LLC actually accessed any of his computers or data.*<br><br>• **Fact 55**: *Referring to cease-and-desist letters does not establish unauthorized access—it merely states Plaintiff's assertion that he did not authorize access.* |
| **VICARIOUS LIABILITY** | |
| ICU, LLC is not vicariously liable under the CFAA because it did not actively direct, induce, or encourage unauthorized access.<br><br>Mere association with someone who engaged in unauthorized access, even if such access occurred, is not enough for vicarious liability—there must be active encouragement, control, or direction. See e.g *NetApp, Inc. v. Nimble Storage, Inc.,* No. 5:13-CV-05058-LHK, 2015 WL 400251, at 14 (N.D. Cal. Jan. 29, 2015) ("A company cannot be held | • **Fact 15**: *Plaintiff has no evidence that ICU, LLC intentionally directed, encouraged, or induced anyone to access a computer or data without authorization or exceeding authorization.*<br><br>• **Fact 18**: *Plaintiff has no evidence that ICU, LLC knowingly and with an intent to defraud directed, encouraged, or induced a third party to access a Protected Computer without authorization.* |

| | |
|---|---|
| liable under the CFAA unless it affirmatively authorized or directed the alleged unauthorized access.") | |
| There is no evidence to support a finding that ICU, LLC is an alter ego of Garrett Ziegler.<br><br>"A court looks to various factors when determining whether there is a unity of interest among corporate entities necessary to establish alter egos." *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1250 (9th Cir. 2017). These factors include: [1] inadequate capitalization, [2] commingling of funds and other assets, [3] holding out by one entity that it is liable for the debts of the other, [4] identical equitable ownership, [5] use of the same offices and employees, [6] use of one as a mere conduit for the affairs of the other, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers. | • **Fact 2:** *ICU, LLC is adequately capitalized.*<br><br>• **Fact 3:** *ICU, LLC maintains all corporate formalities.*<br><br>• **Fact 4:** *ICU, LLC has an organized board of directors.* |

Dated: March 4, 2025.

Respectfully submitted,

_/s/__________________________
JENNIFER L. HOLLIDAY
Attorney for Defendants
Garrett Ziegler and ICU, LLC (Marco Polo

# EXHIBIT B

# Craig D. A. Bowling

Curriculum Vitae

## PROFESSIONAL POSITIONS

01/2020 – Present **Digitas Consulting, LLC**
Founder and President
New Canaan, CT

03/2003 – 07/2021 **U.S. Department of Homeland Security**
Homeland Security Investigations (HSI)
Special Agent
Digital Forensics Agent
New Haven, CT

08/2003 – 2005 **University of New Haven**
College of Criminal Justice and Forensic Sciences
Adjunct Professor
New Haven, CT

07/1998 - 03/2003 **U.S. Department of the Treasury**
USCS-Office of Investigations
Senior Special Agent
Computer Investigative Specialist (2000-2003)
New Haven, CT

## EDUCATION

| | | | |
|---|---|---|---|
| M.A. | Washington State University | Criminal Justice | 12/1997 |
| B.A. | Washington State University | Criminal Justice | 5/1994 |
| B.A. | Washington State University | Sociology | 5/1994 |
| B.A. | Washington State University | Foreign Languages and Literatures | 5/1994 |

## INVESTIGATIONS, DIGITAL FORENSICS, AND RESEARCH EXPERIENCE

As a Special Agent with over 23 years of investigative and digital forensics experience, I have led investigations that resulted in convictions for terrorism, espionage, narcotics smuggling, Intellectual Property Rights (IPR) violations, money laundering, fraud, and child exploitation. In my role as a Computer and Digital Forensics Agent, I have conducted scores of digital forensics examinations, including mobile devices, and testified as a subject matter expert in federal and state courts. My technical acumen includes expertise with macOS and iOS devices, proficiency in iCloud-related investigations, and significant experience with Microsoft Windows and Android-based systems. I have provided training to federal, state, and local law enforcement, as well as private industry. My research into computer-related crime has been published in peer-reviewed academic journals and books, and I have also contributed to publications on digital forensics. As an in-demand speaker at conferences and on podcasts, my current research focuses on the use of artificial intelligence by criminals and law enforcement. As the Founder and President of Digitas Consulting, LLC, I provide consulting and forensics expertise to law firms, multinational corporations, and notable individuals.

## HONORS

United States Department of Homeland Security, Director's Award, 2016
*Recognition for work done as the digital forensics agent in a counter-proliferation and espionage investigation involving an Iranian national sending classified information to Iran.*

United States Attorney's Office, District of Connecticut, Award of Recognition, 2014
*Recognition for work done as the lead agent and digital forensics agent in a 13 year international terrorism investigation that led to the extradition and conviction of two Al Qaeda-linked individuals on terrorism offenses.*

Metropolitan Police Service (New Scotland Yard), Award of Recognition, 2014
*Recognition for work done in a joint international terrorism investigation.*

United States Department of Homeland Security, Director's Award, 2012
*Recognition for work done as the digital forensics agent in an international child exploitation investigation.*

United States Attorney's Office, District of Connecticut, Award of Recognition, 2012
*Recognition for work done as the digital forensics agent in an international child-exploitation investigation.*

United States Attorney's Office, District of Connecticut, Award of Recognition, 2011
*Recognition for work done as the digital forensics agent in an international child-exploitation and money laundering investigation.*

United States Attorney's Office, District of Connecticut, Award of Recognition, 2009
*Recognition for work done as the lead case agent and digital forensics agent in an investigation that led to the conviction of an individual for terrorism and espionage related offenses.*

United States Department of Homeland Security, Award of Recognition, 2008
> *Recognition for work done in the area of terrorism-related investigations.*

United States Department of the Treasury, Award of Recognition, 2002
> *Recognition for work done in the area of terrorist-financing investigations and for
> work done as the lead agent and digital forensics agent in an Internet-based
> Intellectual Property piracy case that led to the conviction of three individuals.*

United States Attorney's Office, District of Connecticut, Award of Recognition, 2002
> *Recognition for work done as the lead agent and digital forensics agent in an
> investigation that led to the conviction of an individual for distribution of child
> sexual abuse material.*

United States Attorney's Office, District of Connecticut, Award of Recognition, 2001
> *Recognition for work done as the lead agent and digital forensics agent that
> led to the dismantling of an Internet-based child sexual abuse material
> distribution ring and the conviction of two individuals.*

New England Narcotics Officers Association, Award of Recognition, 2000
> *Recognition for work done as a member of the High Intensity Drug Trafficking
> Area (HIDTA) task force.*

Federal Bureau of Investigation, Award of Recognition, 2000
> *Recognition for work done as a member of the High Intensity Drug Trafficking
> Area (HIDTA) task force.*

Washington State University, Criminal Justice Graduate Student of the Year, 1997


## PLENARY SESSION PRESENTATIONS

*Invited Speaker at the Connecticut International Association of Financial Investigators
Conference, Presentation on Artificial Intelligence and Crime.* IAFCI, 2024, Norwich,
CT.

*Invited Panelist at "You Could Be Next: How to Avoid Becoming a Cyber
Horror Story" webinar.* Queens Chamber of Commerce, 2021, Queens, NY.

*Invited Panelist at Combatting Cyber Security Threats: Collaboration Between
Government Agencies and the Private Sector Conference.* ISACA, 2017,
Stamford, CT.

*Invited Speaker at the Northeast Annual Cybersecurity Summit, Presentation on Open
Source INTEL, OPSEC, and Cyber Threats.* NEACS, 2016, Trumbull, CT.

*Invited Speaker at the Connecticut International Association of Financial Investigators
Conference, Presentation on Cyber Investigations.* IAFCI, 2016, Norwich, CT.

*Invited Panelist at the Combatting Cyber Security Threats: Collaboration Between
Government Agencies and the Private Sector Conference.* ISACA, 2016 Stamford,
CT.

*Invited Speaker at Yale Law School, Presentation on Terrorism Investigations and Prosecutions.* Yale Law School, 2010 New Haven, CT.

*Invited Speaker at Yale Law School, Presentation on Terrorism Investigations and Prosecutions.* Yale Law School, 2009 New Haven, CT.

*Invited Speaker for the Department of Justice's Conference on Investigating Crimes against Children – Macintosh Forensics: An Overview of Available Tools.* United States' Attorney's Office, District of Connecticut, 2003, Old Saybrook, CT.

*Invited panelist for the Department of Justice's Conference on Investigating Crimes against Children.* United States Attorney's Office, District of Connecticut, 2001, Hartford, CT.

*PC Emulators on a Macintosh: The Perfect Hiding Spot*? U.S. Department of the Treasury, Computer Investigative Specialist Training, 2001, Fairfax, VA.

*Computer-Related Crime and Law Enforcement Preparedness.* South-Central Connecticut Chiefs of Police Association, 2000, Meriden, CT.

*Computer-Related Crime and Law Enforcement Preparedness.* Office of International Criminal Justice – Symposium on Terrorism, University of Illinois, 1998, Chicago, IL.

*Computer-Related Crime and Law Enforcement Preparedness.* University of Nevada-Reno, Department of Criminal Justice, 1998, Reno, NV.

*The Internet, Digital Disorder, and Police Agencies: A Survey of Theoretical and Pragmatic Issues in the Cyber-Age.* Annual Meeting of the Academy of Criminal Justice Sciences, 1997, Louisville, KY.


## PROFESSIONAL AFFILIATIONS

International Association of Computer Investigative Specialists (IACIS)

High Technology Crime Investigators Association (HTCIA)

Academy of Criminal Justice Sciences (ACJS)

Federal Law Enforcement Officers Association (FLEOA)

Society of Police Futurists International (PFI)

Alpha Phi Sigma (National Criminal Justice Honor Society)

## PEER-REVIEWED PUBLICATIONS AND BOOK CONTRIBUTIONS

Shavers, Brett (2023). *X-Ways Forensics Practitioner's Guide* (2nd ed.)*.* Seattle: DFIR Training.

*25 Keys to Unlock the Financial Chains of Human Trafficking & Modern Slavery* (2017). New York: United Nations University.

Thurman, Q. and Zhao, J. [Eds.]. (2003). *Contemporary Policing: Controversies, Challenges, and Solutions (An Anthology)*. New York: Oxford University Press.

Correia, M. and Bowling, C. (1999, June). Veering Toward Digital Disorder: Computer-Related Crime and Law Enforcement Preparedness. *Police Quarterly*, 225-244.


## DIGITAL FORENSICS CERTIFICATIONS (Current and Historical)

Certified Forensic Macintosh Examiner (CFME)

Belkasoft SQLite Forensics

Aresenal Image Mounter Practitioner

Certified Forensic Computer Examiner (CFCE)

Encase Certified Examiner (EnCE)

Access Data Certified Examiner (ACE)

BlackLight Certified Examiner (CBE)

Certified Mobilyze Operator (CMO)

Cellebrite Certified Operator (COO)


## COURT TESTIMONY

*Cooper Tank LLC DBA East Coast Containers v. Rosati, Domenico Et Al, Judicial District of Waterbury, Connecticut (2024)*

*United States v. Carroll, District of Alaska (2014)*

*State of Connecticut v. Hetterick (2013)*

*United States v. Hassan Abu-Jihaad, District of Connecticut (2008)*

*United States v Gravenhorst, District of Maine (2003)*

*United States v. Robert Cerreta, District of Connecticut (2000)*

*United States v. David Hoppel, District of Connecticut (2000)*


DEPOSITION TESTIMONY

*Stamford Emergency Medical Services, Inc. v. Preferred Billing Associates, Judicial District of Stamford/Norwalk, Connecticut (2024)*
- *Role:* Provided deposition testimony on expert digital forensics analysis relating to alleged data exfiltration and possible spoliation involving computers, servers, and storage devices. *Outcome:* Matter is ongoing.


EXPERT WRITTEN OPINIONS AND DECLARATIONS (NON-TESTIMONIAL)

*Cooper Tank LLC DBA East Coast Containers v. Rosati, Domenico Et Al, Judicial District of Waterbury, Connecticut (2024)*
- *Role:* Presented expert findings on digital forensics analysis relating to possible data exfiltration and alleged spoliation involving cloud accounts and computers. *Outcome:* Matter is ongoing.

*Stamford Emergency Medical Services, Inc. v. Preferred Billing Associates, Judicial District of Stamford/Norwalk, Connecticut (2023)*
- *Role:* Presented expert findings on digital forensics analysis relating to alleged data exfiltration and possible spoliation involving computers, servers, and storage devices. *Outcome:* Matter is ongoing.

*Andros Floyd & Miller, P.C. v. Decian, Inc., Judicial District of Hartford, Connecticut (2022)*
- *Role:* Presented expert findings on digital forensics analysis relating to ransomware and possible data exfiltration from client's network. *Outcome:* Matter settled.

*Goodwin University, Inc. v. Daniel Williamson, United States District Court, District of Connecticut (2022)*
- *Role:* Presented findings on digital forensics relating to potential data exfiltration involving computers and storage devices. *Outcome:* Matter settled.

*KT4 Partners LLC, and Sandra Martin Clark, as trustee for Marc Abramowitz Irrevocable Trust Number 7 v. Palantir Technologies Inc., and Disruptive Technology Advisors LLC, The Superior Court of Delaware (2021)*
- *Role:* Presented findings on digital forensics analysis concerning allegations of spoliation involving mobile phone devices. *Outcome:* Spoliation motion dismissed and matter settled.

*Alexander P. Moncure v. Anne E. Crane, Judicial District of Danbury, Connecticut (2021)*
- *Role:* Presented findings on digital forensics involving computers and mobile phone devices. *Outcome:* Matter settled.

# EXHIBIT C

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**
**SECOND APPELLATE DISTRICT**
**DIVISION P**

| | |
|---|---|
| P. KEVIN MORRIS, Respondent, Cross-Appellant and Plaintiff<br><br>v.<br><br><br>GARRETT ZIEGLER, ICU, LLC, a Wyoming Limited Liability Company d/b/a *Marco Polo* USA<br>Appellants and Cross-Respondents and Defendants | **Court of Appeal No. B333812**<br><br>Superior Court No. 23SMCV01418 |

Appeal from an Order of the
Superior Court, County of Los Angeles
Hon. Mark Epstein, presiding
_____

**APPELLANTS' OPENING BRIEF**
_____

JENNIFER L. HOLLIDAY
State Bar No. 261343
7190 W. Sunset Blvd. #1430
Los Angeles, CA 90046

ATTORNEY FOR DEFENDANTS /
APPELLANTS / CROSS-
RESPONDENTS
ZIEGLER AND ICU, LLC d/b/a
*Marco Polo*

1

TO BE FILED IN THE COURT OF APPEAL

**APP-008**

| | |
|---|---|
| **COURT OF APPEAL**    SECOND **APPELLATE DISTRICT, DIVISION** P | COURT OF APPEAL CASE NUMBER:<br>B333812 |
| ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NUMBER: 261343<br>NAME:  Jennifer L. Holliday<br>FIRM NAME:  Law Office of Jennifer<br>STREET ADDRESS:  7190 W. Sunset Blvd. #1430<br>CITY:  Los Angeles    STATE:  CA    ZIP CODE:  90046<br>TELEPHONE NO.:  805-622-0225    FAX NO.:<br>E-MAIL ADDRESS:  JLHolliday@Proton.me<br>ATTORNEY FOR (name):  Garrett Ziegler; ICU, LLC, a Wyoming Limited Liability Company d/b/a | SUPERIOR COURT CASE NUMBER:<br>23SMCV01418 |
| APPELLANT/    Garrett Ziegler; ICU, LLC, a Wyoming Limited Liability Company d/b/a<br>PETITIONER:  Marco Polo<br>RESPONDENT/    P. Kevin Morris<br>REAL PARTY IN INTEREST: | |

**CERTIFICATE OF INTERESTED ENTITIES OR PERSONS**

*(Check one):*  [ **✖** ]  INITIAL CERTIFICATE  [  ]  SUPPLEMENTAL CERTIFICATE

**Notice:  Please read rules 8.208 and 8.488 before completing this form. You may use this form for the initial certificate in an appeal when you file your brief or a prebriefing motion, application, or opposition to such a motion or application in the Court of Appeal, and when you file a petition for an extraordinary writ. You may also use this form as a supplemental certificate when you learn of changed or additional information that must be disclosed.**

1.  This form is being submitted on behalf of the following party *(name )*:  ICU, LLC d/b/a Marco Polo

2.  a.  [  ]  There are no interested entities or persons that must be listed in this certificate under rule 8.208.

    b.  [ **✖** ]  Interested entities or persons required to be listed under rule 8.208 are as follows:

| **Full name of interested<br>entity or person** | **Nature of interest<br>*(Explain):*** |
|---|---|
| (1)  ICU, Inc. | Parent non-profit corporation and sole member of ICU LLC |
| (2) | |
| (3) | |
| (4) | |
| (5) | |

[  ]  Continued on attachment 2.

**The undersigned certifies that the above-listed persons or entities (corporations, partnerships, firms, or any other association, but not including government entities or their agencies) have either (1) an ownership interest of 10 percent or more in the party if it is an entity; or (2) a financial or other interest in the outcome of the proceeding that the justices should consider in determining whether to disqualify themselves, as defined in rule 8.208(e)(2).**

Date:  February 18, 2025

Jennifer L. Holliday
_____
(TYPE OR PRINT NAME)

▶  _____
(SIGNATURE OF APPELLANT OR ATTORNEY)

Page 1 of 1

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>APP-008 [Rev. January 1, 2017] | **CERTIFICATE OF INTERESTED ENTITIES OR PERSONS** | Cal. Rules of Court, rules 8.208, 8.488<br>*www.courts.ca.gov* |

TO BE FILED IN THE COURT OF APPEAL | APP-008

| COURT OF APPEAL    APPELLATE DISTRICT,  DIVISION | COURT OF APPEAL CASE NUMBER:<br>B333812 |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:              STATE BAR NUMBER:   261343<br>NAME:  Jennifer L. Holliday<br>FIRM NAME: Law Office of Jennifer L. Holliday<br>STREET ADDRESS:  7190 W. Sunset Blvd. #1430<br>CITY:  Los Angeles                    STATE:  CA      ZIP CODE:  90046<br>TELEPHONE NO.:  310-600-6078          FAX NO.:<br>E-MAIL ADDRESS:   JLHolliday@Proton.me<br>ATTORNEY FOR (name):     Garrett Ziegler; ICU, LLC, a Wyoming Limited Liability Company d/b/a Marco Polo USA | SUPERIOR COURT CASE NUMBER:<br>23SMCV01418 |

| APPELLANT/<br>PETITIONER:    Garrett Ziegler; ICU, LLC, a Wyoming Limited Liability Company d/b/a<br>RESPONDENT/       P. Kevin Morris<br>REAL PARTY IN INTEREST: |
|---|

| **CERTIFICATE OF INTERESTED ENTITIES OR PERSONS** |
|---|
| *(Check one):*  [✖]  INITIAL CERTIFICATE     [ ]  SUPPLEMENTAL CERTIFICATE |

**Notice:  Please read rules 8.208 and 8.488 before completing this form. You may use this form for the initial certificate in an appeal when you file your brief or a prebriefing motion, application, or opposition to such a motion or application in the Court of Appeal, and when you file a petition for an extraordinary writ. You may also use this form as a supplemental certificate when you learn of changed or additional information that must be disclosed.**

1.  This form is being submitted on behalf of the following party *(name* ):   Garrett Ziegler

2.  a.  [✖]  There are no interested entities or persons that must be listed in this certificate under rule 8.208.

   b.  [ ]  Interested entities or persons required to be listed under rule 8.208 are as follows:

| **Full name of interested<br>entity or person** | **Nature of interest<br>*(Explain):*** |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |

   [ ] Continued on attachment 2.

**The undersigned certifies that the above-listed persons or entities (corporations, partnerships, firms, or any other association, but not including government entities or their agencies) have either (1) an ownership interest of 10 percent or more in the party if it is an entity; or (2) a financial or other interest in the outcome of the proceeding that the justices should consider in determining whether to disqualify themselves, as defined in rule 8.208(e)(2).**

Date:  Feb. 17, 2025

Jennifer L. Holliday
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF APPELLANT OR ATTORNEY)

Page 1 of 1

| Form Approved for Optional Use<br>Judicial Council of California<br>APP-008 [Rev. January 1, 2017] | **CERTIFICATE OF INTERESTED ENTITIES OR PERSONS** | Cal. Rules of Court, rules 8.208, 8.488<br>*www.courts.ca.gov* |
|---|---|---|

# TABLE OF CONTENTS

Certificates of Interested Parties……………………………………………2,3

Table of Authorities……………………………………………………………5

Introduction and Factual Background……………………………………7

Statement of Appealability……………………………………………………9

Standard of Review……………………………………………………………10

Statement of the Case…………………………………………………………11

Summary of the Argument……………………………………………………13

Argument…………………………………………………………………………14

### I.    The Trial Court Erred in Denying the Anti-SLAPP Motion

A. Litigation Privilege Bars Plaintiff's Claims

B. Civil Claims Under the Criminal Statutes Cited Lack a Private Right of Action and Cannot Survive Prong II Scrutiny

C. Remaining Claims Are Barred by the First Amendment

D. The Trial Court's "Two-Bucket" Approach Is Legally Flawed

E. Failure to Dismiss Claims Against Marco Polo

### II.    Defendants Are Entitled to Attorneys' Fees and Costs

Conclusion…………………………………………………………………………21

Certificate of Compliance……………………………………………………22

Proof of Service…………………………………………………………………23

# TABLE OF AUTHORITIES

<u>CONSTITUTIONAL AUTHORITY</u>

Calif. Const. amend. I................................................................7, 8
U.S. Const. amend. I................................................................7, 8

<u>STATUTES</u>
Civ. Code § 47(b)......................................................................*passim*
Code Civ. Proc. § 425.16............................................................6
Code Civ. Proc. § 425.16(c)(1)....................................................20
Code Civ. Proc. § 904.1(a)(13)....................................................8
Penal Code § 529....................................................................*passim*
Penal Code § 653.2..................................................................*passim*

<u>CASES</u>

*Animal Legal Defense Fund v. Mendes* (2008)
    160 Cal.App.4th 136, 142.................................................17
*Albertson v. Raboff,*
    46 Cal. 2d 375, 381.........................................................18
*Baral v. Schnitt* (2016)
    1 Cal.5th 376.............................................................*passim*
*Bartnicki v. Vopper* (2001)
    532 U.S. 514, 527-28.....................................................20
*Collins v. Waters* (2023)
    308 Cal.Rptr. 3d 326.....................................................21
*Counterman v. Colorado* (2023)
    600 U.S. 66 ...........................................................13, 18
*Briggs v. Eden Council for Hope & Opportunity* (1999)
    19 Cal.4th 1106, 1123....................................................15
*Flatley v. Mauro* (2006)
    39 Cal.4th 299, 325.......................................................9
*Hustler Magazine v. Falwell* (1988)
    485 U.S. 46, 56..........................................................17
*Jacob B. v. County of Shasta* (2007)
    40 Cal.4th 948, 955......................................................16
*Ketchum v. Moses* (2001)
    24 Cal.4th 1122, 1131...................................................21

*Navellier v. Sletten* (2002)
      29 Cal.4th 82, 88-89 ……………………………………………14, 15, 20
*New York Times Co. v. Sullivan* (1964)
      376 U.S. 254, 279-280……………………………………………17, 18
*Oasis West Realty, LLC v. Goldman* (2011)
      51 Cal.4th 811, 820…………………………………………………..10
*Reader's Digest Assn. v. Superior Court* (1984)
      37 Cal.3d 244, 256…………………………………...……………..6
*Rosenaur v. Scherer*,
      88 Cal.App.4th 260, 283 (2001)……………………………………21
*Silberg v. Anderson*,
      50 Cal.3d 205, 212 (1990)…………………………………………15, 16
*Sonora Diamond Corp. v. Superior Court* (2000)
      83 Cal.App.4th 523, 538…………………………………………20
*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004)
      122 Cal.App.4th 1049, 1056……………………………………10
*Wilson v. Parker, Covert & Chidester* (2002)
      28 Cal.4th 811, 821……………………………………………19

<u>MISCELLANEOUS</u>
Joint Appendix (cited as JA)……………………………………*passim*

JA, Vol's. 1-15
JA, Vol.'s 29-30
JA, Vol. 30

## INTRODUCTION AND FACTUAL BACKGROUND

Defendants / Appellants / Cross-Respondents Garrett Ziegler and ICU, LLC (hereinafter referred to as "Marco Polo") appeal an order granting in part, but incorrectly denying in part, their Special Motion to Strike under the anti-SLAPP statute.  Although the trial court correctly found that the Defendants met their burden to show the alleged conduct was protected under the first prong of the analysis, the trial court used an incorrect legal standard and novel approach for the second prong of the analysis where a Plaintiff must meet his burden to show a possibility of prevailing on the merits on each claim. See Code Civ. Proc. § 425.16; See also *Baral v. Schnitt* (2016) 1 Cal.5th 376, 381. As a threshold issue, the trial court neglected to identify the applicability of the litigation privilege which operates as a complete bar to claims involving communications made in connection with legal proceedings.  See Civ. Code § 47(b).

This appeal arises from a lawsuit filed by Plaintiff / Respondent and Cross-Appellant P. Kevin Morris, a licensed attorney who represents Hunter Biden, the son of (then) President Joseph R. Biden, against Defendants / Appellants and Cross-Respondents Ziegler and Marco Polo concerning investigative reporting on matters of public concern including Hunter Biden's abandoned laptop computer. [JA00028-JA00092].  In fact, Marco Polo published a *Report* on the laptop. [Vol. 26-28 JA06999-JA07674]  Morris acknowledges that in "May of 2022, news articles appeared describing Morris as a friend of Hunter Biden stating that Morris was financially helping Hunter Biden," and cites an article in the *New York Post*. [JA00034 ¶ 22, FN 6].

The title of the article included in the Complaint is "Meet Hunter Biden's Sugar Brother Lawyer Kevin Morris." [*Id*.]

In 2022, Morris mistakenly believed he was exchanging text messages with someone named "Jon Cooper," [JA00045] and when he realized he had disclosed sensitive information about Hunter Biden to someone else, Morris sent a barrage of abusive and threatening texts directed to the other party whom he alleges to be Defendant / Appellant Garrett Ziegler. [JA00062-JA00065]  Morris mistakenly assumed, and still assumes, despite Mr. Ziegler's unrebutted sworn statement to the contrary [JA-GZ DEC], that Mr. Ziegler was on the other end of the text exchange. [See e.g. JA00034] Morris admits he threatened Ziegler with legal action. [JA00034:15] ("Morris sent a text to Ziegler threatening him with legal action for his misconduct.")

Morris alleges that some of the text messages he sent were published on Ziegler's social media accounts along with a post by Ziegler truthfully stating that Hunter Biden's lawyer had threatened him. [JA00034; JA00073]   Every allegation Morris makes about Ziegler's conduct, apart from the impersonation of Jon Cooper, involves conduct following Morris's unequivocal threat of legal action.

Plaintiff alleges that Ziegler's republication of Morris's threatening messages and related commentary – including publishing previously published photographs of Morris and his family with disparaging remarks [e.g. JA00067] - caused reputational harm and emotional distress to Morris. [JA00039 ¶ 52] However, the conduct at issue is entirely protected under the First Amendment and/or the litigation privilege under Civil Code § 47(b). See U.S. Const. amend I; Calif. Const. Amend. I Moreover, Plaintiff's legal theories rely on

8

criminal statutes that lack private rights of action which the trial court
failed to fully identify. [See JA08197]

The trial court properly found that Plaintiff did not meet his
burden on prong two to prove minimal merit under his "doxing" claim
under Penal Code § 653.2 which did not include a private right of
action. [JA08197-JA08201]. The trial court correctly dismissed the
"doxing" claim but erred in allowing the remaining claims to proceed
despite clear constitutional and statutory bars to liability. [JA08201].
For example, the trial court neglected to identify that the
impersonation statute, Penal Code § 529, also does not include a
private right of action but allowed that claim to proceed. [JA08204]

In analyzing the Special Motion to Strike, the trial court, having
taken the hearing off calendar [JA08181] also improperly failed to treat
the corporate defendant independently of the individual defendant and
was required to grant the motion in its favor, dismiss all claims, and
award the entity party its attorney's fees and costs. [See JA08179-
JA08219] The trial court's failure to do so leaves the corporate party to
defend an entirely meritless lawsuit.  This must be reversed.

## STATEMENT OF APPEALABILITY

This appeal is proper because an order denying an anti-SLAPP
motion is immediately appealable.  Cal. Code Civ. Proc. § 904.1(a)(13);
See also *Baral v. Schnitt* (2016) 1 Cal.5th 376, 381

## STANDARD OF REVIEW

This Court reviews de novo the denial of an anti-SLAPP motion. *Flatley v. Mauro*, 39 Cal.4th 299, 325 (2006). Under this standard, the appellate court exercises independent judgment in reviewing both the legal issues and the sufficiency of the evidence without deference to the trial court's ruling. *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1056. This review extends to both prongs of the anti-SLAPP analysis as set forth in the statute, requiring the appellate court to determine (1) whether the defendants met their burden to show their conduct is protected activity as defined in the anti-SLAPP statute; and (2) whether the plaintiff has demonstrated "minimal merit," a probability of prevailing on each claim. *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.

Where, as here, the trial court has found that the defendants' conduct is protected under the first prong but has misapplied the second prong by allowing legally deficient claims to survive, the error is one of law, subject to full appellate review. See *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385.

## STATEMENT OF THE CASE

On April 3, 2023, Plaintiff filed a lawsuit alleging doxing, impersonation, false light, harassment, and intentional infliction of emotional distress. [JA00028-JA00092] Although Morris included a claim for civil harassment, he did not file the mandatory judicial council form required under Code of Civil Procedure § 527.6(x)(1). [See *Id*.] The statute does not provide for monetary damages, limiting relief to an injunction, but Mr. Morris nevertheless improperly seeks $1,000,000 in damages for this claim. [JA00036]. Morris's claims for impersonation and doxing are based on statutes that do not include a private right of action. See Pen. Code § 529, § 653.2.

In his Complaint, Mr. Morris <u>admitted he threatened legal action</u> against a person he believed was Mr. Ziegler on May 29, 2022. [JA00034 at 15]. Mr. Morris also included copy of a purported text exchange with Garrett Ziegler, but no telephone numbers are reflected on the document, leaving unresolved questions about the identity of the party to the text exchange with Morris. [JA00064-JA00065]. In the copy of the text exchange Mr. Morris provided, Mr. Morris makes a number of threatening, abusive statements reiterating his threat of legal action:

**"Watch your eyes... Because the latest thing in prisons is eye socket fucking...We have 8 SDNY prosecutors on our team...All this took was a phone call**...**8 lawyers with 10+ years as AUSA's in SDNY... You're going to prison and we're going to get all of the money your family has and you will work for us for the rest of your life... We will follow you to the ends of the earth."** [JA00045-JA00065]. Ziegler, who submitted an unrebutted

sworn declaration stating he never impersonated Jon Cooper acquired copies of these messages from a whistleblower [JA000832], published some of them, and posted, **"Just got threatened by Hunter Biden's attorney and fixer, Kevin Morris. More to come."** [JA00073] Morris alleges that Mr. Ziegler "cherry picked" the text messages he published which forms the basis of Morris's claim for false light. [JA00034 ¶26] After the publication of the text exchange, Mr. Ziegler allegedly published the tail number to Morris's plane, satirical photographs of Mr. Morris, photographs of Morris's family, and more. [JA00029]

On June 20, 2024, Defendants filed a Special Motion to Strike under the anti-SLAPP statute, asserting that the conduct at issue—newsgathering and publication of information about a public figure—is protected and that Plaintiff's claims were meritless. [JA00299-JA00327]. Mr. Ziegler filed a sworn Declaration in support of the motion [JA00328-JA00335] and a Request for Judicial Notice [JA Vol. 3-12, JA00338-03241]

Morris also filed a Request for Judicial Notice listing twenty-seven items [JA07759-07964] including Ziegler's X posts and various news articles about Hunter Biden, Morris, Ziegler, and Mr. Ziegler's relationship with Donald J. Trump, President of the United States. [See e.g. JA07759]

On October 13, 2023, the trial court granted in part and denied in part the anti-SLAPP motion. [JA08179-JA08219] The court struck the doxing claim, finding no private right of action, but denied the motion as to the remaining causes of action, holding that while Defendants' conduct was protected under the First Amendment, Plaintiff had

demonstrated "minimal merit" under the second prong of the anti-SLAPP analysis. [JA08211] However, the trial court also denied Plaintiff's motion for a preliminary injunction, recognizing that Defendants' speech did not constitute a true threat or incitement under *Counterman v. Colorado* (2023) 600 U.S. 66. [JA08219].

Defendants timely filed the notice of this appeal on November 8, 2023, and timely filed this brief on February 18, 2025. [JA08223]

## SUMMARY OF THE ARGUMENT

The trial court correctly found that Defendants' conduct is protected under the first prong of the anti-SLAPP test but erred in denying dismissal under the second prong. As a threshold matter, the trial court failed to identify that the litigation privilege bars Morris's claims based on Ziegler's conduct following Morris's unequivocal threat of criminal prosecution and imprisonment to Ziegler.

1. The Litigation Privilege Bars Plaintiff's Civil Claims. Plaintiff's allegations involve communications related to anticipated litigation, which are absolutely immune under Civ. Code § 47(b).

2. Plaintiff's Claims Under Criminal Statutes Are Legally Deficient. Plaintiff's claims for doxing and impersonation arise under criminal statutes that lack private rights of action. Penal Code §§ 653.2 (doxing) and 529 (impersonation).

3.  The First Amendment Bars the Remaining Claims. Plaintiff, a
public figure, must establish actual malice to sustain his false
light and IIED claims—a burden he cannot meet.

4.  The Trial Court's Novel "Two-Bucket" Approach Was Legally
Flawed. The trial court misapplied the second prong of the anti-
SLAPP test by (a) improperly analyzing types of claims, as
opposed to each independent claim, and (b) improperly weighing
factual disputes instead of assessing legal sufficiency.  The trial
court therefore overlooked key, claim-dispositive issues.  See
Code Civ. Proc. § 425.16; see also *Baral v. Schnitt* (2016) 1
Cal.5th 376

5.  The Court Erred in Failing to Dismiss Marco Polo.  Marco Polo, a
nonprofit engaged in investigative journalism, is entitled to
heightened First Amendment protections and cannot be
vicariously liable for Ziegler's independent speech.  Morris did not
make any factual showing that any claims asserted against
Marco Polo have minimal merit.

## ARGUMENT

## I.    The Trial Court Erred in Denying the Anti-SLAPP
Motion as to the Remaining Claims

Noting that "Plaintiff is a semi-public figure whose information is
already publicly available," [JA08195: 24-25] the trial court correctly
found that Defendant met his burden to show the conduct at issue was
protected under the first prong of the anti-SLAPP analysis.  [JA08188-

JA08196; JA08196:8-9]  The trial court erred, however, in allowing any
of Plaintiff's claims to proceed.  Under the second prong of the anti-
SLAPP analysis, the trial court was required to determine whether
Morris could show that each of his claims had "minimal merit," the
requisite probability of prevailing.  See *Navellier v. Sletten* (2002) 29
Cal. 4th 82, 88-89.  "[I]n order to establish the requisite probability of
prevailing (§ 425.16, subd. (b)(1)), the plaintiff need only have 'stated
and substantiated a legally sufficient claim.'" *Navellier v. Sletten* (2002)
29 Cal. 4th 82, 88 quoting *Briggs v. Eden Council for Hope &
Opportunity* (1999) 19 Cal. 4th 1106, 1123, [citations omitted]  Because
Morris failed to meet his burden under the anti-SLAPP framework,
because the First Amendment and/or the California litigation privilege
bars liability as a matter of law, and because the trial court mistakenly
overruled key evidentiary objections without explanation, this Court
should reverse the ruling and dismiss each of the causes of action.

## A. Litigation Privilege Bars Plaintiff's Claims

The litigation privilege, codified in *Civil Code § 47(b)*, provides
absolute protection to statements made in connection with judicial
proceedings, including communications made in anticipation of
litigation.  See *Rubin v. Green* (1993) 4 Cal.4th 1187; *Silberg v.
Anderson*, 50 Cal.3d 205, 212 (1990).

Here, a lawyer representing the son of then-President Biden, the
Chief Executive of the United States, openly admits he sent text
messages to a person he believed to be Garrett Ziegler and, identifying
him by name, explicitly threatened prosecution ("We have 8 SDNY
prosecutors on our team…You're going to prison"), making Ziegler's
publication of those messages – and any subsequent related conduct

involving Morris – privileged. *Id.* Plaintiff's claims, following his threat to have Ziegler prosecuted [JA00065], arise from Ziegler's statements and communications made in the context of legal disputes—rendering them non-actionable.  Civ. Code § 47(b).

"For well over a century, communications with "some relation" to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b)." *Rubin*, 4 Cal.4th at 1193 (Cal. 1993)  The trial court erred in failing to recognize this absolute privilege, which alone warrants dismissal of Morris's claims. See *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.  In *Silberg*, the California Supreme Court held that the privilege is absolute and applies to all publications having "some relation" to litigation, even if the publication "is made outside of the courtroom and no function of the court or its officers is involved." *Id.* citing *Albertson v. Raboff*, 46 Cal. 2d 375, 381.  The litigation privilege applies even to allegedly wrongful or malicious conduct if the communications or publications are reasonably connected to litigation.  *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955

As Mr. Ziegler's alleged conduct is fully privileged, the trial court erred in failing to dismiss the claims under prong two because Plaintiff cannot show minimal merit on these claims as a matter of law. See Code Civ. Proc. § 425.16

## B. Claims Under the Criminal Statutes Lack a Private Right of Action

Plaintiff's claims for doxing and impersonation also fail because these statutes do not provide a private right of action. See Pen. Code § 529; Pen Code § 653.2 Under well-settled California law, courts do not

imply private rights of action absent clear legislative intent. *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305.

The trial court correctly dismissed the doxing claim but failed to dismiss the impersonation claim—despite both suffering from the same legal defect. [JA08205]. Plaintiff has no probability of success on claims based on a statute that lacks a private right of action; therefore, the claims should be dismissed. See *Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136, 142

## C. The First Amendment Bars the Remaining Claims

The First Amendment categorically prohibits liability for speech about public figures absent clear and convincing evidence of actual malice. *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 279-280. The trial court already determined that Plaintiff is a public figure and that Defendants' speech concerned matters of public concern. [JA08203]

Thus, Plaintiff's claims for false light and intentional infliction of emotional distress (IIED) cannot survive absent a showing of actual malice—i.e., knowledge of falsity or reckless disregard for the truth. *Hustler Magazine v. Falwell* (1988) 485 U.S. 46, 56 (public figures must meet actual malice standard for emotional distress claims); *Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 256 (false light claims require the same actual malice standard as defamation). Plaintiff presented no evidence of actual malice, improperly asking the court to make inferences, and there is simply no evidence of a false statement. [JA08203]  The trial court erred in allowing these claims to proceed.

Moreover, Plaintiff's harassment claim is legally improper because California law does not recognize a private cause of action for civil harassment for money damages, and harassment claims must be pursued through a restraining order under Code of Civil Procedure § 527.6 using the mandatory Judicial Council form. See *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 652 (civil harassment statute is a procedural mechanism for restraining orders, not an independent tort); *Nora v. Kaddo* (2004) 116 Cal.App.4th 1026, 1029 (failure to follow statutory procedure bars relief). The trial court incorrectly permitted Plaintiff to circumvent statutory requirements, warranting reversal.

Further, Plaintiff's harassment claim cannot survive First Amendment scrutiny absent evidence of a true threat— speech so unambiguous and immediate that it instills fear of imminent harm. *Counterman v. Colorado*, 600 U.S. 66 (2023)  Plaintiff's allegations in the Complaint fail to meet this high standard, and posting lyrics to a television show theme song on social media does not constitute a threat, much less an imminent one. See *Id.*

### D. The Trial Court's Novel "Two-Bucket" Approach Was Legally Flawed

The trial court did not provide any authority for one of the legal standards the court used in analyzing the issues in prong two.  [Order, p. 20:19-21] The trial court wrote,

> "The question of plaintiff's factual showing has (again) two components. The first is whether the alleged misconduct is immune such that even if plaintiff's allegations are true, there is no liability.  The second is just factual: has plaintiff put forth enough evidence to create a triable issue of fact." [*Id.*]

The trial court offered no authority for this standard, and the court's language and reasoning suggests it improperly weighed competing inferences and credibility, which is explicitly prohibited under the anti-SLAPP standard as this Court has repeatedly made clear.  See e.g. *Collins v. Waters* (2023) 308 Cal.Rptr. 3d 326 The phrase, "has plaintiff put forth enough evidence to create a triable issue of fact," implies a summary judgment standard, where the existence of any disputed material fact means the case must go to trial.  That is not the anti-SLAPP standard; the correct standard is whether a plaintiff has provided admissible evidence that, if believed, would establish a prima facie case.  *Baral v. Schnitt* (2016) 1 Cal.5th 376, 385.  The trial court does not weigh evidence or decide credibility; it only determines whether the plaintiff's evidence, if credited, would establish a claim. *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821

The trial court improperly divided the claims into two categories—those without a private right of action (doxing) and those allegedly presenting factual issues (false light, IIED, and impersonation). This misapplied the second prong of the anti-SLAPP test, which requires courts to assess both legal sufficiency and evidentiary support for each claim.  The penal code statute (529 PC) for impersonation was not included in the first category despite the fact that it includes no private right of action.

By failing to apply the correct standard, the trial court improperly allowed legally deficient claims to proceed. Under *Baral v. Schnitt*, courts must analyze each claim individually to determine whether the plaintiff has provided legally and factually sufficient evidence. *Baral v. Schnitt*, 1 Cal.5th 376, 384-85 (2016). Here, the trial

court failed to conduct that analysis properly, resulting in legal error and undue prejudice to Ziegler and Marco Polo who are entitled to relief under the statute.  See *Navellier v. Sletten*, 29 Cal.4th 82, 88-89 (2002).

### E. Failure to Dismiss Claims Against Marco Polo Is Reversible Error

The trial court failed to analyze the claims against Marco Polo separately, instead treating it as indistinguishable from Ziegler. California law prohibits such vicarious liability absent specific allegations of wrongdoing by the corporate entity itself.  The U.S. Supreme Court has repeatedly recognized that journalistic entities cannot be held liable for their reporting absent actual malice or direct legal wrongdoing. See *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918-20 (1982); See also *Bartnicki v. Vopper* (2001) 532 U.S. 514, 527-28

Here, Plaintiff presented no allegations linking Marco Polo to any actionable conduct. [See JA00028-JA00092] The trial court's failure to separately analyze the corporate defendant under the anti-SLAAP test and dismiss the claims against Marco Polo constitutes clear legal error warranting reversal.  See e.g. *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 (issuing a writ of mandate to the trial court to vacate its order denying the corporate party's motion to quash upon finding that a plaintiff had not sufficiently alleged facts regarding the relationship between the individual and the entity or any basis for liability.)

## II.    Defendants Are Entitled to Attorneys' Fees and Costs

Under California's anti-SLAPP statute, Defendants are entitled to mandatory fee recovery for both trial and appellate litigation. Code Civ. Proc. § 425.16(c)(1); See also *Ketchum v. Moses*, 24 Cal.4th 1122, 1131 (2001) Courts routinely award fees to prevailing anti-SLAPP defendants to deter strategic lawsuits against public participation. Because Plaintiff's claims are legally and constitutionally deficient, Defendants are entitled to full recovery of attorneys' fees and costs incurred at both the trial and appellate levels. See e.g. *Rosenaur v. Scherer*, 88 Cal.App.4th 260, 283 (2001).

## CONCLUSION

For the reasons stated above, this Court should:

1.    Reverse the trial court's order denying the anti-SLAPP motion as to the remaining claims; and

2.    Remand with instructions to grant the motion and dismiss the entire complaint; and

3.    Award Defendants their attorneys' fees and costs incurred at both the trial and appellate levels.

Respectfully submitted,

Date:  Feb. 18, 2025

**JENNIFER L. HOLLIDAY**
SBN 261343
ATTORNEY FOR DEFENDANTS /
APPELLANTS / CROSS-
RESPONDENTS
GARRETT ZIEGLER, ICU LLC D/B/A
MARCO POLO

## CERTIFICATE OF COMPLIANCE

Counsel of Record hereby certifies that pursuant to Rule 8.204(c)(1), 8.360(b)(1) and/or Rule 8.74(b) of the California Rules of Court, Appellant's Opening Brief is in text-searchable format, produced using 13-point Century Schoolbook type, and contains approximately 3,538 words, which is less than the total words permitted by the rules of court. Counsel relies on the word count of the computer program used to prepare this brief.


Dated:  Feb. 18, 2025                    __/s/ *Jennifer L. Holliday*___
                                         Jennifer L. Holliday

APP-009E

| PROOF OF ELECTRONIC SERVICE (Court of Appeal) | |
|---|---|
| **Notice: This form may be used to provide proof that a document has been served in a proceeding in the Court of Appeal. Please read** *Information Sheet for Proof of Service (Court of Appeal)* **(form APP-009-INFO) before completing this form.** | |
| Case Name:  Morris v. Ziegler et al.<br>Court of Appeal Case Number:  B333812<br>Superior Court Case Number: | |

1. At the time of service I was at least 18 years of age.

2. a. My ☐ residence ☒ business  address is *(specify):*
   7190 W. Sunset Blvd. #1430, Los Angeles, CA 90046

   b. My electronic service address is *(specify):*  JLHolliday@Proton.me

3. I electronically served the following documents *(exact titles):*
   Appellant's Opening Brief

4. I electronically served the documents listed in 3. as follows:

   a. Name of person served:  Bryan Sullivan
      On behalf of *(name or names of parties represented, if person served is an attorney):*
      P. Kevin Morris

   b. Electronic service address of person served:  Bsullivan@earlysullivan.com

   c. On *(date):*  Feb. 18, 2025

   ☐ The documents listed in 3. were served electronically on the persons and in the manner described in an attachment *(write "APP-009E, Item 4" at the top of the page).*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  February 18, 2025

Jennifer L. Holliday
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)

▶ _____
(SIGNATURE OF PERSON COMPLETING THIS FORM)

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
APP-009E [New January 1, 2017]

**PROOF OF ELECTRONIC SERVICE**
**(Court of Appeal)**

www.courts.ca.gov

## PROOF OF SERVICE

At the time of service, I was over 18 years old and not a party to this action. I am in the County of Los Angeles, State of California. My business address is 7190 W. Sunset Blvd. #1430, Los Angeles, CA 90046.

On February 18, 2025, I served true copies of Appellant's Opening Brief on the interested parties in this action as follows:

Clerk of the Court
California Court of Appeal
Second Appellate District
Division P

[Electronic Service Under CRC 8.212(c)(2)]

I served an electronic copy of the document via the Court's TrueFiling portal on February 18, 2025 following the ordinary business practice.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 18, 2025 at Los Angeles, California.

_____
Jennifer L. Holliday