1  JENNIFER L. HOLLIDAY SBN 261343
2  JLHolliday@Proton.me
3  7190 W. Sunset Blvd. #1430
   Los Angeles, CA 90046
4  (805)622-0225

5  **ATTORNEY FOR DEFENDANTS**

6

7

8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  ROBERT HUNTER BIDEN,                )    Case No. 2:23-CV-07593-HDV-KSx
                                        )
12          Plaintiff,                  )
                                        )
13  v.                                  )
                                        )    **DEFENDANTS' NOTICE OF**
14  GARRETT ZIEGLER, ICU, LLC           )    **MOTION AND MOTION FOR**
                                        )    **ATTORNEYS' FEES AND COSTS AS**
15  (d/b/a Marco Polo),                 )    **THE PREVAILING PARTY UNDER**
                                        )    **F.R.C.P. 54(B) AND CALIFORNIA**
16          Defendants.                 )    **PENAL CODE § 502;**
                                        )    **MEMORANDUM OF POINTS AND**
17                                      )    **AUTHORITIES; DECLARATION OF**
                                        )    **HOLLIDAY**
18                                      )
                                        )
19                                      )
                                        )
20                                      )    **THE HON. HERNÁN D. VERA**
                                        )
21                                      )
                                        )    **DATE:        May 1, 2025**
22                                      )    **TIME:        10:00 AM**
                                        )    **CRTRM:       5B**
23                                      )
                                        )
24                                      )
                                        )
25                                      )
                                        )
26  _____  )

27

28

                            1

1

**TABLE OF CONTENTS**

2  NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES ....................1

3  STATEMENT OF REQUESTED RELIEF.................................................................1

4  MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

5      **I. FACTUAL BACKGROUND** ..........................................................................2

6      A. Biden Filed a Complaint with No Evidentiary Support…………..................2

7      B. Biden Sought No Evidence but Forced Defendants to Litigate …………......2

8      C. Biden's Conduct Drove Up Litigation Costs .................................................4

9      D. Defendants Prevailed……………………………..................................................6

10     E. Biden Moved to Dismiss Rather than Appear at Deposition and Left the

11     Country while the Motion Was Pending Without Telling the Court……………7

12     **II. ARGUMENT**...................................................................................................7

13     A. Defendants Are Entitled To Recover All Reasonable Attorney's Fees .........7

14     B. The Requested Fee Amount Is Reasonable ...................................................11

15     **III. CONCLUSION** ..........................................................................................16

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES:**

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on May 1, 2025  at 10:00 AM in Courtroom 5B of the United States District Court for the Central District of California, located at First Street Courthouse, 350 W. 1st Street, Courtroom 5B, 5th Floor, Los Angeles, California 90012, Defendants Garrett Ziegler and ICU, LLC will and hereby do move this Court for an order granting attorneys' fees and costs pursuant to **California Penal Code § 502(e)(2)** and **Federal Rule of Civil Procedure 54(d)(2)**.  This motion is made on the grounds that Defendants are the prevailing parties in an action partially brought under the CFAFA, Section 502 of the California Penal Code, following the Court's dismissal of Plaintiff's claims with prejudice, which constitutes an adjudication on the merits and materially alters the legal relationship between the parties. Defendants have incurred substantial legal fees in defending this action as set forth in the accompanying Declarations and Memorandum.

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Jennifer Holliday and accompanying exhibits, the pleadings and records on file in this action, and any further evidence or argument as may be presented at the hearing.

### STATEMENT OF REQUESTED RELIEF

Pursuant to Federal Rule of Civil Procedure 54(d)(2) and California Penal Code § 502(e)(2), Defendants request an award of attorney's fees in the amount of $93,000.

### LOCAL RULE 7-3 COMPLIANCE

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 13, 2025 as required by Local Rule 54-7.

1

2    DATE:  March 27, 2025                    _/S/_____

3                                              JENNIFER L. HOLLIDAY

4                                              COUNSEL FOR DEFENDANTS

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff R. Hunter Biden is the son of former President Joseph R. Biden, Jr., and Mr. Biden filed this lawsuit against Defendants Garrett Ziegler and ICU, LLC ("Marco Polo") in September 2023 alleging damages under the Computer Fraud and Abuse Act and the California Comprehensive Computer Data Access and Fraud Act. After incurring substantial fees over the course of approximately 18 months, and in advance of depositions, Defendants elected to replace their counsel in February 2025. New counsel noticed an appearance and immediately met and conferred with Mr. Biden's counsel on February 21, 2025 who had an opportunity to avoid any further fees or costs by offering to dismiss the case at that time which would have obviated Defendant Garrett Ziegler from traveling from Illinois to California the following week when depositions were scheduled and indeed terminating the action entirely. Instead, Mr. Biden's team did not seek to dismiss the case and explained Mr. Biden would need to move his deposition to mid-March due to a conflict with another trial. On February 21, 2025, Defendants sent a Rule 7-3 letter seeking to meet and confer on a Motion for Summary Judgment.

Once again, Plaintiff could have obviated all of the unnecessary work, filings, and missed depositions simply by dismissing the case upon receiving the 7-3 letter at that time. Instead, Mr. Biden did not move to dismiss the case until March 5, 2025, and Mr. Biden did so not by noticed motion, as indicated on March 3, 2025 as indicated in a 7-3 letter received just prior to the conference before Chief Magistrate Judge Stevenson, but in a manner that required Defendant's counsel to drop everything and respond to the filing within twenty-four hours or risk losing

5

important legal rights for her clients (including a dismissal without prejudice) and risk failing to inform the Court of the context of the abrupt dismissal – the initiation of the motion for summary judgment.

**Defendants reasonably seek fees and costs not for the *entire* litigation but rather the portion of the litigation that could have been avoided by seeking dismissal at an earlier time or in a more reasonable manner: preparing for depositions that were ultimately missed, responding to the ex parte application, and drafting and serving the motion for summary judgment.** Given the deadlines set forth in the Scheduling Order, Defendant's counsel had to move quickly and dedicate significant time to these tasks.

## REASONABLE INFERENCE OF A BAD FAITH ACTION

At the time of filing this action, Mr. Biden was widely reported as publicly disputing that the data and computer at issue in this case was even his, creating substantial and unnecessary confusion throughout the litigation. See [Decl. of Holliday, Ex. 2] Moreover, neither Mr. Ziegler nor Marco Polo had been indicted for, much less convicted of, violating the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502; Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. In fact, there was no evidence that Mr. Ziegler had accessed a protected computer as that term is defined under the Computer Fraud and Abuse Act. Nevertheless, the Court denied Defendants' motion to dismiss and special motion to strike, ruling that Defendants' objections would be better addressed in "post-discovery briefing," and awarding Plaintiff's

6

counsel over $17,000 in fees on the motion.  Defendants paid the fee sanction in good faith and continued the litigation in anticipation of vindication.

Due to Plaintiff's obstruction and abrupt dismissal of the case, Defendants never had an opportunity to reach post-discovery briefing to vindicate their position. After approximately eighteen months of litigation, and – more importantly – after Defendants noticed depositions of Mr. Biden and third-party witness P. Kevin Morris, and after Marco Polo served its opening brief on a Motion for Summary Judgment, Mr. Biden suddenly moved ex parte to voluntarily dismiss the case without prejudice citing financial difficulties exacerbated by the Palisades Fire. [ECF 85-1] Mr. Biden could have, and should have, sought a stipulation to dismiss the case with prejudice and offer to pay the costs of the missed depositions to Defendants. Instead, Mr. Biden requested that the Court dismiss the case without prejudice, prompting further unnecessary conflict.

Defendants opposed this motion [ECF 88], successfully arguing that they would suffer legal prejudice as ICU, LLC had already begun the process of filing a Motion for Summary Judgment and expressed concerns that Mr. Biden had reportedly traveled to South Africa prior to obtaining a ruling on the motion and during a week when he agreed to appear for deposition. [ECF 91  In replying to Defendants' opposition papers, Mr. Biden's counsel audaciously described Defendants' counsel as "despicable" for her concerns about Mr. Biden's representations to the Court amid reports that Mr. Biden had traveled to South Africa on vacation before the Court even had an opportunity to rule on the Motion. [See Decl. of Holliday]

7

The Court ultimately agreed with Defendants that they would suffer legal prejudice if the Court granted the Motion without prejudice. **The Court dismissed the action with prejudice.** [ECF 91]  Following dismissal, Defendants learned that Mr. Biden had, indeed, left the United States while the motion was pending and was on a reported "ultra luxury vacation" in South Africa.

Under the Court's Standing Order, a party seeking summary judgment under Rule 56 must first serve its portion of the motion to the opposing party who then has fourteen days to respond, and then the moving party can reply, and the papers are filed as one omnibus filing. Defendant Marco Polo had served its portion of the joint filing before Plaintiff moved to dismiss.  Although Defendant's portion of the joint filing made clear that it was entitled to summary judgment on the merits, the action was dismissed with prejudice, and Defendants are the prevailing party.

Because Defendants successfully defended against the CDAFA claim, Defendants are entitled under California Penal Code § 502(e)(2) to all reasonable attorney's fees incurred in connection with that and all related claims.  Defendants thus request $93,000, an amount reflecting only a reasonable *portion* of fees Defendants incurred in this litigation for litigating the CDAFA and related claims, and also consistent with prevailing market rates for complex civil litigation in the Los Angeles Area given the 120 hours expended on those claims and in prevailing in this action.

## I.    FACTUAL BACKGROUND

A. Biden Filed a Complaint with No Evidentiary Support

In 2022, P. Kevin Morris, Plaintiff's "general counsel," (who claiming attorney-client privilege, served untimely objections to a Rule 45 subpoena) sent obscene text messages threatening Garrett Ziegler with *criminal* prosecution based on Mr. Ziegler's work on investigating a purportedly abandoned laptop computer seized by the Federal Bureau of Investigation and having once belonged to Plaintiff Hunter Biden. [See ECF 88]

In 2023, Mr. Ziegler was designated an expert witness in an unrelated proceeding against Mr. Biden in Arkansas where Mr. Biden was accused of failing to pay child support.  Those proceedings are sealed, but Mr. Ziegler was deposed by Mr. Biden's counsel of record in this action: Abbe Lowell.  The same month, Mr. Morris filed a lawsuit in the Superior Court of California against Defendants Garrett Ziegler and Marco Polo alleging impersonation, harassment, false light, and related claims.  In that action, Mr. Morris is represented by Mr. Biden's attorney of record in this action, Bryan Sullivan.  A few months later, Mr. Biden filed this lawsuit alleging that Mr. Ziegler and Marco Polo had violated the Computer Fraud and Abuse Act ("CFAA"), the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502, and the California unfair competition laws. The CFAA is a *criminal* statute with a limited private right of action for a civil claim where the damage resulting from illegal hacking resulted in losses exceeding $5,000.  The Supreme Court ruled that within the context of this statute, the terms "loss" and "damage" "focus on technological harms – such as the corruption of files – of the type unauthorized users cause to computer systems and data". *Van Buren v. United States*, 141 S.Ct. 1648, 1659-60 (2021).

Defendant Ziegler is a citizen of Illinois, and the Court exercised jurisdiction over Mr. Ziegler pursuant to the California Long Arm Statute and over the subject

9

matter based upon Mr. Biden's allegations of a violation of the CFAA and of the diversity of the parties plus damages exceeding $75,000.

In the Complaint, Mr. Biden failed to even articulate *how* Mr. Ziegler violated the CFAA, alleging: "The precise nature and extent of defendant's manipulation, tampering, alteration, damage and copying of plaintiff's data… either from their copy of the hard drive or the Plaintiff Biden laptop… is unknown to plaintiffs." [ Compl., p. 7 ¶ 29].  In fact, courts dismiss CFAA claims where the Plaintiff does not plausibly allege that the defendant has caused harm to a plaintiff's data or computer system. *hiQ Labs, Inc. v. LinkedIn Corp.,* 31 F.4th 1180, 1195 n. 12 (9th Cir. 2022)  (Holding that *Van Buren* requires "technological harm" to bring a viable civil action under the CFAA).

At oral argument on Defendants' Motion to Dismiss, the Court inquired, "Are you saying that it falls outside of CFAA entirely if it's a copy, because then it's not a computer or -- again, I didn't see any cases that talked about copy. So maybe it's a case of first impression here." [ECF, p. 63:9-20]

B. Biden Forced Defendants to Litigate

Garrett Ziegler and Marco Polo did not instigate this action and were forthright and candid about the investigative reporting on what became known as the "Hunter Biden laptop."  Mr. Ziegler maintained throughout the litigation that this was a First Amendment case where Plaintiffs were wrongfully using criminal statutes to suppress speech and the press.

Mr. Biden, however, was not candid and even expressed doubts that the laptop computer presumably at issue was his.  By denying that the laptop was his and by baselessly accusing Mr. Ziegler of what is effectively *criminal* conduct under both state and federal law, Mr. Biden's actions obstructed ongoing criminal

investigations related to evidence obtained on the laptop. For example, by alleging that Mr. Ziegler unlawfully obtained Mr. Biden's data or "hacked" his computer, Mr. Biden called into question the admissibility of the data obtained on that computer

During the course of this litigation, Mr. Biden was eventually convicted of crimes involving tax evasion and gun licensing and received a full presidential pardon in the last weeks of his father's presidency.

C. Biden's Conduct Drove Up Litigation Costs and Obstructed Discovery

Following the denial of the motion to dismiss, the parties conducted discovery, but Mr. Biden took no depositions, consulted no expert witnesses [See Decl. of Biden ECF 85-1], and generally failed to investigate his claims. [See e.g. Complaint, p. 7 ¶ 29 admitting he does not know how Defendants accessed his data]

Third party witness P. Kevin Morris, also represented by Plaintiff's counsel, was served with a Rule 45 subpoena to appear at deposition on February 26, 2025, but Mr. Morris did not appear. Instead of complying with the subpoena or moving to quash, Mr. Morris and Mr. Biden improperly asserted an untimely objection claiming "attorney-client privilege." However, "[n]ot all information transmitted to an attorney becomes cloaked with the attorney-client privilege." *U.S. v. White*, 970 F.2d 328, 334 (7th Cir. 1992)

Mr. Biden was supposed to appear on February 28, 2025, but Mr. Biden's counsel requested to reset the deposition on the basis that Mr. Biden and his counsel were engaged in another trial. On February 27, 2025, Mr. Biden's counsel admitted the trial had been taken off calendar in the other matter but insisted that Mr. Biden could not appear due to "other"

D. Defendants Prevailed

The Court dismissed the case with prejudice on March 13, 2025. [ECF 91]

1
2
3
4

> To be clear, the Court does not express any opinion concerning the underlying merits of the case. And the Court accepts the detailed representations made by Plaintiff as to the reasons motivating his request to dismiss. But under Fed. R. Civ. P. 41, and on these facts, Plaintiff's request to dismiss without prejudice is not warranted.

5
6
7

E. <u>Biden Moved to Dismiss Without Prejudice Rather than Appear at Deposition and Left the Country while the Motion Was Pending Without Telling the Court</u>

8
9
10

It has been widely reported that Mr. Biden is in South Africa on a luxury vacation, and based on the dates of published photographs, Mr. Biden left the country while his motion was pending and when he was supposed to appear for deposition, brazenly assuming the Court would grant his motion.

11

**II. ARGUMENT**

12
13

A. <u>Defendants Are Entitled to Recover All Reasonable Attorney's Fees</u>

14
15
16
17

Defendants seek an award of attorneys' fees and costs following the dismissal of Plaintiff's claims with prejudice. Under California Penal Code § 502(e)(2), the prevailing party is entitled to reasonable attorneys' fees in an action brought under the statute.  Additionally, Defendants are entitled to costs under Federal Rule of Civil Procedure 54(d).

18
19
20
21
22
23

The Court's dismissal with prejudice serves as an adjudication on the merits, entitling Defendants to recover their reasonable attorneys' fees and costs.  In this case, where counsel failed to inform the Court that Mr. Biden had left the country while his motion to dismiss was pending – and during a week when he was expected to appear for deposition – any award of fees and costs should be payable by counsel.

24
25

B. <u>The Requested Fee Amount Is Reasonable</u>

26
27

Defendants prevailed in this action not because Mr. Biden could not afford to proceed, particularly as the prevailing party would be entitled to collect fees and

28

costs – but because Mr. Biden knew he had no likelihood of prevailing. It was clear that Mr. Biden had not reasonably investigated the basic claims prior to filing this action as he had not even consulted an expert witness on a highly technical case.

Defendants request that the Court award $93,000 in attorney's fees under the lodestar method with a reasonable multiplier. Given the complexity of the case – which involve criminal statutes and private rights of action – and the risks presented in representing a party in a case opposite the son of the former President of the United States, Defendants seek a reasonable multiplier of 1.5. "The 'lodestar' method anchors the trial court's analysis… It may then adjust that figure based on a number of factors unique to the case." See *Serrano v. Priest* (1977) 20 Cal.3d 25, 49; *Ketchum v. Moses* (2001) 24 Cal.4th 1122

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion for Attorneys' Fees and Costs in the amount of **$93,000**, or such amount as the Court deems just and reasonable, pursuant to **California Penal Code § 502(e)(2)**, **FRCP 54(d)**, and the Court's inherent authority.

**Dated:** March 27, 2025                    Respectfully submitted,


_/s/_____

Jennifer L. Holliday
Attorney for Defendants

1

2                              **DECLARATION OF JENNIFER LINSLEY HOLLIDAY**

3    1.  I am counsel of record for Defendants ICU, LLC and Garrett Ziegler in this

4        action.  I submit this declaration in opposition to Plaintiff's *Ex Parte*

5        Application to Voluntarily Dismiss Action Pursuant to Fed. Rule Civ. Proc.

6        41(A)(2), to supplement my prior declaration testimony.  If called as a

7        witness, I could and would testify truthfully to the matters contained herein.

8    2.  As I previously stated in my prior declaration, I was advised on or about

9        March 6, 2025 that Defendant R. Hunter Biden was traveling to South Africa

10       for a vacation after filing his ex parte Application to voluntarily dismiss this

11       case without prejudice.

12   3.  I have previously submitted testimony that Mr. Biden's deposition in this case

13       was initially noticed for February 28, 2025, over a month prior to the close of

14       discovery.  On February 21, 2025, Mr. Biden's counsel sought to reset that

15       deposition based on a conflict with another trial in this court. That trial date

16       was vacated, but Mr. Biden's counsel then stated that "other" conflicts

17       prevented Mr. Biden from appearing on the initial deposition date. Based on

18       Mr. Biden's counsel's promise for him to appear during March 10-17, at

19       which time Mr. Ziegler's deposition would also take place, I did not bring a

20       motion to compel Mr. Biden to attend his deposition.  At that time, I had no

21       reason to believe that Mr. Biden would suddenly leave the United States.

22   4.  On March 3, 2025, the parties were set to meet with Chief Magistrate Judge

23       Karen L. Stevenson at 11:30 AM for an informal discovery conference to

24       discuss a motion to compel or for contempt based upon the failure to comply

25       with a Rule 45 Subpoena by P. Kevin Morris, Mr. Biden's self-described

26       "general counsel," a third-party witness in this case.  A few hours prior to the

27       conference, Mr. Biden's counsel sent a letter pursuant to Rule 7-3 requesting

28

                                             14

to meet and confer on a Motion to Voluntarily Dismiss the case. Before I could set a time to meet and confer on the Motion, Mr. Biden's counsel submitted an ex parte application to voluntarily dismiss.

5.   Mr. Biden submitted a declaration with his ex parte Application to voluntarily dismiss the case in which he detailed financial problems and explained that he needed to "focus [his] time and resources dealing with [his] relocation, the damage [he and his] family have incurred due to Pacific Palisades fires, and paying for [his] family's living expenses as opposed to this litigation." Mr. Biden signed this under penalty of perjury of the laws of the State of California including language substantially compliant with 28 U.S.C. § 1746. [See ECF 85-1, p. 4]. Mr. Biden signed the document in Los Angeles, California on March 4, 2025.

6.  On or about March 6, 2025, a news source reported that Mr. Biden was traveling to South Africa for a vacation.

7.  On March 12, 2025, I received information from a news source confirming that Mr. Biden was physically present in Cape Town, South Africa.

8.  Attached as Exhibit 1 hereto is a true and correct copy of my billing sheet reflecting time entries for my work from February 21, 2025 – March 13, 2025. I did not notice my appearance in this case until February 20, 2025, and due to the imminent depositions and the deadlines set forth in the Scheduling Order, I had to dedicate significant time to researching the background of the case, drafting motions, and preparing for the depositions which did not ultimately go forward.

9.  I graduated summa cum laude from the University of California at Los Angeles and earned a Juris Doctor degree from the Pepperdine University School of Law. I have been practicing law since 2008. From approximately 2011 through 2014, I worked with the law firm of Quinn Emanuel, a large

law firm with an excellent reputation and track record in complex litigation matters.  In my practice, I tend to focus on complex matters involving technology companies with elements of intellectual property and constitutional law.  In order to best serve my clients, I continually take courses in various aspects of emerging technologies which affords me a unique perspective to develop innovative methods in my practice.  For example, in 2023, I became the first attorney in California (and the second in the nation to the best of my knowledge) to successfully serve a Complaint via NFT airdrop in a complex matter involving after seeking leave of court. These unique skills justify my current hourly rate of $775 which is above average for an attorney in Los Angeles County but significantly lower than many attorneys in my area of practice.

10. As a result of the sudden ex parte motion, I had to abandon my efforts in my other cases to focus solely on this case to meet the twenty-four hour deadline to respond.

11. Attached hereto as **Exhibit 2** is a true and correct copy of an article from the *New York Post* available at https://nypost.com/2023/09/07/hunter-biden-says-he-was-embarrassed-by-laptop-in-deposition/

I swear under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct. Executed at Los Angeles, California on March 27, 2025.

__/s/_____

JENNIFER L. HOLLIDAY

Exhibit 1

**Attorney:** Jennifer L. Holliday
**Clients:** Garrett Ziegler and ICU, LLC
**Hourly Rate:** $775
**Billing Period:** February 20, 2025 – March 13, 2025

| Date | Hours | Description | Total |
|------|-------|-------------|-------|
| 02/20/2025 | 8.0 | File notice of appearance; Review of pleadings and case history; outline motion for fees; review correspondence and discovery requests | $6,200.00 |
| 02/21/2025 | 8.0 | Meet and confer with opposing counsel regarding deposition scheduling and outstanding discovery issues.  Draft and send 7-3 letter for MSJ.  Correspond with opposing counsel re: same; Prepare deposition outlines. | $6,200.00 |
| 02/22/2025 | 8.0 | Review Judge Vera's Standing Order re: Summary Judgment motions; Draft shell brief for motion for summary judgment; review document production to date. | $6,200.00 |
| 02/23/2025 | 8.0 | Review and revise Defendant ICU, LLC's portion of MSJ; correspond with client and counsel. | $6,200.00 |
| 02/24/2025 | 8.0 | Review and revise Defendant ICU, LLC's portion of MSJ; correspond with client; research issues of CFAA and state law statute re: vicarious liability of entity; draft and file request for clarification on "bounce back" email of Plaintiff's counsel P. Salvaty | $6,200.00 |
| 02/25/2025 | 8.0 | Review deposition prep materials; finalize questions and outline for Morris deposition; confirm deposition details with vendor; review order to strike notice re: Salvaty | $6,200.00 |
| 02/26/2025 | 8.0 | Travel to Century City for deposition. Appeared for deposition of P. Kevin Morris; opposing party failed to appear; record statement; assess next steps; correspond with opposing counsel re: deposition of Morris.  Review Order to Show Cause re: bounce back e-mail of Paul Salvaty. | $6,200.00 |

| Date | Hours | Description | Total |
|------|-------|-------------|-------|
| 02/27/2025 | 8.0 | Meet and confer with opposing counsel re: non-appearance and availability of Biden for deposition on February 28, 2025; prepare motion for sanctions.  Reset deposition of H. Biden to week of March 10-17, 2025; Met and conferred with client re: litigation plan. Confirmed dates for IDC. | $6,200.00 |
| 02/28/2025 | 8.0 | Legal research re: dismissal with prejudice and entitlement to prevailing party fees.  Met and conferred with opposing counsel re: requesting IDC with Chief Magistrate Judge Stevenson. Continue drafting sections of Defendant's portion of MSJ. | $6,200.00 |
| 03/03/2025 | 8.0 | Appear before Chief Magistrate Judge Stevenson on contempt motion re: deposition avoidance; Review Minute Order [ECF 83] Continue reviewing and revising MSJ documents. | $6,200.00 |
| 03/04/2025 | 8.0 | Review transcript from hearing; revise and finalize sanctions Defendant ICU, LLC's portion of Motion for Summary Judgment; Review H. Biden response [ECF 84]; Serve Defendant ICU, LLC's Portion of Joint MSJ. | $6,200.00 |
| 03/05/2025 | 15.0 | Review Ex Parte Application to Voluntarily Dismiss Action and Exhibits 1-8 [ECF 85]. Immediately begin preparing and drafting opposition papers and declarations; consult with R. Tyler and request declaration; arrange printing and delivery to chambers in compliance with Standing Order and Local Rules. | $11,625.00 |
| 03/06/2025 | 7.0 | Finalize and file Opposition Papers, and arrange for delivery of Chambers Copy. | $5,425.00 |
| 03/07/2025 | 6.0 | Review Reply Brief, prepare and file response; Research | $4,650.00 |
| 03/13/2025 | 4.0 | Review Order dismissing case; Draft 7-3 Letter; Final meet and confer with opposing counsel regarding sanctions and fee motion. | $6,200.00 |

**Total Hours:  120  - Total Fees: $ 93,000**

Exhibit 2

SECTIONS



US News    Metro    Long Island    **Politics**    World News

TRENDING NOW IN US NEWS

 **Sanctuary city mayor, police chief scold cops for assisting...**

 **Trump more popular than ever — percentage of Americans who...**

 **N. all in**

*POLITICS*    ***EXCLUSIVE***

# Hunter Biden claims he was 'embarrassed' by laptop in deposition — but still denies it or

# contents are his

By Miranda Devine

Published Sep. 7, 2023, 10:12 p.m. ET

601 Comments



**Before y**

Hunter refused to admit in his deposition that he
visited The Mac Shop twice in April 2019, despite
Mac Isaac presenting evidence that Hunter signed
a work order and provided his contact information.

Bank records that Hunter was required to hand
over to Mac Isaac's legal team also show
"frequent uses of Wells Fargo ATMs where
significant withdrawals were made — all within a
few miles of Mac Isaac's shop," the filing says.



Hunter Biden testified recently that he was embarrassed by "offensive" content published from his laptop.

Although Hunter claimed he "is without knowledge" as to his whereabouts on April 12, 2019, "Mac Isaac knows exactly where he was."

Hunter's "confused and dishonest responses prove fatal to all facts alleged in his counterclaims."

Hunter claimed he was "embarrassed" by publication of private material that would be "highly offensive to a reasonable person,"

according to the filing, yet much of the material that a reasonable person would find most offensive, such as sexually explicit photos, was "voluntarily shared by [Hunter] Biden with others through the website, 'Pornhub.' …

"The use of the 'reasonable person' standard should clearly not apply to Biden … It seems what would embarrass a reasonable person does not embarrass Biden."



Biden refused to admit that the laptop was his. "He either doesn't recall or denies it altogether."

Material on the laptop also shows Hunter's "lack of concern about using his father's political ties to close deals with foreign countries, some of whom are considered adversaries with the United States (i.e., People's Republic of China)," the filing

asserts.

In his deposition, Hunter also:

> Gave "confused and dishonest responses" about whether he dropped off the laptop with Mac Isaac on April 12, 2019, or returned a day or two later at Mac Isaac's request with an external hard drive onto which his data could be transferred.

> Refused to admit that the laptop was his. "He either doesn't recall or denies it altogether."

> "Hems and haws about how embarrassing the content of the laptop was while, at the same time, failing to identify what content and if it was even his content."

> Said he was "without knowledge" that he had received voicemail messages and emails from Mac Isaac about his laptop asking him to bring in an external hard drive, pay his repair bill and pick up his property.

> Claimed he did not give consent to Mac Isaac to access the data on his laptop even though he signed a work order.

> Refused to deny that he signed the work order.

> Claimed that the "boilerplate terms of the Repair Authorization" on the work order were "well below the signature line" even though he is a trained attorney and signed the document.

> Referred to the Repair Authorization as a "typical small-print adhesion clause for which there was no proper notice or opportunity to bargain or negotiate." But, according to the filing, the text is "not abnormally small" and is the same size as the rest of the work order.



Although Hunter claimed he "is without knowledge" as to his whereabouts on April 12, 2019, "Mac Isaac knows exactly where he was."

AFP via Getty Images

Hunter abandoned his laptop at Mac Isaac's store in April 2019 and never returned to pick it up or pay his bill, despite multiple attempts by Mac Isaac to contact him by phone and email.

"After obtaining the rights to the laptop pursuant to the contract signed by Biden, Mac Isaac grew uneasy with the seemingly illegal activities cataloged in the laptop.

"As he was taught to do at the Apple Store and in accordance with his own convictions, he made contact with the FBI. Soon thereafter, on December 9, 2019, Mac Isaac gave the laptop, the original hard drive, and the original work order to the FBI."

The FBI verified the authenticity of Hunter's abandoned laptop in November 2019 "by matching the device number against Hunter Biden's Apple iCloud ID," IRS supervisory agent Gary Shapley testified to Congress in June.