ABBE DAVID LOWELL
*AbbeLowellPublicOutreach@winston.com*
WINSTON & STRAWN LLP
1901 L St., N.W.
Washington, D.C. 20036-3508
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

BRYAN M. SULLIVAN, State Bar Number 209743
  *bsullivan@earlysullivan.com*
ZACHARY C. HANSEN, State Bar Number 325128
  *zhansen@earlysullivan.com*
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for Plaintiff
Robert Hunter Biden

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| ROBERT HUNTER BIDEN, an individual,<br><br>             Plaintiff,<br><br>     vs.<br><br>GARRETT ZIEGLER, an individual, ICU, LLC, a Wyoming Limited Liability Company d/b/a Marco Polo, and DOES 1 through 10, inclusive,<br><br>             Defendants. | Case No. 2:23-cv-07593-HDV-KS<br><br>*Assigned to:*<br>*District Judge Hernán D. Vera*<br><br>**PLAINTIFF ROBERT HUNTER BIDEN'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>[*Declarations of Robert Hunter Biden and Zachary C. Hansen, Esq. filed and served concurrently herewith*]<br><br>Place: Ctrm. 5B<br>Judge: Honorable Hernán D. Vera |

5807354.3

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................5

II.   PROCEDURAL POSTURE AND RELEVANT FACTS ...............................7

III.  ARGUMENT .....................................................................................10

A.   IN GRANTING BIDEN'S *EX PARTE* APPLICATION FOR VOLUNTARY DISMISSAL OF THIS ACTION UNDER RULE 41(A)(2) DUE TO BIDEN'S LACK OF RESOURCES, THE COURT INTENTIONALLY DID NOT GRANT DEFENDANTS' REQUEST TO CONDITION SUCH DISMISSAL ON FEES ........................................................................10

B.   DEFENDANTS ARE NOT ENTITLED TO ATTORNEY'S FEES IN THIS CASE ........................................................................11

1.   Defendants Are Not Entitled To An Award Of Fees Under California Penal Code Section 502 Because Biden's Case Was Not Objectively Without Foundation. ...............................11

2.   Defendants Are Not The Prevailing Party Because No Adjudication On The Merits Occurred Here. ............................13

C.   DEFENDANTS' CLAIMS FOR ATTORNEYS' FEES ARE UNREASONABLE, EXCESSIVE, AND UNJUSTIFIABLE ............15

1.   Defendants' Fee Request Should be Significantly Reduced Due to the Failure to Allocate among the Two Causes of Action and Improper Block-Billing. ...........................................16

2.   Unreasonableness of Claimed Fees and Block-Billing. .............18

3.   Complexity of Case, Difficulty of Issues, Skill Displayed, and Experience of Counsel. .........................................................23

D.   A NEGATIVE MULTIPLIER IS APPROPRIATE HERE .................24

IV.   CONCLUSION ..................................................................................25

EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
ATTORNEYS AT LAW

**PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEY'S FEES AND COSTS**

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>Cases</u>

4

*Ajaxo Inc. v. E\*Trade Group, Inc.*,
    135 Cal. App. 4th 21 (2005).................................................................16

5

*Banas v. Volcano Corp.*,
    47 F. Supp. 3d 957 (N.D. Cal. 2014) ...............................................18

6

7

*Christian Rsch. Inst. v. Alnor*,
    165 Cal. App. 4th 1315 (2008)..........................................................17

8

*De Contreras v. City of Rialto*,
    894 F. Supp. 2d 1238 (C.D. Cal. 2012) .............................................6

9

10

*Galan v. Wolfriver Holding Corp.*,
    80 Cal. App. 4th 1128 (2000).............................................................7

11

*Gilbert v. Nat'l Enquirer, Inc.*,
    55 Cal. App. 4th 1273 (1997)...........................................................15

12

13

*Gorman v. Tassajara Dev. Corp.*,
    178 Cal. App. 4th 44 (2009)........................................................16, 17

14

*Hansen Cold Storage Construction v. Cold Systems, Inc.*,
    2022 WL 1199271 (C.D. Cal. Feb. 11, 2022)..................................18

15

16

*Hay v. Marinkovich*,
    108 Cal. App. 5th 707, ---, 329 Cal. Rptr. 3d 558 (2025)...........6, 13

17

*Heather Farms Homeowners Assn. v. Robinson*,
    21 Cal. App. 4th 1568 (1994)...........................................................14

18

19

*Heritage Pac. Fin., LLC v. Monroy*,
    215 Cal. App. 4th 972 (2013)...........................................................18

20

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001)..............................................................16, 25

21

22

*Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*,
    791 F.2d 1334 (9th Cir. 1986)..........................................................14

23

*Lagstein v. Certain Underwriters at Lloyd's of London*,
    725 F.3d 1050 (9th Cir. 2013)..........................................................14

24

25

*Lahiri v. Universal Music & Video Distrib. Corp.*,
    606 F.3d 1216 (9th Cir. 2010)..........................................................18

26

*Maria P. v. Riles*,
    43 Cal. 3d 1281 (1987).....................................................................25

27

28

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

*Marr v. Bank of Am. Nat'l Ass'n,*,
   2011 WL 2912878 (N.D. Cal. 2011) ..................................................... 7, 14

*Melnyk v. Robledo,*
   64 Cal. App. 3d 618 (1976) ................................................................ 16

*Mountjoy et al. v. Bank of Am., N.A., et al.*,
   245 Cal. App. 4th 266 (2016) ............................................................ 17

*PLCM Grp. v. Drexler*,
   22 Cal. 4th 1084 (2000) .............................................................. 16, 17

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*,
   884 F.3d 812 (9th Cir. 2018) ......................................................... 7, 14

*Role Models Am., Inc. v. Brownlee*,
   353 F.3d 962 (D.C. Cir. 2004) ........................................................... 18

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) ....................................................................... 16

*Serrano v. Unruh*,
   32 Cal. 3d 621 (1982) ...................................................................... 16

*Thayer v. Wells Fargo Bank, N.A.*,
   92 Cal. App. 4th 819 (2001) ............................................................. 25

*Travis v. Brand*,
   14 Cal. 5th 411 (2023) .................................................................... 12

*Welch v. Metro. Life Ins. Co.*,
   480 F.3d 942 (9th Cir. 2007) ............................................................ 18

*Williams v. Chino Valley Independent Fire Dist.*,
   61 Cal. 4th 110 (2015) .................................................................... 12

*Williams v. Peralta Cmty. College Dist.*,
   227 F.R.D. 538 (N.D. Cal. 2005) ....................................................... 11

**STATUTES**

18 U.S.C. § 1030 ................................................................................ 8, 17

Bus. & Prof. Code Sections 17200 ....................................................... 8, 17

Cal. Penal Code § 502 ................................................................. 6, 8, 17

Federal Rule of Civil Procedure 11 ............................................................. 6

Fed. R. Civ. P. 11(a) ................................................................................ 6

Rule 41(a)(2) ........................................................................... 2, 10, 11

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Piercing through the gross misstatements and unfounded personal attacks on Plaintiff Robert Hunter Biden ("Biden") in the Motion for the Attorneys' Fees and Costs (the "Motion") by Defendants Garrett Ziegler ("Ziegler") and ICU, LLC's (dba Marco Polo) ("Marco Polo") (collectively, "Defendants"), three key factors are clear that render the Motion entirely without merit.[1]  First, in granting Biden's request for dismissal, the Court already denied Defendants' request for fees so the substance of this Motion has been previously denied.

Second, in order for a defendant to obtain an award of fees under California Penal Code § 502 (the only cause of action under which fees are sought), the Court must find that the plaintiff's case was "objectively without foundation when brought, or the plaintiff continued to litigate it after it clearly became so."  *Hay v. Marinkovich*, 108 Cal. App. 5th 707, ---, 329 Cal. Rptr. 3d 558, 572 (2025).  Here, Defendants made public statements that they "cracked the encrypted code" and "got into [Biden's] iPhone backup" (without Biden's authorization) and that Defendants "were the first group to do it in June of 2022[.]" Defendants have since confirmed this misconduct in various social media posts and subsequent interviews.  Moreover, Biden consulted with a computer/data forensic expert who gave a preliminary opinion that Biden's purported data posted on Marco Polo did not have forensic veracity and that it was

---

[1] Defendants' Motion is procedurally defective in violation of Federal Rule of Civil Procedure 11 and the Local Rules for the Central District of California because it is unsigned by counsel.  "Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name …. The Court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a); *see also* L.R. 11-1. Failing to sign a motion or other document submitted to the Court is grounds for the Court to disregard the unsigned motion.  *See De Contreras v. City of Rialto*, 894 F. Supp. 2d 1238 (C.D. Cal. 2012).


EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

different from Biden's purported data previously posted on the website known as 4Chan. So, Biden had more than sufficient basis to bring this action.

Third, in diversity cases, the determination of prevailing party for purposes of attorney's fees is governed by California law (*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 828 (9th Cir. 2018)), which leaves that determination to the discretion of the Court where the statute is silent as to the definition of "prevailing party." *Galan v. Wolfriver Holding Corp.*, 80 Cal. App. 4th 1128 (2000). In the case of voluntary dismissals, California Courts have rejected prevailing party status where the voluntary dismissal was not on the merits. *Id.*; *see also Marr v. Bank of America Nat. Ass'n*, 2011 WL 2912878, *2-4 (N.D. Cal. 2011). Here, Biden's voluntary dismissal was for financial reasons, which the Court accepted as credible (Dkt. #91), and no adjudication on the merits occurred.

Finally, even if the Court were not to apply the foregoing law, and award fees, Defendants' claimed legal fees of $93,000 for 120 hours of work over the course of a three-week period are demonstrably excessive and unreasonable for the minimal amount of work that was actually performed. Indeed, it is apparent that after being informed of Biden's intent to voluntarily dismiss this action, Defendants ramped up their litigation efforts in what can only be characterized as an intentional effort to inflate fees to inflict additional financial harm on Biden. No fees of any kind are warranted, and were they ever to be, the Court should greatly reduce these claimed fees by applying a negative multiplier under Ninth Circuit precedence.

Accordingly, for the reasons set forth herein, Defendants' Motion for Attorney's Fees should be denied in its entirety.[2]

---

[2] Based on Defendants' unhinged social media posts attacking Biden and criticizing the Court and its rulings, it appears that the main reason Defendants brought this motion is to have more fodder for Defendants' social media posts. (Declaration of Zachary C. Hansen, Esq. ("Hansen Decl."), ¶ 18, Exs. O-P.)

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5807354.3

6

PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEY'S FEES AND COSTS

## II.    <u>PROCEDURAL POSTURE AND RELEVANT FACTS</u>

The Complaint in this action was filed on September 13, 2023 asserting causes of action for (i) Violation Of The Computer Fraud And Abuse Act (18 U.S.C. § 1030), (ii) Violation Of The California Computer Data Access And Fraud Act (Cal. Penal Code § 502), and (iii) Bus. & Prof. Code Sections 17200 *Et Seq.* (Dkt. #1).  The crux of this action is that, since approximately December 2020, Defendants and their "team" of volunteers and independent contractors have spent countless hours accessing, tampering with, manipulating, altering, copying and damaging computer data that they do not own and that they admit to have obtained from hacking into Biden's iPhone backup data and from scouring a copy of the hard drive of what they claim to be Biden's "laptop" computer.  (Dkt. #1, ¶ 2).

Biden initiated this Complaint after seeing that Ziegler, on behalf of Marco Polo, admitted in public statements in December 2022 in an interview with Roger Stone as follows:

> And we actually got into his iPhone backup, we were the first group to do it in June of 2022, we cracked the encrypted code that was stored on his laptop.  And more drug deals were in there, which set our, set our release date back.

(Dkt. #1; Declaration of Robert Hunter Biden ("Biden Decl."), ¶ 2.)  Defendants also boasted in various public comments, both before and after this lawsuit was filed, about the same misconduct which forms the basis of this lawsuit.  (Hansen Decl., ¶ 2, Exs. A-D).  Moreover, prior to filing this action, Biden did perform an initial investigation, which included consulting with a computer/data forensic expert who gave a preliminary opinion that Biden's purported data posted on Marco Polo did not have forensic veracity and that it was different from Biden's purported data previously posted on the website known as 4Chan, which raised suspicion as to whether it was manipulated, altered or modified and where it actually was obtained.  (Biden Decl., ¶ 3; Hansen Decl., ¶ 3, Ex. E).

Following Defendants' failed attempt to disqualify the assigned judge and

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

denial of Defendants' motion to dismiss/Anti-SLAPP motion, on November 12, 2024, the Court issued a minute order establishing all material dates relating to this case with the non-expert discovery cut-off being April 1, 2025. (Dkt. #72). Biden served discovery on November 6, 2024 and Defendants responded on December 20, 2024, but Defendants' responses were minimal and likely will require motion practice as Biden has been dealing with deficiencies with these responses. (*See* Declaration of Bryan M. Sullivan in support of Biden's *ex parte* application, Dkt. #85-2 ("Sullivan Decl."), ¶ 2). It was not until January 31, 2025, two and a half months after the Court's November 12, 2024 minute order, that Defendants first propounded any written discovery and February 11, 2025 when they first requested Biden's deposition and sought to depose non-party, and Biden's legal counsel, P. Kevin Morris, Esq. ("Mr. Morris") on unilaterally noticed dates of February 28, 2025 and February 26, 2025, respectively. (Sullivan Decl., ¶ 3). On February 20, 2025 – just 35 days before the filing of the Motion – the Court approved Defendants' request for Approval of Substitution of Counsel, at which time Defendants' current counsel, Ms. Holliday, became counsel of record. (Dkt. #76). Biden's counsel informed Ms. Holliday <u>four different times</u>, both verbally and in writing, of their objections to Mr. Morris' deposition and intent not to produce Mr. Morris for deposition on the unilaterally noticed date, as follows: (i) in a meet and confer conference of counsel on February 21, 2025; (ii) in an email on February 24, 2025; (iii) in timely written objections on February 24, 2025; and (iv) in a letter on February 25, 2025. (Hansen Decl. ¶¶ 4-7, Exs. F-H.) However, despite these timely notices, Ms. Holliday inexplicably decided to proceed with appearing for the deposition and have her client travel, voluntarily and unnecessarily, from Illinois to California for the deposition.

Additionally, for the first time, on February 21, 2025, Defendants indicated their intent to file a summary judgment motion. (Sullivan Decl., ¶ 4). While the Parties were in the meet and confer process over the discovery issues and Defendants' intended summary judgment motion, including a meet and confer discussion on

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

1   February, 26, 2025, Biden decided to seek to voluntarily dismiss this action given all

2   of the upcoming work and resulting fees to be incurred on this case. (Biden Decl., ¶

3   4; Sullivan Decl., ¶ 5).  After making this decision, at 7:36 A.M. on the morning of

4   March 3, 2025, Biden immediately informed Defendants of Biden's intent to dismiss

5   this action under Rule 41(a)(2) to fulfill the statutory meet and confer requirement

6   under Central District Local Rule 7-3. (Sullivan Decl., ¶ 6; Hansen Decl., ¶15, Ex. L).

7        Despite knowing Biden's intent to voluntarily dismiss early on the morning of

8   March 3, 2025, Defendants' continued to work on their portion of a motion for

9   summary judgment and served it at almost 11:00 pm, on March 4, 2025, with full

10   knowledge of Biden's intent to request a voluntary dismissal of this case the next day.

11   (Sullivan Decl., ¶ 9; Hansen Decl., at ¶¶ 8-9, Exs. I-J).  The timing indicates this was

12   clearly an attempt to rush to raise an argument against Biden's request for dismissal

13   as evidenced by the following: (i) Defendants' motion for summary judgment is only

14   for Marco Polo and not Ziegler; (ii) Defendants served their summary judgment

15   motion before deposing Biden, before conducting any discovery on Biden, or

16   receiving any written documents from Biden; and (iii) the motion for summary

17   judgment lacked sufficient evidentiary citations and support.  (*Id.*)

18        On March 5, 2025, Biden filed his *ex parte* application seeking a voluntary

19   dismissal without prejudice of this Action. (Dkt. #85).  Defendants opposed on March

20   6, 2025, in which Defendants requested that any dismissal be conditioned on the

21   payment of Defendants' attorney's fees. (Dkt. #88).  Both parties filed replies on

22   March 7, 2025. (Dkts. #89-90).

23        On March 13, 2025, the Court granted Biden's request for dismissal, but with

24   prejudice rather than without prejudice, finding that Defendants would in fact suffer

25   legal prejudice by the voluntary dismissal reasoning that Defendants' exchange of the

26   motion for summary judgment effectively gives Biden a roadmap to Defendants' most

27   important legal arguments, and provides a prejudicial advantage given that Biden has

28   not yet had to file an opposition. (Dkt. #91).  Notably, the Court did not condition the

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5807354.3

9

**PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEY'S FEES AND COSTS**

1   dismissal on an award of attorney's fees or costs, as requested by Defendants,

2   choosing to order a dismissal with prejudice instead of without prejudice. *Id.* The

3   Court further noted that it did "not express any opinion concerning the underlying

4   merits of the case. And the Court accepts the detailed representations made by Biden

5   as to the reasons motivating his request to dismiss."[3] *Id.*

6   **III.   ARGUMENT**

7       **A.   IN GRANTING BIDEN'S *EX PARTE* APPLICATION FOR**

8           **VOLUNTARY DISMISSAL OF THIS ACTION UNDER RULE**

9           **41(A)(2) DUE TO BIDEN'S LACK OF RESOURCES, THE**

10          **COURT INTENTIONALLY DID NOT GRANT DEFENDANTS'**

11          **REQUEST TO CONDITION SUCH DISMISSAL ON FEES**

12  Under the express language of Rule 41(a)(2), an action may be dismissed at a

13  plaintiff's request on terms that the Court considers proper. *Williams v. Peralta Cmty.*

14  *College Dist.*, 227 F.R.D. 538, 540 (N.D. Cal. 2005) (quoting *Burnette*, 828 F. Supp.

15  at 1443-43). Here, Defendants requested an award of attorney's fees as a condition

16  for dismissing this matter in their opposition to Biden's *ex parte* application (*see*

17  Section II(C) of Dkt. #88): "If the Court dismisses the case, the Court should condition

18  dismissal on the payment of fees." (Dkt. #88, at pp. 2, 3, 14-16.) Nevertheless, the

19  Court, having considered the proper conditions for Biden's dismissal and evaluated

20  the posture of the case, determined that a dismissal with prejudice was an appropriate

21

22  [3] In an effort to tarnish Biden, Defendants rely on inaccurate, politically-biased
reporting that Biden is on an "ultra luxury vacation" in South Africa. (Dkt. #92). In

23  reality, Biden is visiting his wife's family who live in South Africa (Biden's wife is
South African, which any objective internet search would disclose), staying with his

24  wife's family, with the trip being paid for by his wife's friends and family as a

25  birthday present for his wife. (Biden Decl., ¶ 5). Biden traveled to South Africa on

26  March 8, after Defendants' counsel was notified of Biden's intent to voluntarily
dismiss this action. *Id.* If denied, Biden assumed that his deposition could be done

27  via videoconference as was done in other cases in which Biden has been involved. *Id.*

28  at ¶ 6.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

1  condition and declined to award Defendants their attorney's fees or costs.

2  Accordingly, Defendants are estopped from attempting to relitigate a matter this Court

3  has already determined and their motion for attorney's fees should be denied on that

4  basis alone.

5  **B.  DEFENDANTS ARE NOT ENTITLED TO ATTORNEY'S FEES**

6  **IN THIS CASE**

7  The only basis under which Defendants seek fees is California Penal Code

8  502(e)(4), the statute entitled Violation of The California Computer Data Access And

9  Fraud Act, which provides: "In any action brought pursuant to this subdivision the

10  court *may* award reasonable attorney's fees." (emphasis added.) For the following

11  reasons, Defendants are not entitled to an award of fees under that statute.[4]

12  **1.  Defendants Are Not Entitled To An Award Of Fees Under**

13  **California Penal Code Section 502 Because Biden's Case Was**

14  **Not Objectively Without Foundation.**

15  For a defendant to be awarded attorney's fees under Section 502(e)(4), the

16  Court must find that the plaintiff's claim "was objectively without foundation when

17  brought, or the plaintiff continued to litigate it after it clearly became so." *Hay*, 108

18  Cal. App. 5th at ---, 329 Cal. Rptr. 3d at 572 (citing *Travis v. Brand*, 14 Cal. 5th 411,

19  414-415 (2023)); *see also Williams v. Chino Valley Independent Fire Dist.,* 61 Cal.

20  4th 110, 115 (2015).) "A contrary rule would chill private enforcement of the statute

21  and thus undermine its purpose." *Hay*, *supra*, 108 Cal. App. 5th at ---, 329 Cal. Rptr.

22  3d at 572.

23

24  ─────────────────

[4] Notably, Defendants failed to request an award of costs or submit any support for

25  an award of costs. Under Local Civil Rule 54-2.1, a party claiming to be entitled to

26  costs has 14 days after the entry of judgment or order under which costs may be

27  claimed. Here, the order dismissing this case was entered on March 13, 2025 so

28  Defendants deadline to request costs expired on March 27, 2025. Because costs were

not timely sought, Defendants are barred from recovering costs.



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

*Hay v. Marinkovich* is directly on point and instructive here.  In that case, Hay sued Marinkovich for, among other claims, a violation of section 502.  *Hay*, 108 Cal. App. 5th 707, 329 Cal. Rptr. 3d 558.  At trial, the Court found in favor of Marinkovich on each of Hay's causes of action, and Marinkovich then filed a motion for attorney fees and costs.  *Id*.  The trial court denied Marinkovich's request for attorney fees and the California Court of Appeal affirmed that decision.  *Id*.  The Court of Appeal stated: "To establish [Defendant] was entitled to fees, Marinkovich was required to show that Hay's action was either objectively without foundation when brought or that she continued to litigate after it clearly became so."  *Id*. at 573.  Based on that test, the court reasoned that, while the evidence supported the jury's finding that Marinkovich did not violate section 502, it did not compel the conclusion that the claim was objectively without foundation especially where Hay presented substantial evidence supporting her claims.  *Id*. at 574.  The court concluded that "it would be unreasonable to conclude Hay's claim was frivolous where it appears the claim had 'some basis in fact.' [Citation omitted.]"  *Id*. at 573.

Defendants completely ignore this standard in their Motion[5] and merely state in conclusory fashion that Biden failed to investigate and has no evidence to support his claim.  To the contrary, Biden had a sufficient basis to bring this claim based on Defendants' own admission to hacking Biden's iPhone backup in public statements in December 2022 in an interview with Roger Stone as follows:

> And we actually got into his iPhone backup, we were the first group to do it in June of 2022, we cracked the encrypted code that was stored on his laptop.  And more drug deals were in there, which set our, set our release date back.

(Dkt. #1.)       Defendants also boasted in various public comments and forums, both

---

[5]  Biden's counsel specifically referred to this standard in written meet and confer correspondence with Ms. Holliday prior to Defendants' filing of their Motion, and Defendants intentionally omit such countervailing legal authority and analysis from their Motion.  (Hansen Decl., ¶ 10, Ex. K.)

EARLY
SULLIVAN WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5807354.3                                   12
**PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEY'S FEES AND COSTS**

before and after this lawsuit was filed, about the same misconduct which forms the basis of this lawsuit. (Hansen Decl., ¶ 2, Exs. A-D).   Moreover, prior to filing this action, Biden consulted with a computer/data forensic expert who gave a preliminary opinion that Biden's purported data posted on Marco Polo did not have forensic veracity and that it was different from Biden's purported data previously posted on the website known as 4Chan. (Biden Decl., ¶ 3; Hansen Decl., ¶ 3, Ex. E.)  This raised suspicions as to whether the data on Marco Polo's website was manipulated, altered or modified and where it actually was obtained.  So, unlike the defendant in *Hay*, Defendants did not prevail on the merits of this case, which makes their argument here even less supportable, but like the plaintiff in *Hay*, Biden did have a reasonable and objective basis upon which to bring these claims.

Accordingly, Defendants' motion for fees should be denied.

## 2.    Defendants Are Not The Prevailing Party Because No Adjudication On The Merits Occurred Here.

"State law governs whether a party is entitled to attorney's fees in diversity cases such as this one." *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 828 (9th Cir. 2018) (quoting *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1056 (9th Cir. 2013)); *see also Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.,* 791 F.2d 1334, 1340–41 (9th Cir. 1986).  Under California law, where the statute is silent as to the definition of "prevailing party," the determination of which party, if either, prevailed in an action brought under that statute is a matter left to the discretion of the trial court.  *Galan*, *supra*, 80 Cal. App. 4th 1128; *Heather Farms Homeowners Assn. v. Robinson*, 21 Cal. App. 4th 1568, 1570-71 (1994).

By way of example, in *Marr v. Bank of Am. Nat'l Ass'n*, 2011 WL 2912878, at *2-4 (N.D. Cal. 2011), the defendant brought a motion for attorney's fees alleging that the defendant was the prevailing party because the defendant prevailed over many of the plaintiff's theories in a labor dispute on an order for partial summary judgment

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
WGM

1    and the plaintiffs voluntarily dismissed the remaining claims as part of a settlement.

2    The Court rejected that the defendant was the prevailing party because the settlement

3    did not resolve the merits of the case or the claims and the real material issues

4    remained to be adjudicated at trial.    *Id.*    Further, in rejecting the defendant's

5    arguments, the Court cited a series of cases denying prevailing party status where

6    voluntary dismissals occurred without judgments on the merits.  *Id.*; *see also Gilbert*

7    *v. Nat'l Enquirer, Inc.*, 55 Cal. App. 4th 1273, 1277 (1997) (holding that after

8    voluntarily dismissing some claims in order to expedite others, it was not possible to

9    determine "whether either side had prevailed on a practical level").

10          As a further example, in *Galan*, 80 Cal. App. 4th at 1129-30, following a

11    voluntary dismissal with prejudice of all the defendants pursuant to a settlement

12    agreement, one of the defendants, Wolfriver, who was not a party to the settlement

13    sought its attorney's fees under the statute that provided for such an award to the

14    prevailing party.    The Court rejected Wolfrier's argument, holding "although

15    plaintiffs dismissed their action against Wolfriver, that event did not confer prevailing

16    party status upon Wolfriver as a matter of law for purposes of recovering attorney

17    fees…."  *Id.* at 1129.  The Court reasoned that the voluntary dismissal with prejudice

18    did not exonerate Wolfriver and was required by the settlement between the plaintiff

19    and the other defendants.  The Court stated:

20          [H]aving settled, plaintiffs made a practical determination that it was not
      worth pursuing Wolfriver through what would have been a costly trial.
21          Thus, at the practical level the court concludes that there is no prevailing
      party. The merits of the dispute against Wolfriver were never resolved.
22

23    *Id.* at 1129-30.

24          Similarly, here, Biden's voluntary dismissal for financial reasons, which the

25    Court accepted as credible (Dkt. #91), was not an adjudication on the merits.  Indeed,

26    the Court even stated that its order of dismissal did "not express any opinion

27    concerning the underlying merits of the case."  *Id.*  Defendants fail to present any valid

28    legal or factual argument to counter the foregoing and, instead, simply state in

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5807354.3

14

**PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEY'S FEES AND COSTS**

1    conclusory fashion that they are prevailing parties in this action.

2            Accordingly, the Court should deny any award of attorney's fees.

3    **C.    DEFENDANTS' CLAIMS FOR ATTORNEYS' FEES ARE**

4    **UNREASONABLE, EXCESSIVE, AND UNJUSTIFIABLE**

5            Where a valid, non-waived and properly based motion for fees to be considered

6    (none of which exist here), the Court should exercise its discretion to reduce

7    Defendants' claimed fees as being unreasonable, excessive, and unjustifiable.  The

8    burden is on the party *seeking* attorneys' fees to prove that such fees are reasonable.

9    *See Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 98 (2009); *see also Ajaxo*

10   *Inc. v. E\*Trade Group, Inc.*, 135 Cal. App. 4th 21 (2005).  Defendants have utterly

11   failed to satisfy this burden.

12           "It is well established that the determination of what constitutes reasonable

13   attorney fees is committed to the discretion of the trial court."  *Melnyk v. Robledo*, 64

14   Cal. App. 3d 618, 623 (1976).   In this regard, "[a] fee request that appears

15   unreasonably inflated is a special circumstance permitting the trial court to reduce the

16   award or deny one altogether."  *Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982).   In

17   determining the reasonableness of claimed attorney's fees, the Court "begins with a

18   touchstone or lodestar figure, based on the 'careful compilation of the time spent and

19   reasonable hourly compensation of each attorney . . . involved in the presentation of

20   the case.'" *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-1132 (2001) (quoting *Serrano*

21   *v. Priest*, 20 Cal. 3d 25, 48 (1977)).  "[T]rial courts must carefully review attorney

22   documentation of hours expended; 'padding' in the form of inefficient or duplicative

23   efforts is not subject to compensation." *Id.*  "The lodestar figure may then be adjusted,

24   based on consideration of factors specific to the case, in order to fix the fee at the fair

25   market value for the legal services provided. Such an approach anchors the trial

26   court's analysis to an objective determination of the value of the attorney's services,

27   ensuring that the amount awarded is not arbitrary." *PLCM Grp. v. Drexler*, 22 Cal.

28   4th 1084, 1095 (2000) (internal citation omitted) (emphasis added).  "The factors to

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

be considered include the nature and difficulty of the litigation, the amount involved, the skill required and employed to handle the case, the attention given, the success or failure, *and other circumstances in the case*." *Gorman*, 178 Cal. App. 4th at 92 (citing *PLCM Group*, 22 Cal. 4th at 1096) (emphasis in original).

As set forth below, the circumstances here clearly demonstrate the unreasonableness of the claimed fees, such that if this Court is inclined to grant any attorney's fees to Defendants (which it should not), a significant negative multiplier should be applied.

### 1.    Defendants' Fee Request Should be Significantly Reduced Due to the Failure to Allocate among the Two Causes of Action and Improper Block-Billing.

Defendants fee request is improper because they do not segregate out the hours spent on the two claims for which attorney's fees are not sought in their Motion (Violation Of The Computer Fraud And Abuse Act (18 U.S.C. § 1030) and Violation of Bus. & Prof. Code Sections 17200 *et seq.*) versus the one claim upon which Defendants' Motion relies (Violation Of The California Computer Data Access And Fraud Act (Cal. Penal Code § 502)). This alone creates a presumption that the fee award should be reduced 66.6% from $93,000 to $30,996.90.

Even more egregious and defective is that each and every billing entry is improperly block-billed. "Block billing" has been defined as assigning a block of time to multiple tasks rather than itemizing the time spent on each task. *See Mountjoy et al. v. Bank of Am., N.A., et al.*, 245 Cal. App. 4th 266 (2016). Under California law, block billing can be challenged when it obscures the nature of the work performed and makes it difficult for the court to determine which tasks are compensable. *See Christian Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315 (2008) (finding block billing exacerbated the vagueness of counsel's fee request, which obscured the nature of some of the work claimed and damaged counsel's credibility, and block billing is problematic when it prevents the court from discerning which

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

1   tasks are compensable); *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972

2   (2013) (court retained discretion to penalize block billing when it prevents the court

3   from discerning which tasks are compensable). The *Mountjoy* Court also noted that

4   vague time entries, even if not true block billing, can still be problematic. *See*

5   *Mountjoy*, *supra*, 245 Cal. App. 4th 266.

6       The Ninth Circuit, as well as other Circuits, have asserted similar admonitions

7   for block billing. In *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007), the

8   Court recognized a district court's discretion to reduce a fee award by up to 30% for

9   block billing, despite ultimately vacating the district's court's "across-the-board" 20%

10  reduction where "barely more than half of all hours submitted" were block-billed. *Id.*

11  at 948; *see also Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 968 (N.D. Cal. 2014)

12  (construing *Welch* to authorize a district court "to reduce block-billed hours by 10%

13  to 30%"); *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222-23

14  (9th Cir. 2010) (affirming district court's reduction of 80% of attorneys' and

15  paralegals' hours by 30% for block billing); *Role Models Am., Inc. v. Brownlee*, 353

16  F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice

17  of block billing "lump[ed] together multiple tasks, making it impossible to evaluate

18  their reasonableness"). Moreover, the Court in *Hansen Cold Storage Construction v.*

19  *Cold Systems, Inc.*, 2022 WL 1199271 (C.D. Cal. Feb. 11, 2022), relied on *Welch* and

20  noted the facts before it, by contrast, were even more concerning as "far more than

21  half of the hours billed by [counsel] were block-billed, and the only entries *not* block-

22  billed were done by default because they only included one task." *Id.* at *7 (emphasis

23  in original). This lead the Court to find that "[t]he extent of block billing in this case

24  potentially warrants the maximum reduction of 30%[,]" before ultimately deciding on

25  a 20% fee reduction only because the single-task entries reduced the total number of

26  block-billed hours "to a relatively minor extent[.]" *Id.* at *7.

27      In this case, the pervasiveness of the block-billing by Defense counsel

28  surpasses that of both *Welch* and *Hansen Cold Storage Construction* because, here,

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

every single billing entry is block-billed, with counsel lumping multiple different tasks together without any differentiation or itemization in each. In fact, each day listed on Defendants' billing chart contains only one block-billed entry for times ranging from 4 hours to 15 hours per day, with the majority of the entries (11) billed for exactly 8.0 hours for a myriad of different tasks that are all lumped together. For these reasons alone, Defendants' claimed fees should be further reduced from the 66.6% reduction previously described herein for failing to allocate among claims by the maximum 30% discussed in *Welch* and *Hansen Cold Storage Construction* from $30,996.90 to $21,697.83.

**2.    Unreasonableness of Claimed Fees and Block-Billing.**

Setting aside the failure to allocate among the claims and the improper block billing nature of every single billing entry, the unreasonableness of Defendants' claimed fees is even more apparent upon closer examination of the tasks for which Defendants' counsel block billed. It is shocking to see that 120 hours were billed during a roughly three-week period given that during the time that Defendants' current counsel has been involved in the case there has been no substantive discovery, no depositions, three brief meet and confers, only one informal discovery conference ("IDC") hearing, and the *ex parte* for voluntarily dismissal. Further, dispositive motion practice has not occurred, and the Parties engaged in only limited discovery, consisting almost exclusively of objections.

Nearly all the billing entries are grossly excessive and include unnecessary and administrative tasks for which Biden should not be liable (if the Court were to even award fees). Examples of these tasks and the reasons why they are unreasonable and grossly excessive are as follows:

| Defendants' Block-Billed Entries: | Reasons Why the Entries are Unreasonable and Grossly Excessive: |
|---|---|
| 8.0 hours on February 20, 2025 for: "File notice of appearance; Review of pleadings and case history; outline | Each of these tasks are administrative in nature and are a direct result of Defendants retaining new counsel on February 20 and |


EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| Defendants' Block-Billed Entries: | Reasons Why the Entries are Unreasonable and Grossly Excessive: |
|---|---|
| motion for fees; review correspondence and discovery requests[.]" | her efforts to review the case file. Also, 8.0 hours is grossly excessive for such menial tasks in a case without much history. Indeed, there have been only four motions filed, two sets of written discovery propounded and responded to by Defendants, and 1,570 pages of documents produced by Defendants, the majority of which consist of portions of Defendants' "Biden Laptop Report" and publicly available transcripts. Biden was not served with any discovery until January 31, 2025, and Defendants' counsel refused to provide the common courtesy of a first requested extension of time to respond, so Biden only asserted objections thereto. (Hansen Decl., ¶ 11.) |
| 8.0 hours on February 21, 2025 for: "Meet and confer with opposing counsel regarding deposition scheduling and outstanding discovery issues. Draft and send 7-3 letter for MSJ. Correspond with opposing counsel re: same; Prepare deposition outlines." | The meet and confer video conference of counsel lasted less than an hour (*approximately 45 min.*), Ms. Holliday was informed on that conference that Mr. Morris and Biden would not be appearing at their unilaterally noticed depositions thereby negating the need to prepare outlines, and Defendants' February 21 L.R. 7-3 letter was less than *two pages* in length. (Hansen Decl., ¶ 12). |
| 8.0 hours on February 22, 2025 for: "Review Judge Vera's Standing Order re: Summary Judgment motions; Draft shell brief for motion for summary judgment; review document production to date." | Biden had not produced any document to date, so this necessarily included a review of Ms. Holliday's own file, for which Biden should not be liable. Reviewing Judge Vera's Standing Order is an administrative task and should have taken no longer than 0.5 hours for a competent attorney. The summary judgment motion was only for one defendant and consisted only of the argument that Biden lacked evidence on each element of the claim and was not complicated. (Hansen Decl., ¶ 9, Ex. J.) |

| Defendants' Block-Billed Entries: | Reasons Why the Entries are Unreasonable and Grossly Excessive: |
|---|---|
| 8.0 hours on February 23, 2025 for: "Review and revise Defendant ICU, LLC's portion of the MSJ; correspond with client and counsel." | Corresponding with clients and co-defense counsel are not tasks Biden should be liable for, let alone 8.0 hours of such correspondence, which is entirely unreasonable. Further, the MSJ was only for one defendant and consisted only of the argument that Biden lacked evidence on each element of the claim so it was not complicated. (Hansen Decl., ¶ 9, Ex. J.) |
| 8.0 hours on February 25, 2025 for: "Review deposition prep materials; finalize questions and outline for Morris deposition; confirm deposition details with vendor; review order to strike notice re: Salvaty[.]" | By February 25 Ms. Holliday had been informed at least three different times, including by timely written objections, that Mr. Morris was not appearing for his unilaterally noticed deposition on February 26 and no time should have been billed for tasks related to preparation therefore. (Hansen Decl., ¶¶ 4-6, Ex. F-G.) The order to strike notice re: Salvaty is a *one page*, non-substantive order that should have taken less than five minutes to review. (Dkt# 80). This fee claim is entirely unjustifiable and grossly unreasonable. |
| 8.0 hours on February 26, 2025 for: "Travel to Century City for deposition. Appeared for deposition of P. Kevin Morris; opposing party failed to appear; record statement; assess next steps; correspond with opposing counsel re: deposition of Morris. Review Order to Show Cause re: bounce back e-mail of Paul Salvaty." | Ms. Holliday was informed orally and in writing at least four times prior to February 26 that Mr. Morris was not appearing at his deposition pursuant to timely objections (see, *supra*, Section II). (Hansen Decl., ¶¶ 4-7, Ex. F-H.) It is entirely unreasonable and inexplicable to still appear for the deposition and incur fees related thereto in light of those notices and can only be interpreted as solely meant to unnecessarily prejudice Biden and increase fees. Further, "assess next steps" is the type of superficial, vague billing that should be rejected for a fees award. |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| **Defendants' Block-Billed Entries:** | **Reasons Why the Entries are Unreasonable and Grossly Excessive:** |
|---|---|
| 8.0 hours on February 27, 2025 for: "Meet and confer with opposing counsel re: non-appearance and availability of Biden for deposition on February 28, 2025; prepare motion for sanctions. Reset deposition of H. Biden to week of March 10-17, 2025; Met and conferred with client re: litigation plan. Confirmed dates for IDC." | The meet and confer conference call lasted less than 30 minutes, no motion for sanctions was ever filed by Defendants, Biden should not be liable for Ms. Holliday's communications with her client "re: litigation plan", and confirming dates for the IDC involved sending two emails by Ms. Holliday. (Hansen Decl., ¶ 13.) |
| 8.0 hours on March 3, 2025 for: "Appear before Chief Magistrate Judge Stevenson on contempt motion re: deposition avoidance; Review minute order [ECF 83] Continue reviewing and revising MSJ documents." | The IDC on March 3 lasted less than 20 minutes (Hansen Decl., ¶ 14) and the Court's Minute Order (Dkt# 83) is less than one page of substantive text. Moreover, Ms. Holliday was informed in writing at 7:36 A.M. on March 3 of Biden's intent to voluntarily dismiss this action and therefore any additional work performed on their Motion for Summary Judgment after that time should have ceased. (Hansen Decl., ¶ 15, Ex. L.) Further, the motion for summary judgment was only for one defendant and consisted only of the argument that Biden lacked evidence on each element of the claim so it was not complicated. (Hansen Decl., ¶ 9, Ex. J.) |
| 8.0 hours on March 4, 2025 for: "Review transcript from hearing; revise and finalize sanctions Defendant ICU, LLC's portion of Motion for Summary Judgment; Review H. Biden response [ECF 84]; Serve Defendant ICU, LLC's Portion of Joint MSJ." | It is unclear what transcript was reviewed due to the vague description, no sanctions motion was ever filed by Defendants, Docket #84 contains less than one page of substantive text, and, as stated previously, any work on Defendants' Motion for Summary Judgment after being notified of Biden's intent to dismiss this case on March 3 is unreasonable and unnecessary. Service of documents is a secretarial task for which no reimbursement of fees is warranted. Further, the motion for summary judgment |

| Defendants' Block-Billed Entries: | Reasons Why the Entries are Unreasonable and Grossly Excessive: |
|---|---|
| | was only for one defendant and consisted only of the argument that Biden lacked evidence on each element of the claim so it was not complicated. (Hansen Decl., ¶ 9, Ex. J.) |
| 15.0 hours on March 5, 2025 for: "Review Ex Parte Application to Voluntarily Dismiss Action and Exhibits 1-8 [ECF 85]. Immediately begin preparing and drafting opposition papers and declarations; consult with R. Tyler and request declaration; arrange printing and delivery to chambers in compliance with Standing Order and Local Rules." & 7.0 hours on March 6, 2025 for: "Finalize and file Opposition Papers and arrange for delivery of Chambers Copy." | Over the course of two days, Ms. Holliday billed a total of **22 hours** on drafting an opposition consisting of only 11.5 pages of substantive text (Dkt# 88) to Biden's *ex parte* application, including admitted correspondence with co-counsel and various secretarial tasks such as "arrange printing and delivery to chambers". Under Judge Vera's Standing Order, parties are allowed 24 hours to oppose an *ex parte* application. This means Ms. Holliday apparently utilized *all but **two hours** of that 24 hour period* to draft such a short opposition. This fee claim is entirely unjustifiable and grossly unreasonable. |
| 6.0 hours on March 7, 2025 for: "Review Reply Brief, prepare and file response; Research[.]" | Biden's reply brief (Dkt# 89) consists of only 2.5 pages of substantive text and Defendants' response (Dkt# 90) is a 3.5 page declaration. Moreover, Biden's reply brief was filed at 8:06 A.M. on March 7 and Defendants' response was filed just over two hours later at 10:20 A.M. (Hansen Decl., ¶¶ 16-17, Ex. M-N.) As such, it is unclear how 6.0 hours could have been billed for these tasks given that very short timeline. The amount billed for these simple tasks is grossly excessive. Further, "Research" without *any* further explanation whatsoever is the type of superficial, vague billing that should be rejected for a fees award. |

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

In acting within its discretion to reduce a claimed fee award, the California Supreme Court has noted "trial courts must carefully review attorney documentation of hours expended; <u>'padding' in the form of inefficient or duplicative efforts is not subject to compensation</u>." *Ketchum,* 24 Cal. 4th at 1132 (emphasis added.)  Applying this principle here, the foregoing block-billed, inefficient, vague, unjustifiable, and padded entries are not subject to compensation.  Indeed it is apparent that after being informed of Biden's intent to voluntarily dismiss this action, Defendants ramped up their litigation efforts in what can only be characterized as an intentional and vindictive effort to inflict additional financial harm on Biden.  Such gamesmanship should not be rewarded.

### 3.    Complexity of Case, Difficulty of Issues, Skill Displayed, and Experience of Counsel.

Defendants further attempt to justify their grossly excessive fees by claiming that the issues involved in this litigation were complex and "highly technical" because they "involve criminal statutes and private rights of action".  (Dkt. #92, at 13:3-6).  However, this case is not the highly technical, complex matter Defendants make it out to be and certainly was not in the three-week period in which Defendants' current counsel was involved in the case.  This action merely involves three basic causes of action and only three parties, all of which stem from the same set of facts and intrusions of private data by Defendants.

Also, during the roughly three-week period for which fees are being sought by Defendants' newly retained counsel, Ms. Holliday, nearly all of the claimed tasks did not require significant legal analysis or research.  Even if the issues were highly technical and complex, as Defendants claim, the majority of the initial research and evaluation of Biden's claims presumably would have been performed by Defendants' prior counsel in the nearly 18 months before Ms. Holliday substituted into the case, for which no fees are sought.

Moreover, Defendants feign meekness in pointing to "the risks presented in

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

representing a party in a case opposite the son of the former President of the United States" as a reason to justify their grossly excessive fees and request for a multiplier of 1.5. This claim is easily belied by the fact that Defendants have dedicated the majority of the last five years to attacking Biden, Biden's father (former President Joe Biden), and anyone else tangentially related to them, at every possible opportunity and by all conceivable means without regard to any claimed risks. Moreover, Defense counsel fails to identify what those perceived risks may be, nor is it clear what those risks may be. The Court should give no credence to these disingenuous claims.[6]

While Defense counsel may be a competent and experienced attorney, the needs of this case during the roughly three-week period at issue here simply do not justify the grossly excessive fees sought in the Motion. The fact remains, for the reasons set forth herein, the fees sought by Defendants' Motion are unreasonable, unjustifiable, and grossly excessive, and, if the Court is even inclined to grant any fees at all, the Court should exercise its wide discretion to greatly reduce the claimed fees by at least an additional 30% from $21,697.83 to $15,188.48, if not more.

### D.    A NEGATIVE MULTIPLIER IS APPROPRIATE HERE

In certain circumstances the California "Supreme Court has repeatedly observed that a lodestar figure may be adjusted not just upward but also, where appropriate, *downward.*" *Thayer v. Wells Fargo Bank, N.A.*, 92 Cal. App. 4th 819, 840, (2001), *as modified* (Oct. 25, 2001) (emphasis in original) (citing *Maria P. v. Riles*, 43 Cal. 3d 1281, 1294 (1987) ("The touchstone figure may be increased or decreased by the trial court depending on other factors involved in the lawsuit")); *see also Ketchum*, *supra,* 24 Cal. 4th at 1134.

A negative multiplier is appropriate here for all of the reasons set forth herein,

---

[6] This argument is especially specious considering that the Biden administration never targeted law firms representing conservatives unlike the current administration which specifically targeted law firms associated with the Democratic party.



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

1   including, but not limited to, (1) the pervasive practice of block billing every single

2   billing entry by lumping numerous unrelated tasks into a single billing item thereby

3   rendering it impossible to determine, amongst other issues, how much time was spent

4   on the one cause of action for which fees are sought versus the two causes of action

5   for which fees are not sought; (2) the unreasonable nature of the billing entries

6   outlined herein at, *supra*, Section III(D)(1); (3) the obvious padding of the bills

7   causing grossly excessive fees to be charged for extremely minor and unnecessary

8   tasks in what can only be described as an intentional effort to increase litigation costs

9   to cause additional financial harm to Biden; (4) the lack of complexity and relative

10  skill required by such simple issues; and (5) the overall disingenuous nature of

11  Defendants' arguments in their Motion.  Simply put, to the extent Defendants could

12  ever be awarded any attorneys' fees here, that amount should be adjusted *significantly*

13  downward.

14  **IV.    CONCLUSION**

15          For the foregoing reasons, Biden respectfully requests that this Court deny

16  Defendants' Motion in its entirety.  However, if the Court is inclined to grant an award

17  of any fees, that award should be greatly reduced for the reasons set forth herein.

18

19  Dated:  April 10, 2025                    EARLY SULLIVAN WRIGHT
                                              GIZER & MCRAE LLP
20

21

22                                  By:   */s/ Zachary C. Hansen*
                                          BRYAN M. SULLIVAN (State Bar No.
23                                        209743)
                                          bsullivan@earlysullivan.com
24                                        ZACHARY C. HANSEN (State Bar No.
                                          325128)
25                                        zhansen@earlysullivan.com
                                          EARLY SULLIVAN WRIGHT GIZER
26                                        & McRAE LLP
                                          6420 Wilshire Boulevard, 17th Fl.
27                                        Los Angeles, California 90048
                                          Telephone: (323) 301-4660
28                                        Facsimile: (323) 301-4676

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ABBE DAVID LOWELL
AbbeLowellPublicOutreach@winston.
com
WINSTON & STRAWN LLP
1901 L St., N.W.
Washington, D.C. 20036-3508
Telephone:   (202) 282-5000
Facsimile:   (202) 282-5100

*Attorneys for Plaintiff*
*Robert Hunter Biden*

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

**PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEY'S FEES AND COSTS**