1  JENNIFER L. HOLLIDAY SBN 261343
2  JLHolliday@Proton.me
   7190 W. Sunset Blvd. #1430
3  Los Angeles, CA 90046
   (805)622-0225
4

5  **ATTORNEY FOR DEFENDANTS**

6

7

8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 ROBERT HUNTER BIDEN,            )   **Case No. 2:23-CV-07593-HDV-KSx**
                                   )
12       Plaintiff,                )
                                   )   **DEFENDANTS' MEMORANDUM IN**
13 v.                              )   **REPLY TO PLAINTIFF ROBERT**
                                   )   **HUNTER BIDEN'S OPPOSITION TO**
14 GARRETT ZIEGLER, ICU, LLC       )   **DEFENDANTS' MOTION FOR**
                                   )   **ATTORNEY'S FEES AND COSTS**
15 (d/b/a Marco Polo),             )
                                   )
16       Defendants.               )
                                   )   **THE HON. HERNÁN D. VERA**
17                                 )
                                   )
18                                 )   **HRG:  MAY 1, 2025**
                                   )   **TIME: 10:00 AM**
19                                 )   **DEPT:  5B**
                                   )
20                                 )
                                   )
21                                 )
                                   )
22                                 )
                                   )
23                                 )
                                   )
24                                 )
                                   )
25                                 )
                                   )
26 _____
27
28
                                    1

DEFENDANTS Garrett Ziegler and ICU, LLC ("Marco Polo") respectfully submit the following Memorandum in Reply to Plaintiff Robert Hunter Biden's Opposition to Defendant's Motion for Attorney's Fees per Federal Rule of Civil Procedure 54 and Section 502 of the California Penal Code.

## **TABLE OF CONTENTS**

I. INTRODUCTION………………………………………………5

II. ARGUMENT……………………………………………………..8

    a. Defendants are the prevailing parties, and the Court did not expressly deny an award of attorney's fees.

    b. The Court may award fees under 502(PC)

        i. Biden's case was objectively without foundation.

        ii. Biden's continued to litigate after it was clear his case was objectively frivolous.

    c. Defendants fees are reasonable under Plaintiff's own standards

    d. There is no basis to reduce the fee, and block billing is not improper for purposes of a fee motion.

    e. No Local Rule Violation

    f. No Alteration of Order

III. THE FEES ARE REASONABLE……………………………….16

IV. CONCLUSION…………………………………………………..18

**Certificate of Compliance**

# TABLE OF AUTHORITIES

**Cases**

*Blum v. Stenson*,
  465 U.S. 886 (1984) ……………………………………………………18

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,
  532 U.S. 598 (2001) ………………………………………………… 12

*Caudle v. Bristow Optical Co., Inc.*,
  224 F.3d 1014 (9th Cir. 2000) …………………………………… 16

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) …………………………………………… 16

*Hay v. Marinkovich*,
  108 Cal.App.5th 507 (2025) ………………………………… 10, 11

*Ingram v. Oroudjian*,
  647 F.3d 925 (9th Cir. 2011) …………………………………… 16

*Lunada Biomedical v. Nunez*,
  230 Cal. App. 4th 459 (2014) ………………………………… 13, 14, 16

*McElwaine v. U.S. West, Inc.*,
  176 F.3d 1167 (9th Cir. 1999) ………………………………… 16

*Premier Medical Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*,
  168 Cal.App.4th 550 (2008) ……………………………………………14

*Reffel v. Berryhill*, No. ED-CV-16-1985-AS,
  2019 WL 2902699 (C.D. Cal. Apr. 5, 2019) ………………………… 18

1  *Riviera Distribs., Inc. v. Jones*,
2      517 F.3d 926 (7th Cir. 2008) ……………………………………… 12
3  *Scott Co. of Cal. v. Blount, Inc.*,
4
5      20 Cal.4th 1103 (1999) …………………………………………… 10
6  *United States v. Nosal*,
7      676 F.3d 854 (9th Cir. 2012) (en banc) ………………………………… 9
8  *Van Buren v. United States*,
9
10     141 S. Ct. 1648 (2021) …………………………………………… 9
11 *Welch v. Metro. Life Ins. Co.*,
12     480 F.3d 942 (9th Cir. 2007) ……………………………………… 16

**Statutes & Rules**

18 U.S.C. § 1030 (Computer Fraud and Abuse Act)

Cal. Code Civ. Proc. § 1032(a)(4)

Cal. Code Civ. Proc. § 1032(b)

Cal. Penal Code § 502(e)(4)

Fed. R. Civ. P. 26

Fed. R. Civ. P. 54

Local Rule 5.4.3.4(a)(1) (C.D. Cal.)

Local Rule 7-3 (C.D. Cal.)

Local Rule 83-2.3.2 (C.D. Cal.)

## I. INTRODUCTION

Plaintiff R. Hunter Biden's opposition papers fail to offer any legal basis to refute that (1) Defendants are the prevailing parties, (2) the Court may award Defendants reasonable attorney's fees under 502 PC, (3) Plaintiff continued to litigate this case after it became clear that Mr. Biden's claims were objectively without foundation, and (4) Defendants' attorney's fees are reasonable.

While those four points are the focus of the Court's inquiry on this Motion, Plaintiff's Opposition Papers are peppered with distracting false statements, false accusations, mischaracterizations, and troubling new testimony revealing Rule 26 violations and obstruction. Given the clear admissions of Rule 26 violations, the Court should make an express finding that Plaintiff violated Rule 26 for failing to disclose witnesses and documents that Biden claimed supported the action.

Defendants also must correct the record – particularly as Plaintiff's counsel previously described Defendants' counsel as "despicable" for *correctly* informing the Court that Mr. Biden might have left the country to travel to South Africa while the Ex Parte Application was pending and Mr. Biden was set to appear for deposition. Now Mr. Biden has **finally admitted** (in the face of photographic evidence of his presence in South Africa) that he, in fact, did travel outside the United States to South Africa to go on a luxury vacation while the motion was pending and without disclosing it to the Court. [See Decl. of Biden]

Mr. Biden's counsel incorrectly presumes Defendants' counsel relied on press reports about Mr. Biden's international travel, when in reality, Defendants' counsel conducted an independent investigation and retained a licensed private investigator in South Africa who obtained firsthand evidence of Mr. Biden's presence in the country. Mr. Biden *continues* to misrepresent the situation while also attempting to deflect from his own lack of candor by offering the Court unauthenticated social

1   media posts falsely claiming that Defendants "altered" a Court Order before posting
2   it on X (formerly known as Twitter).
3       Moreover, now, after the case is dismissed and Mr. Biden is facing the
4   prospect of having to pay fees for an objectively frivolous lawsuit, Mr. Biden
5   suddenly discloses an "expert" who supposedly "gave a preliminary opinion that
6   Biden's purported data posted on Marco Polo did not have forensic veracity and that
7   it was different from Biden's purported data previously posted on the website
8   known as 4Chan." [Opp. ECF 94, p. 5:18-20-6:1-2].  This is entirely nonsensical
9   and makes a number of improper assumptions.  Notably, Mr. Biden does not include
10  a declaration from this supposed "expert."
11      Mr. Biden does not ever actually admit that anything posted on Marco Polo
12  *was*, in fact, his data and does not explain what the 4Chan website is or what it has
13  to do with anything related to this case.  Mr. Biden and his team simply did not
14  conduct a reasonable investigation, subpoena records of network access or IP Logs
15  or records from Apple, produce affidavits of systems disruptions, produce evidence
16  of data corruption, or even depose Mr. Ziegler – or anyone else, for that matter.  It
17  was entirely clear by February 21, 2025 – at the latest – that this case was entirely
18  without foundation.  This was the basis for a motion for summary judgment because
19  it was ultimately revealed that Mr. Biden had no evidence whatsoever to support his
20  claims.
21      Tellingly, Biden's counsel expressly defines Defendant's alleged
22  "misconduct" as making "public statements that they 'cracked the encrypted code'
23  and 'got into [Biden's] iPhone backup' (without authorization) and that Defendants
24  "confirmed" this "in various social media posts and subsequent interviews." [*Id.* at
25  5:15-18]  This is an impossibility as one cannot "confirm" that a person "cracked
26  encrypted code" or "got into" a person's "iPhone backup" simply by looking at
27  unauthenticated social media posts.  It's unclear whether these remarks – presuming
28  they were even made – were figures of speech.

At the very least, Mr. Biden's team was required to make at least a *minimal* effort to authenticate whatever "social media posts" Biden and his team purport to have used to "confirm" the alleged "misconduct." To support a claim under *criminal* statutes (that include private rights of action), Mr. Biden's team needed to actually investigate these claims, consult competent people and witnesses, and gather credible evidence.

Instead, this case is based entirely on social media posts – unauthenticated evidence that is wholly insufficient to support a lawsuit under the CFAA – and reveals that Mr. Biden continued to litigate this case long after it became clear that there was objectively no foundation for his claims. The Court, having previously awarded fees to Plaintiff who abandoned the litigation, may – and should – award reasonable attorney's fees to the prevailing Defendants.

Ironically, Plaintiff's counsel's explanation as to why he believes Defendants' fees are excessive **reveal why Defendants are entitled to fees**:

> *"[T]he motion for summary judgment was only for one defendant and consisted only of the argument that **Biden lacked evidence** on each element of the claim so it was not complicated. (Hansen Decl., ¶ 9, Ex. J.)"* (emph. added)

Indeed, there has *never* been any credible evidence supporting Mr. Biden's claims under the causes of action alleged (perhaps under *other* theories, but certainly not the CFAA or 502 PC), and this was specifically discussed on February 21, 2025 when new counsel substituted in, affording Defendants the perfect opportunity to voluntarily dismiss the case without incurring any additional fees or costs. In a further demonstration of irony, Mr. Biden *finally produces* evidence, however inadequate, to support his opposition while openly admitting he *never* made a document production in this case. [Opp., ECF 94, p. 19:21-22] ("Biden had not produced any document to date…"). In support of his opposition, however, Mr.

Biden offers declarations with Exhibits which were, by Biden's counsel's own admission, *never produced* during the litigation in violation of Rule 26. By finally producing this evidence *after the case has already been dismissed with prejudice*, Mr. Biden is attempting to improperly litigate this case by ambush while circumventing all basic due process requirements and the Federal Rules of Civil Procedure. Defendants object to the late-disclosed evidence for purposes of evaluating whether Mr. Biden had any foundation to file this lawsuit. [See Evidentiary Objections, filed concurrently]

It is critical to point out that Mr. Biden's counsel falsely accused Defendant Mr. Ziegler of "altering" an order of the Court and posting it on social media. [CITE]. This is blatantly untrue and raises serious concerns about the lengths Mr. Biden's counsel has been willing to go to in order to evade responsibility for this wholly meritless action. Mr. Biden's counsel also described Defendants' counsel as "despicable" for making a true statement to the Court about Mr. Biden's international travel.

Lastly, Plaintiff's counsel takes issue with the reasonableness of fees – claiming that counsel is grossly excessive but omitting key facts like the over 500 page Evidentiary Appendix Defendant's counsel prepared in less than 3 weeks of litigation. Defendants' counsel provides the Court with a supplemental response to each of the objections in a concurrently filed document. [See Defendants' Supplemental Reply to Objections]

This Court should award Defendants a reasonable fee.

**II.    ARGUMENT**

Defendants are entitled to attorney's fees in this case, and Plaintiff has raised a host of peculiar arguments while admitting that Mr. Biden never conducted a

reasonable investigation into the claims.[1] Instead, Mr. Biden has finally admitted his speculative and unfounded claims are based on hearsay (statements he heard on a television show) and a vague comparison of data on a website called "4Chan" – which Mr. Biden does not even attempt to explain.

Biden and his counsel finally confirm that there really was no basis to bring this action: "Defendants made public statements that they "cracked the encrypted code" and "got into [Biden's] iPhone backup" (without Biden's authorization) and that Defendants "were the first group to do it in June of 2022[.]" Defendants have since confirmed this misconduct in various social media posts and subsequent interviews." [ECF 94, p. 5:14-18]. In other words, there was no *forensic* or otherwise credible evidence of hacking or tampering with a computer system or data – just hearsay on television and social media. That is wholly insufficient to bring a claim for hacking a computer system under a *criminal statute* in a civil action.

To successfully support a CFAA claim, evidence must usually show (1) unauthorized access (e.g., using someone else's credentials, or accessing a restricted system or data); (2) circumvention of security barriers (e.g., password protection, firewall bypass, IP spoofing); (3) intentional access with knowledge of the unauthorized nature; (4) Resulting damage or loss (as defined under § 1030(e)(11)) of $5,000 or more. See e.g. *Van Buren v. United States,* 141 S. Ct. 1648 (2021); *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc)

In *Nosal*, for example, forensic evidence showed that the user credentials of a company's employees were used to access specific database files after they left the company. See *Nosal*, 676 F.3d at 854. In *Nosal*, an employee's credentials to access

---

[1] Plaintiff's counsel inexplicably begins its opposition papers falsely claiming the Motion contains "gross misstatements and unfounded personal attacks" on Mr. Biden. Ironically, the record makes clear that Mr. Biden and his counsel have been less than candid with this Court, particularly as Plaintiff's counsel previously described Defendant's counsel as "despicable" for disclosing to the Court she had heard reports that Mr. Biden had absconded to South Africa, a fact that Mr. Biden now admits.

a computer system were revoked. It was not, as alleged here, a situation where a plaintiff heard someone making statements on a television show and viewing a website. While that may have been enough to arouse suspicion and actually investigate, a reasonable investigation would require more than just some undisclosed person on Mr. Biden's "team" believing that the data on the website is different than data on 4Chan.[2]

### a. Defendants are the prevailing parties as a matter of law, and the Court did not previously deny an award of attorney's fees

Plaintiff grossly mischaracterizes the Court's order dismissing the case with prejudice, falsely claiming that the Court has already *denied* attorney's fees. [See ECF 94, p. 5:7-9 ("First, in granting Biden's request for dismissal, the Court already denied Defendants' request for fees so the substance of this Motion has been previously denied.")]. The order dismissing the case with prejudice, however, is *silent* as to the issue of fees [See ECF 94], and a separate motion for fees is appropriate following a dismissal with prejudice. See e.g. *Scott Co. of California v. Blount, Inc.,* 20 Cal.4th 1103, 1109 (1999)

Mr. Biden chose to bring claims under a state law cause of action that provided for attorney's fees to the prevailing party, failed to investigate, continued to litigate even after it became clear that the case was objectively without foundation, and then chose to abandon that litigation citing financial reasons while dedicating his resources to *other* litigation in this District. Notably, the California Court of Appeals expressly held that a prevailing defendant is entitled to fees under Section 502 only at the end of February 2025 which may have factored into Biden's decision to abruptly dismiss this litigation approximately one week after the Court's ruling. See *Hay v. Marinkovich* (2025) 108 Cal.App. 5th 507.

---

[2] Notably, Mr. Biden does not explain what 4Chan is. [See ECF 95-1

1  Mr. Biden assumed not only the risk that he might have to pay Defendants'
2  attorney's fees but also that by abandoning the litigation, he risked consequences.
3  In a case where fees and costs are available to the prevailing party, it is nonsensical
4  that a litigant with a meritorious case would abandon the litigation solely on the
5  basis of financial hardship.  After all, Mr. Biden could, provided his case had any
6  evidentiary support, stand to financially benefit from completing the litigation.  Mr.
7  Biden's case is objectively without foundation – which became clear in February
8  2025.

### b. The Court may award fees under 502 PC

Defendants acknowledge this Court's Orders [ECF 50, 67] and note that the Court has denied the motion to dismiss and granted Plaintiff's motion for fees under the California anti-SLAPP statute.  Defendants therefore focus the fee request on the basis that Plaintiff continued to litigate after it became clear that the case was objectively without foundation. See *Hay v. Marinkovich* (2025) 108 Cal.App. 5th 507.

### c. Defendants fees are reasonable under Plaintiff's own standards

The parties agree that the Court may award reasonable attorney's fees to a prevailing defendant as the Court of Appeals ruled in February 2025. *Hay v. Marinkovich* (2025) 108 Cal.App. 5th 507.  Mr. Biden concedes that attorney's fees are available to a prevailing defendant under California Penal Code Section 502(e)(4) where "the Plaintiff's claim was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so." [Opp., ECF 94, p. 11:7-11; Opp. ECF 94, p. 5:10-14 quoting *Hay v. Marinkovich* (2025) 108 Cal.App. 5th 507.  This Court has already previously ruled that the action was not entirely frivolous and awarded Mr. Biden's attorneys (including one who charged

$1,480 per hour) over $17,000 in fees on just *one* motion. [See ECF 50; ECF 67][3] Acknowledging the Court's Order, Defendants seek reasonable fees on the basis that Mr. Biden continued to litigate the matter after the claims clearly became objectively without foundation – at the latest, in February 2025 when Defendants sent a letter under Local Rule 7-3 seeking to meet and confer on a Motion for Summary Judgment on the basis that there was *no evidence* to support Mr. Biden's claims. Nevertheless, Mr. Biden persisted with his claims that entirely lacked foundation until he hastily sought to voluntarily dismiss the case on the basis that he could not afford to litigate this case if he was going to continue litigating *other* cases in this District. Notably, by retaining multiple extremely expensive attorneys at multiple law firms in Los Angeles, Washington D.C., and New York, Mr. Biden's choice of counsel was surely a factor in his financial hardship.

Despite Mr. Biden's request to dismiss the case without prejudice, **this Court dismissed the case *with prejudice*, and Plaintiff did not seek reconsideration or timely appeal**. Under federal law, a dismissal with prejudice represents a *material alteration* in the legal relationship of the parties; therefore, Defendants are the prevailing parties in the action for purposes of a motion seeking fees and costs under Rule 54. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598 (2001) See also *Riviera Distribs., Inc. v. Jones*, 517 F.3d 926 (7th Cir. 2008) (holding voluntary dismissal with prejudice of copyright claims confers prevailing party status on defendants under *Buckhannon*). Similarly, under the California Code of Civil Procedure, a "prevailing party" is expressly defined to include "a defendant in whose favor a dismissal is entered…" Code Civ. Proc. § 1032(a)(4). Moreover, California law makes clear: "Except as otherwise expressly

---

[3] Both Defendants have filed a Notice of Appeal for both the Order denying the Motion to Dismiss and the Order and the

provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Code Civ. Proc. § 1032(b).

Mr. Biden's counsel claims this case was "not the highly technical, complex matter Defendants make it out to be…" [ECF 94, p. 23:16-17] in an effort to diminish the amount of skill and effort required to litigate this case – or perhaps because Mr. Biden's counsel fundamentally misapprehends the evidentiary requirements of maintaining a case under these *criminal* statutes.

Moreover, the Court should consider Defendants' success in the action. This case had been pending for almost two years, and in a matter of only three weeks under the skill, reputation, strategy, and applied pressure of new counsel, Mr. Biden elected to dismiss the case entirely without even noticing any depositions. Given the fact that the prevailing party would be entitled to attorney's fees under Section 502 of the Penal Code, Mr. Biden *and his counsel* had no incentive to abandon a meritorious case at this stage – even if Mr. Biden was having financial difficulties. If anything, Mr. Biden's financial circumstances give him an *incentive* to pursue meritorious litigation. The issue in this case, however, is that it entirely lacked merit, and Mr. Biden and/or his counsel risk not only having to pay Mr. Ziegler's attorney's fees but also risk additional liability for malicious prosecution.

### d. There is no basis to reduce the fee, and block billing is not improper for purposes of a fee motion.

Plaintiff takes issue with Defendants' counsel's "block billing," but as this Court has previously explained in this case in ruling on Plaintiff's fee motion, "a party can carry its burden of establishing the reasonableness of the hours expended "by submitting a declaration from counsel instead of billing records or invoices." *Id.* at 7:6-8 quoting *Lunada Biomedical v. Nunez* (2014) 230 Cal. App. 4th 459, 488.

1       Here, Plaintiffs make the same argument about block billing that was unpersuasive to the Court in *Lunada Biomedical*. See *Id.* at 487 (ruling that the block billed records were sufficient to allow the Court to make the relevant determination).  This case is indistinguishable from *Lunada* in that regard: the evidence submitted by Defendant's counsel is sufficient for the Court to be able to determine the type of work performed and the reasonableness of the hours spent, how much time was spent on the case over the course of three weeks.  Notably, in *Lunada*, the fees were limited to just *one* motion, and the trial awarded in excess of $104,000. *Id.*  The Court of Appeal upheld the fee award but remanded to the lower court to determine whether the fee award was reasonable. See *Id.* The Court explained, "In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged with a specific argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Id.* citing *Premier Medical Management Systems, Inc.v. California Ins. Guarantee Assn.* (2008) 168 Cal.App.4th 550, 564.

      Plaintiff's challenge to the fees is perplexing. [See ECF 94 p. 18-22]. For example, Plaintiff objects to the description of the work on February 20, 2025 where counsel reviewed the case history as "administrative" and that eight hours is grossly excessive for "menial" tasks.  [*Id.* at 18-19]. By February 20, 2025, however, there were *seventy-six* separate docket entries on this case and, as Plaintiff admits, over fifteen hundred pages of pages of evidence to review. [*Id.* at 19:6][4]

---

[4] Biden's counsel complains that Defendants did not afford Biden the "common courtesy" of a first extension to discovery requests but omits the fact that Defendants' counsel expressed concern about the deadlines set forth in the Scheduling Order.  Indeed, at the March 3, 2025 hearing, Magistrate Judge Stevenson noted that there was insufficient time to file a discovery motion re: contempt without moving to amend the Scheduling Order.  Plaintiff did not stipulate to a request to amend the Scheduling

(continued...)

Here, however, the fees are available to Defendants and reflect work performed in connection with the *overall case*, not just one motion, and after it became clear that the claims are objectively without foundation - including discovery issues, correspondence, a motion for summary judgment (based on a lack of evidence), a pre-filing hearing with Magistrate Judge Stevenson on a motion for contempt of a deposition subpoena, opposing an ex parte application to dismiss, and more. The fees are entirely reasonable. [See Supplemental Reply to Fee Objections]

### e.  No Local Rule Violation

In a footnote, Plaintiff incorrectly asserts that the Motion was "procedurally defective" because it is "unsigned" by counsel. [See Memo in Opp., p. 5 FN 1]. This is incorrect and a reflection of Plaintiff's counsel's misunderstanding of the Court's Local Rules. The Notice of Motion and Motion and the Memorandum bear an electronic signature of counsel registered with the CM ECF system. Local Rule 5.4.3.4(a)(1) specifically provides that documents filed through the attorney's account on the CM/ECF system are signed electronically and may bear a "/s/" to represent the electronic signature of counsel (rather than a "wet" signature).

The Notice of Lodging of Proposed Order that is related to the Motion was filed separately and does not bear an attorney signature because it is not required under the Local Rule. See L.R. 5-1  Plaintiff's counsel conflates the concepts of an "unsigned motion" with an electronically signed motion, or, alternatively, with an unsigned Notice of Lodging because Plaintiff's counsel argues that the absence of a signature violates Rule 11 and constitutes grounds to "disregard the unsigned

---

Order, and therefore Defendants could not grant an extension to the discovery deadline without causing additional issues and motion practice.

*motion.*" Here, the Motion is signed, and the Proposed Order is lodged, but Plaintiff's counsel will promptly provide any signatures.

### f. Defendants did not "alter" an Order.

Plaintiff's counsel includes an exhibit from a social media post falsely accusing Defendants of altering an order. [See Decl. of Hansen, Ex. O Evid. Objections] This is not only incorrect but also improper and an attempt to inflame the Court or disparage Defendants to deflect from the Plaintiff's own misconduct.

## III. THE FEES ARE REASONABLE

### a. The Court Should Begin with Calculating the Lodestar

As this Court has previously explained, to determine an award of attorney's fees, courts may begin by calculating the "lodestar." See *Biden v. Ziegler*, ECF 67, 6:4-17 citing *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000). To calculate the lodestar, a court "multiplies the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work." *Id.* citing *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). The court may rely "on their own knowledge of customary rates and their experience concerning reasonable and proper fees," *Id.* quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011), and at the same time may "exclude from the fee request any hours that are 'excessive, redundant, or otherwise unnecessary.'" *Id. Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). This Court previously noted that the moving party must provide "evidence that allows the court to 'consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended.'" *Id.* quoting *Lunada Biomedical v. Nunez*, 230 Cal.App. 4th 459, 486–487 (Cal. Ct. App. 2014).

1	Here, Defendants' counsel provided general billing sheets that allows the
2	court to consider whether the case was overstaffed and how much counsel – a solo
3	practitioner – spent on particular tasks and how those hours were expended.
4	Specifically, Defendants' counsel spent approximately forty hours per week on this
5	case over a three-week period during a crucial, late stage of litigation with a
6	substantial amount of work caused almost exclusively by Mr. Biden's obstructive
7	discovery conduct and refusal to simply agree to dismiss the case with prejudice
8	prior to service of a motion for summary judgment.  Defendant did not include
9	billing for administrative tasks (service of documents, etc.) or for any costs or
10	vendors.  Under the circumstances, where the litigation has been pending for almost
11	*two years*, and Defendants' counsel had to familiarize herself with the background
12	of the case and the extensive case history and evidence, the forty hours per week are
13	reasonable.

14	Moreover, Defendant's counsel's rate of $775 is approximately *half* of the
15	rate this Court has previously awarded to Defendant's counsel Paul Salvaty:
16	$1,480.00, an hourly fee which the Court found reasonable. [See ECF 67, p. 6:27-
17	28]. Notably, after this Court awarded an interlocutory fee award, which Defendants
18	promptly paid, Mr. Salvaty abandoned this litigation prior to dismissal without court
19	approval and without discussing it with Defendant's counsel in violation of Local
20	Rule 83-2.3.2.  It is therefore ironic that Mr. Biden's team would take issue with the
21	hourly fee having charged double that fee to Mr. Biden – who now suffers from so
22	much financial distress that he cannot continue the litigation, effectively depriving
23	Mr. Ziegler and ICU, LLC of an opportunity to recover the fee award – and much
24	more – by prevailing in the action post-discovery.

### i.  Billing Rates

This Court previously explained that "an hourly rate is deemed reasonable by the market rates in the relevant community—'the forum in which the district court sits'— for "'similar work performed by attorneys of comparable skill, experience, and reputation." *Biden v. Ziegler*, ECF 67, p. 6:19-24 quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "A district court must rely on more than just the declarations of the attorney in assessing what is a reasonable rate." *Id.* citing *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984) (requiring evidence "*in addition to* the attorney's own affidavits")

Here, Defendants are providing the Court with the information provided by Plaintiff's counsel in its earlier fee award. [See e.g. ECF 67]. This Court has previously explained "The Court is aware of other courts in this district awarding fees of up to $1,500.00 per hour for similarly situated counsel." *See e.g., Reffel v. Berryhill*, No. ED-CV-16-1985-AS, 2019 WL 2902699, at *3–4 (C.D. Cal. Apr. 5, 2019).

The fees requested are reasonable.

### IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion and award reasonable attorney's fees.

DATE:  APR. 17, 2025         _/S/_____

                             **JENNIFER L. HOLLIDAY**
                             ATTORNEY FOR DEFENDANTS
                             GARRETT ZIEGLER
                             ICU, LLC

# L.R. 11-6.2. Certificate of Compliance.

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,031 words, which complies with the word limit of L.R. 11-6.1.

DATE: APR. 17, 2025                    _/S/_____

**JENNIFER L. HOLLIDAY**
ATTORNEY FOR DEFENDANTS
GARRETT ZIEGLER
ICU, LLC