```
                    UNITED STATES OF AMERICA
                   UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
                         WESTERN DIVISION

                              - - -
                    HONORABLE HERNAN D. VERA
               UNITED STATES DISTRICT JUDGE PRESIDING
                              - - -


    ROBERT HUNTER BIDEN,              )
                                      )
              PLAINTIFF,              )
                                      )
    VS.                               )   CASE NO.:
                                      )   CV 23-07593-HDV
    GARRETT ZIEGLER, ET AL.,          )
                                      )
              DEFENDANT.              )
    _____)




              REPORTER'S TRANSCRIPT OF PROCEEDINGS

                  THURSDAY, AUGUST 22, 2024

                    LOS ANGELES, CALIFORNIA
```

LAURA MILLER ELIAS, CSR 10019
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, ROOM 4455
LOS ANGELES, CALIFORNIA 90012
PH:  (213) 894-0374


UNITED STATES DISTRICT COURT

```
 1    APPEARANCES OF COUNSEL:
 2
 3    ON BEHALF OF PLAINTIFF:
 4
 5              WINSTON AND STRAWN LLP
 6              BY:  GREGORY ELLIS, ESQ.
 7              333 SOUTH GRAND AVENUE
 8              38TH FLOOR
 9              LOS ANGELES, CA 90071
10
11
12    ON BEHALF OF DEFENDANT:
13
14              TYLER LAW, LLP
15              BY:  BRADLEY GREENMAN, ESQ.
16                   ROBERT TYLER, ESQ.
17              25026 LAS BRISAS ROAD
18              MURRIETA, CA 92562
19
20
21
22
23
24
25
```

UNITED STATES DISTRICT COURT

```
 1
 2                              INDEX
 3
 4
 5     PROCEEDING                                      PAGE
 6
 7     MOTION FOR ATTORNEY'S FEES
 8     RE:   ANTI-SLAPP MOTION                          4
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1      LOS ANGELES, CALIFORNIA; THURSDAY, AUG. 22, 2024; 10:22  A.M.
 2                              - - -
 3              THE CLERK:  Item No. 2.
 4              Case No. CV 23-07593.
 5              Robert Hunter Biden versus Garrett Ziegler, et al.
 6              Counsel, please state your appearances.
 7              MR. ELLIS:  Good morning, Your Honor.  Gregory
 8      Ellis of Winston & Strawn for plaintiff Robert Hunter Biden.
 9              THE COURT:  Good morning.
10              MR. GREENMAN:  Good morning, Your Honor.  Bradley
11      Greenman on behalf of defendants Garrett Ziegler and Marco
12      Polo.
13              THE COURT:  Good morning.
14              MR. TYLER:  Your Honor, Robert Tyler as well on
15      behalf of the defendants.
16              THE COURT:  Good morning.
17              All right.  We're here for plaintiff's motion for
18      fees relating to the anti-SLAPP portion of the motion that
19      was filed.  So let me start with a few general thoughts on
20      this that you can react to and I'll give you time to make any
21      points that you would like.
22              Essentially, there were two portions of the
23      anti-SLAPP, uh, the federal claim itself.  There's black
24      letter law that doesn't apply to federal claims so that was
25      addressed pretty summarily both in the briefing and the
```

```
1       Court's order.  As to the state law claims, the Court did
2       also find that the anti-SLAPP didn't apply.  And I would be
3       inclined on my first reading of this to find that the
4       argument itself was frivolous which requires me to order
10:23AM 5       fees.
6                   And I am specifically looking at the California
7       Supreme Court case in Navalier where the court said, "The
8       mere fact that an action was filed after protected activity
9       took place, does not mean the action arose from that
10:24AM 10      activity.  The critical consideration is whether the cause of
11      action is based on the defendant's protected free speech."
12      And here the state claims are the California Computer Data
13      Access and Fraud Act and the UCL.
14                  So, I guess, the question would be then to
10:24AM 15      defendant's counsel, why should I find that it was based,
16      that the cause of action, not their motivation and I know
17      that published the website, but why should the cause of
18      action relating to the hacking, how is that based on free
19      speech within the four corners of Navalier, uh, that's my
10:24AM 20      question.
21                  MR. GREENMAN:  Thank you, Your Honor.
22                  I would say in terms of Navalier, our case is
23      distinguishable in a couple different regards.  First, we --
24      can you repeat the question one more time for me?  Sorry.
10:25AM 25                  THE COURT:  Well, how is the protected activity of
```

6

|      |         |                                                                      |
|------|---------|----------------------------------------------------------------------|
|      | 1       | creating the website later, how is that -- how is the                |
|      | 2       | computer -- the Computer Data Access and Fraud Act claim,            |
|      | 3       | right, how is that based on the protected activity when what         |
|      | 4       | at least as alleged, the claim is based on the hacking?  The         |
| 10:25AM | 5    | fact that the data was allegedly taken from the laptop.  Why         |
|      | 6       | should I find that it's based on the protected activity?             |
|      | 7       | That's only way I think that you get out of a finding that           |
|      | 8       | the argument wasn't frivolous.                                       |
|      | 9       | MR. GREENMAN:  Yes, Your Honor.                                      |
| 10:26AM | 10   | I would point to the nature of the relief that                       |
|      | 11      | plaintiff is seeking in this case.  They are seeking                 |
|      | 12      | declaratory and injunctive relief against defendants which in       |
|      | 13      | effect would require defendant to shut down his website, stop       |
|      | 14      | reporting on newsworthy information and otherwise stop              |
| 10:26AM | 15   | accessing data that in -- in one regard the question in             |
|      | 16      | plaintiff's briefing assumes that there was illegal activity        |
|      | 17      | by which defendants obtained the information which we               |
|      | 18      | obviously don't think that is the case.                              |
|      | 19      | But if they're going to seek declaratory injunctive                  |
| 10:26AM | 20   | relief, it is going to inhibit plaintiff from reporting on          |
|      | 21      | the information.  And not just reporting on it, he's also           |
|      | 22      | published a report that composes analysis based on the              |
|      | 23      | information and the injunctive relief being sought would            |
|      | 24      | infringe on that, Your Honor.                                        |
| 10:27AM | 25   | THE COURT:  Okay.  All right.  Any case law that                     |

|   |   |
|---|---|
| 1 | you would point me to that would make that connection?  In |
| 2 | other words, both sides have cited to dozens of cases.  What |
| 3 | do you I think I should focus more specifically in terms of |
| 4 | the case law to find this was brought in good faith? |
| 10:27AM 5 | MR. GREENMAN:  I can't recall the case's name off |
| 6 | the top of my head.  If we go to the first section of our |
| 7 | opposition to the motion, I believe this falls within a |
| 8 | quintessential case and underneath the ambit of anti-SLAPP. |
| 9 | I would connect it to that case not being able to recall the |
| 10:28AM 10 | specific name, Your Honor.  Apologize. |
| 11 | THE COURT:  Is there anything else that you would |
| 12 | like to highlight from your briefs? |
| 13 | MR. GREENMAN:  I would -- I would point out briefly |
| 14 | the, um, nature of -- if we're looking at the reply, the |
| 10:28AM 15 | motion itself, the simple math going on here, um, I think we |
| 16 | would -- we would admit that the mention of the federal cause |
| 17 | of action within the anti-SLAPP section is a confusing place |
| 18 | for that to be.  We don't draw any conclusions from that in |
| 19 | that brief directly relating to dismissing the federal causes |
| 10:28AM 20 | of action underneath the federal anti-SLAPP. |
| 21 | And we also don't oppose, uh, plaintiff's |
| 22 | subsequent and very short briefing that the federal statute |
| 23 | would not be protected.  We did not oppose that.  We did not |
| 24 | waste their time, their money in our opinion on that point. |
| 10:29AM 25 | And when we're looking at the case holistically, |

|   |   |
|---|---|
| 1 | the other question or the other issue I would probably want |
| 2 | to point out is when we're talking about the anti-SLAPP under |
| 3 | the California legislation, the motion for attorneys' fees |
| 4 | doesn't distinguish between the federal claim they fought and |
| 10:29AM 5 | the state claim they fought. |
| 6 | And I think when you look at it in a totality, we |
| 7 | have definitely met the nonfrivolous standard which under |
| 8 | Moore is whether a reasonable attorney would look at the |
| 9 | motion and believe that it was frivolous or without merit, I |
| 10:29AM 10 | think is the word, and whether it is obvious that it was |
| 11 | brought to harass the plaintiff which in this case under |
| 12 | these facts, it does not exist. |
| 13 | I would also look at the reply in support of the |
| 14 | motion. Um, talks about multiple cases that we ignore in the |
| 10:30AM 15 | plaintiff's words. Most of those cases aren't even remotely |
| 16 | factually on point. There's a footnote with about five or |
| 17 | six cases. Three of those cases don't need to be |
| 18 | distinguished cause plaintiff relies on them only for the |
| 19 | proposition that the fee switching provision can be applied |
| 10:30AM 20 | in federal court which we don't dispute. |
| 21 | And the others are completely factually |
| 22 | distinguishable. One being an anti-SLAPP claim brought by a |
| 23 | tenant against his landlord, uh, to try to avoid paying rent. |
| 24 | The court found that paying your rent is not protected |
| 10:30AM 25 | activity. |

```
 1              And the other, I'll say Paramount for ease of
 2     pronunciation, I also believe that's one distinguishable.
 3     It's the closest that gets to being on point in this case.
 4     It's from the Southern District case.  And in that case, the
 5     court explicitly notes given multiple opportunities to argue
 6     that the anti-SLAPP was not frivolous, the defendants did
 7     not.  And we're here today arguing it was not frivolous
 8     especially when we look at the total volume.
 9              THE COURT:  How do you distinguish the Malin Singer
10     case that actually did focus on hacking and the anti-SLAPP?
11              MR. GREENMAN:  I don't have a distinguishing remark
12     for that case, Your Honor.
13              THE COURT:  I mean, it was pretty clear.  2013 case
14     from California saying that the claims based on allegations
15     of computer hacking "do not fit one of the categories of
16     protected activities defined by the legislature in
17     Section 425.16 and therefore, not subject to anti-SLAPP
18     dismissal."
19              MR. GREENMAN:  I would again reemphasize this case
20     is not about hacking.  Framing this case needs to be
21     understood in the protected activity that defendants are
22     engaging in.  And in the framing of plaintiff's briefings as
23     an issue of the access to the information, the manner in
24     which it was obtained, again, we don't concede it was ever
25     obtained illegally, and it would be a pretextual manner in
```

1  which to try to silence the subsequent speech activities of
2  our clients.
3           THE COURT:  All right.  Let me hear from Mr. Ellis
4  on those points.
10:32AM 5           MR. ELLIS:  Thank you, Your Honor.
6           First, I agree with Your Honor's approach with
7  leading off with Navalier and its standard for what triggers
8  the anti-SLAPP protection in the first place.  The other case
9  that I want to point to at that high level of determining
10:33AM 10 what is and what is not a SLAPP is the Park case which we had
11 cited in our opposition to the anti-SLAPP motion.  It's
12 mentioned in the judge's order denying the anti-SLAPP and the
13 motion to dismiss.
14          And it notes that, "A claim may be struck only if
10:33AM 15 the speech or petitioning activity itself is the wrong
16 complained of and not just evidence of liability or a step
17 leading to some different act."
18          And I think that case disposes of the distinction
19 that defense counsel wants to draw between the relief sought
10:33AM 20 and using the relief sought somehow as a trigger for the
21 first anti-SLAPP prong.  What Navalier says, what Park says
22 is that the focus has to be on the liability-generating
23 action.  The relief sought will be addressed somewhere down
24 the road, but what triggers a SLAPP is what generates the
10:34AM 25 liability not what the measure of relief is.

1                    The second point I want to raise and this is

2          another holistic one to use defense counsel's point is that

3          throughout the moving papers, uh, throughout the opposition

4          brief, and even for a little bit again here on the argument

10:34AM  5          is that defendants are trying to cast this as a SLAPP because

6          it might have some sort of chilling effect on what they view

7          defense's news gathering conduct to be.  But that simply

8          isn't what triggers the anti-SLAPP motion or the protections

9          of the anti-SLAPP.

10:34AM 10                    As we pointed out in our reply brief, an intent to

11          chill has not been part of the anti-SLAPP analysis for over

12          20 years.  Instead, one has to analyze the complaint, look at

13          what the activities are as alleged to generate liability and

14          whether those fit within the four very specifically defined

10:35AM 15          areas in the anti-SLAPP statute.

16                    So this repeated mantra that the case should be

17          framed as some sort of attack on defendant's news gathering

18          activities, that it was intended to chill to speech, that it

19          might have an effect of chilling speech, they're free to make

10:35AM 20          all those argument as much they want, but for purpose of the

21          anti-SLAPP, those activities are really irrelevant.

22                    We have to look at what the alleged misconduct is

23          and whether it fits the four conners of Subsection E and

24          those categories of protected speech.  And here there's just

10:35AM 25          no case law given that gives them any kind of cover to say

```
 1         that the anti-SLAPP statute is protected or is triggered.
 2                   THE COURT:  What about this other case with
 3         Judge Epstein?  I know Judge Epstein well, but I did not go
 4         through and try to parse out what that case really involved.
 5         So if you could give me a summary of what happened there and
 6         why it wouldn't at least give them some good faith basis to
 7         believe that they can bring that anti-SLAPP motion in this
 8         case.
 9                   MR. ELLIS:  Thank you, Your Honor.
10                   We did submit the complaint with our reply brief,
11         but to summarize it, there the same defendants reached out to
12         a different plaintiff purporting to impersonate I think a
13         democratic donor in an effort to have the plaintiff in the
14         second case disclose information to defendants.  Defendants
15         then took that information and published it.  On top of that,
16         they published the defendant's home address which lead to
17         various death threats and various harassment being directed
18         at the plaintiff by third parties.
19                   So there the complaint is really directed much more
20         or entirely almost at the speech-related activities.  There
21         are allegations that the defendants impersonated somebody
22         else.  That was speech as Judge Epstein determined.  There
23         was a much stronger showing that all the conduct at issue was
24         specifically related to this news gathering purpose and news
25         gathering process that defendants used to put it on their
```

```
 1    website.  So at the very front end, the plaintiff in the
 2    other case really cast the case as dealing with speech and
 3    news gathering related activities.
 4              THE COURT:  Was there any alleged wiretapping or
 5    hacking?
 6              MR. ELLIS:  I don't believe there was, Your Honor.
 7              THE COURT:  All right.  Anything else you'd like to
 8    highlight from your briefs?
 9              MR. ELLIS:  The only other point that I want to
10    make that we just glossed over in the briefs, but wanted to
11    raise to the Court's attention relates to the number of
12    hours.  Since defendants don't dispute the rates at issue,
13    they don't dispute the five hours.  It's really once we get
14    to the amount, there's just the 8.28 hours that are at issue.
15    And one of the points that we made in passing, but that I
16    want to emphasize is we had to address the entirety of the
17    anti-SLAPP motion.
18              We had to address both the state law claims and the
19    federal claim, but we also had to address both prongs in the
20    event as improbable as we thought it was, but there was
21    always the off chance that the Court could have found that
22    the first prong was met.  So we had to do a prong two showing
23    which involved marshaling evidence, presenting a declaration
24    from Mr. Biden, reviewing the declarations of Mr. Ziegler and
25    how they fit into the prong two showing of a probability of
```

1       success.

2               So when those additional facts and points are taken

3       into account, I think the eight hours that we're asking for,

4       just a shade over eight, is entirely reasonable.

10:39AM 5       THE COURT:  All right.  Very good.

6               I'll give defendant's counsel the last word on this

7       and we'll wrap up.

8               MR. GREENMAN:  Thank you, Your Honor.

9               The case I was trying to refer to earlier that made

10:39AM 10      a connection is Safari Club International versus Rudolph

11      where just because a complaint on its face does not state

12      that it is trying to suppress free speech, causes of action

13      that disagree with opposing counsel, um, they are different

14      in the state case you guys were discussing than what we're

10:39AM 15      talking about here.  There is a -- it would be a pretextual

16      use of the statutes they are suing, the causes of action

17      plaintiff is suing under to try to silence the speech

18      activities of our client of national significance, uh, which

19      the other way this case is distinguishable from all the other

10:40AM 20      cases we can cite either side of us is the fact that it deals

21      with the sitting president's son and the involvement in

22      foreign affairs and national affairs that are relevant to

23      this country.

24              THE COURT:  All right.  Thank you, Counsel for the

10:40AM 25      very good briefs and argument.  The matter will be deemed

```
1    submitted.  We'll get an order out as soon as we can.
2                MR. ELLIS:  Thank you, Your Honor.
3                MR. GREENMAN:  Thank you, Your Honor.
4                (Proceedings were concluded at 10:40 a.m.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2                    CERTIFICATE OF REPORTER
 3
 4    COUNTY OF LOS ANGELES      )
 5                               )  SS.
 6    STATE OF CALIFORNIA        )
 7
 8    I, LAURA ELIAS, OFFICIAL REPORTER, IN AND FOR THE UNITED
 9    STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,
10    DO HEREBY CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE
11    FOREGOING PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET
12    FORTH; THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN
13    FORM BY MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO
14    FURTHER CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION
15    OF MY STENOGRAPHIC NOTES.
16
17
18    DATE:  FEBRUARY 19, 2025
19
20         /s/   LAURA MILLER ELIAS
21    LAURA MILLER ELIAS, CSR 10019
22    FEDERAL OFFICIAL COURT REPORTER
23
24
25
```