# EXHIBIT B

Docket Nos. 25-2406; 25-2407; 25-2408; 25-2412

In the

# UNITED STATES COURT OF APPEALS

For the

# NINTH CIRCUIT

---

GARRETT ZIEGLER; ICU, LLC (DBA MARCO POLO),
*Appellants and Defendants,*

*v.*

ROBERT HUNTER BIDEN,
*Respondent and Plaintiff.*

---

APPEAL FROM ORDER OF THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
CASE NO. 2:23-CV-07593-HDV-KS
HON. HERNAN D. VERA, UNITED STATES DISTRICT JUDGE

---

## APPENDIX IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS APPEALS

---

Bryan M. Sullivan, California State Bar No. 209743
*bsullivan@earlysullivan.com*
Zachary C. Hansen, California State Bar No. 325128
*zhansen@earlysullivan.com*
EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
6420 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048
TELEPHONE:     (323) 301-4660
FACSIMILE:     (323) 301-4676

*Attorneys for Respondent and Plaintiff*
ROBERT HUNTER BIDEN

# VOLUME 1

*Robert Hunter Biden v. Garrett Ziegler and ICU, LLC*

United States District Court Central District of California

Case No.: 2:23-cv-07593-HDV-KS

| Description | Docket No. | Date | Pages |
|---|---|---|---|
| ICU, LLC's Notice of Appeal Filed on April 14, 2025 | 98 | 04/142025 | APP 0001 |
| ICU, LLC's Notice of Appeal Filed on April 14, 2025 | 97 | 04/14/2025 | APP 0002 |
| Garrett Ziegler's  Notice of Appeal Filed on April 14, 2025 | 96 | 04/14/2025 | APP 0003 |
| Garrett Ziegler's  Notice of Appeal Filed on April 14, 2025 | 95 | 04/14/2025 | APP 0004 |
| Minutes in Chambers Order Dismissing Action with Prejudice | 91 | 03/13/2025 | APP 0005 – APP 0008 |
| Opposition to Ex *Parte* Application for Order to Voluntarily Dismiss Action | 88 | 03/06/2025 | APP 0009 – APP 0025 |
| Ex *Parte* Application to Voluntarily Dismiss Action | 85 | 03/05/2025 | APP 0026 – APP 0044 |
| Order Dismissing Appeal (U.S. Court of Appeals for the Ninth Circuit No. 24-4511) | 15.1 | 10/17/2024 | APP 0045 |
| Motion to Dismiss (U.S. Court of Appeals for the Ninth Circuit No. 24-4511) | 13.1 | 10/01/2024 | APP 0046 – APP 0047 |
| Order Granting Plaintiff Robert H. Bidens Motion for Attorney's Fees Incurred in Opposition to Anti-SLAPP Motion | 67 | 09/09/2024 | APP 0048 – APP 0054 |
| Opposition to Motion for Attorneys' Fees | 60 | 08/01/2024 | APP 0055 – APP 0064 |
| Garrett Ziegler and ICU, LLC's Notice of Appeal Filed on July 19, 2024 | 55 | 07/19/2024 | APP 0065 – APP 0085 |
| Motion for Attorney's Fees Incurred in Opposition to Anti-SLAPP Motion | 52 | 07/05/2024 | APP 0086 – APP 0097 |

| Description | Docket No. | Date | Pages |
|---|---|---|---|
| Order Denying Defendants' Motion to Dismiss | 50 | 06/20/2024 | APP 0098 – APP 0115 |
| Opposition to Defendants' Motion to Dismiss | 30 | 02/29/2024 | APP 0116 – APP 0147 |
| Motion to Dismiss | 23 | 12/21/2023 | APP 0148 – APP 0177 |
| Complaint for Damages, Injunctive and Equitable Relief; Demand for Jury Trial | 1 | 09/13/2023 | APP 0178 – APP 0191 |

Dated:  April 28, 2025            EARLY SULLIVAN WRIGHT
                                  GIZER & McRAE LLP


                        By:  _____
                             Bryan M. Sullivan
                             Zachary C. Hansen
                             Attorneys for Plaintiff and Resondent
                             ROBERT HUNTER BIDEN

5809217.1

3

Name __Jennifer L. Holliday__

Address __7190 W. Sunset Blvd. #1430__

City, State, Zip __Los Angeles, CA 90046__

Phone __310-600-6078__

Fax _____

E-Mail __JLHolliday@Proton.me__

☐ FPD  ☐ Appointed  ☐ CJA  ☐ Pro Per  ☒ Retained

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert Hunter Biden | CASE NUMBER: |
| PLAINTIFF(S), | 2:23-CV-07593 |
| v. | |
| Garrett Ziegler, ICU, LLC (a.k.a. "Marco Polo") | **NOTICE OF APPEAL** |
| DEFENDANT(S). | |

NOTICE IS HEREBY GIVEN that _____ICU, LLC_____ hereby appeals to

_Name of Appellant_

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):

    Granting Fees [ECF 67]

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on __September 9, 2024__ . Entered on the docket in this action on __June 20, 2024__ .

A copy of said judgment or order is attached hereto.

__April 14, 2025__

Date

_____

Signature

☐ Appellant/ProSe  ☒ Counsel for Appellant  ☐ Deputy Clerk

**Note:** The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

**NOTICE OF APPEAL**

Name  Jennifer L. Holliday

Address  7190 W. Sunset Blvd. #1430

City, State, Zip  Los Angeles, CA 90046

Phone  310-600-6078

Fax

E-Mail  JLHolliday@Proton.me

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Robert Hunter Biden | CASE NUMBER: |
| | |
| PLAINTIFF(S), | 2:23-CV-07593 |
| v. | |
| Garrett Ziegler, ICU, LLC (a.k.a. "Marco Polo") | **NOTICE OF APPEAL** |
| DEFENDANT(S). | |

NOTICE IS HEREBY GIVEN that _____ ICU, LLC _____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):

   Denying Motion to Dismiss [ECF 50]

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on ____ June 20, 2024 ____. Entered on the docket in this action on ___ June 20, 2024 ___.

A copy of said judgment or order is attached hereto.

____ April 14, 2025 ____

Date

Signature

☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

**Note:**  The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

| | |
|---|---|
| Name | Jennifer L. Holliday |
| Address | 7190 W. Sunset Blvd. #1430 |
| City, State, Zip | Los Angeles, CA 90046 |
| Phone | 310-600-6078 |
| Fax | |
| E-Mail | JLHolliday@Proton.me |

☐ FPD  ☐ Appointed  ☐ CJA  ☐ Pro Per  ☒ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert Hunter Biden<br><br>PLAINTIFF(S),<br><br>v.<br><br>Garrett Ziegler, ICU, LLC (a.k.a. "Marco Polo")<br><br>DEFENDANT(S). | CASE NUMBER:<br><br>2:23-CV-07593<br><br><br>**NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that _____ Garrett Ziegler _____ hereby appeals to
                                                    *Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):

  Denying Motion to Dismiss [ECF 50]

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on ___ June 20, 2024 ___. Entered on the docket in this action on ___ June 20, 2024 ___.

A copy of said judgment or order is attached hereto.

___ April 14, 2025 ___
Date

Signature
☐ Appellant/ProSe  ☒ Counsel for Appellant  ☐ Deputy Clerk

**Note:**  The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the
attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number
of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

| | |
|---|---|
| Name | Jennifer L. Holliday |
| Address | 7190 W. Sunset Blvd. #1430 |
| City, State, Zip | Los Angeles, CA 90046 |
| Phone | 310-600-6078 |
| Fax | |
| E-Mail | JLHolliday@Proton.me |

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Robert Hunter Biden

PLAINTIFF(S),

v.

Garrett Ziegler, ICU, LLC (a.k.a. "Marco Polo")

DEFENDANT(S).

CASE NUMBER:

2:23-CV-07593

**NOTICE OF APPEAL**

NOTICE IS HEREBY GIVEN that _____ Garrett Ziegler _____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):

    Denying Motion to Dismiss [ECF 50]

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on ___ June 20, 2024 ___. Entered on the docket in this action on ___ June 20, 2024 ___.

A copy of said judgment or order is attached hereto.

___ April 14, 2025 ___

Date

Signature

☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

**Note:** The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

**JS-6**

| Case No. | **2:23-cv-07593-HDV-KS** | Date | March 13, 2025 |
|---|---|---|---|
| Title | ***Robert Hunter Biden v. Garrett Ziegler, et al.*** | | |

Present: The Honorable    Hernán D. Vera, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:   IN CHAMBERS—ORDER DISMISSING ACTION WITH PREJUDICE**

On September 13, 2023, Plaintiff Robert Hunter Biden filed his complaint against Defendants Garrett Ziegler and ICU, LLC (dba "Marco Polo").  *See* Complaint [Dkt. No. 1].   Plaintiff brought a federal claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and two state law claims: one under California's Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, and the other under California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq*. *Id.*  On December 21, 2023, Defendants filed a motion seeking dismissal under Federal Rules 12(b)(1), (2), (3), and (6), as well as dismissal pursuant to California's Anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16 [Dkt. No. 23].  The Court denied the motion in its entirety [Dkt. No. 50].

Before the Court is Plaintiff's *ex parte* application seeking an order allowing Plaintiff to voluntarily dismiss his case, without prejudice, pursuant to Federal Rule 41(a)(2).  Ex Parte Application for Order to Voluntarily Dismiss Action ("Application") [Dkt. No. 85].  Plaintiff contends that he has good reasons for seeking dismissal—including financial difficulties due to a downturn in the sales of his artwork and memoir, the inability to borrow additional money, and the Pacific Palisades wildfire forcing him and his family to find a new home.  Application at 6; Declaration of Robert Hunter Biden in Support of Plaintiff's Application ¶¶ 3–5

---

[Dkt. No. 85-1]. Plaintiff further asserts that Defendants will not suffer any harm from a voluntary dismissal without prejudice because they would not lose the ability to assert any rights or defenses in the future, and because only limited discovery has occurred thus far. *Id.* at 7.

Defendants oppose the Application. Defendants argue that they will suffer legal prejudice should the Court grant a dismissal without prejudice. Defendants' Opposition to Plaintiff's Application ("Opposition") at 10 [Dkt. No. 88]. Specifically, they contend that because they have already exchanged their summary judgment brief with Plaintiff, and because the scheduled deposition of Plaintiff was imminent, dismissal without prejudice would give Plaintiff an unfair advantage. *Id.* at 9, 11–13.

The Court agrees.

Federal Rule 41 grants the district court "discretion to dismiss a case with or without prejudice." *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1279 (9th Cir. 2023) (citing Fed. R. Civ. P. 41(a)(2)). That discretion is informed by the principle that a court should grant the request unless a defendant can show that it will "suffer some plain legal prejudice as a result." *Id.*; *Stevedoring Servs. Of Am. v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th Cir. 1989) ("The purpose of [41(a)(2)] is to permit a plaintiff to dismiss an action without prejudice so long as the defendant will not be prejudiced or unfairly affected by dismissal.") (citation omitted). In other words, a district court has the discretion to allow a voluntary dismissal with prejudice only in cases of legal prejudice. *Kamal*, 88 F.4th at 1280–1281 ("[W]e reject Defendants' argument that dismissal may be with prejudice, even if the defendant would suffer no legal prejudice from a dismissal without prejudice[.]").

"Legal prejudice" is a term of art meaning "prejudice to some legal interest,…claim,…[or] argument." *Kamal*, 88 F.4th at 1280. Courts have determined that legal prejudice arises in certain situations, including the potential loss of a federal forum, the potential conflict of federal rules, or the implication of a complete defense. *Westlands Water Dist. v. U.S.*, 100 F.3d 94, 97 (9th Cir. 1996) (collecting cases); *Smith v. Lenches*, 263 F.3d 972, 976 (9th Cir. 2001). Courts in this circuit have weighed a list of factors in determining whether legal prejudice exists: (a) the effort and expense to the defendant involved in litigating the case, (b) any excessive delay and lack of diligence on the part of the plaintiff, and (c) whether sufficient explanation for the need to dismiss was provided. *FaceTec, Inc.*

*v. Jumio Corporation*, No. 24-cv-03623-RFL, 2024 WL 4703142, at *1 (N.D. Cal. Nov. 1, 2024).

Applying that standard, the Court concludes that Defendants would in fact suffer legal prejudice if the voluntary dismissal were granted as requested by Plaintiff (*i.e.*, with the ability to refile). The parties have both expended significant resources in litigating the initial motion to dismiss, including a subsequent request for attorney's fees filed by Plaintiff [Dkt. No. 52]. More importantly, the Court notes that Defendants have already prepared a motion for summary judgment and exchanged this document with Plaintiff's counsel, as required by the Court's Standing Order. Opposition, Declaration of Jennifer L. Holliday in Opposition to Plaintiff's Application ("Holliday Decl.") ¶ 4 [Dkt. No. 88-1]. This motion effectively gives Plaintiff a roadmap to Defendants' most important legal arguments, and provides a prejudicial advantage given that Plaintiff has not yet had to file an opposition.[1] If allowed to refile this same case in the future, Plaintiff could develop new facts, contact new witnesses, explore and include additional claims, and thereby gain a strategic advantage in opposing the factual and legal defenses presented in Defendants' motion. That is more than inconvenience or additional expense—it represents real legal prejudice to Defendants in defending refiled litigation. On this record, the Court cannot find that Plaintiff acted diligently in requesting voluntary dismissal prior to the exchange of Defendants' summary judgment brief.

In addition, the Court considers the fact that Plaintiff is seeking voluntary dismissal without prejudice on the eve of Plaintiff's deposition, which was scheduled for March 10, 2025. Opposition at 9, Holliday Decl. ¶ 3. Again, allowing Plaintiff to dismiss without prejudice would give him additional time to prepare for deposition with the information gleaned from Defendants' recent briefing. Discovery-related considerations like these are proper grounds to find legal prejudice. *See, e.g., In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996) (finding "thinly-veiled attempts to avoid discovery" to be grounds for legal prejudice).

---

[1] Plaintiff is seeking dismissal prior to the deadline for the exchange of its opposition brief. Holliday Decl. ¶ 11.

To be clear, the Court does not express any opinion concerning the underlying merits of the case. And the Court accepts the detailed representations made by Plaintiff as to the reasons motivating his request to dismiss. But under Fed. R. Civ. P. 41, and on these facts, Plaintiff's request to dismiss without prejudice is not warranted.

Plaintiff's *ex parte* application to dismiss the case is granted, but the dismissal is entered *with prejudice*.

**IT IS SO ORDERED.**

JENNIFER L. HOLLIDAY SBN 261343
    JLHolliday@Proton.me
7190 W. Sunset Blvd. #1430
Los Angeles, CA 90046
(805)622-0225

**ATTORNEY FOR DEFENDANTS**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT HUNTER BIDEN,<br><br>        Plaintiff,<br><br>v.<br><br>GARRETT ZIEGLER, ICU, LLC<br><br>(d/b/a Marco Polo),<br><br>        Defendants. | Case No. 2:23-CV-07593-HDV-KSx<br><br>**DEFENDANTS GARRETT ZIEGLER'S AND ICU, LLC'S (a.k.a. MARCO POLO'S) OPPOSITION TO EX PARTE APPLICATION AND MOTION TO VOLUNTARILY DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(A)(2) WITHOUT PREJUDICE**<br><br>**THE HON. HERNÁN D. VERA**<br><br>**JURY TRIAL:  SEPT. 9, 2025**<br><br>**FPTC: AUG. 19, 2025** |

1

APP 0009

1   **TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS**

2   **OF RECORD:**

3         Defendants Garrett Ziegler and ICU, LLC hereby respectfully oppose

4   Plaintiff's Ex Parte Application and Motion to Voluntarily Dismiss Action Pursuant

5   to Federal Rule of Civil Procedure 41(a)(2) on the following grounds: (1) There is

6   no exigency warranting ex parte relief; and (2) Defendants will suffer actual legal

7   prejudice if the motion is granted and the case is dismissed without prejudice.

8         In light of Mr. Biden's apparent financial distress and the prejudice

9   Defendants would suffer if the case is dismissed without prejudice, Defendants

10  offered to participate in this Court's *free* ADR Program, but Mr. Biden rejected that

11  offer and has abruptly sought to dismiss the case without prejudice by way of an *ex*

12  *parte* application for which there is no apparent exigency.

13        If the case is dismissed, Defendants should be awarded fees and costs and the

14  dismissal should be with prejudice and with proper conditions in place.  Defendants

15  note that on February 26, 2025, Mr. Biden agreed to appear at deposition next week.

16        Defendants' Opposition is supported by the attached Memorandum of Points

17  & Authorities, the Declaration of Jennifer Holliday, the Declaration of Robert Tyler,

18  the papers on file in this case, and any additional evidence that may be presented at

19  any hearing on this application or motion.

20

21  DATE:  MARCH 6, 2025                         JENNIFER L. HOLLIDAY

22

23                                              /s/_____

24                                              JENNIFER L. HOLLIDAY

25                                              Attorney for Defendants

26

27

28

2

APP 0010

## **TABLE OF CONTENTS**

Table of Authorities

Memorandum of Points & Authorities

I.  Introduction

II.  Authority & Argument

 A. **There is no exigency warranting *ex parte* relief.**

  1. Plaintiff does not make a showing of irreparable prejudice

  2. Plaintiff does not show that he is without fault in creating a crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect.

  3. The Palisades Fire did not create exigency

 B. **Defendants will suffer actual prejudice if the motion is granted.**

  1. Dismissal would prejudice Marco Polo's legal right to summary judgment in its favor.

  2. Dismissal would prejudice Defendants' rights to attorney fees under Cal. Penal Code § 502.

  3. Dismissal would prejudice Defendants' legal right to seek contempt sanctions against Morris.

  4. Dismissal would prejudice Defendants' legal right to seek discovery sanctions  under Federal Rule of Civil Procedure 37 against Biden.

 C. **If the Court dismisses the case, the Court should condition dismissal on the payment of fees and additional terms.**

III.  Conclusion

3

APP 0011

**TABLE OF AUTHORITIES**

**CASES**

*Hamilton v. Firestone Tire Rubber Co.*,

    679 F.2d 143, 145 (9th Cir. 1982)

*Hay v. Marinkovich*,

    329 Cal.Rptr.3d 558 (2025)

*Hyde Drath v. Baker*,

    24 F.3d 1162, 1169 (9th Cir. 1994)

*Mission Power Engineering Co. v. Continental Cas. Co.*,

    883 F. Supp. 488 (C.D. Cal. 1995)

*Stevedoring Servs. of Am. v. Armilla Int'l B.V.*,

    889 F.2d 919, 921 (9th Cir. 1989)

*Westlands Water District v. U.S.*,

    100 F.3d 94, 96 (9th Cir. 1996)


**STATUTES**

Cal. Pen. Code § 502

**RULES**

Fed. R. Civ. Proc. 37

Fed. R. Civ. Proc. 41(a)(2)

Fed. R. Civ. Proc. 56

C.D. Rule 7-19

**OTHER AUTHORITY**

Standing Order, available at:

https://www.cacd.uscourts.gov/sites/default/files/documents/HDV/AD/HDV%20-%20Civil%20Standing%20Order%20%288-22-23%29.pdf

4

1

2

3       **MEMORANDUM OF POINTS AND AUTHORITIES**

4       **I.       INTRODUCTION**

5           Defendants oppose Plaintiff's Ex Parte Application because there is no exigency

6       warranting ex parte relief, and Defendants will suffer prejudice if the motion is

7       granted.  See *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp.

8       488 (C.D. Cal. 1995); *Westlands Water District v. U.S.*, 100 F.3d 94, 96 (9th Cir.

9       1996)

10      **II.      AUTHORITY AND ARGUMENT**

11          A.  **There is no exigency warranting *ex parte* relief.**  See *Mission Power*

12      *Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995)

13          A party seeking ex parte relief must make a showing that "the moving party's

14      cause will be irreparably prejudiced if the underlying motion is heard according to

15      regular noticed motion procedures. Second, it must be established that the moving

16      party is without fault in creating the crisis that requires ex parte relief, or that the

17      crisis occurred as a result of excusable neglect." *Mission Power*, 883 F. Supp. at 492

18          "[E]x parte motions are inherently unfair, and they pose a threat to the

19      administration of justice. They debilitate the adversary system. Though the

20      adversary does have a chance to be heard, the parties' opportunities to prepare are

21      grossly unbalanced… This is due primarily to gamesmanship."  *Mission Power,* 883

22      F. Supp. at 490 Further, the court explained that filing an ex parte application "is the

23      forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had

24      better be a fire." *Id.* at 492

25              1.  Plaintiff does not make a showing of irreparable prejudice

26          Plaintiff asserts:

27

28

                                        5

1           "Exigent circumstances and good cause justify the *ex*

2           *parte* relief sought herein because the fact discovery cut-
off is April 1, 2025 and the Parties have not taken any

3           depositions in this matter and if this relief were sought

4           via a noticed motion on the statutory notice timeline, it
would be mid-April before a resolution is reached, which

5           would be after the non-expert discovery cut-off and the

6           Parties would incur significant fees dealing with
discovery issues that may not be necessary if this

7           Application is granted on an *ex parte* basis." [ECF 85, p.

8           4:6-12]

9       Mr. Biden fails to meet the standard set forth in *Mission Power* because he

10 does not establish that he will be *irreparably prejudiced* if the motion to dismiss per

11 Rule 41(a)(2) is heard according to regular noticed motion procedures. Mr. Biden

12 may be inconvenienced with "significant" fees that "may not be necessary," but that

13 does not rise to the level of "irreparable prejudice" required to justify relief.

14 Moreover, demonstrating the lack of irreparable prejudice, Mr. Biden's concerns

15 could ostensibly be addressed simply by modifying the scheduling order to reset the

16 discovery deadlines by thirty days so that his motion could be heard on regular

17 noticed motion before discovery cutoff – but more disturbingly, Mr. Biden admits

18 **he has not yet consulted an expert witness** with only one month left prior to the

19 deadline to produce an expert report in a highly technical case.

20       A reasonable investigation of the facts of a claim under the Computer Fraud

21 and Abuse Act – primarily a federal *criminal* statute with very serious penalties

22 including up to ten years in federal prison - would necessarily involve qualified

23 experts who would examine forensic data, internet protocol (IP) addresses and logs,

24 IMEI numbers, computer serial numbers, and more.  Instead, Mr. Biden admits he

25 has not even conducted a single deposition and strategically decided only a few

26 days ago to abandon the litigation when he realized he would have to spend money

27 on an expert witness. [ECF-85-1, p. 3:10-21]. The *first* thing – not the last thing –

28

Mr. Biden's team should have done was to consult a qualified expert to determine whether Mr. Biden's speculative and conclusory allegations and accusations had any evidentiary support.  They do not, and confronted with this reality, Mr. Biden and his counsel seek to avoid the consequences of bringing a meritless action.  Even in his ex parte application, Mr. Biden still continues to make the baseless allegation that Mr. Ziegler "hacked" his computer – but refuses to participate in discovery or even consult a qualified expert.  Defendants' expert witness is a highly qualified former federal agent who worked for the Department of Homeland Security for approximately twenty years. [Decl. of Holliday ¶ 5, Ex. B]

In his declaration supporting his application, Mr. Biden states, "Defendant Ziegler admitted to hacking my iCloud in multiple public statements…" [ECF 85-1:7-8] **but then** quotes Mr. Ziegler in a December 2022 interview as stating, "And we actually got into his iPhone *backup*…we cracked the encrypted code that was *stored on his laptop*." [ECF 85-13-14] (emph. added). It would appear that Mr. Biden's entire case is based solely upon this purported out-of-court statement, the context of which is unknown, and that his attorneys failed to conduct a reasonable investigation into the highly technical aspects of what these terms actually mean. It is clear Mr. Biden has been grossly misinformed as to the actionability of the statement he cites.  Mr. Biden has had years – since at least 2022 – to consult a qualified expert and determine whether and how Mr. Ziegler violated the CFAA, but he has not done so. [See ECF-85-1, p.3:20-22]

There is no apparent exigency supporting this application, Mr. Biden admits his financial problems are not sudden, his lack of diligence in discovery is admitted and documented, and there is no basis for *ex parte* relief.

   2. <u>Plaintiff does not show that he is without fault in creating a crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect.</u>

7

1  The Court in *Mission Power* explained, "As Judge Rymer warned, 'Ex parte

2  applications are not intended to save the day for parties who have failed to present

3  requests when they should have. . . .' *Mission Power* at 883 F. Supp. at 493 quoting

4  *In re Intermagnetics America, Inc.,* 101 B.R. 191 (C.D.Cal. 1989)

5  Here, Mr. Biden created the alleged exigency by engaging in dilatory tactics

6  to obstruct discovery and cites the timing and financial consequences of those tactics

7  as a basis for emergency relief. There is no evidence that Mr. Biden has filed

8  bankruptcy, and Mr. Biden does not actually admit he is "millions" of dollars in debt

9  – only that the press *reports* that he is millions of dollars in debt. [ECF 85-1] It is

10  well documented that Mr. Biden has troubles with the Internal Revenue Service and

11  that he received a Presidential pardon, but these factors weigh in favor of finding

12  that Mr. Biden <u>was at fault in creating the crisis</u> that requires ex parte relief. There

13  is no indication of excusable neglect.

14       3.  <u>The Palisades Fire did not create exigency.</u>

15  Mr. Biden details ongoing financial troubles exacerbated by the Palisades Fire

16  (which occurred two months ago, affording Mr. Biden ample opportunity to dismiss

17  this case earlier), but citing merely fees and expenses, Mr. Biden offers **no**

18  **allegations or evidence of any genuine *exigency*** entitling Mr. Biden to circumvent

19  Local Rule 7-1 et seq. and afford the Court and Defendants an opportunity to

20  meaningfully address his motion. For this reason alone, the Court should deny the

21  ex parte application citing *Mission Power*.

22  Mr. Biden's ongoing strategic, dilatory tactics and discovery obstruction are

23  the only basis for ex parte relief, and it is outrageous to blame the Palisades Fire –

24  where an entire community of families lost everything – as a basis for seeking to

25  avoid his litigation responsibilities in a case Mr. Biden recklessly brought without

26  conducting a reasonable investigation.

27

28

8

1    This Court entered a Civil Trial Order on November 15, 2024, and

2  Defendants produced discovery responses only a few weeks later in December.

3  Defendants propounded discovery requests in January, the same month as the

4  Palisades Fire, and there was no objection that Mr. Biden needed an extension

5  based on complications from the Palisades Fire at that time.

6    Further, Mr. Biden admits he received discovery requests on January 31,

7  2025 and deposition notices on February 11, 2025, yet Mr. Biden blames the fact

8  that "the Parties have not taken any depositions in this matter" as the basis for ex

9  parte relief.  The Parties have not taken any depositions in this matter only because

10  Mr. Biden has actively obstructed Defendants' efforts to take depositions.  [See e.g.

11  ECF 83, "The Court held a telephonic conference with counsel for Plaintiff and

12  Defendants regarding discovery dispute concerning third party witness P. Kevin

13  Morris's ("Morris") failure to appear for a deposition on 2/26/2025, pursuant to

14  Defendant's Rule 45 Subpoena."] While Mr. Biden agreed to appear for deposition

15  the week of March 10, 2025, which was the only basis for Mr. Ziegler's agreement

16  to temporarily postpone Mr. Biden's properly noticed deposition on February 28,

17  2025, he attempts to use his discovery gamesmanship and obstruction as a basis for

18  ex parte relief.

19    In other words, the basis for ex parte relief is *caused by* Mr. Biden in

20  obstructing every effort Mr. Ziegler has made in this case to obtain evidence – and

21  the reason becomes immediately apparent upon even a cursory review of Defendant

22  ICU, LLC's Motion for Summary Judgment – there is simply no evidence of a

23  CFAA violation. [See Decl. of Holliday, Ex. A]. To attempt to cover up this case-

24  dispositive deficiency, Mr. Biden continues in his moving papers to make baseless,

25  unsupported accusations that Mr. Ziegler made public statements that he *admitted*

26  to "hacking his iCloud," demonstrating how Mr. Biden and his legal team have

27  failed to conduct a reasonable investigation into basic facts of this case and have no

28

1    meaningful understanding of the complex facts underlying their allegations –

2    because they never consulted a qualified witness or conducted a reasonable

3    investigation.

4         B. **Defendants will suffer actual prejudice if the motion is granted.**  See

5           *Westlands Water District v. U.S.*, 100 F.3d 94, 96 (9th Cir. 1996)

6         "Federal Rule of Civil Procedure 41(a)(2) allows a plaintiff, pursuant to an order

7    of the court, and subject to any terms and conditions the court deems proper, to

8    dismiss an action without prejudice at any time." *Westlands Water District v. U.S.*,

9    100 F.3d 94, 96 (9th Cir. 1996) citing Fed.R.Civ.P. 41(a)(2); *Stevedoring Servs. of*

10   *Am. v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th Cir. 1989).  This does not mean,

11   however, that a district court must grant such a motion on an ex parte basis given the

12   factual determinations necessary to rule on such a motion.  See e.g. *Westlands Water*

13   *District v. U.S.*, 100 F.3d 94, 97 (9th Cir. 1996).

14        "When ruling on a motion to dismiss without prejudice, the district court must

15   determine whether the defendant will suffer some plain legal prejudice as a result of

16   the dismissal." *Hyde Drath v. Baker*, 24 F.3d 1162, 1169 (9th Cir. 1994); *Hamilton*

17   *v. Firestone Tire Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982).  To determine

18   whether there is legal prejudice sufficient to deny a voluntary dismissal without

19   prejudice, Courts in the Ninth Circuit "focus on the rights and defenses available to

20   a defendant in future litigation." *Westlands Water District v. U.S.*, 100 F.3d 94, 97

21   (9th Cir. 1996) The Ninth Circuit has held that "legal prejudice" means "prejudice to

22   some legal interest, some legal claim, [or] some legal argument." *Westlands Water*

23   *Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996).

24        In the Ninth Circuit, "a district court properly identified legal prejudice when the

25   dismissal of a party would have rendered the remaining parties unable to conduct

26   sufficient discovery to untangle complex fraud claims and adequately defend

27

28

themselves against charges of fraud." *Westlands Water District v. U.S.*, 100 F.3d 94, 97 (9th Cir. 1996) citing See *Hyde Drath*, 24 F.3d at 1169.

Here, Mr. Biden claims,

> "Defendants will not suffer any legal prejudice by this voluntary dismissal without prejudice because they will not lose any rights or defenses and already took the opportunity to attack the pleadings on their motion to dismiss and anti-SLAPP motion, but lost. Since then, very limited discovery has occurred. (Declaration of Bryan M. Sullivan ("Sullivan Decl."), ¶¶ 2-4). In fact, Defendant did not propound any discovery until January 31, 2025 and it was not until February 11, 2025 that Defendants first served a deposition notice on Plaintiff and requested acceptance of service of a subpoena on Kevin Morris, Esq. (Sullivan Decl., ¶ 3). Indeed, Defendant just recently brought in new counsel in this action on February 21, 2025—less than two weeks ago. (Sullivan Decl., ¶ 4)." [ECF-85, p. 2:1-10]

Mr. Biden misses the Court's entire point in its ruling on the Motion to Dismiss where the Court *expressly* stated that Defendants' objections would benefit from "post-discovery briefing." [ECF 50, p. 2:9-10]. Plaintiff cannot survive post-discovery briefing, so he seeks to dismiss.

1. <u>Dismissal would prejudice Marco Polo's legal right to summary judgment in its favor.</u>

The Standing Order of this Court requires a party seeking judgment under Rule 56 to serve its opening brief on the responding party who has fourteen days to respond with his contributions in opposition, and then file the entire document along with joint appendices as one omnibus filing. See Standing Order, available at: https://www.cacd.uscourts.gov/sites/default/files/documents/HDV/AD/HDV%20-

1    %20Civil%20Standing%20Order%20%288-22-23%29.pdf    The Order commands

2    sixty-three days' notice.  In strict compliance with this Order, Defendant Marco

3    Polo served its Opening Brief on Plaintiff and await Plaintiff's contributions. [See

4    Decl. of Holliday, Ex. A]  In fact, new counsel for Marco Polo immediately raised

5    this issue in compliance with Local Rule 7-1 et seq. by sending a letter on February

6    21, 2025 demanding to meet and confer on the motion. [Decl. of Holliday ¶ 4]

7    Plaintiff's counsel stated he would respond later but never did.

8        Dismissal on Mr. Biden's terms prevents this Court from hearing Marco Polo's

9    legal arguments on the merits, and as this Court stated in its Order on the Motion to

10   Dismiss:

11       **"Defendants' objections raise factual questions that are best addressed in**

12   **post-discovery briefing." [ECF 50, p. 2:9-10].**

13       On that basis, the Court denied Defendants' motion *and* granted over $17,000 in

14   legal fees which should be returned to Defendants now that Plaintiff seeks a

15   dismissal that *prevents* Mr. Ziegler from addressing the factual questions this Court

16   found to be best addressed in post-discovery briefing.

17       The Court also found on the Motion to Dismiss:

18           "Further, Plaintiff admits 'Plaintiff did not sue
19           Defendants for creating a website, for publishing
             their 'Report,' or for any of the many false,
20           defamatory, and malicious statements they have
             made about Plaintiff over the past two-plus years.
21           Plaintiff carefully pleaded his claims to ensure that
             they are based solely on Defendants' 'accessing,
22           tampering with, manipulating, altering, copying
             and damaging of Plaintiff's computer data,' and
23           not on Defendants' free speech.'" [ECF 52, p.
24           4:20-24]
25

26       A crucial issue here, however, is that the Computer Fraud and Abuse Act

27   contemplates **protected** *computers*, not protected *data*.  Mr. Biden's team's willful

28

                                          12

1   ignorance on this point, exacerbated by their failure to retain an expert witness to

2   conduct a reasonable investigation into the basic facts of the lawsuit, is one of the

3   reasons his case must fail.  Mr. Biden believes that because he sees photographs and

4   e-mails that were once on one of his devices that Mr. Ziegler must have violated the

5   Computer Fraud and Abuse Act. But Mr. Biden has never been able to connect the

6   dots – because, as he now admits at this late hour, <u>he failed to conduct a reasonable</u>

7   <u>investigation.</u>  Not only did Mr. Biden fail to retain an expert, but he has not even

8   suggested deposing Mr. Ziegler about his "admissions" that he "hacked" Mr.

9   Biden's computer until *last week* and then hastily sought to dismiss the case.

10      The dismissal Mr. Biden seeks prevents Mr. Ziegler from making the arguments

11  raised in the Motion to Dismiss but in a post-discovery context where the Court can

12  consider the evidence – not just Mr. Biden's conjecture, speculation, and baseless

13  allegations.  Specifically, Mr. Biden's mistaken attempt to conflate a "protected

14  computer" as specifically defined in the federal statute with "protected data" cannot

15  be litigated with Mr. Ziegler's legal arguments if Mr. Biden is allowed to hastily

16  retreat at this stage.

17      2.  <u>Dismissal would prejudice Defendants' rights to attorney fees under Cal. Penal</u>

18          <u>Code § 502.</u> See *Hay v. Marinkovich*, 329 Cal.Rptr.3d 558 (2025)

19      Plaintiffs asked this Court to exercise supplemental jurisdiction over state law

20  claims including their claim under Penal Code section 502, and Defendants have a

21  right to seek attorney fees as the prevailing party.  *Hay v. Marinkovich*, 329

22  Cal.Rptr.3d 558 (2025) Dismissal would impact this important legal right, and the

23  Court should not preemptively determine that Mr. Biden cannot pay Mr. Ziegler's

24  fees based solely on vague admissions that Mr. Biden is in debt.

25      3.  <u>Dismissal would prejudice Defendants' legal right to seek contempt sanctions</u>

26          <u>against Morris.</u>

27

28

Mr. Morris, a third-party witness in this case, did not appear at his deposition, did not move to quash the subpoena, and did not move for a protective order. While Magistrate Judge Stevenson explained that the Scheduling Order and discovery cutoff date affected Defendants' ability to file a motion and brief the issue of whether Mr. Morris or Mr. Biden properly asserted attorney-client privilege, Defendants will lose their legal right to pursue this relief if the case is dismissed without prejudice.

If dismissal is contemplated, to mitigate the prejudice to Defendants, the Court should condition dismissal on Mr. Morris showing cause why he is not in contempt of the subpoena.

4. <u>Dismissal would prejudice Defendants' legal right to seek discovery sanctions under Federal Rule of Civil Procedure 37 against Biden.</u>

Mr. Biden has not complied with his discovery obligations, asserting boilerplate and baseless objections to basic discovery requests. Although Mr. Biden still has time to supplement those responses, fact cutoff is scheduled for April 1, 2025. As Mr. Biden has failed to produce evidence, he faces the consequences of that conduct: summary judgment under Rule 56 or a motion under Rule 37.

Dismissal prevents Defendants from being able to pursue these important legal rights. If the Court dismisses this case under Rule 41, the Court should dismiss with prejudice as Defendants lose the ability to demonstrate to the Court the Plaintiff's complete failure of proof.

C. <u>If the Court dismisses the case, the Court should condition dismissal on the payment of fees and additional terms.</u>

Although Defendants have offered to attend a mediation or settlement conference to work out reasonable terms of dismissal, Plaintiff has pushed for immediate relief and an unqualified, unconditional dismissal, and this is fundamentally unfair.

APP 0022

Defendants have incurred *at least* $196,565.20 in attorney's fees and $1,070.20 in costs and expenses related to defending this case. [See Decl. of Tyler ¶ 4]. This does not include additional fees for Ms. Holliday and the deposition costs of approximately $10,000. [See Decl. of Holliday ¶ 6]

The Court in *Westlands* explained that financial harm, alone, is not sufficient legal prejudice to avoid dismissal altogether, **but it is a factor in the Court determining whether to condition dismissal on the payment of fees.** *Westlands Water District v. U.S.*, 100 F.3d 94, 97 (9th Cir. 1996) ("The defendants' interests can be protected by conditioning the dismissal without prejudice upon the payment of appropriate costs and attorney fees.") citing Fed. R. Civ. P. 41(a)(2); *Hamilton*, 679 F.2d at 146.

The dismissal should be with prejudice, and the Court should only condition dismissal on reasonable terms.

## CONCLUSION

There is no basis for ex parte relief, and it is fundamentally unfair on the Court and on Defendants to bring what is essentially an ambush: a case-dispositive motion without sufficient notice or opportunity to brief the issues and no legally cognizable exigency.  It is similarly unreasonable that Mr. Biden refused Defendants' offer to stipulate to a free mediation or settlement conference.

Further, it is unclear whether Mr. Biden, himself, is seeking to avoid his responsibilities, or whether his attorneys, who appear to have failed to conduct even the most rudimentary investigation into the basic claims in this case and also represent Mr. Morris, who will avoid a motion for contempt of a Rule 45 subpoena if this motion succeeds, have made unreasonable financial demands on this litigation that have contributed to Mr. Biden's financial status and his stated inability to continue.

1    Given the seriousness of these *criminal* accusations, repeated in the moving

2    papers, the Court should deny the ex parte and allow Mr. Biden to proceed by

3    noticed motion for hearing after having an opportunity to hear from the expert

4    witness.  Alternatively, the Court should condition dismissal on Mr. Morris showing

5    cause why he is not in contempt, dismissing the case with prejudice, and awarding

6    reasonable fees and costs to Defendants.

7

8    Dated: March 4, 2025.                    Respectfully submitted,

9                                             _/s/_____

10                                            JENNIFER L. HOLLIDAY

11                                            Attorney for Defendants
                                              Garrett Ziegler and ICU, LLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

APP 0024

-i-

APP 0025

1    ABBE DAVID LOWELL
     *AbbeLowellPublicOutreach@winston.com*
2    WINSTON & STRAWN LLP
     1901 L St., N.W.
3    Washington, D.C. 20036-3508
     Telephone: (202) 282-5000
4    Facsimile: (202) 282-5100

5    BRYAN M. SULLIVAN, State Bar Number 209743
       *bsullivan@earlysullivan.com*
6    ZACHARY C. HANSEN, State Bar Number 325128
       *zhansen@earlysullivan.com*
7    EARLY SULLIVAN WRIGHT
       GIZER & McRAE LLP
8    6420 Wilshire Boulevard, 17th Floor
     Los Angeles, California 90048
9    Telephone: (323) 301-4660
     Facsimile: (323) 301-4676
10
     Attorneys for Plaintiff
11   Robert Hunter Biden

12                   **UNITED STATES DISTRICT COURT**

13                   **CENTRAL DISTRICT OF CALIFORNIA**

14                          **WESTERN DIVISION**

15   ROBERT HUNTER BIDEN, an            Case No. 2:23-cv-07593-HDV-KS
     individual,
16                                       *Assigned to:*
              Plaintiff,                 *District Judge Hernán D. Vera*
17
        vs.                              **PLAINTIFF ROBERT HUNTER
18                                       BIDEN'S NOTICE OF *EX PARTE*
     GARRETT ZIEGLER, an individual,     **APPLICATION FOR AN ORDER
19                                       AND *EX PARTE* APPLICATION
     ICU, LLC, a Wyoming Limited         **FOR AN ORDER TO
20   Liability Company d/b/a Marco Polo, **VOLUNTARILY DISMISS ACTION
     and DOES 1 through 10, inclusive,   **PURSUANT TO FED. RULE CIV.
21                                       **PROC. 41(a)(2)**
              Defendants.
22                                       [*Declarations of Robert Hunter Biden
                                         and Bryan M. Sullivan, Esq.; and
23                                       [Proposed] Order filed and served
                                         concurrently herewith*]
24
                                         Place: Ctrm. 5B
25                                       Judge: Hon. Honorable Hernan D. Vera
26
27
28

**TO ALL INTERESTED PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Robert Hunter Biden ("Plaintiff"), by and through his attorneys of record, hereby applies *Ex Parte* to this Court for an Order voluntarily dismissing this case pursuant to Rule 41(a)(2). Plaintiff respectfully requests that this *Ex Parte* Application be resolved on the papers, without oral argument, in Courtroom 5B before District Court Judge Vera. This application is being made on the basis that good cause exists to grant this Application because Plaintiff does not have the resources to continue to litigate this matter. Plaintiff has suffered a significant downturn in his income and has significant debt in the millions of dollars range. Moreover, this lack of resources has been exacerbated after the fires in the Pacific Palisades in early January upended Plaintiff's life by rendering his rental house unlivable for an extended period of time and, like many others in that situation, Plaintiff has had difficulty in finding a new permanent place to live as well as finding it difficult to earn a living. So, Plaintiff must focus his time and resources dealing with his relocation, the damage he has incurred due to the fires, and paying for his family's living expenses as opposed to this litigation.

Exigent circumstances and good cause justify the *ex parte* relief sought herein because the fact discovery cut-off is April 1, 2025 and the Parties have not taken any depositions in this matter and if this relief were sought via a noticed motion on the statutory notice timeline, it would be mid-April before a resolution is reached, which would be after the non-expert discovery cut-off and the Parties would incur significant fees dealing with discovery issues that may not be necessary if this Application is granted on an *ex parte* basis.

On the morning of March 5, 2025, Plaintiff's counsel provided Notice of this *ex parte* application to Defendants' counsel by telephone and email, as required by the Central District of California Local Rules and the Court's Civil Standing Order

/ / /



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

1   (Dkt. No. 13). In prior correspondence notifying Defendant's counsel of the same on

2   March 4, 2025, Defendants' counsel indicated that Defendant's would oppose this

3   application.

4        This application is based upon the accompanying Memorandum of Points and

5   Authorities, the declaration of Robert Hunter Biden and Bryan M. Sullivan, as well

6   as all exhibits filed concurrently herewith, the pleadings and other documents on file

7   with the Court, oral argument at the time of the hearing, and upon such further matters

8   that the Court may consider in ruling on this Motion.

9

10   Dated: March 5, 2025           EARLY SULLIVAN WRIGHT

11                     GIZER & MCRAE LLP

12

13              By:  */s/ Bryan M. Sullivan*

14                     BRYAN M. SULLIVAN (State Bar No. 209743)

15                     bsullivan@earlysullivan.com
ZACHARY C. HANSEN (State Bar No. 325128)

16                     zhansen@earlysullivan.com

17                     EARLY SULLIVAN WRIGHT GIZER & McRAE LLP

18                     6420 Wilshire Boulevard, 17th Fl.
Los Angeles, California 90048

19                     Telephone: (323) 301-4660
Facsimile: (323) 301-4676

20                     ABBE DAVID LOWELL

21                     AbbeLowellPublicOutreach@winston. com

22                     WINSTON & STRAWN LLP
1901 L St., N.W.

23                     Washington, D.C. 20036-3508
Telephone:  (202) 282-5000

24                     Facsimile:  (202) 282-5100

25                     *Attorneys for Plaintiff*
*Robert Hunter Biden*

26

27

28

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW
WGM

# **TABLE OF CONTENTS**

<u>**Page**</u>

I.      INTRODUCTION ........................................................................ 1

II.     PROCEDURAL POSTURE OF THE CASE ................................. 2

III.    EXIGENT CIRCUMSTANCES JUSTIFY *EX PARTE* RELIEF .................... 4

IV.     ARGUMENT ............................................................................. 4

        A.      THE COURT HAS THE AUTHORITY TO PERMIT
                DISMISSAL OF THIS ACTION UNDER RULE 41(A)(2)
                WHERE PLAINTIFF LACKS THE RESOURCES TO
                CONTINUE THE ACTION. ................................................... 4

        B.      DISMISSAL WILL NOT RESULT IN LEGAL PREJUDICE TO
                DEFENDANTS. ............................................................... 7

        C.      DISMISSAL WITHOUT PREJUDICE SHOULD NOT BE
                BASED ON ANY CONDITIONS ............................................ 8

V.      CONCLUSION ........................................................................ 11

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*aff'd*,
   72 F.3d 766 (9th Cir. 1995) ................................................................ 8

*Arteris S.A.S.*,
   2013 WL 3052903, at *4 .................................................................... 9

*Beckett*,
   2012 WL 479593, at *3 ...................................................................... 9

*Bennett v. Dhaliwal*,
   721 Fed. Appx. 577, 578 (9th Cir. 2017) ......................................... 7

*Brown v. Baeke*,
   413 F3d 1121, 1123 (10th Cir. 2005) ................................................ 5

*Burnette v. Godshall*,
   828 F. Supp. 1439, 1443 (N.D. Cal. 1993) ................................... 8, 9

*cert. denied sub nom.*
   139 S.Ct. 269 (2018) .......................................................................... 7

*Copeland v. Hiram Twp.*,
   2019 WL 1980507, at *2 (N.D. Ohio May 3, 2019) ...................... 5, 6

*Corbett v. Pharmacare U.S., Inc.*,
   2022 WL 2835847 (S.D. Cal. July 20, 2022) .................................... 9

*Fisher v. Puerto Rico Marine Mgmt., Inc.*,
   940 F.2d 1502, 1503 (11th Cir. 1991) (same) ................................... 5

*Hamilton v. Firestone Tire & Rubber Co., Inc.*,
   679 F.2d 143, 145 (9th Cir. 1982) ................................................. 4, 7

*Hepp v. Conoco, Inc.*,
   97 Fed.Appx. 124, 125 (9th Cir. 2004) ............................................. 4

*Kamal v. Eden Creamery, LLC*,
   88 F.4th 1268, 1279 (9th Cir. 2023) ................................................. 4

*Mallory v. Rush University Medical Center*,
   2020 WL 6559155, *5 (N.D. Ill. Nov. 9, 2020) ............................ 5, 6

*Quismundo v. Trident Society, Inc.*,
   2018 WL 1963782, *2 (S.D. Cal. Apr. 15, 2018) ......................... 7, 10

*Santa Rosa Memorial Hospital v. Kent*,
   688 Fed. Appx. 492, 494 (9th Cir. 2017) ........................................ 10

*Smith v. Lenches*,
263 F.3d 972, 975 (9th Cir. 2001)...................................................4, 7, 8

*Stevedoring Servs. of Am. v. Armilla Intern. B. V.*,
889 F.2d 919, 921 (9th Cir. 1989).....................................................4, 5, 9

*Vector Envtl. Grp., Inc. v. 3M Co.*,
2006 WL 8433616, at *3 (E.D. Mich. Oct. 20, 2006) ................................5, 6

*Westlands Water Dist.*,
100 F.3d at 97 ...........................................................................................7

*Williams v. Peralta Cmty. College Dist.*,
227 F.R.D. 538, 540 (N.D. Cal. 2005) .........................................................9

*WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*,
655 F.3d 1039, 1058-59 n.6 (9th Cir. 2011) ...............................................4

*Zanowick v. Baxter Healthcare Corp.*,
850 F.3d 1090, 1093 (9th Cir. 2017)...........................................................7


## STATUTES

Bus. & Prof. Code Sections 17200 ..............................................................2

Cal. Penal Code § 502 ...............................................................................2


## FEDERAL STATUTES

18 U.S.C. § 1030..........................................................................................2


## RULES

Fed. Rules of Civ. Proc. 41...............................................................passim

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

iii

APP 0031

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

By this motion, Plaintiff Robert Hunter Biden ("Plaintiff") requests that the Court dismiss this action pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.  While Plaintiff had factual and legal basis to bring and maintain this action, especially considering Defendants Garrett Ziegler's and ICU, LLC d/b/a Marco Polo's (collectively, "Defendants") admissions that they hacked Plaintiff's iCloud, Plaintiff does not have the resources to continue to litigate this matter. (Declaration of Robert Hunter Biden ("Biden Decl.") at ¶ 2).  Plaintiff has suffered a significant downturn in his income over the past 18 months with reduced book and art sales, which has been his main source of income over the prior years.  (Biden Decl., at ¶ 3). In addition, Plaintiff has significant debt in the millions of dollars range. (Biden Decl., at ¶ 4).  Moreover, this lack of resources has been exacerbated after the fires in the Pacific Palisades in early January upended Plaintiff's life by rendering his rental house unlivable for an extended period of time and, like many others in that situation, Plaintiff has had difficulty in finding a new permanent place to live as well as finding it difficult to earn a living.  (Biden Decl., at ¶ 5). So, Plaintiff must focus his time and resources dealing with his relocation, the damage he has incurred due to the fires, and paying for his family's living expenses as opposed to this litigation[1]. (Biden Decl., at ¶ 8).

---

[1]  Plaintiff acknowledges that he has other civil actions pending and is assessing each one on a case-by-case basis to allocate his limited resources.  (Biden Decl., at ¶ 7). Plaintiff cannot describe the details of those analyses as it involves attorney-client communications and the attorney work doctrine.  (Biden Decl., at ¶ 7).  For the case at bar, despite Defendants' public admissions that they "hacked" Plaintiff's iCloud and manipulated Plaintiff's data, given the procedural posture, the limited extent of discovery taken, and the need for expert testimony, Plaintiff has made the decision to request that this case be voluntarily dismissed without prejudice and not expend resources and time on this case.  (Biden Decl., at ¶ 7).

1    Defendants will not suffer any legal prejudice by this voluntary dismissal
2    without prejudice because they will not lose any rights or defenses and already took
3    the opportunity to attack the pleadings on their motion to dismiss and anti-SLAPP
4    motion, but lost. Since then, very limited discovery has occurred. (Declaration of
5    Bryan M. Sullivan ("Sullivan Decl."), ¶¶ 2-4). In fact, Defendant did not propound
6    any discovery until January 31, 2025 and it was not until February 11, 2025 that
7    Defendants first served a deposition notice on Plaintiff and requested acceptance of
8    service of a subpoena on Kevin Morris, Esq. (Sullivan Decl., ¶ 3). Indeed, Defendant
9    just recently brought in new counsel in this action on February 21, 2025—less than
10   two weeks ago. (Sullivan Decl., ¶ 4).

11   Accordingly, the Court should grant this Motion for Voluntary Dismissal
12   pursuant to Rule 4l(a)(2).

13   **II.    <u>PROCEDURAL POSTURE OF THE CASE</u>**

14   The Complaint in this action was filed on September 13, 2023 asserting causes
15   of action for (i) Violation Of The Computer Fraud And Abuse Act (18 U.S.C. § 1030),
16   (ii) Violation Of The California Computer Data Access And Fraud Act (Cal. Penal
17   Code § 502), and (iii) Bus. & Prof. Code Sections 17200 *Et Seq.* (Dkt #1). The crux
18   of this action is that, since approximately December 2020, Defendants and their
19   "team" of volunteers and independent contractors have spent countless hours
20   accessing, tampering with, manipulating, altering, copying and damaging computer
21   data that they do not own and that they claim to have obtained from hacking into
22   Plaintiff's iPhone data and from scouring a copy of the hard drive of what they claim
23   to be Plaintiff's "laptop" computer. (Dkt #1, ¶ 2). Further, Defendants admitted in
24   public statements in December 2022 in an interview with Roger Stone as follows:

25       And we actually got into his iPhone backup, we were the
26       first group to do it in June of 2022, we cracked the
27       encrypted code that was stored on his laptop. And more
28       drug deals were in there, which set our, set our release date



EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

1         back.

2 Biden Decl., ¶ 2.

3         On December 21, 2023, Defendants filed a motion to dismiss challenging the

4 sufficiency of the Complaint's allegations, jurisdiction over Defendants, and under

5 California's Anti-SLAPP statute. (Dkt #23). During the pendency of their motion to

6 dismiss, on March 7, 2024, Defendants sought to recuse the assigned judge as being

7 biased because the presiding judge was appointed by Plaintiff's father, President Joe

8 Biden. (Dkt #35). That motion was denied on April 26, 2024. (Dkt #46). On June 6,

9 2024, the Court denied Defendants' motion to dismiss finding that Plaintiff properly

10 alleged the causes of action asserted and that those causes of action do not implicate

11 the First Amendment. (Dkt #50). On July 5, 2024, Plaintiff filed a motion for

12 attorney's fees incurred in opposition to Defendants' anti-SLAPP motion (Dkt #52),

13 which motion was granted on September 9, 2024 and attorney's fees were awarded to

14 Plaintiff.

15         On November 12, 2024, the Court issued a minute order establishing all

16 material dates relating to this case with the non-expert discovery cut-off being April

17 1, 2025. (Dkt# 72). Plaintiff served discovery on November 6, 2024 and Defendants

18 responded on December 20, 2024, but Defendants' responses were minimal and likely

19 will require motion practice as Plaintiff has been dealing with deficiencies with these

20 responses. (Sullivan Decl., ¶ 2). It was not until two and a half months later on

21 January 31, 2025 that Defendants propounded any written discovery and February 11,

22 2025 when they first requested Plaintiff's deposition and sought to serve non-party

23 and Plaintiff's legal counsel, Kevin Morris, Esq., with a subpoena for deposition.

24 (Sullivan Decl., ¶ 3). Additionally, for the first time, on February 21, 2025,

25 Defendants indicated their intent to file a summary judgment motion. (Sullivan Decl.,

26 ¶ 4). While the Parties were in the meet and confer process over the discovery issues

27 and Defendants' intended summary judgment motion, including a meet and confer

28 discussion on February, 26, 2025, Plaintiff decided to seek to voluntarily dismiss this



1   action given all of the upcoming work and resulting fees to be incurred on this case.

2   (Biden Decl., ¶ 6; Sullivan Decl., ¶ 5). After making this decision, on March 3, 2025,

3   Plaintiff immediately informed Defendants of Plaintiff's intent to dismiss this action

4   under Rule 41(a)(2). (Sullivan Decl., ¶ 6).

5   **III.**   **EXIGENT CIRCUMSTANCES JUSTIFY *EX PARTE* RELIEF**

6        Exigent circumstances and good cause justify the *ex parte* relief sought herein

7   because the fact discovery cut-off is April 1, 2025 and the Parties have not taken any

8   depositions in this matter and if this relief were sought via a noticed motion on the

9   statutory notice timeline, it would be mid-April before a resolution is reached, which

10   would be after the non-expert discovery cut-off and the Parties would incur significant

11   fees dealing with discovery issues that may not be necessary if this Application is

12   granted on an *ex parte* basis.

13   **IV.**   **ARGUMENT**

14        **A.**   **THE COURT HAS THE AUTHORITY TO PERMIT DISMISSAL**

15             **OF THIS ACTION UNDER RULE 41(A)(2) WHERE PLAINTIFF**

16             **LACKS THE RESOURCES TO CONTINUE THE ACTION.**

17        "Generally, Rule 41(a)(2) grants a district court discretion to dismiss a case

18   with or without prejudice." *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1279 (9th

19   Cir. 2023); *see also Hepp v. Conoco, Inc.*, 97 Fed.Appx. 124, 125 (9th Cir. 2004);

20   *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001). "[W]here the request is to

21   dismiss without prejudice, '[a] District Court should grant a motion for voluntary

22   dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some

23   plain legal prejudice as a result.' " *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*,

24   655 F.3d 1039, 1058-59 n.6 (9th Cir. 2011) (quoting *Smith v. Lenches*, 263 F.3d 972,

25   975 (9th Cir. 2001)); *see also Stevedoring Servs. of Am. v. Armilla Intern. B. V.,* 889

26   F.2d 919, 921 (9th Cir. 1989) ("Rule 41(a)(2) permits a plaintiff, with the approval of

27   the court, to dismiss an action without prejudice at any time."); *Hamilton v. Firestone*

28   *Tire & Rubber Co., Inc.,* 679 F.2d 143, 145 (9th Cir. 1982) ("courts generally *allow*

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

1   dismissal, even dismissal without prejudice, unless defendant will suffer "some plain

2   legal prejudice" as a result"); *Fisher v. Puerto Rico Marine Mgmt., Inc.*, 940 F.2d

3   1502, 1503 (11th Cir. 1991) (same); *Brown v. Baeke*, 413 F3d 1121, 1123 (10th Cir.

4   2005) (same). "The purpose of the rule is to permit a plaintiff to dismiss an action

5   without prejudice so long as the defendant will not be prejudiced or unfairly affected

6   by dismissal." *Stevedoring Servs.,* 889 F.2d at 921 (internal cites omitted).

7       Several District Courts have previously held that an inability to continue

8   litigation due to financial constraints can be a legitimate consideration for dismissing

9   a case without prejudice.  *See, e.g.*, *Copeland v. Hiram Twp.*, 2019 WL 1980507, at

10  *2 (N.D. Ohio May 3, 2019) (finding as a "sufficient explanation for the necessity of

11  the dismissal based upon [the plaintiff's] financial concerns and present inability to

12  pay to continue this case based upon increasing costs for upcoming costly discovery

13  disputes"); *Vector Envtl. Grp., Inc. v. 3M Co.*, 2006 WL 8433616, at *3 (E.D. Mich.

14  Oct. 20, 2006) (finding that "the change in business climate" and the plaintiff's

15  financial difficulties constituted "a sufficient explanation for [the plaintiff's] pursuit

16  of a voluntary dismissal"); *Mallory v. Rush University Medical Center*, 2020 WL

17  6559155, *5 (N.D. Ill. Nov. 9, 2020) ("An inability to continue litigation due to

18  financial constraints can be a legitimate consideration for dismissing a case without

19  prejudice").

20      By way of example, in *Vector Envtl. Grp.*, 2006 WL 8433616, at *3, which

21  involved a theft of trade secrets relating to painting of Ford automobiles, the plaintiff

22  sought voluntary dismissal for the following reasons: (1) Ford purchases has

23  decreased substantially; (2) the threat from Defendant resulted in Plaintiff having to

24  undercutting its prices with Ford; (3) because of the business concerns, Plaintiff has

25  been unable to focus on this action; and (4) Vector may have to reveal additional trade

26  secrets.  Defendant opposed dismissal on the ground that: (1) Defendant expended

27  substantial effort and expense in defending and should not be faced with a second

28  lawsuit; (2) Plaintiff violated a discovery order; (3) Plaintiff's motion is only in

response to Defendant's motion to dismiss for failing to respond to discovery requests; and (4) Plaintiff has not offered a sufficient explanation for the dismissal without prejudice, particularly because the case has been used to chill Defendant's business relationship with Ford. The Court found that the change in business climate and financial difficulties was a sufficient explanation for voluntary dismissal and rejected all of Defendant's arguments that it would suffer legal prejudice. The Court reasoned that discovery was not extensive at the time of dismissal and that the plaintiff's failure to comply with discovery requests was their desire to terminate the action. Finally, the Court stated that the fact that the defendant had not filed a motion for summary judgment weighs in favor of dismissal without prejudice.

Here, Plaintiff is in a similar position as the plaintiff in *Vector Envtl. Grp.*, 2006 WL 8433616, at *3, in that Plaintiff has suffered significant financial setbacks in the past year and cannot borrow any more money so he lacks the resources to continue this litigation at this time. (Biden Decl., at ¶¶ 3-4). Furthermore, this lack of resources has been exacerbated after the fires in the Pacific Palisades in early January upended the life of Plaintiff and his family by rendering his rental house unlivable for an extended period of time and, like many others in that situation, Plaintiff has had difficulty in finding a new permanent place to live as well as finding it difficult to earn a living. (Biden Decl., at ¶ 5). So, Plaintiff must focus his time and resources dealing with his relocation, repairing the damage he has incurred due to the fires, and paying for his family's living expenses as opposed to this litigation, especially considering that discovery disputes are arising and expert witness reports are due. (Biden Decl., at ¶¶ 6 and 8). Such is a sufficient reason to grant a Rule 41(a)(2) motion for voluntary dismissal. *See, e.g.*, *Copeland*, 1980507, at *2; *Vector Envtl. Grp.*, 2006 WL 8433616, at *3; *Mallory*, 2020 WL 6559155, *5. Additionally, Plaintiff acted diligently immediately informing Defendant as soon as Plaintiff decided to dismiss the case. (Biden Decl., ¶ 6; Sullivan Decl., ¶ 5-6).

/ / /

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

**B.  DISMISSAL WILL NOT RESULT IN LEGAL PREJUDICE TO DEFENDANTS.**

"Within the Ninth Circuit a district court should grant a motion for voluntary dismissal unless a defendant can show that it will suffer some plain legal prejudice as a result." *Quismundo v. Trident Society, Inc.,* 2018 WL 1963782, *2 (S.D. Cal. Apr. 15, 2018) (citing *Smith v. Lenches.* 263 F.3d 972, 975 (9th Cir. 2001)); *Bennett v. Dhaliwal,* 721 Fed. Appx. 577, 578 (9th Cir. 2017), *cert. denied sub nom.* 139 S.Ct. 269 (2018). Legal prejudice means "prejudice to some legal interest, some legal claim, some legal argument." *Zanowick v. Baxter Healthcare Corp.,* 850 F.3d 1090, 1093 (9th Cir. 2017); *Smith,* 263 F.3d at 976.

"Legal prejudice" under Rule 41(a)(2) "focuses on the rights and defenses available to a defendant in future litigation" such as whether "dismissal without prejudice would result in the loss of a federal forum, or the right to a jury trial, or a statute-of-limitations defense" or when "dismissal of a party would have rendered the remaining parties unable to conduct sufficient discovery to untangle complex fraud claims and adequately defend themselves against charges of fraud." *Westlands Water Dist.*, 100 F.3d at 97 (citations omitted). The following arguments as claims of "legal prejudice" in the Rule 41(a)(2) dismissal requests have been rejected: (i) "Uncertainty because a dispute remains unresolved"; (ii) "the threat of future litigation...causes uncertainty"; (iii) that "the defendant will be inconvenienced by having to defend in another forum or where a plaintiff would gain a tactical advantage by that dismissal"; and (iv) the "expense incurred in defending against a lawsuit...." *Westlands Water Dist.*, 100 F.3d at 96–97; *Hamilton*, 679 F.2d at 145; *Zanowick,* 850 F.3d at 1093.

Here, Defendants will not lose any rights or defenses and already took the opportunity to attack the pleadings on their motion to dismiss and anti-SLAPP motion, but lost. Since then, very limited discovery has occurred. In fact, Defendants first served discovery on January 31, 2025 and on February 11, 2025 when Defendants served a deposition notice on Plaintiff and requested acceptance of service of a



1   subpoena on Kevin Morris, Esq.  Indeed, Defendants brought in new counsel into this

2   action on February 21, 2025—less than two weeks ago.  To date, no depositions have

3   occurred and no dispositive or discovery motions have been filed.[2]  As such,

4   Defendants will not be suffer legal prejudice by the dismissal of Plaintiffs' claims.[3]

5   ## C.  DISMISSAL WITHOUT PREJUDICE SHOULD NOT BE BASED

6   ## ON ANY CONDITIONS

7   Given the posture of the case that Defendants did not propound discovery until

8   January 31, 2025, no depositions have occurred, and no dispositive or discovery

9   motions have been filed, the Court should not set conditions for the granting of this

10  motion for voluntary dismissal.  *Smith,* 263 F.3d at 976; *Burnette v. Godshall*, 828 F.

11  Supp. 1439, 1443 (N.D. Cal. 1993), *aff'd*, 72 F.3d 766 (9th Cir. 1995).  The most

12  common condition is that the dismissal be with prejudice, however, "[a] dismissal

13  under Rule 41(a)(2) is normally without prejudice." *Smith,* 263 F.3d at 976.  "The

14  following factors are relevant in determining whether the dismissal should be with or

15  without prejudice: (1) the defendant's effort and expense involved in preparing for

16

17  _____

    [2] While Defendants sent Plaintiff their portion of a summary judgment motion, they
18  did so at almost 11:00 pm PST on March 4, 2025 after they had had full notice of
    Plaintiff's intent to move to dismiss and bring this Application by March 6, 2025.
19  (Sullivan Decl., ¶ 9)  This likely is an attempt to point to it as a reason to deny this
20  Application given the lack of progress on discovery.  Moreover, even the filing of a
    summary judgment motion is not sufficient to deny a request for dismissal.  *See*
21  *Arteris S.A.S. v. Sonics, Inc.*, 2013 WL 3052903, at *4 (N.D. Cal. June 17, 2013)
22  (dismissal without prejudice appropriate even though defendants served and
    responded to numerous discovery requests, retained experts, traveled to Europe to
23  depose witnesses, and spent hundreds of dollars preparing for trial); *Beckett v.*
24  *MACYSDSNB*, 2012 WL 479593, at *3 (N.D. Cal. Feb. 14, 2012) (granting voluntary
    dismissal where discovery was closed and case was set to proceed to trial in a matter
25  of months).

26  [3] In meet and confer correspondence Defendants' only claim of prejudice was because
27  they incurred significant fees in this case.  However, that is not "legal prejudice" for
28  denying dismissals under Rule 41(a)(2).


EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

trial, (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, [and] (3) insufficient explanation of the need to take a dismissal." *Williams v. Peralta Cmty. College Dist.*, 227 F.R.D. 538, 540 (N.D. Cal. 2005) (quoting *Burnette*, 828 F. Supp. at 1443-43).

By way of example, in *Corbett v. Pharmacare U.S., Inc.,* 2022 WL 2835847 (S.D. Cal. July 20, 2022), the concluded that the dismissal should be without prejudice because the defendant's efforts in defending the case and preparing for trial had not been substantial to date where discovery only recently began in January 2022. The Court noted that "[w]hile months were spent challenging the pleadings, these efforts do not concern Defendant's efforts and expense in preparing for trial. *See Arteris S.A.S.*, 2013 WL 3052903, at *4 (holding dismissal without prejudice appropriate even though defendants served and responded to numerous discovery requests, retained experts, traveled to Europe to depose witnesses, and spent hundreds of dollars preparing for trial, because there "ha[d] not been significant progress in the case"); *Beckett*, 2012 WL 479593, at *3 ("True, discovery has closed; and, under the court's scheduling order, this case is set to proceed to trial in a matter of months. But, the record presented indicates that the timing of plaintiff's motion to dismiss, while not ideal, is not due to any fault of Beckett or his current attorneys."); *Burnette*, 828 F. Supp. at 1444 ("[I]t weighs in Plaintiffs' favor that the trial has not yet started and no pretrial motions were pending at the time the dismissal motion was filed."). Defendants' situation here is not even comparable to the foregoing examples where the cases were voluntarily dismissed without prejudice.

Another condition that a defendant opposing a motion for voluntary dismissal often requests is an award of costs and attorney's fees. Notably, "no circuit court has held that payment of the defendant's costs and attorney fees is a prerequisite to an order granting voluntary dismissal."[4] *Stevedoring Servs.,* 889 F.2d at 921 (collecting

---

[4] Even in the rare Rule 41(a)(2) dismissals where fees are awarded, only those fees



cases, and holding that the district court did not abuse its discretion by refusing to require the plaintiff to pay the defendant's costs and attorney fees in case involving a contract dispute).  "In determining whether to award costs to a defendant after a voluntary dismissal without prejudice, courts generally consider the following factors: (1) any excessive and duplicative expense of a second litigation; (2) the effort and expense incurred by a defendant in preparing for trial; (3) the extent to which the litigation has progressed; and (4) the plaintiff's diligence in moving to dismiss." *Santa Rosa Memorial Hospital v. Kent,* 688 Fed. Appx. 492, 494 (9th Cir. 2017) (internal quotes, ellipses, and brackets omitted). "The merits of the plaintiffs case are also relevant." *Id.* (District court did not abuse its discretion when it declined to award costs and fees and dismissed without prejudice action by hospitals against Department of Health Care Services pertaining to Medicaid reimbursement rates. Although department incurred duplicative expenses and summary judgment motions were before the court, the district court's decision was justified by its consideration of the legitimate factor of the merit of the Plaintiffs' claims.); *see Quismundo,* 2018 WL 1963782 at *3 (declining to award fees and costs when dismissing without prejudice of plaintiff s claims for violations of the California Labor Code and California Business & Professions Code where dismissal did not expose defendants to excessive of duplicative expenses because most of the work performed would remain useful in the litigation in state court, and work that would not be of further use was of the defendant's own making).

/ / /

---

that are useful in the continuing litigation between the parties are recoverable. *Koch v. Hankins,* 8 F.3d 650, 652 (9th Cir. 1993) (finding "[t]he district court abused its discretion in finding the amount of costs without differentiating between work product which was rendered useless and that which might be of use in the [other] litigation."); *Smith,* 263 F.3d at 978 ("Only those costs incurred for the preparation of work product rendered useless by the dismissal should be awarded as a condition of voluntary dismissal").



Here, the totality of the factors weigh against imposing any conditions, including making the dismissal with prejudice or an award of costs and attorney's fees on Plaintiffs. Any additional litigation between the Parties will not result in excessive or duplicative expenses, as the costs Defendants have incurred thus far for the preparation of work product will not be rendered useless. The parties have yet to file any summary judgment motions or discovery motions, *Daubert* motions, motions for summary judgment, and pretrial motions. And Plaintiffs exercised diligence in moving to dismiss this action after realizing Plaintiff's financial situation was not able to continue this litigation.[5]

## V.  **CONCLUSION**

For the foregoing reasons, Plaintiffs pray this Court grants their Motion for Voluntary Dismissal pursuant to Rule 41(a)(2) without any conditions.

Dated:  March 5, 2025

EARLY SULLIVAN WRIGHT
GIZER & MCRAE LLP


By:  */s/ Bryan M. Sullivan*
BRYAN M. SULLIVAN (State Bar No. 209743)
bsullivan@earlysullivan.com
ZACHARY C. HANSEN (State Bar No. 325128)
zhansen@earlysullivan.com
EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Fl.
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

ABBE DAVID LOWELL
AbbeLowellPublicOutreach@winston.com

---

[5] In the event the Court is inclined to consider requiring conditions for the voluntary dismissal requested in this Application, Plaintiff requests the opportunity to discuss those conditions at a hearing on this application.


EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

1

2

3

WINSTON & STRAWN LLP
1901 L St., N.W.
Washington, D.C. 20036-3508
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

4

5

*Attorneys for Plaintiff*
*Robert Hunter Biden*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1

## **CERTIFICATE OF SERVICE**

2        I, April Wright, hereby certify that on this 5th day of March, 2025, a copy of

3  the foregoing **PLAINTIFF ROBERT HUNTER BIDEN'S NOTICE OF *EX***

4  ***PARTE* APPLICATION FOR AN ORDER AND *EX PARTE* APPLICATION**

5  **FOR AN ORDER MOTION AND MOTION TO VOLUNTARILY DISMISS**

6  **ACTION PURSUANT TO FED. RULE CIV. PROC. 41(a)(2)** was served via

7  email, on the following:

8  Jennifer Linsley Holliday                    Robert H. Tyler
   LAW OFFICE OF                                ADVOCATES FOR
9  JENNIFER LINSLEY HOLLIDAY,                   FAITH & FREEDOM
   ESQ.                                         25026 Las Brisas Road
10 7190 W. Sunset Boulevard, #1430             Murrieta, CA 92562
   Los Angeles, CA 90046                        Tel: (951) 600-2733
11 Tel: (805) 622-0225                          *Email: btyler@faith-freedom.com*
   *Email: jlholliday@proton.me*
12                                              *Attorney for Defendants*
   *Attorney for Defendants*                    *Garrett Ziegler and ICU, LLC*
13 *Garrett Ziegler and ICU. LLC*

14

15

16                                    /s/ *April Wright*
17                                    APRIL WRIGHT
                                      An employee of EARLY SULLIVAN
18                                    WRIGHT GIZER & McRAE LLP

19

20

21

22

23

24

25

26

27

28

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 17 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROBERT HUNTER BIDEN, | No. 24-4511 |
| Plaintiff - Appellee, | D.C. No. 2:23-cv-07593-HDV-KS |
| v. | Central District of California, Los Angeles |
| GARRETT ZIEGLER and ICU, LLC, a Wyoming Limited Liability Company, | ORDER |
| Defendants - Appellants. | |

Appellants' unopposed motion (Docket Entry No. 13) for voluntary dismissal is granted. This case is dismissed. Fed. R. App. P. 42(b).

This order served on the district court acts as the mandate of this court.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

APP 0045

# Court of Appeal No. 24-4511

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

GARRETT ZIEGLER, an individual;
ICU, LLC, a Wyoming limited liability company,

*Defendants-Appellants*,

*vs.*

ROBERT HUNTER BIDEN

*Plaintiff-Appellee*

---

*Appeal from the Order of the United States District Court for the
Central District of California,*

*Case No. 2:23-cv-07593-HUD-KS
The Honorable Herman D. Vera, District Judge*

---

## APPELLANTS' MOTION TO DISMISS

---

TYLER LAW, LLP
Robert Tyler, CA Bar No. 179572
rtyler@tylerlawllp.com
Nathan R. Klein, CA Bar No. 306268
nklein@tylerlawllp.com
25026 Las Brisas Road
Murrieta, California 92562
Tel: (951) 600-2733

*Counsel for Appellants Garrett Ziegler
and ICU, LLC*

Pursuant to Federal Rule of Appellate Procedure 42(b), Appellants hereby move the Court for an order dismissing the above captioned appeal. Respondents have not responded to Appellants' inquiry into whether the parties can agree they should bear their own fees and costs on appeal and therefore Appellants request that the Court order that each side shall bear its own costs and fees on appeal

Dated:  October 1, 2024.

/s/ Nathan R. Klein
Nathan R. Klein

APP 0047

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROBERT HUNTER BIDEN,** | Case No. 2:23-cv-07593-HDV-KS |
| Plaintiff, | **ORDER GRANTING PLAINTIFF ROBERT HUNTER BIDEN'S MOTION FOR ATTORNEY'S FEES INCURRED IN OPPOSITION TO ANTI-SLAPP MOTION** |
| v. | **[DKT. NO. 52]** |
| **GARRETT ZIEGLER, et al.,** | |
| Defendants. | |

1

## I.     INTRODUCTION

This action arises out of Plaintiff Hunter Biden's allegation that Defendant Garret Ziegler illegally accessed, manipulated, and damaged his data in violation of federal and state computer fraud statutes.  On December 21, 2023, Defendants filed a motion to dismiss on various jurisdictional grounds, and included a motion to strike pursuant to California's Anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16.  The Court denied the motion in its entirety.  [Dkt No. 50].

Plaintiff now moves for attorney's fees relating to the time spent litigating Defendants' unsuccessful anti-SLAPP arguments.  California's anti-SLAPP statute expressly **mandates** an award of fees where a litigant's arguments are found to be "frivolous" or "solely intended to cause unnecessary delay."  Cal. Civ. Proc. Code § 425.16(c)(1).  That standard is amply met here.  For the reasons discussed below, the Court finds that Defendants' anti-SLAPP motion was totally devoid of merit and consequently awards reasonable attorney's fees in the amount of $17,929.40.

Plaintiff's motion for fees is granted.

## II.     BACKGROUND

Plaintiff filed its Complaint on September 13, 2023, asserting one federal claim for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and two state claims for violation of California's Comprehensive Computer Data Access and Fraud Act ("CCDAFA"), Cal. Penal Code § 502, and California's Unfair Competition Law, Business & Professions Code §§ 17200 et seq.  Complaint.  [Dkt. No. 1].

On December 21, 2023, Defendants filed a motion to dismiss Plaintiff's suit pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure and pursuant to California's Anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16.  Motion to Dismiss ("MTD") [Dkt. No. 23].  The Court heard oral argument on May 16, 2024, and denied the Motion on June 20, 2024.  [Dkt No.50].

Before the Court is Plaintiff's Motion for Attorney's Fees Incurred in Opposition to the anti-SLAPP Motion ("Motion") [Dkt. No. 52].  The Court heard oral argument on August 22, 2024, and took it under submission.  [Dkt. No. 65].

2

## III.  LEGAL STANDARD

California law recognizes that a certain type of lawsuit—specifically, a "strategic lawsuit against public participation," or "SLAPP"—is often filed for the improper purpose of "chill[ing] the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  Cal. Civ. Proc. Code § 425.16(a); *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 59 (Cal. 2002).  To guard against these pernicious suits, the California Code of Civil Procedure provides an "anti-SLAPP" mechanism whereby a litigant can bring a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  Cal. Civ. Proc. Code § 425.16(b)(1).

But a frivolous anti-SLAPP motion has consequences too.  If a defendant's attempt to mobilize the anti-SLAPP statute is found to be "frivolous" or "solely intended to cause unnecessary delay," the court "*shall* award costs and reasonable attorney's fees to a plaintiff prevailing on the motion."  Cal. Civ. Proc. Code § 425.16(c)(1) (emphasis added).  This fee provision applies in federal court and, if triggered, is mandatory.  *Kearney v. Foley and Lardner*, 553 F. Supp. 2d 1178, 1181–1182 (S.D. Cal. 2008).  Frivolous in the context of an anti-SLAPP motion means "'totally and completely without merit'" such that "'any reasonable attorney would agree such motion is totally devoid of merit.'"  *Moore v. Shaw*, 116 Cal. App. 4th 182, 199 (Cal. Ct. App. 2004).

## IV.  DISCUSSION

### A.  Frivolousness

#### 1. Federal Claim Under CFAA

Plaintiff's Complaint asserts one federal claim for a violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  *See* Complaint at 8–9.  Defendants' MTD invoked the anti-SLAPP procedures as to all claims, including Plaintiff's federal claim under CFAA.  MTD at 22–23.

There can be no dispute that Defendants' anti-SLAPP challenge of Plaintiff's CFAA claim was "totally and completely without merit."  *Moore*, 116 Cal. App. at 199.  Black letter law is crystal clear that an anti-SLAPP motion cannot be used against a federal cause of action.  *Hilton v.*

3

1   *Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("a federal court can only entertain anti-SLAPP

2   special motions to strike in connection with state law claims."); *Bulletin Displays, LLC v. Regency*

3   *Outdoor Advert., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006) ("[a]lthough the anti-SLAPP

4   statute does apply to state law claims brought in federal court, [] it does not apply to federal question

5   claims in federal court.") (citation omitted). And where—as here—the result of an anti-SLAPP

6   motion is obvious, and the argument made in its favor is pellucidly without merit, it is frivolous. *See*

7   *Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 430 (9th Cir.

8   1983).[1]

9                          **2. State Law Claims**

10          Plaintiff's Complaint also avers two state law claims for violation of California's

11  Comprehensive Computer Data Access and Fraud Act ("CCDAFA"), Penal Code § 502, and

12  California's Unfair Competition Law, Business & Professions Code §§ 17200 *et seq. See* Complaint

13  9–11. Defendants' motion to dismiss invoked the anti-SLAPP procedures on both of these claims.

14  MTD at 23. Again, the Court's Order denied the motion finding that the anti-SLAPP procedures did

15  not apply to these claims. Order at 17–18. [Dkt No. 50].

16          In opposing the motion for fees, Defendants essentially make three arguments. First, they

17  contend that the anti-SLAPP was not frivolous because the alleged hack never happened—i.e., that

18  Defendants have "proffered substantial evidence that no alleged 'hack' took place" and that

19  Defendants merely received information. Opposition at 6. Second, they maintain that the anti-

20  SLAPP motion was brought in good faith because Plaintiff's motivation in bringing the action was

21  to retaliate for Defendants' website. *Id.* at 3. And third, Defendants point to the Order in *Morris v.*

22  *Ziegler et al.*, No. 23-SM-cv-01418, in which Judge Epstein from the Los Angeles Superior Court

23  granted an anti-SLAPP motion, in part, on (purportedly) similar claims. *Id.* at 7.

24          None of these arguments have any merit.

25  _____

26  [1] Defendants attempt to minimize the importance of this argument by arguing that it was a "small"
27  part of the overall length of the motion. Opposition at 5. But frivolousness is not measured by word
    count. The fact remains that Defendants patently sought to use the anti-SLAPP procedures to
28  dismiss a federal claim, and there was absolutely no legal basis to do so.

APP 0051

1    Defendants' "we didn't do it" defense is highly contested and extremely fact-specific.

2    Defendants' proffer in the motion to dismiss does not begin to establish at this stage of the litigation

3    that there is no factual basis for the alleged conduct. But even if it did, it would not transform the

4    alleged activity that forms the basis of the Complaint—namely, the computer hacking—into a

5    *protected* activity subject to an anti-SLAPP motion. For that reason, the argument fails as a matter

6    of law. *See Malin*, 217 Cal. App. 4th at 1304 (citing *Gerbosi v. Gaims, Weil, W. & Epstein, LLP*,

7    193 Cal. App. 4th 435, 446 (2011) ("A showing that a defendant did not do an alleged activity is not

8    a showing that the alleged activity is a protected activity.").

9    Defendants' second argument fares no better. Even assuming *arguendo* that Plaintiff's

10   lawsuit was triggered by a retaliatory motive, an anti-SLAPP motion is only proper if the legal claim

11   itself "arises" from the protected activity. *See Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002) ("that a

12   cause of action arguably may have been 'triggered' by protected activity does not entail it is one

13   arising from such."); *see also Moore v. Shaw*, 116 Cal. App. 4th 182, 195 (Cal. Ct. App. 2004)

14   (distinguishing "arising from" which is the proper standard and "in response to" which is not);

15   *Episcopal Church Cases*, 45 Cal. 4th 467, 478 (2009) ("[t]he additional fact that protected activity

16   may lurk in the background—and may explain why the rift between the parties arose in the first

17   place—does not transform a property dispute into a SLAPP suit."); *Copenbarger v. Morris Cerullo*

18   *World Evangelism*, 215 Cal. App. 4th 1237, 1245 (Cal. Ct. App. 2013) (explaining the distinction

19   between protected activity forming the "basis" or "cause" of the suit warranting anti-SLAPP

20   application, versus merely "preceding" or "triggering" the suit where anti-SLAPP is inapplicable).

21   Stated differently, the "critical consideration is whether the cause of action is *based on* the

22   defendant's protected free speech or petitioning activity." *Navellier*, 29 Cal. 4th at 89 (emphasis in

23   original). Here, it is beyond peradventure that the state law claims themselves are not legally based

24   on the publication of news (protected activity), but rather on the illegal ways in which Plaintiff's

25   information was allegedly accessed and collected.

26   Finally, Judge Epstein's decision in *Morris v. Ziegler* does not provide any justification for

27   Defendants' anti-SLAPP motion here. The plaintiffs in that case sued Ziegler for allegedly

28   impersonating a donor over the telephone in order to elicit information. While Judge Epstein

5

1   analyzed the First Amendment implications of those acts, the decision is unavailing because the

2   claims in *Morris* themselves arose from arguably protected conduct and have no similarity to what is

3   alleged in the present action.

### B. Calculating the Lodestar

5   To determine an award of attorney's fees, courts normally begin by calculating the

6   "lodestar." *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000). This requires

7   multiplying the number of hours the attorneys reasonably spent on the litigation by the reasonable

8   hourly rate in the community for similar work. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173

9   (9th Cir. 1999). District courts may rely "on their own knowledge of customary rates and their

10  experience concerning reasonable and proper fees," *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th

11  Cir. 2011), and at the same time may "exclude from the fee request any hours that are 'excessive,

12  redundant, or otherwise unnecessary.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir.

13  2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is the burden of the party

14  moving for attorney's fees to establish their entitlement thereto, with evidence that allows the court

15  to "consider whether the case was overstaffed, how much time the attorneys spent on particular

16  claims, and whether the hours were reasonably expended." *Lunada Biomedical v. Nunez*, 230 Cal.

17  App. 4th 459, 486–487 (Cal. Ct. App. 2014).

### 1. Billing rates

19  An hourly rate is deemed reasonable by the market rates in the relevant community—"the

20  forum in which the district court sits"— for "'similar work performed by attorneys of comparable

21  skill, experience, and reputation.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.

22  2008). A district court must rely on more than just the declarations of the attorney in assessing what

23  is a reasonable rate. *See Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984) (requiring evidence "*in

24  addition to* the attorney's own affidavits") (emphasis added).

25  Here, Plaintiff is requesting fees for two of the four attorneys that worked on this matter:

26  Gregory A. Ellis (of counsel) and Paul B. Salvaty (partner). Motion at 9; Declaration of Gregory A.

27  Ellis ("Ellis Decl.") ¶¶ 4, 9. Mr. Ellis' billing rate for this matter is $1,135.00 and Mr. Salvaty's rate

28  is $1,480.00. Ellis Decl. ¶ 13. Given the experience and resumes of Plaintiff's counsel, *Id.* ¶¶ 2–3,

APP 0053

1   5–6, it is unsurprising that Defendants do not challenge the reasonableness of these rates.  The Court

2   is aware of other courts in this district awarding fees of up to $1,500.00 per hour for similarly

3   situated counsel.  *See e.g., Reffel v. Berryhill*, No. ED-CV-16-1985-AS, 2019 WL 2902699, at *3–4

4   (C.D. Cal. Apr. 5, 2019).  The Court finds the rates of Mr. Ellis and Mr. Salvaty to be reasonable.

5                                    **2. Hours billed**

6           Under California law—applicable here on the issue of fees—a party can carry its burden of

7   establishing the reasonableness of the hours expended "by submitting a declaration from counsel

8   instead of billing records or invoices."  *Lunada Biomedical*, 230 Cal. App. 4th at 488.  Plaintiff is

9   seeking fees for 13.28 hours—8.28 hours incurred by Mr. Salvaty in opposing the original anti-

10  SLAPP motion and 5 hours incurred by Mr. Ellis in preparation of the instant motion. Ellis Decl. ¶¶

11  9, 11–12; Motion at 10.  Notably, Defendants also refrain from challenging this Motion on the

12  grounds that the hours billed were not reasonable.  That may be because Plaintiff unilaterally made

13  two reasonable diminutions: first, cutting in half the number of attorneys for whom fees are being

14  requested, and second, applying the *Kailikole v. Palomar Cmty Coll. Dist.* formula to reduce Mr.

15  Salvaty's hours from 52.4 to 8.28. Ellis. Decl. ¶ 11; No. 18-CV-02877-AJB-MSB, 2020 WL

16  6203097 (S.D. Cal. Oct. 22, 2020).  Defendants concede that spending 5 hours in preparing the

17  instant Motion was reasonable.  Opposition at 8, n.2.

18          Instead, Defendants argue that by failing to provide detailed time entries, Plaintiff failed to

19  provide the necessary evidence to support its fee request.  Opposition at 8.  The Court disagrees.

20  Again, detailed time records are not necessary and a declaration can suffice as evidence to support a

21  motion for attorney's fees.  *Lunada Biomedical*, 230 Cal. App. 4th at 488.  The Court has reviewed

22  the hours billed and finds that the number of hours requested by Plaintiff's counsel are reasonable.

23  **V.      CONCLUSION**

24          For the foregoing reasons, the Court ***grants*** Plaintiff's Motion for Attorney's Fees and awards

25  reasonable fees and costs in the amount of $17,929.40.

26   Dated: September 9, 2024

27                                          _____
                                            Hernán D. Vera
                                            United States District Judge

28

                                            7

1   TYLER LAW, LLP
2   Robert H. Tyler (SBN 179572)
    rtyler@tylerlawllp.com
3   Nathan R. Klein (SBN 306268)
    nklein@tylerlawllp.com
4   Bradley Greenman (SBN 347609)
5   bgreenman@tylerlawllp.com
    25026 Las Brisas Road
6   Murrieta, California 92562
7   Telephone:   (951) 600.2733
    Facsimile:   (951) 600.4996
8   Attorneys for Defendants **Garrett Ziegler** and
    **ICU, LLC**
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  ROBERT HUNTER BIDEN              Case No.:  2:23-cv-07593-HVD-KS

14            Plaintiff
                                     **DEFEDANTS' GARRETT**
15       v.                          **ZIEGLER AND ICU, LLC'S**
                                     **OPPOSITION TO MOTION FOR**
16  GARRETT ZIEGLER, an individual;  **ATTORNEYS' FEES**
    ICU, LLC, a Wyoming limited liability
17  company,

18            Defendants.

19

20

21

22

23

24

25

26

27

28

Case 2:23-cv-07593-HDV-KS Document 60 Filed 04/28/25 Page 2 of 11 Page ID #:2287

# I. INTRODUCTION

Plaintiff's motion for attorneys' fees should be denied entirely. Defendants filed a motion to dismiss on multiple grounds, including anti-SLAPP grounds. Defendants' arguments were not frivolous or solely intended to cause unnecessary delay as is required for a prevailing plaintiff to recover attorneys' fees following the denial of an anti-SLAPP motion.

Plaintiff has selectively elected to litigate claims against the Defendants because they are the parties that published the Biden Laptop Report. Plaintiff's complaint is a textbook case of masquerading seemingly legitimate litigation with the goal of chilling Defendants' free speech rights. Plaintiff falsely accuses Defendants of being zealots and obsessed with Plaintiff. Defendants' only conduct was to research material from a third party which resulted in the publication of the Biden Laptop Report. The acts Plaintiff complained of were done in furtherance of Defendants' right to free speech. Ultimately the court rejected Defendants' arguments in its ruling, but there can be no doubt that Defendants' legal arguments were made in good faith and could have resulted in a dismissal of the State law claims.

Plaintiff's motion should also be denied because he failed to support the motion with sufficient evidence. Plaintiff does not provide the level of detail necessary to support the reasonableness of the time Mr. Ellis and Mr. Salvaty spent on the motion. There are no time sheets, invoices, or even a basic description of the services performed. It is quite possible Plaintiff seeks recovery for work that is not recoverable, or which could have been done by paralegals or newer associates at a lower rate. Neither Defendants nor the court can know, because Plaintiff did not submit evidence detailing how the 8.28 hours were spent opposing the anti-SLAPP arguments.

Accordingly, Defendants request the court deny Plaintiff's motion for attorneys' fees in its entirely.

# II. ARGUMENT

## A. Defendants' Anti-SLAPP Motion Was Not Frivolous

Plaintiff's Motion is a textbook example of "making a mountain out of a molehill." Despite citing some of the correct legal standards, Plaintiff's Motion reaches the improper conclusion that Defendants' anti-SLAPP motion was frivolous because it relies on unproven (and mistaken)

1

Case 2:23-cv-07593-HVD-KS Document 60 Filed 04/28/25 Page 3 of 125 Page #:1506
ID #:2288

assumptions regarding the facts of this case. Under California Code of Civil Procedure, section 425.16, subsection (c)(1), this Court can award attorney's fees "[i]f [it] finds that a special motion to strike is frivolous or solely intended to cause unnecessary delay."

    1.    *Plaintiff's first point should be completely disregarded because it is an unsupported conclusion – not analysis*

    Plaintiff's first argument is tantamount to saying: "'Plaintiff is not suing Defendants for their free speech activities…' because the complaint says so." After citing the applicable law at issue in its motion, Plaintiff chooses to lead his arguments with the conclusory statement that: "[A] simple reading of the complaint makes clear [the complaint] does not implicate free speech activities. Dkt. 52 at 17. Plaintiff's evidence supporting this conclusion is his own complaint, which requires a twisted and distorted interpretation to reach this conclusion. In fact, Plaintiff's own complaint is rife with specific references to publication of materials which Plaintiff knows were not his own property because said publications included written discussion and factual matters taken from other sources with analysis prepared by Defendants. According to Plaintiff's Motion for Attorney's Fees, "[t]he very first paragraph notes Plaintiff is not suing Defendants for their free speech activities." *Ibid.* Obviously, Plaintiff is going to state this conclusion. No attorney would blatantly announce the purpose of a lawsuit is to suppress a party's free speech rights. Anti-SLAPP statutes exist because plaintiffs employ the facade of legitimate litigation as a pretext for preventing defendants from exercising constitutionally protected activities and driving up their costs. *Safari Club International v. Rudolph*, 862 F.3d 1113, 1119 fn.3 (9th Cir. 2017) (citing *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 816 (1994)). Pointing to the complaint itself as evidence that SLAPP litigation is not an issue in this case is evidence of nothing of the kind. It is clear from the complaint that Plaintiff is pursuing Defendants because of the published "Biden Laptop Report."

    Plaintiff's citation to the first paragraph of the complaint as evidence this litigation is not about infringing Defendants' constitutionally protected rights is wholly unpersuasive. First, the language of the first paragraph of the complaint in no way dismisses the concern that Plaintiff is engaged in conduct intended to infringe on the Defendants' constitutionally protected speech. In fact, the first paragraph of the complaint resorts to name calling and employing inflammatory

2

DEFENDANTS' OPPOSITION            Case No. 2:23-cv-07593-HVD-KS

rhetoric and unsupported legal conclusions. In no more than seven lines, Plaintiff manages to allege a slew of insults rather than substantive allegations. For example, the first paragraph of the complaint states: Defendant GARRETT ZIEGLER ("Defendant Ziegler") is a: "[Z]ealot…" who is waging an "unhinged and obsessed campaign…." Dkt. 1 at 1, ¶ 1. Further, the complaint's first paragraph asserts that Defendant Ziegler's "opinions" are "extremist and counterfactual…." *Ibid.* Plaintiff also complains that Defendants created "a voluminous report entitled *Report on the Biden Laptop*…" Dkt. 1 at 5, ¶ 22. Contrary to Plaintiff's claims, these paragraphs stand as evidence of Plaintiff's intent to attack Defendants for publishing the Biden Laptop Report and holding an antagonistic position towards Plaintiff. The complaint underscores Defendants' concerns that this litigation is about silencing the Defendants, not vindicating any alleged violations of the Plaintiff's legal rights.

Defendants' position is further driven home by Plaintiff's own litigation choices. The Defendants accessed and published information from the same iPhone data, relying on similar investigative methods and sources as the Washington Examiner, who used the services of renowned forensic expert Gus Dimitrelos.[1] Notably, Plaintiff has not pursued any legal action against the Washington Examiner. This disparity in treatment demonstrates that Plaintiff's pursuit of sanctions against Defendants is not driven by a genuine belief in the frivolousness of their motion. Instead, it reveals a targeted attempt to punish Defendants for their viewpoint and the content of their "Report on the Biden Laptop." The fact that the Court ultimately denied Defendants' anti-SLAPP motion does not render it inherently frivolous, especially considering the acknowledged complexity of the legal issues involved..

   2.   *Plaintiff overstates the import of opposing the anti-SLAPP motion addressing the federal claim*

Plaintiff's Motion for Attorney's fees claims that Plaintiff was forced to: "[W]aste time and resources addressing the anti-SLAPP arguments that were completely baseless." Dkt. 52 at 3, 15–16. Plaintiff then attributes this waste of time and money to the fact that Plaintiff's Motion to Dismiss

---

[1] *Hunter Biden's laptop is legit despite White House's refusal to acknowledge it*, Washington Examiner   https://www.washingtonexaminer.com/news/2872086/hunter-bidens-laptop-is-legit-despite-white-houses-refusal-to-acknowledge-it/

3

1   sought dismissal of the federal claims in addition to the state law claims at issue in this case under

2   California's anti-SLAPP statute. *See* Dkt. 52 at 3, 8–16 (noting Plaintiff's Motion for Attorney's

3   fees is related to the anti-SLAPP motion being brought against the federal claims); Dkt. 52 at 5–7

4   (arguing the same).

5        At the same time, however, in the argument section of Plaintiff's Opposition to the Motion

6   to Dismiss dealing with the anti-SLAPP motion, specifically, Document 30, Section III.D.1–2,

7   Plaintiff's argument and analysis deals with the federal claims for all of *two sentences*. *See* Dkt. 30

8   at p. 29, 4–6 (arguing the inapplicability of anti-SLAPP to federal claims in two sentences). On the

9   other hand, Plaintiff's Opposition to the Motion to Dismiss then dedicates the remaining *forty-two*

10  *sentences* in the anti-SLAPP analysis section, to discussing the state law claims (a **1:21** ratio of the

11  analysis of the federal anti-SLAPP issues to the state anti-SLAPP issues). Assuming *arguendo*

12  Plaintiff's calculation that he is entitled to $17,929.40 is correct (Defendants in no way concede

13  this), it appears Plaintiff is arguing he incurred nearly $18,000.00 in legal costs to formulate two

14  sentences that in Plaintiff's own words even "rudimentary research would have revealed…." Dkt.

15  52 at 6.

16       Further, when examining Defendants' discussion in its Motion to Dismiss, Defendants

17  dedicated nearly five pages (out of 23 pages) to discussing the anti-SLAPP issues in this case. *See*

18  Dkt. 23 at 19–23 (containing approximately **96 sentences**). When it comes to the federal claim at

19  issue in this case, the only time the Computer Fraud and Abuse Act (the "CFAA") is even

20  mentioned, is in a discussion of whether Plaintiff has a probability of prevailing on the merits on his

21  causes of action. Dkt. 23 at 23, 1–9. Within this small section, only *eight sentences* discuss

22  Plaintiff's federal causes of action (a **1:12** ratio of discussing federal issues compared to the rest of

23  the anti-SLAPP analysis).

24       Similarly, when examining Defendants' Reply in Support of Their Motion to Dismiss

25  ("Defendants' Reply"), out of the page-and-a-half that discusses Defendants' anti-SLAPP

26  arguments, *not a single sentence* is dedicated to arguing that the federal claims are subject to

27  dismissal on anti-SLAPP grounds. Dkt. 32 at 9–10; *see also* Dkt. 52 at 7, 19–26 (showing Plaintiff

28  acknowledges that Defendants' Reply does not discuss anti-SLAPP applying to the CFAA). Rather,

DEFENDANTS' OPPOSITION                    Case No. 2:23-cv-07593-HVD-KS

TYLERLAW LLP

Case 2:23-cv-07593-HVD-KS  Document 40  Filed 04/25/25  Page 6 of 15  Page #:1509
ID #:2291

1  the entirety of the discussion in Defendants' Reply focuses on arguing that Defendants' conduct

2  constituted protected activity. *Ibid.*

3      In the end, Plaintiff cannot claim it wasted time and resources arguing against the federal

4  anti-SLAPP issue while Plaintiffs own papers show it represents only a small fraction of his total

5  time and argument spent. Moreover, Defendants' papers show the bulk of the focus and argument

6  was drafted trying to establish Defendants' conduct was protected activity and Plaintiff was unlikely

7  to prevail on the merits as to the state law claims.

8      3.    *Plaintiff's Analysis of the anti-SLAPP Arguments as to the State Law Claims is*

9          *Onerous*

10     Plaintiff cites *Moore v. Shaw* as a mandatory proposition that Plaintiff is entitled to fees

11 because the court did not find that Defendants met the first prong of the anti-SLAPP analysis. While

12 the quotations Plaintiff pulls from *Moore* are accurate, Plaintiff fails to note the facts in *Moore* bear

13 no resemblance to this case at all rendering the application of substance of those quotes inapplicable

14 to this case. In *Moore*, the defendant was arguing that drafting a termination agreement that enabled

15 another party to terminate a trust prematurely was constitutionally protected activity. *Moore v.*

16 *Shaw,* 116 Cal. App. 4th 182, 195 (2004). Further, in *Moore*, the court noted that the defendant's

17 conduct in that case could not remotely be viewed as connected to a public issue under the anti-

18 SLAPP analysis because it dealt with the terms of a trust that was at issue. *Id.* at 195–96. This case

19 involves the reputation of the son of the current President of the United State of America. The issues

20 between this case and *Moore* could not be more different.

21     The court's order denying the motion to dismiss also points to *Malin v. Singer,* which denied

22 an anti-SLAPP motion based upon allegations of illegal wiretapping and computer hacking that

23 were used as part of defendants' pre-litigation investigation. *Malin v. Singer* 217 Cal. App. 4th 1283,

24 1303 (2013). *Malin* is distinguishable from the allegations at hand, as Plaintiff's complaint admits

25 that Defendants were provided copies of Plaintiff's hard drives from third parties. Dkt. 1 at 4, ¶¶ 17-

26 18. Defendants submitted evidence detailing the innocent manner by which they received the

27 evidence and how they used the data. Dkt. 23-1 at 2 ¶ 5; 4-5, ¶¶ 19-25. The Defendants have not

28

DEFENDANTS' OPPOSITION                 Case No. 2:23-cv-07593-HVD-KS

admitted, nor will Plaintiff be able to prove, that Defendants engaged in illegal wiretapping or computer hacking, which was found in *Malin*.

Moreover, Plaintiff's alleged "hack" does not remove it from the ambit of the anti-SLAPP motion merely because the elements of the claim for relief do not facially appear to invoke activity against speech. And, in fact, the Plaintiff's allegations raise the strong specter that what the Plaintiff deems a "hack", is instead gathering of information preparatory to creating the Defendants' publications. The California anti-SLAPP statute recognizes that acts in furtherance of speech are subject to an anti-SLAPP motion. Cal. Code Civ. Proc. § 425.16(b)(1). "A cause of action against a person arising from any act of that  person in furtherance of the person's right of petition or free speech  under the United States Constitution or the California Constitution in  connection with a public issue shall be subject to a special motion to  strike..." Subsection (e) of the statute enumerates four different categories of protected activity including "(4) any other conduct in furtherance of the exercise of the  constitutional right of petition or the constitutional right of free  speech in connection with a public issue or an issue of public interest." As the Defendants' pleadings and declarations demonstrate, the Defendants have proffered substantial evidence that no alleged "hack" took place, and that Defendants are neither the original third parties to possess data concerning Plaintiff nor the first parties to publish data concerning the Plaintiff which was distributed by others. Dkt. 23-1 at 2 ¶ 5; 4-5, ¶¶ 19-25. Indeed, receipt of information from other parties is quintessential newsgathering activity.

Furthermore, the failure to meet the first prong of the anti-SLAPP test is not prima facie evidence that the motion was frivolous. *Shropshire v. Fred Rappoport Co*. 294 F.Supp.2d 1085 (N.D. Cal. 2003). In *Shropshire*, the court could not find that prong one of the anti-SLAPP was implicated by the subject complaint due to the disputed questions of fact. *Id*. at 1099. The court denied plaintiff's request for attorneys' fees holding that the anti-SLAPP motion, although it was denied, was not frivolous. *Id*. at 1102. Another court found that an anti-SLAPP motion paired with a motion to dismiss was not frivolous as it demonstrated a good faith effort to dismiss plaintiff's claims. *Wiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors, LLC* 814 F.Supp.2d 1033, 1039 (S.D. Cal. 2011).

6

Lastly, the court should note that a related case in the Superior Court of Los Angeles County, California (Santa Monica Division), *Morris v. Ziegler et al*, case number 23SMCV01418, involves much of the same subject matter as the present case. In the *Morris* case, Plaintiff's attorney and financier P. Kevin Morris sued the Defendants herein for various causes of action in which Defendants likewise filed an anti-SLAPP motion. Hon. Mark E. Epstein, the presiding Superior Court Judge, issued a thirty-seven page ruling in part on the anti-SLAPP motion after conducting extensive briefing and a hearing over several days. In his order granting Defendants' anti-SLAPP in part, the Court found that, "Defendants correctly point out that Biden, his laptop, and plaintiff are topics of widespread public interest. The Biden laptop was discussed during a presidential debate and multiple news articles were published regarding plaintiff's relationship with Biden. The speech and conduct in question concerned the laptop and the relationship between Biden and plaintiff, both of which are in the public eye." Request For Judicial Notice 1; Ex. 1 at 8. While the order has been appealed by both parties, it is an interim ruling which contains findings of facts directly adverse to the Plaintiff in this case and further bolsters the reasonableness of Defendants' bringing the anti-SLAPP arguments in this action.

While the court ultimately disagreed with Defendants' arguments on the anti-SLAPP motion that does not render them frivolous. The anti-SLAPP arguments were also presented as part of a comprehensive motion to dismiss, which demonstrates the good faith belief in Defendants' motivation to bring the arguments. In addition, Defendants' contentions that the activity complained of by the Plaintiff was in furtherance of their free speech rights were not frivolous. If the Biden Laptop Report did not exist, there is little doubt Plaintiff would not have filed this action.

Accordingly, Plaintiff's motion should be denied. Plaintiff's claim that the motion was frivolous is not correct and therefore, Plaintiff is not entitled to recover reasonable attorneys' fees incurred in connection with opposing that portion of Defendants' motion.

**B.    Plaintiff's Fee Request Is Unreasonable**

While Defendants assert the court's analysis does not need to go beyond a determination that the motion was not frivolous, Plaintiff also failed to properly support his fee request.

DEFENDANTS' OPPOSITION

Case 2:23-cv-07593-HDV-KS Document 60 Filed 04/28/25 Page 9 of 19 Page ID #:2294

It is Plaintiff's burden to establish the reasonableness of the fee request and that the rates requested are in line with the prevailing market. *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987). To determine an attorneys' fee award, the court must conduct the "lodestar" calculation, which starts with multiplying the number of hours reasonably spent on the litigation by the reasonable hourly rate. *McElwaine v. U.S. West, Inc.* 176 F.3d 1157, 1173 (9th Cir. 1999). Courts "may exclude from the fee requests any hours that are 'excessive, redundant, or otherwise unnecessary,'" *Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "[T]he district court should begin with the billing records the prevailing party has submitted." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). In the *Yuga Labs* case that Plaintiff heavily relies on, the court acknowledged its duty to conduct a detailed review of the fee request: "Normally, courts will conduct an 'hour-by-hour analysis of the fee request, and exclude those hours for which it would be unreasonable to compensate the prevailing party.'" *Yuga Labs, Inc. v. Ripps*, 2024 WL 489248, at *1 (quoting *Gonzalez*, 729 F.3d at 1202.)

Notably, Plaintiff has failed to provide detailed time entries in support of his motion so Defendants or the court can assess the reasonableness of the fee request. Plaintiff's counsel's declaration details a rudimentary calculation of how it arrived at the requested hours but fails to provide the specific tasks incurred that led to 8.28 hours being spent opposing the anti-SLAPP motion[2]. This is not a fee request based on hundreds of hours that would warrant a less granular review. *Yuga Labs*, at *1 (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992)). The lack of specific tasks provided suggests Plaintiff's fee request includes some entries for tasks that are either not recoverable or could have been completed by paralegals or attorneys with less experience charging at a lower rate. Furthermore, as detailed in the prior section, the bulk of the anti-SLAPP motion work was focused on the state law claims to which the anti-SLAPP arguments could potentially have resulted in a dismissal. Plaintiff spent two sentences addressing the applicability of the anti-SLAPP statute to his federal claim in his opposition, and Defendants did

---

[2] While Defendants assert the fee motion should be denied, Defendants would concede that the 5 hours Plaintiff's counsel spent preparing the motion is reasonable.

DEFENDANTS' OPPOSITION      Case No. 2:23-cv-07593-HVD-KS

1  not attempt to rebut that position on reply. Plaintiff does not address how much of the fee request
2  was tied to arguing the federal claim compared to the state claims – again, this is an issue with
3  Plaintiff not providing detailed time records to support the motion.

4      Plaintiff has not provided the necessary evidence to support the fee request and the motion
5  should therefore be denied.

6                                    **III. CONCLUSION**

7      For the reasons stated herein, Defendants request the court deny Plaintiff's motion seeking
8  attorneys' fee in its entirety.

9

10

11  DATED: August 1, 2024          TYLER LAW, LLP

12

13                                By: /s/ Nathan R. Klein

14                                    Nathan R. Klein, Esq.

15                                **Attorneys for Defendants Garrett Ziegler
                                    and ICU, LLC**

16

17

18

19

20

21

22

23

24

25

26

27

28

Name  Robert H. Tyler; Nathan R. Klein

Address  25026 Las Brisas Road

City, State, Zip  Murrieta, California 92562

Phone  951.600.2733

Fax  951.600.4966

E-Mail  rtyler@tylerlawllp.com; nklein@tylerlawllp.com

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HUNTER BIDEN<br><br>PLAINTIFF(S),<br>v.<br>GARRETT ZIEGLER, an individual; ICU, LLC, a Wyoming limited liability company<br>DEFENDANT(S). | CASE NUMBER:<br><br>2:23-cv-07593-HUD-KS<br><br>**NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that _____Defendants Garrett Ziegler and ICU, LLC,_____ hereby appeals to
                                            *Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
   Portion of Order Denying Mtn to Dismiss

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on ___June 20, 2024___. Entered on the docket in this action on _Docket #50_____.

A copy of said judgment or order is attached hereto.

| July 19, 2024 | /s Nathan R. Klein |
|---|---|
| Date | Signature |
|  | ☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk |

**Note:** The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 6. Representation Statement

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

| |
|---|
| Garrett Ziegler, an individual
ICU, LLC, a Wyoming limited liability company d/b/a Marco Polo |

Name(s) of counsel (if any):

| |
|---|
| Robert H. Tyler; Nathan R. Klein
Tyler Law, LLP |

Address: | 25026 Las Brisas Road, Murrieta, California 92562

Telephone number(s): | 951.600.2733

Email(s): | rtyler@tylerlawllp.com; nklein@tylerlawllp.com

Is counsel registered for Electronic Filing in the 9th Circuit?  ◉ Yes  ○ No

---

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

| |
|---|
| Robert Hunter Biden |

Name(s) of counsel (if any):

| |
|---|
| Paul B. Salvaty; Gregory A. Ellis
Winston & Strawn LLP |

Address: | 333 S. Grand Avenue, Los Angeles, California 90071-1543

Telephone number(s): | 213.615.1700

Email(s): | psalvaty@winston.com; gaellis@winston.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**<u>Appellants</u>**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?  ○ Yes  ○ No

**<u>Appellees</u>**

Name(s) of party/parties:

Robert Hunter Biden

Name(s) of counsel (if any):

Abbe David Lowell
Winston & Strawn LLP

Address: 1901 L. St., N.W., Washington, DC 20036-3508

Telephone number(s): 202.282.5000

Email(s): abbelowellpublicoutreach@winston.com

Name(s) of party/parties:

Robert Hunter Biden

Name(s) of counsel (if any):

Bryan M. Sullivan; Zachary C. Hansen
Early Sullivan Wright Gizer & McRae

Address: 6420 Wilshire Boulevard, 17th Fl, Los Angeles, California 90048

Telephone number(s): 323.301.4660

Email(s): bsullivan@earlysullivan.com

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11    Robert Hunter Biden,                    Case No. 2:23-cv-07593-HDV (KSx)

12               Plaintiff,

13    v.                                       **ORDER DENYING DEFENDANTS'
                                               MOTION TO DISMISS [DKT. NO. 23]**
14

15    Garret Ziegler et al.,

16               Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

This action arises out of alleged violations of federal and state computer fraud statutes. Plaintiff Robert Hunter Biden alleges that Defendants Garrett Ziegler and ICU, LLC illegally accessed, manipulated, and damaged his data without his authorization or consent.

Before the Court is a motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) and California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.  For the reasons discussed below, the Court concludes that Plaintiff has sufficiently alleged the necessary elements of his claims for under federal and state computer fraud statutes.  Defendants' objections raise factual questions that are best addressed in post-discovery briefing.  Defendants' Motion is therefore *denied*.

## II.   BACKGROUND

The factual allegations center around the appropriation of Plaintiff's data by Defendants.  As required by the Federal Rules of Civil Procedure, the following facts are taken from Plaintiff's Complaint [Dkt. No. 1] and are assumed to be true for the purposes of this Motion.

In July 2021, Defendant Ziegler organized Defendant ICU to do business under the name "Marco Polo."  Complaint ¶ 20.  Defendants then spent at least 13 months — from September 2021 through October 2022 — "analyzing the voluminous material" from Plaintiff's data.  *Id.* ¶ 21. Plaintiff is unsure as to how Defendants obtained his data.  *Id.* ¶¶ 17–18.  Defendant Ziegler used Plaintiff's data to create a lengthy report entitled "Report on the Biden Laptop", which Defendants first published in October 2022.  *Id.* ¶ 22.  Defendants also used Plaintiff's data to create what Defendant Ziegler described as "an online searchable database of 128,000 emails found on the Biden Laptop."  *Id.*  Plaintiff never authorized or consented to access of any of his data by any Defendant at any time or for any purpose.  *Id.*  Plaintiff notified Defendants that they were not authorized to access any of his data, that they should cease doing so, and that they should return any of Plaintiff's data to him immediately.  *Id.* ¶ 30.  He alleges that Defendants spent multiple months going through the photos stored in his data, organizing and modifying the photos, and subjecting the data to a photo viewing application to allow Defendants and others to view the metadata in the photos.  *Id.* ¶ 25.

APP 0069

This application allows those that access Defendants' website to see where the photos were taken, what time they were taken, and other information contained in the metadata. *Id.* Plaintiff also asserts that Ziegler stated that AI tools were needed to censor some of the data. *Id.* ¶ 26.

Plaintiff alleges that Defendants have unlawfully accessed, tampered with, manipulated, damaged, and copied thousands of emails, photos, videos, and recordings, which include financial and bank records. Complaint ¶ 27. He asserts that at least some of the data was originally stored on his iPhone and backed up to his iCloud storage. *Id.* ¶ 28. Plaintiff alleges that Defendants gained unlawful access to his iPhone data by circumventing technical or code-based barriers that were specifically designed and intended to prevent such access. *Id.* While the "precise nature" of how the data was taken and manipulated is unknown, he alleges that the data must be either from Defendants' "copy of the hard drive of the claimed 'Biden laptop' or from Plaintiff's encrypted 'iPhone backup' (or from some other source)." *Id.* ¶ 29.

Plaintiff filed this lawsuit on September 13, 2023, alleging one federal claim for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and two state claims for violation of California's Comprehensive Computer Data Access and Fraud Act ("CCDAFA"), Cal. Penal Code § 502, and California's Unfair Competition Law, Business & Professions Code §§ 17200 *et seq. See* Complaint. On December 21, 2023, Defendants filed this Motion to dismiss Plaintiff's suit pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure and pursuant to California's Anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16.[1]

## III.   LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[1] On February 29, 2024, Plaintiff filed an opposition ("Opp.") [Dkt. No. 30]. On March 7, 2024, Defendants filed their Reply [Dkt. No. 32]. Defendants also filed Requests for Judicial Notice ("RJN") [Dkt. No. 24], and parties filed a variety of responsive briefings, *see* [Dkt. No. 31, 33, 34]. The Court heard oral argument on May 16, 2024 and took the Motion under submission [Dkt. No. 49].

APP 0070

1    (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

2    court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3    *Iqbal*, 556 U.S. at 678. Only where a plaintiff fails to "nudge[] [their] claims . . . across the line from

4    conceivable to plausible" is the complaint properly dismissed. *Id.* at 680.

5         While the plausibility requirement is not a probability assessment, it demands more than "a

6    sheer possibility that a defendant has acted unlawfully." *Id.* at 678. The determination of whether a

7    complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing

8    court to draw on its judicial experience and common sense." *Id.* at 679.

9    **IV.   DISCUSSION**

10        **A.  Subject Matter Jurisdiction And Standing[2]**

11        Defendants initially move to dismiss for lack of subject matter jurisdiction and standing

12   under Rule 12(b)(1) on the ground that Plaintiff "cannot show that any federal statutory violation has

13   occurred" and because Plaintiff "lacks standing" to assert any of his claims. *See* Motion at 4–6.

14        The CFAA is a federal statute that "subjects to criminal liability anyone who 'intentionally

15   accesses a computer without authorization or exceeds authorized access,' and thereby obtains

16   computer information." *Van Buren v. United* States, 593 U.S. 374, 379 (2021) (citing 18 U.S.C. §

17   1030(a)(2)). The CFAA contains a private cause of action, which allows persons suffering

18   "damage" or "loss" to sue for money damages and equitable relief. *Id.* (citing 18 U.S.C. § 1030(g)).

19   The CFAA "defines the term 'exceeds authorized access' to mean 'to access a computer with

20   authorization and to use such access to obtain or alter information in the computer that the accessor

21   is not entitled so to obtain or alter." *Id.* (citing 18 U.S.C. § 1030(e)(6)). Section 1030(a)(2)'s

22   prohibition initially only applied to certain financial information, but "has since been expanded to

23   cover any information from any computer 'used in or affecting interstate or foreign commerce or

24   communication'" *Id.* (citing 18 U.S.C. § 1030(e)(2)(B)). Thus, "the prohibition now applies—at a

---

[2] As a preliminary matter, the Court denies Defendants' Request for Judicial Notice of nineteen
exhibits. [Dkt. No. 24]. After reviewing the Request, opposition and reply briefing, the Court in its
discretion declines to take judicial notice of these exhibits, as none bear on the issues raised in
Defendants' Motion.

4

1    minimum—to all information from all computers 'used in or affecting interstate or foreign

2    commerce or communication.'" *Id.* (citing 18 U.S.C. § 1030(e)(2)(C, (e)(2)(B)).

3         Plaintiff's CFFA claim is not "devoid of any merit" as to be wholly insubstantial or frivolous.

4    *See*, *e.g.*, *Custom Packaging Supply, Inc. v. Phillips*, No. 215CV04584ODWAGR, 2015 WL

5    8334793, at *5 (C.D. Cal. Dec. 7, 2015) (citing *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486,

6    1490 (9th Cir. 1985)).  Defendants assert that "[n]either the CFAA nor the CCDAFA authorizes a

7    party whose data has been copied to assert a civil action over any computer, device or system not in

8    their possession."  Motion at 5.  But Defendants fail to point to language in these statutes that require

9    possession of the physical device.  Neither the CFAA nor the CCDAFA contain any requirement that

10   Plaintiff must "own," "possess," or "control" the physical device or computer that Defendants

11   accessed.  The statute concerns the ownership of the data accessed.  Both statutes allow Plaintiff to

12   assert claims based on the facts asserted.  *See* 18 U.S.C. § 1030(g) (extending civil remedy to "any

13   person" who suffers damage or loss); Cal. Pen. Code § 502(e)(1) (extending civil remedy to owners

14   of "data" who suffer damage or loss).  In fact, Defendants' ownership-and-control argument has

15   been rejected by the Ninth Circuit.  *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004)

16   (reversing "district court [that] erred by reading ownership or control requirement into the

17   [CFAA] . . . .  Individuals other than the computer's owner may be proximately harmed by

18   unauthorized access, particularly if they have rights to data stored on it.").

19        Lastly, Defendants attack subject matter jurisdiction on the grounds that Plaintiff's CFAA

20   claim is untimely.  But this argument fails because Plaintiff has asserted his claim for violation of the

21   CFAA "within 2 years of the date of the act complained of or the date of the discovery of the

22   damage," as required under 18 U.S.C. § 1030(g).  Plaintiff asserts that Defendants spent many

23   months "accessing" and "analyzing" the data, from at least "September 2021 through October

24   2022."  Complaint ¶ 21; *see also* Declaration of Garret Ziegler ("Ziegler Decl.") ¶ 6 [Dkt. No. 23-1].

25   Plaintiff filed this lawsuit on September 13, 2023, which satisfies the statute of limitations.  Most, if

26   not all, of Defendants' acts of unauthorized access to Plaintiff's data occurred within the statute.

27   Thus, the Court has federal question jurisdiction based on Defendants' alleged violation of the

28

5

APP 0072

CFAA.[3]

## B. Personal Jurisdiction

Defendants contest that the Court has personal jurisdiction over Defendants due to insufficient contacts with California. *See* Motion at 7–12. The plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). To survive a motion to dismiss under Rule 12(b)(2) without an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdictional facts. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("[W]e only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction.") (citation omitted). "[U]ncontroverted allegations in the complaint must be taken as true." *Id.*

Personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." *Pebble Beach*, 453 F.3d at 1154–55 (citation omitted). California authorizes jurisdiction on any basis consistent with federal due process requirements. Cal. Civ. Proc. Code § 410.10; *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991). The Fourteenth Amendment's Due Process Clause requires that a defendant have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A district court's exercise of personal jurisdiction over a nonresident defendant does not violate due process when the defendant has at least minimum contacts with the forum, and when subjecting the defendant to suit in the forum will "not offend traditional notions of fair play and substantial justice." *See*, *Ayla LLC v. Ayla Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (internal citations omitted).

---

[3] The Court also finds a second basis for subject matter jurisdiction based on diversity jurisdiction under 28 U.S.C. § 1332. *See* Complaint ¶¶ 7–8. Plaintiff is a citizen of the State of California and resides in Los Angeles, California. Defendant Ziegler is a citizen of and is residing in the State of Illinois. Defendant ICU is a corporation organized under the laws of Wyoming. Thus, complete diversity exists between parties. The amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiff claims exceed $75,000. *Id.* ¶ 8.

APP 0073

Personal jurisdiction over a nonresident defendant may be general or specific. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). In this case, Plaintiff argues that the Court has specific jurisdiction over Defendant. Opp. at 9–14. A court has specific jurisdiction over a claim that arises out of a defendant's forum-related activities. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). To establish specific jurisdiction, the following three-part test must be met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which she purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation omitted). Plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* The burden then shifts to Defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

### 1. Purposeful Direction

Where a plaintiff's claims are based in tort, as they are here, courts use the "purposeful direction" test, which is satisfied where the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *See Ayala LLC*, 11 F.4th at 979–80 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).[4] Under such a test, courts apply an "effects" test and focus "on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). Even though express aiming requires "conduct directly targeting the forum" beyond mere knowledge that the plaintiff lives in the forum state, *Ayla LLC*, 11 F. 4th at 980, "all of a defendant's contacts with the forum state" must be examined in the jurisdictional analysis, "whether or not those contacts involve

---

[4] *See also AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (the plaintiff "alleges copyright and trademark infringement claims, which sound in tort, so we apply a 'purposeful direction' analysis and ask whether [the defendant] has purposefully directed activities at the United States").

7

1    wrongful activity by the defendant." *Yahoo! Inc.*, 433 F.3d at 1207.[5]

2            Defendants contest the second prong[6] of the purposeful direction test. More specifically,

3    Defendants contend that Plaintiff can adequately "show that Defendants committed any alleged

4    intentional act that was 'expressly aimed' at California because there was no 'individualized

5    targeting' of California residents by Defendants." Motion at 11. The Court disagrees.

6            The express aiming inquiry centers on whether the defendant specifically targeted the forum

7    state. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017) (citation omitted). The

8    Supreme Court has explained that the contacts supporting purposeful direction "must be the

9    defendant's own choice and not random, isolated or fortuitous." *Ford Motor Co. v. Montana Eighth*

10   *Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (citations omitted). The defendant must have "reached out

11   beyond its home—by, for example, exploiting a market in the forum state." *Id.* (citations omitted).

12   Therefore, a defendant does not purposefully direct its activities at the forum state when the

13   unilateral activity of the plaintiff or a third party is all that connects the defendant to the forum state.

14   *See Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (citations omitted). Rather, the focus is on the

15   defendant's "own contacts," e.g., "contacts that the defendant *himself* creates with the forum state."

16   *See id.* at 284 (citations omitted) (emphasis in original). "[M]ere injury to a forum resident is not a

17   sufficient connection to the forum." *Id.* at 290. Thus, "[t]he proper question is not where the

18   plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him

19   to the forum in a meaningful way." *Id.* Courts are to focus on the defendant's actual contacts with

20   the forum, and the "quality and nature" of those activities. *Hanson v. Denckla*, 357 U.S. 235, 253

21   (1958).

22           Defendant Ziegler notes that the report Defendants prepared using Plaintiff's data is available

23   at the website www.bidenreport.com. Ziegler Decl. ¶ 8 & n.1. On this website, a "Purchase" button

24

25   [5] Nor is it required that the "brunt" of the harm occurred in the forum state. *Id.* "If a jurisdictionally
26   sufficient amount of harm is suffered in the forum state, it does not matter that even more harm
     might have been suffered in another state." *Id.*

27   [6] Defendants do not dispute the first prong that it committed intentional acts by collecting and
28   circulating Plaintiff's data.

8

is prominently displayed, allowing users to spend $50.00 for a hardcopy of the Biden report. Declaration of Gregory A. Ellis ("Ellis Decl.") ¶ 6, Ex. A [Dkt. No. 30-2]. Clicking the purchase button then links to a purchase page operated by Stripe.com, a California-based entity whose purchase terms are governed by California law.[7] Defendants' argument that this website is purely passive lacks merit. The website, owned and operated by Defendants, allows continuing regular sales from California residents. *C.f. Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008) (finding the sale of one item to California resident was insufficient for personal jurisdiction because the "listing temporarily advertised a good for sale and that listing closed once the item was sold, thereby extinguishing the Internet contact for this transaction within the forum state").

Moreover, Defendant Ziegler declares that over six million unique IP addresses have reviewed the report on the Marco Polo website, and that "less than ten percent of Marco Polo's supports reside in California." Ziegler Decl. ¶¶ 12, 16. The question of the exact number of California residents that have purchased the report is unclear, but Ziegler's declaration does not state that no Californians have purchased the physical report. *See* Supplemental Declaration of Garrett Ziegler ("Ziegler's Supp. Decl.") [Dkt. No. 32-1] ¶ 3 ("our supporters can donate funds to secure a hard copy of the Biden Report"). Indeed, with hundreds of thousands of California residents visiting the site, it is more than plausible to assume that California residents have also purchased and continue to purchase a report of Plaintiff's data.[8] Taken together, the Court finds Defendants' statements support targeting into the forum state. The cases cited by Defendants are distinguishable and do not involve a site analogous to that operated by Defendants, which conducts business that allows individuals to purchase copies of the report that compiles Plaintiff's data.[9]

---

[7] *See* www.stripe.com/legal/consumer, Section 12.

[8] The Court need not order further jurisdictional discovery to learn more about the exact details of the financial support from California residents, as the contacts discussed herein are more than sufficient to find specific personal jurisdiction.

[9] *See* Motion at 10–12; *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (defendant hotel's website included only an inquiry form and did not allow visitors to make reservations); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (defendant's

9

Contacts with the forum are also supported by Ziegler's purported actions after publishing the report to verify the facts and promote the report. For example, he sent copies to multiple California residents to verify Plaintiff's information. Ziegler said in interviews that his team talked with each person named in the report. Ellis Decl. Exs. C at 12 ("I took the time to call each and every person that is in this report") [Dkt. No. 30-5]; D at 8 ("we've sent the dossier to all 4,000 contacts on Hunter's laptop) [Dkt. No. 30-6]. He even includes a table of alleged Plaintiff family crimes with California area codes, many listing "where (venue)" as C.D. Cal. Ellis Decl. Ex. E at 233–35, 400–01. Other California residents include an FBI agent in the San Francisco field office, Ellis Decl. Ex. E at 22. And Ziegler even sent the Report to the personal residence of one of Plaintiff's California-based attorneys. Ellis Decl. ¶ 12.

Ziegler also promoted the Report in California. Ziegler posted a photo of himself holding a copy of the Report in December 2023 on Instagram in front of the Chateau Marmont Hotel in West Hollywood with the caption: "The activities in & around this infamous bungalow are captured for posterity in BidenReport.com." Ellis Decl. Ex. H. He also posted a Rumble video of himself in San Francisco in November 2022, entitled "Report on the Biden Laptop CA Field Trip," again promoting the Report. Ellis Decl. Ex. I. In sum, his entry into California and social media posts reflecting such promotion in California support the exercise of jurisdiction. *See Yue v. Yang*, 62 Cal. App. 5th 539, 543–48 (2021) ("California-focused" social medial messages, including statement that defendant "arrived in California," support specific jurisdiction). Taken together, these contacts with California are more than adequate to satisfy the purposeful direction test.

### 2. "Arise out of or result from"

Defendants next contest that Plaintiff can show that his claims "arise out of" Defendants' contacts with California. Motion at 11. To satisfy the "arising out of" prong, a plaintiff need only show that a "direct nexus exists between the defendant's contacts and the cause of action." *See Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 894 (9th Cir. 1996).

---

website only allowed users to email the defendant); *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) (finding website was not passive where it allowed users to purchase the product at issue).

10

1    Ziegler's own statements are sufficient to satisfy the required nexus.  In an interview, Ziegler

2    specifically stated that he called "each and every person that is named in this report," which would

3    have included multiple California-based contacts.  Ellis Decl. Ex. C. at 13.  He tied the credibility of

4    the Report to his verification of the information, tying the manipulation of data at issue to California-

5    based contacts.  Further, Plaintiff, a resident of California, is alleged to have suffered harm from

6    Defendants' misuse of his data, supporting this prong.  *See Yahoo! Inc.*, 433 F.3d at 1206.

### 3. Reasonableness

8    Lastly, Defendants contest personal jurisdiction by arguing that other factors would lead

9    jurisdiction to be unreasonable.  Motion at 11–12.  This burden is held by Defendants.  In evaluating

10   whether jurisdiction would be unreasonable, the Court balances seven factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs;
> (2) the burden on the defendant of defending in the forum; (3) the extent of conflict
> with the sovereignty of the defendants' state; (4) the forum state's interest in
> adjudicating the dispute; (5) the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest in convenient and effective
> relief; and (7) the existence of an alternative forum.

15   *Core-Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1487–88 (9th Cir.1993) (citations omitted).  But

16   Defendants only address a few factors, claiming that they "did not intentionally target California"

17   and that "the evidence is located in Illinois."  Motion at 12.  The Court rejects the first argument, as

18   Defendant financially benefitted by accepting purchases of the report by California residents and

19   relied on California residents in creating and promoting the report.  The second argument is not

20   enough to tip the scale of reasonableness in their favor, especially considering that Plaintiff lives in

21   California.  Balancing the seven factors, the Court finds that jurisdiction is not unreasonable.

22   "California maintains a strong interest in providing an effective means of redress for its residents

23   tortiously injured."  *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831, 836 (9th Cir. 1996).

### C. Venue

25   Next, Defendants move to dismiss for lack of venue.  Here, facts supporting personal

26   jurisdiction also support venue.  "A plaintiff's choice of venue is generally given substantial weight

27   and a defendant normally 'must make a strong showing of inconvenience to warrant upsetting the

28   plaintiff's choice of forum.'"  *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp.

11

3d 733, 751 (N.D. Cal. 2015) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Defendant argues that "[w]hile Plaintiff is allegedly a California resident, it is doubtful whether any alleged injuries occurred in California." Motion at 12. But when looking at the entire sequence of events underlying the claim, as Defendants implore the Court to do, *see* Motion at 13, the relevant events include the creation and publication of the website that included Plaintiff's data. These events did not just include Ziegler's decisions but also include California contacts that Ziegler made in developing and publicizing the content of his website and trips to California to promote the report made with Plaintiff's data.

### D. Failure to State a Claim

#### 1. CCFA

Plaintiff's first cause of action alleges that Defendants violated the CFAA. Defendants seek dismissal of this claim under Rule 12(b)(6) on the grounds that (1) Plaintiff has not alleged the elements of a CFAA violation; (2) Plaintiff has not alleged that Defendants' access was "without authorization"; and (3) Plaintiff does not allege a "recoverable loss" within the meaning of the statute. *See* Motion at 14–17.

Plaintiff's Complaint alleges that Defendants violated the CFAA in various ways, including Section 1030(a)(2)(A) (unauthorized access of records of "financial institution," "card issuer," or "consumer reporting agency"), *see* Complaint ¶ 34; Section 1030(a)(2)(C) (unauthorized access of "information from any protected computer"), *see* Complaint ¶ 35; and Section 1030(a)(4) (unauthorized access of protected computer "knowingly and with intent to defraud" where access furthers the fraud and accessor obtains one or more things of value), *see* Complaint ¶ 36. Plaintiff seeks redress for these violations pursuant to Section 1030(g), which provides that:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

12

APP 0079

18 U.S.C.A. § 1030(g). Plaintiff alleges that Defendants' conduct involves the factor described in subsection (c)(4)(A)(i)(I), which proscribes conduct that causes "loss to 1 or more persons during any 1-year period ... aggregating at least $5,000 in value." Complaint ¶ 37.

In the Ninth Circuit, the essential elements of a civil claim for violations of Sections 1030(a)(2) and 1030(a)(4) are as follows:

> [T]o bring an action successfully under 18 U.S.C. § 1030(g) based on a violation of 18 U.S.C. § 1030(a)(2), [plaintiff] must show that [defendant]: (1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that he (3) thereby obtained information (4) from any protected computer (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value. To bring an action successfully under § 1030(g) based on a violation of § 1030(a)(4), [plaintiff] must show that [defendant]: (1) accessed a "protected computer," (2) without authorization or exceeding such authorization that was granted, (3) "knowingly" and with "intent to defraud," and thereby (4) "further[ed] the intended fraud and obtain[ed] anything of value," causing (5) a loss to one or more persons during any one-year period aggregating at least $5,000 in value.

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009) (citing 18 U.S.C. § 1030(a)).

Applying these statutes to the claims here, the Court finds that Plaintiff has sufficiently alleged each of these elements. *See* Complaint ¶¶ 2, 16–18, 20–22, 24–29 (access); *id.* ¶¶ 4, 17–18, 21–23, 28–30, 34–36 (without authorization); *id.* ¶¶ 22, 24, 27–29 (information obtained); *id.* ¶¶ 2, 16, 18–22, 24–26, 28–29, 35–36 (protected computer); *id.* ¶ 37 (economic "loss" of type recoverable under the statute). Plaintiff's allegations do not merely recite the elements of a CFAA claim; they include sufficient allegations of underlying facts to give fair notice to Defendants.

Defendants' other attacks to the sufficiency of the Complaint fare no better.

First, Defendants insist that Plaintiff cannot state a viable CFAA claim because he has not alleged that "Defendants accessed any computer, storage, or service which Plaintiff either owns or has exclusive control over." Motion at 15. But "ownership" and "control" of the physical device is not a required element. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004) (finding that "[t]he district court erred by reading an ownership or control requirement into the Act. The civil remedy extends to '*[a]ny person* who suffers damage or loss by reason of a violation of this section.' 18 U.S.C. § 1030(g)").

APP 0080

Second, Defendants argue that it is "questionable whether Plaintiff has adequately alleged that Defendants accessed a 'protected computer'" as defined in the CFAA. *See* Motion at 14. A "protected computer" is "any computer used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B). "[T]he term 'computer' means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device...." 18 U.S.C. § 1030(e)(1). This statute's prohibition "now applies—at a minimum—to all information from all computers that connect to the internet." *Van Buren v. United States*, 593 U.S. 374, 379 (2021) (citing §§ 1030(a)(2)(C), (e)(2)(B)). Here, Plaintiffs allege that Defendants accessed a "hard drive" containing Plaintiff's data and created "an online searchable database of 128,000 emails found on the Biden laptop" and public website to house "almost 10,000 photos," and provided the public with metadata and access to password-protected files stored on Plaintiff's iPhone backup. Complaint ¶¶ 22, 24, 25, 29. These allegations are sufficient at this point to allege that Defendants accessed a "computer" that is "used in or affecting interstate or foreign commerce or communication." 18 U.S.C. §§ 1030(e)(1), (e)(2). To go from the hard drive to the public website and database requires internet connectivity, and thus, Plaintiff's allegations are adequate to satisfying this prong.

Third, Defendants claim that "Plaintiff does not allege unlawful access to a computer within the meaning of the CFAA." Motion at 14. But the Complaint contains many factual allegations establishing the unauthorized and unlawful nature of Defendants' data access. Indeed, Plaintiff asserts that Defendants have "accessed" and "analyzed" Plaintiff's data from at least September 2021 until at least October 2022. Complaint ¶ 21. Plaintiff sent a cease-and-desist demand that Defendants did not respond to. *Id.* ¶ 30. Ziegler even admits that with respect to some data, Defendants gained access by circumventing technical barriers. Ziegler Decl. ¶ 21. This is sufficient to allege that Defendants access was authorized and without permission.

Lastly, Defendants argue that Plaintiff has failed to allege a "recoverable loss." Motion at 16–17. The CFAA permits the recovery of losses incurred as a result of investigating and

14

APP 0081

responding to Defendants' violations of the CFAA. 18 U.S.C. § 1030(e)(11) ("the term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information ... and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service"). Plaintiff has specifically alleged this, asserting that he suffered "direct costs, incurred during any one-year period, of investigating and responding to Defendants violations of the CFAA in excess of $5,000 in value." Complaint ¶ 37. That is enough for pleading purposes.

## 2. CCDAFA

Plaintiff's second cause of action is brought under California's Comprehensive Computer Data Access and Fraud Act, and is codified in California Penal Code § 502. The CCDAFA is broader than CFAA in many respects, and the Court finds that Plaintiff has plead a viable CCDAFA claim. The Complaint alleges violations of California Penal Code Sections 502(c)(1), (c)(2), (c)(3), and (c)(7) of the CCDAFA, which provide that:

(c) Except as provided in subdivision (h)[10], any person who commits any of the following acts is guilty of a public offense:

(1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

(2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

(3) Knowingly and without permission uses or causes to be used computer services....

(7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Cal. Pen. Code § 502(c). CCDAFA also contains a private right of action under California Penal Code § 502(e)(1). The CCDAFA is less stringent in its requirements.

In contrast to the CFAA, the California statute does not require *unauthorized* access. It merely requires *knowing* access. *Compare* 18 U.S.C. § 1030(a)(2) *with* Cal. Penal Code § 502(c)(2). What makes that access unlawful is that the person 'without permission

_____

[10] Subdivision (h) exempts "acts which are committed by a person within the scope of his or her lawful employment." Cal. Pen. Code § 502(h)(1).

15

APP 0082

takes, copies, or makes use of' data on the computer. Cal. Penal Code § 502(c)(2). A plain reading of the statute demonstrates that its focus is on unauthorized taking or use of information. In contrast, the CFAA criminalizes unauthorized *access*, not subsequent unauthorized *use*.

*United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (emphasis in original). The term "access" under the CCDAFA has been defined broadly and "includes logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly." *Id.*; *see also Facebook Inc. v. Power Ventures*, 844 F.3d 1058, 1069 (9th Cir. 2016) (once defendant was told to cease and desist it "knew that it no longer had permission to access [plaintiff's] computers at all").

Defendants argue that Plaintiff cannot state a CCDAFA claim because the statute "requires a defendant to access a computer or device belonging to, or controlled by, Plaintiff." Motion at 17. Not so. The statute specifically refers to "***data*** from a computer," and here Plaintiff plainly asserts a violation of its data by Defendants. Defendants argue that such access was with permission, but Plaintiffs sufficiently contend and allege that they used his passwords to access password-protected files and ignored prelitigation demands to cease and desists.

Defendants also argue that Plaintiff has not suffered damages. That argument fails as well. The CCDAFA provides that the owner of data who suffers "damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief." *See* Cal. Pen. Code § 502(e)(1). Compensatory damages include but are not limited to "any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damages, or deleted by the access." *Id.* Plaintiff asserts, as the owner of the data, he has suffered damages caused by the Defendant in an amount to be proven in trial. Complaint ¶¶ 39, 44. Plaintiff alleges entitlement to damages, injunctive and other equitable relief. *Id.* ¶¶ 44, 45, 46. Examining Plaintiff's Complaint in its entirety, the Court

16

APP 0083

finds that damages have been asserted.[11]

### E. Anti-SLAPP

Defendants' final argument is that the lawsuit should be dismissed pursuant to California's anti-SLAPP statute. But the anti-SLAPP statute does not apply to federal claims. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010). Thus, Plaintiff's CFAA claim cannot be dismissed on anti-SLAPP grounds.

As for Plaintiff's state law claims, the anti-SLAPP argument lacks merit because Defendants cannot make the prima facie showing that the anti-SLAPP statute requires. *See, e.g., Governor Gray Davis Comm. v. Am. Taxpayers Alliance*, 102 Cal. App. 4th 449, 456 (2002) (citations omitted). Defendants must first make an initial prima facie showing that Plaintiff's claims arise from a protected activity. In determining this, "the critical consideration is whether the cause of action is based on defendant's protected free speech or petitioning activity." *Navellier v. Sletten,* 29 Cal. 4th 82, 89 (2002). At this first step, courts should "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." *Park v. Bd. of Trustees of California State Univ.*, 2 Cal. 5th 1057, 1063 (2017). The burden of the defendants "is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." *Bonni v. St. Joseph Health Sys.,* 11 Cal. 5th 995, 1009 (2021) (internal citation omitted). Importantly, "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." *Id.* at 1012*; see also Park,* 2 Cal. 5th at 1060 ("claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted").

In this case, Defendants cannot show that Plaintiff's claims "arise from" Defendants' free speech. Defendants argue that their website is a "public forum," that Plaintiff is a "person in the public eye," that this data has been "a topic of widespread, public interest", and that the report of the

---

[11] Defendants also attack Plaintiff's third cause of action for violation of California's Unfair Competition Law, arguing that it fails because Plaintiff's CFAA and CCDAFA claims are deficient. Motion at 18–19. The Court rejects such arguments, as the CFAA and CCDAFA claims survive.

APP 0084

1   data that they created and host online has been viewed millions of times. Motion at 21–22.

2   But these assertions do not support the application of the anti-SLAPP statute in this case. Plaintiff

3   did not sue Defendants for creating a report or website. Defendants are being sued for "accessing,

4   tampering with, manipulating, altering, copying and damaging" Plaintiff's computer data.

5   Complaint ¶ 27. Stated differently, the gravamen of the lawsuit is not predicated on protected

6   speech and certainly does not arise from or rely on Defendants' free speech. The anti-SLAPP statute

7   simply does not apply. *See Malin v. Singer,* 217 Cal. App. 4th 1283, 1303 (2013) (claims based on

8   allegations of illegal wiretapping and computer hacking "do not fit one of the categories of protected

9   activities defined by the Legislature in section 425.16, subdivision (e)" and, therefore, are not subject

10  to anti-SLAPP dismissal). Were it otherwise, every data hack of a public figure would be fair game.

11  That is not what California's anti-SLAPP allows.

12  **V.    CONCLUSION**

13       For the foregoing reasons, Defendants' Motion is ***denied.***

14  Dated:    June 20, 2024

15  _____

16         Hernán D. Vera
      United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

APP 0085

PAUL B. SALVATY (SBN 171507)
PSalvaty@winston.com
GREGORY A. ELLIS (SBN 204478)
GAEllis@winston.com
WINSTON & STRAWN LLP
333 S. Grand Ave.
Los Angeles, CA 90071-1543
Telephone:    (213) 615-1700
Facsimile:    (213) 615-1750

ABBE DAVID LOWELL (pro hac vice)
AbbeLowellPublicOutreach@winston.com
WINSTON & STRAWN LLP
1901 L St., N.W.
Washington, DC 20036-3508
Telephone: (202) 282-5000
Facsimile:  (202) 282-5100

BRYAN M. SULLIVAN (SBN 209743)
bsullivan@earlysullivan.com
ZACHARY C. HANSEN (SBN 325128)
EARLY SULLIVAN WRIGHT GIZER
 & McRAE LLP
6420 Wilshire Boulevard, 17th Fl.
Los Angeles, CA 90048
Telephone: (323) 301-4660
Facsimile:  (323) 301-4676

Attorneys for Plaintiff
ROBERT HUNTER BIDEN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R0BERT HUNTER BIDEN,<br><br>                   Plaintiff,<br><br>       vs.<br><br>GARRETT ZIEGLER, an individual,<br>ICU, LLC, a Wyoming limited liability<br>company d/b/a Marco Polo, and DOES 1<br>through 10, inclusive,<br><br>                   Defendants. | **Case No. 2:23-cv-07593-HVD-KS**<br>*Honorable Hernan D. Vera*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND<br>MOTION FOR ATTORNEY'S FEES INCURRED IN<br>OPPOSITION TO ANTI-SLAPP MOTION;<br>MEMORANDUM OF POINTS AND AUTHORITIES**<br>*[Filed concurrently with Declaration of Gregory A. Ellis<br>and [Proposed] Order]*<br><br>Hearing Date:    August 22, 2024<br>Time:                10:00 a.m.<br>Courtroom:        5B |

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD FOR ALL PARTIES:**

**PLEASE TAKE NOTICE** that on August 22, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5B of this Court, located at 350 W. First Street, 5th Floor, Los Angeles, California, 90012, plaintiff Robert Hunter Biden ("Plaintiff") will and hereby does move this Court for an order awarding him his attorney's fees in the amount of $17,929.40 pursuant to California Code of Civil Procedure Section 425.16, subdivision (c) and the Court's Order of June 20, 2024 denying Defendants' motion to dismiss and to strike ("Defendants' Motion"). This motion is brought on the ground that the portion of Defendants' Motion seeking to strike Plaintiff's claims pursuant to Code of Civil Procedure Section 425.16 was frivolous, and that $17,929.40 represents a reasonable fee incurred by Plaintiff to defeat the arguments raised in conjunction with the motion to strike.

This motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the declaration of Gregory A. Ellis filed concurrently herewith; the record in this action; and any additional arguments that may be asserted in subsequent briefing of this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 28, 2024.

Dated: July 5, 2024            WINSTON & STRAWN LLP

By:   /s/ *Gregory A. Ellis*
         Abbe David Lowell
         Paul B. Salvaty
         Gregory A. Ellis
         Attorneys for Plaintiff
         ROBERT HUNTER BIDEN

2

PLAINTIFF'S NOT. OF MOTION AND MOTION FOR ATTORNEY'S FEES

CASE NO. 2:23-cv-07593-HVD-KS

## I.   **INTRODUCTION**

Plaintiff Robert Hunter Biden ("Plaintiff")'s complaint makes clear from the first paragraph that Plaintiff sued Defendants for illegally accessing and manipulating data, *not* for any speech-related activities either pertaining to that data or otherwise.  (Compl. ¶ 1 ("While Defendant Ziegler is entitled to his extremist and counterfactual opinions, he has no right to engage in illegal activities to advance his right-wing agenda.").)  Nevertheless, Defendants responded to the complaint by filing a frivolous anti-SLAPP motion to strike along with their Rule 12 motion to dismiss.

In their moving papers, Defendants ignored the plain language of the complaint, insisting in the first sentence of their brief that Plaintiff filed this action "in retaliation for publishing information, media and emails originating from the files of the infamous 'Biden Laptop'."  *See* Dkt. No. 23 at 1.  Defendants also argued that Plaintiffs' entire lawsuit, including Plaintiff's federal claim for violation of the Computer Fraud and Abuse Act ("CFAA") "is, quintessentially, a SLAPP action."  *Id.* at 19.  Even after Plaintiff identified controlling case law showing the anti-SLAPP statute does not apply to federal claims, Defendants continued to pursue their anti-SLAPP motion as to all causes of action, including the CFAA claim, forcing Plaintiff to waste time and resources addressing anti-SLAPP arguments that were completely baseless.  Dkt No. 32 at 1, 9-10.

Because Defendants' anti-SLAPP arguments were contrary both to the allegations of Plaintiff's complaint and settled Ninth Circuit law, the Court should find their anti-SLAPP motion to be "frivolous and/or "solely intended to cause unnecessary delay."  *See* Cal. Civ. Proc. Code § 425.16(c)(1).  By filing and continuing to pursue a groundless anti-SLAPP motion to the bitter end, Defendants forced Plaintiff to incur attorneys' fees in the amount of $17,929.40.  Accordingly, Plaintiff respectfully requests an award of attorneys' fees against Defendants in that amount.

## II.   **STATEMENT OF FACTS**

On September 13, 2023, Plaintiff filed his complaint, seeking damages against Defendants for violations of the federal CFAA, the California Computer Data Access and Fraud Act ("CCDAFA"); and California's Unfair Competition Law ("UCL").  (Dkt. No. 1.)  As noted above, Plaintiff made clear at the outset that he did not challenge Defendants' free speech activities, but rather based his complaint on

3

his allegations that "Defendants have accessed, tampered with, manipulated, damaged and copied" his data without consent. (*Id.* ¶ 27; *see also id.* ¶¶ 1, 15-30.)

Notwithstanding the express, unqualified and unambiguous allegations in the complaint making clear this case is not about free speech, Defendants filed a motion to strike Plaintiff's complaint under California' anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16. (Dkt. No. 23 at 19-23.) Defendants' anti-SLAPP arguments did not meaningfully address Plaintiff's allegations of unlawful data access. And Defendants did not acknowledge the allegations making clear that Plaintiff's claims arose from Defendants' unlawful data access, not from any speech about Plaintiff or his family. For the most part, Defendants spent their anti-SLAPP arguments mischaracterizing Plaintiff's lawsuit as an illegitimate attack on the free press and arguing at length that their website is a "public forum" that addresses "issues of public interest" because Plaintiff's father is the President of the United States. (*Id.*)

Plaintiff opposed Defendants' anti-SLAPP arguments on multiple grounds, including responding to Defendants' many baseless claims. (Dkt. No. 30.) Plaintiff pointed out that, under settled Ninth Circuit precedent, California's anti-SLAPP statute does not apply to federal claims as a matter of law. (*Id.* at 23, citing *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).) Therefore, to the extent Defendants' motion sought dismissal of the CFAA claim on anti-SLAPP grounds, it was dead on arrival. Plaintiff also showed that his state law claims under the CCDAFA and UCL could not possibly "arise from" protected First Amendment activity because Plaintiff's claims were explicitly <u>not</u> "based on" Defendants' speech. As Plaintiff explained,

> Plaintiff did not sue Defendants for creating a website, for publishing their "Report," or for any of the many false, defamatory, and malicious statements they have made about Plaintiff over the past two-plus years. Plaintiff carefully pleaded his claims to ensure that they are based solely on Defendants' "accessing, tampering with, manipulating, altering, copying and damaging" of Plaintiff's computer data," and not on Defendants' free speech.

(*Id.* 24:7-12.)

On reply, Defendants pretended that Plaintiff had not addressed their anti-SLAPP arguments at all. They simply insisted again that "Plaintiff's lawsuit is a quintessential SLAPP action" and that Plaintiff's entire lawsuit is "subject to dismissal" under the anti-SLAPP statute because "Defendants'

investigatory reporting was in furtherance of matters of significant public interest." *See* Dkt. No. 32 at

1. Defendants never acknowledged that Plaintiff did not sue them for speech-related activity; never

admitted that their anti-SLAPP arguments were inapplicable to the CFAA claim; and never conceded

that their request for dismissal of the entire lawsuit was inconsistent with Ninth Circuit law. Although

they attempted to distinguish some of Plaintiff's anti-SLAPP authorities, they made no mention of the

*Hilton* case, which was directly on point and precluded a central aspect of their anti-SLAPP argument.

Hearing on the motion took place on May 16, 2024. (Declaration of Gregory A. Ellis, ¶ 10.) At

the hearing, Defendants' counsel did not address the anti-SLAPP issues at all. (*Id.*)

On June 20, 2024, the Court denied Defendants' motion to dismiss in its entirety, including anti-

SLAPP grounds. (Dkt. No. 50.) Citing *Hilton*, the Court noted that "the anti-SLAPP statute does not

apply to federal claims," and thus Defendants had no basis for seeking to dismiss Plaintiff's CFAA

claim under the anti-SLAPP statute. (*Id.* at 17:4-6.) The Court further held that Defendants failed to

show that Plaintiff's claims "arise from" protected conduct because the case arises from Defendants'

alleged data manipulation, not from the creation of a website. Because "the gravamen of the lawsuit is

not predicated on protected speech and certainly does not arise from or rely on Defendants' free speech,

the Court concluded, "*The anti-SLAPP statute simply does not apply*." (*Id.* at 18:5-7, emphasis added.)

## III.  ARGUMENT

### A.  Defendants' Anti-SLAPP Motion Was Frivolous.

Under California's anti-SLAPP statute, a plaintiff may recover its costs and reasonable

attorney's fees "[i]f the court finds that a special motion to strike is frivolous or solely intended to cause

unnecessary delay." Cal. Civ. Proc. Code § 425.16(c)(1). The fee-shifting provision of Section

425.16(c) applies in federal court. *See, e.g., Salveson v. Kessler*, 2023 WL 9687873, at *1-2 (C.D. Cal.

Oct. 25, 2023) (granting plaintiff's motion for attorney's fees); *Kearney v. Foley and Lardner*, 553 F.

Supp. 2d 1178, 1182 (S.D. Cal. 2008) ("The fee provision of the anti-SLAPP statute is applied in federal

court."). "The award of attorney's fees to a plaintiff who prevails against a frivolous anti-SLAPP

motion is *mandatory*." *Salveson*, 2023 WL 9687873, at *2 (emphasis in original, quoting Cal. Civ. Prac.

Civil Rights Litigation § 14.40.) A determination of frivolousness requires a showing that the anti-

SLAPP motion was "totally and completely without merit," *i.e.* "that any reasonable attorney would agree such motion is totally devoid of merit." *Moore v. Shaw*, 116 Cal. App. 4th 182, 199 (2004) (emphasis removed).

Here, Defendants' anti-SLAPP motion was frivolous. *First*, a simple reading of the complaint makes clear that it does not implicate the anti-SLAPP statute. The very first paragraph notes that Plaintiff is not suing Defendants for their free speech activities. The body of the complaint likewise focuses solely on Defendants' illegal access of Plaintiff's data, and the complaint does not base any aspect of any cause of action on Defendants' protected expressive conduct.

*Second*, Defendants sought to strike Plaintiff's federal claim under the CFAA, even though on-point law plainly states that an anti-SLAPP motion cannot be raised against a federal claim. *See Hilton*, 599 F.3d at 901.[1] Even rudimentary research would have revealed this point to Defendants, but they plowed forward with their anti-SLAPP motion anyway, even after Plaintiff brought their omissions to their attention. At least one court has held that bringing an anti-SLAPP against a federal claim is itself sufficient to render the motion frivolous and sanctionable. *See Kailikole v. Palomar Community College Dist.*, 2020 WL 6203097 (S.D. Cal. Oct. 22, 2020) (granting fee award pursuant to 28 U.S.C. § 1927 for failed anti-SLAPP motion). There, the court concluded that, "[g]iven the clarity of the law on this issue, the Court finds that the anti-SLAPP motion against Plaintiff's federal claims was 'entirely without merit,' and that its result was 'obvious.'" *Id.* at *2. Moreover, the court noted that "a reasonable attorney performing legal research would have readily discovered case law unequivocally contrary to Defendant's anti-SLAPP arguments on the federal claims," and that as a result, "Defendant 'recklessly raised a frivolous argument.'" *Id*. at *3 (quoting *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996).) The same is true here, particularly because neither the federal claim nor any of the state claims had anything to do with Defendants' free speech.

*Third*, as the Court noted, even as to the state law claims, Defendants failed even to meet their initial burden on the first anti-SLAPP prong to show that the claims arose out of protected conduct.

---

[1] Notably, it is unnecessary for published authority to establish that a motion is devoid of merit for an anti-SLAPP motion to be frivolous. *See City of Rocklin v. Legacy Family Adventures – Rocklin LLC*, 86 Cal. App. 5th 713, 726 n.5 (2022). *Hilton*, however, is published authority rendering Defendants' attempt to strike the CFAA claim devoid of merit.

(Dkt. 50 at 17-18.)  The *Moore* court focused heavily on the defendant's inability to meet her prong one burden when holding that her anti-SLAPP motion was frivolous and warranted an award of attorney's fees.  *See* 116 Cal. App. 4th at 199-200; *see id*. at 200 ("Because [defendant]'s underlying conduct clearly did not constitute an act in furtherance of the right to petition or free speech in connection with a public issue, as those terms are defined in section 425.16, any reasonable attorney would agree that an anti-SLAPP motion did not lie under these circumstances and that the instant motion was totally devoid of merit.").  *See also Olive Properties, L.P. v. Coolwaters Enterprises, Inc.*, 241 Cal. App. 4th 1169, 1175-1177 (2015) (affirming award of attorney's fees where defendant failed to meet burden on first prong of anti-SLAPP analysis).

*Fourth*, the frivolity of Defendants' anti-SLAPP motion is evidenced by the ease in which the Court disposed of it.  The Court needed barely over a page in its June 20 Order to reject the anti-SLAPP arguments.  (Dkt. 50 at 17:2-18:11.)  Nearly half of the Court's discussion was its recitation of the legal standards governing the first prong of the anti-SLAPP analysis.  (*Id.* at 17:7-22.)  Other courts have noted that their ability to deny an anti-SLAPP motion with a similarly "short analysis" supported their conclusions that the motions were frivolous.  *See Salveson*, 2023 WL 9687873, at *3 (noting that court's ability to dispose of motion in a "twenty-two line analysis" supported finding of frivolity; citing *Peterson v. Sutter Med. Found.*, 2023 WL 5181634, at *4 (N.D. Cal. Aug. 10, 2023) (disposing of motion in three pages of order demonstrated that the underlying motion was "legally flimsy.").)

*Finally*, the frivolity of Defendants' conduct is evidenced by Defendants' persistence in pursuing their anti-SLAPP arguments, even after they were shown to be baseless.  In their reply brief, Defendants completely ignored Plaintiff's arguments against application of the anti-SLAPP statute, choosing instead simply to repeat the exact same arguments presented in their opening papers.  Defendants also ignored the controlling caselaw cited by Plaintiff demonstrating that their position, at least with respect to the CFAA claim, was groundless.  Even at the argument, Defendants refused to withdraw or abandon their anti-SLAPP arguments and opted instead simply to remain silent.  Their stubbornness created unnecessary work for Plaintiff and for the Court as well.

**B.      Plaintiff's Fees Incurred to Oppose the Motion Are Reasonable.**

Fees under California's anti-SLAPP statute are calculated using the lodestar approach, in which the court begins by "multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate." *Minichino v. First California Realty*, 2012 WL 6554401, at *3 (N.D. Cal. Dec. 14, 2012) (quoting *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).)  The lodestar may be adjusted based on case-specific considerations, such as the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.  *Id.* (citing *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1096 (2000); *see also Pasadena Tournament of Roses Ass'n v. City of Pasadena*, 2022 WL 2189523, at *6 (C.D. Cal. March 17, 2022) (same).  The fees awarded in connection with an anti-SLAPP motion include the amounts incurred in connection with the fee motion itself.  *See, e.g., Mireskandari v. Daily Mail and General Trust PLC*, at *4 ("The fees awarded should encompass all proceedings directly related to defendants' special motion to strike, including those hours expended in obtaining fees") (citing multiple authorities in support).

Here, Plaintiff seeks $17,929.40, representing 13.28 hours at billing rates of $1,480.00 and $1,135.00 per hour, as discussed in more detail below.  (Ellis Decl. ¶ 9; *see id.* ¶¶ 10-14.)

**1.      The Requested Rates Are Reasonable.**

To determine the reasonableness of rates charged in the lodestar analysis, courts look to "prevailing market rates in the relevant community," which generally "is the forum in which the district court sits." *Yuga Labs, Inc. v, Ripps*, 2024 WL 489248, at *1 (C.D. Cal. Jan. 11, 2024).  "A billing rate that is the usual rate an attorney charge for his or her services is evidence that the rate approximates the market rate." *Id.* at *2.  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *Alghanim v. Alghanim*, 2024 WL 3055692, at *1 (C.D. Cal. May 8, 2024).

Here, Plaintiff's legal team at Winston & Strawn responsible for opposing Defendants' anti-SLAPP arguments consisted of several highly skilled attorneys: partners Abbe Lowell and Paul Salvaty;

PLAINTIFF'S NOT. OF MOTION AND MOTION FOR ATTORNEY'S FEES

CASE NO. 2:23-cv-07593-HVD-KS

1    of counsel Gregory Ellis; and associate Lara Markarian. (Ellis Decl. ¶ 4.)  Mr. Lowell has been

2    recognized for decades as one of the nation's foremost white collar and criminal defense attorneys, and

3    among other accolades, was recently named as one of the "Top 200 Lawyers in America" by *Forbes*.

4    (*Id.* & Ex. A.)  Mr. Salvaty has over 30 years of experience and success litigating complex commercial

5    cases in the Los Angeles area in a broad range of contexts and was named the 2021 "Litigation Lawyer

6    of the Year" by the Century City Bar Association.  (*Id.*  ¶¶ 5-6 & Ex. A.)  Mr. Ellis has nearly 25 years

7    of experience litigating complex commercial actions, from the pleading stage through trial and appeal.

8    (*Id.* ¶ 3 & Ex. A.)  Ms. Markarian is a skilled litigator with experience in both the complex commercial

9    litigation and white collar contexts.  (*Id.* ¶ 7 & Ex. A.)  Here, Plaintiff only seeks to recover fees

10   incurred by Mr. Salvaty and Mr. Ellis, as they had primary responsibility for addressing the anti-SLAPP

11   arguments in Defendants' motion and for preparing the present fee motion.  (*Id.* ¶ 9.)  Both Mr. Salvaty

12   and Mr. Ellis have extensive experience litigating and winning anti-SLAPP motions.  (*Id.* ¶¶ 3, 6.)  In

13   the present case, Messrs. Salvaty and Ellis' hourly rates are $1,480.00 and $1,135.00, respectively.  (*Id.*

14   ¶ 13.)

15          *Yuga Labs* is particularly useful in establishing that counsel's rates in this case are reasonable.

16   There, retired District Judge Margaret Morrow, serving as special master, concluded that a large law

17   firm's hourly rates for 2022 and 2023, ranging up to $1,410 for the lead partner on the matter, were

18   reasonable in the Central District.  2024 WL 489248, at *3-4.  Notably, Judge Morrow approved a 2022

19   billing rate identical to Mr. Ellis' current rate for an attorney with the same title but less experience.  *Id.*

20   at *3 & n.6 (rate of $1,135 for counsel with "17+" years of experience reasonable).  Judge Morrow also

21   cited multiple recent attorney's fee cases in the Central District, which ruled that rates of up to $1,600

22   per hour could be reasonable.  *Id.* at *3 (citing multiple cases).  And Judge Morrow cited news reports

23   and other literature on the billing rates of large law firms, which demonstrated that in many firms,

24   associates with three to five years' experience bill at rates at or near $1,000 per hour, further

25   demonstrating the reasonableness of Messrs. Salvaty and Ellis' rates.  *Id.* at *4 & n.10.  Additional cases

26   in the Central District, not relied on by *Yuga Labs*, further evidence that the rates of Plaintiff's counsel

27   here are reasonable.  *See, e.g., Zelaya v. City of Los Angeles*, 2024 WL 3183882, at *3 (C.D. Cal. June

28

25, 2024) (finding $1,300 hourly rate for plaintiff's civil rights litigator appropriate given his experience, skill and reputation); *Alghanim*, 2024 WL 3055692, at *2 (finding requested large law firm rates of up to $1,270 per hour to be reasonable); *N.T.A.A., Inc. v. Nordstrom, Inc.*, 2024 WL 1723524, at *4 (C.D. Cal. April 19, 2024) (finding requested large law firm rates of up to $1,364.70 per hour to be reasonable).

### 2. The Requested Number of Hours is Reasonable.

Here, Plaintiff seeks reimbursement for only 13.28 hours, consisting of: (a) 8.28 hours in opposing the anti-SLAPP arguments in Defendants' motion to dismiss and to prepare for hearing with respect to the anti-SLAPP arguments; and (b) 5 hours in preparing the present motion. Plaintiff arrived at these figures as follows.

First, Messrs. Salvaty and Ellis divided their work in opposing Defendants' motion to dismiss, with Mr. Salvaty primarily addressing the Rule 12(b)(1), 12(b)(6) and anti-SLAPP arguments (and the background sections), and Mr. Ellis focusing primarily on Defendants' personal jurisdiction and venue arguments. Accordingly, Plaintiff reviewed the relevant billing records in this matter and included only Mr. Salvaty's time working on the opposition and preparing for hearing – or 52.4 hours – as a baseline for its present attorney fee request. (Ellis Decl. ¶ 10.)[2] To be conservative, Plaintiff excluded from consideration all time spent on the motion by Mr. Lowell, Mr. Ellis and Ms. Markarian.

Next, to isolate the time Mr. Salvaty devoted to the anti-SLAPP issues, Plaintiff applied a discount ratio that the *Kailikole* court derived in awarding fees incurred to oppose a frivolous anti-SLAPP motion. There, the two attorneys who opposed the motion both worked on the anti-SLAPP issues. The court applied a discount based on the number of pages the plaintiff used to address the frivolous anti-SLAPP arguments. *See* 2020 WL 6203097, at *4. There, the plaintiffs devoted three and a half pages to the frivolous arguments out of twenty-five total pages, so the court awarded 14% (or 3.5/25) of the fees incurred on the motion. *Id.* Here, Mr. Salvaty spent three pages in the opposition

---

[2] Courts evaluating anti-SLAPP fee awards have noted that "[i]t is not necessary to provide detailed billing timesheets to support an award of attorney fees under the lodestar method." *Youngevity International v. Smith*, 2020 WL 7048672, at *3 (S.D. Cal. Oct. 7, 2020) (quoting *Concepcion v. Amscan Holdings, Inc.*, 223 Cal. App. 4th 1309, 1324 (2014)); *see also Lunada Biomedical v. Nunez*, 230 Cal. App. 4th 459, 487-88 (2014).

addressing Plaintiff's anti-SLAPP arguments (*see* Dkt. 30 at 23:1-25:22), out of nineteen total pages in

the opposition he prepared. (*See id.* 1:1-9:9, 15:13-25:22). Applying the *Kailikole* formula to Mr.

Salvaty's time results in a percentage of 15.8 – or 8.28 hours. (Ellis Decl. ¶ 11.)

Finally, Mr. Ellis incurred more than five hours in drafting the present motion for fees. (Ellis

Decl. ¶ 12.) Mr. Salvaty's fees thus are $12,254.40 (8.28 hours x $1,480.00/hour), and Mr. Ellis' fees

are $5,675 (5 hours x $1,135.00/hour), for a total of $17,929.40. (*Id.* ¶ 14.)

The hours here are far fewer than other cases in which courts in the Central District have

awarded attorney's fees in the anti-SLAPP context. *See, e.g., Salveson*, 2023 WL 9687873, at *5

(awarding fees for 106.15 billable hours); *Woulfe v. Universal City Studios LLC*, 2024 WL 1110914, at

*9 n.5 (C.D. Cal. Feb. 8, 2024) (collecting cases, noting awards compensating counsel for ranges

between 90.1 hours and 384.28 hours to be reasonable).

Finally, the lodestar adjustment factors support the requested fee here. Plaintiff obtained a

complete victory over Defendants on their anti-SLAPP motion, as well as all other arguments on their

motion to dismiss, and reflected a high level of skill in doing so. That said, Plaintiff does not seek to

inflate its award, but simply to obtain a conservative calculation of the amount he is due under the law –

a reasonable amount that reflects the expenses necessary to defeat Defendants' frivolous anti-SLAPP

arguments.

//

//

//

//

//

//

//

//

//

//

PLAINTIFF'S NOT. OF MOTION AND MOTION FOR ATTORNEY'S FEES

## IV.  <u>CONCLUSION</u>

Defendants' anti-SLAPP motion was frivolous, mandating an award of attorney's fees. Plaintiff's counsel disposed of the anti-SLAPP motion efficiently and effectively.  Accordingly, the Court should grant this motion, and enter an order awarding Plaintiff $17,929.40 in attorney's fees.

Dated:  July 5, 2024                                WINSTON & STRAWN LLP


                                              By: _/s/ Gregory A. Ellis_____
                                                  Abbe David Lowell
                                                  Paul B. Salvaty
                                                  Gregory A. Ellis
                                                  Attorneys for Plaintiff
                                                  ROBERT HUNTER BIDEN


## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for plaintiff Robert Hunter Biden, certifies that this brief contains 3,378 words, which complies with the word limit of L.R. 11-6.1.

Dated:  July 5, 2024                                WINSTON & STRAWN LLP


                                              By:_____/s/ Gregory A. Ellis_____
                                                  Gregory A. Ellis

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert Hunter Biden, | Case No. 2:23-cv-07593-HDV (KSx) |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 23]** |
| Garret Ziegler et al., | |
| Defendants. | |

APP 0098

## I.  INTRODUCTION

This action arises out of alleged violations of federal and state computer fraud statutes. Plaintiff Robert Hunter Biden alleges that Defendants Garrett Ziegler and ICU, LLC illegally accessed, manipulated, and damaged his data without his authorization or consent.

Before the Court is a motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) and California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.  For the reasons discussed below, the Court concludes that Plaintiff has sufficiently alleged the necessary elements of his claims for under federal and state computer fraud statutes.  Defendants' objections raise factual questions that are best addressed in post-discovery briefing.  Defendants' Motion is therefore ***denied***.

## II.  BACKGROUND

The factual allegations center around the appropriation of Plaintiff's data by Defendants.  As required by the Federal Rules of Civil Procedure, the following facts are taken from Plaintiff's Complaint [Dkt. No. 1] and are assumed to be true for the purposes of this Motion.

In July 2021, Defendant Ziegler organized Defendant ICU to do business under the name "Marco Polo."  Complaint ¶ 20.  Defendants then spent at least 13 months — from September 2021 through October 2022 — "analyzing the voluminous material" from Plaintiff's data.  *Id.* ¶ 21. Plaintiff is unsure as to how Defendants obtained his data.  *Id.* ¶¶ 17–18.  Defendant Ziegler used Plaintiff's data to create a lengthy report entitled "Report on the Biden Laptop", which Defendants first published in October 2022.  *Id.* ¶ 22.  Defendants also used Plaintiff's data to create what Defendant Ziegler described as "an online searchable database of 128,000 emails found on the Biden Laptop."  *Id.*  Plaintiff never authorized or consented to access of any of his data by any Defendant at any time or for any purpose.  *Id.*  Plaintiff notified Defendants that they were not authorized to access any of his data, that they should cease doing so, and that they should return any of Plaintiff's data to him immediately.  *Id.* ¶ 30.  He alleges that Defendants spent multiple months going through the photos stored in his data, organizing and modifying the photos, and subjecting the data to a photo viewing application to allow Defendants and others to view the metadata in the photos.  *Id.* ¶ 25.

2

This application allows those that access Defendants' website to see where the photos were taken, what time they were taken, and other information contained in the metadata. *Id.* Plaintiff also asserts that Ziegler stated that AI tools were needed to censor some of the data. *Id.* ¶ 26.

Plaintiff alleges that Defendants have unlawfully accessed, tampered with, manipulated, damaged, and copied thousands of emails, photos, videos, and recordings, which include financial and bank records. Complaint ¶ 27. He asserts that at least some of the data was originally stored on his iPhone and backed up to his iCloud storage. *Id.* ¶ 28. Plaintiff alleges that Defendants gained unlawful access to his iPhone data by circumventing technical or code-based barriers that were specifically designed and intended to prevent such access. *Id.* While the "precise nature" of how the data was taken and manipulated is unknown, he alleges that the data must be either from Defendants' "copy of the hard drive of the claimed 'Biden laptop' or from Plaintiff's encrypted 'iPhone backup' (or from some other source)." *Id.* ¶ 29.

Plaintiff filed this lawsuit on September 13, 2023, alleging one federal claim for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and two state claims for violation of California's Comprehensive Computer Data Access and Fraud Act ("CCDAFA"), Cal. Penal Code § 502, and California's Unfair Competition Law, Business & Professions Code §§ 17200 *et seq. See* Complaint. On December 21, 2023, Defendants filed this Motion to dismiss Plaintiff's suit pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure and pursuant to California's Anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16. [1]

### III. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[1] On February 29, 2024, Plaintiff filed an opposition ("Opp.") [Dkt. No. 30]. On March 7, 2024, Defendants filed their Reply [Dkt. No. 32]. Defendants also filed Requests for Judicial Notice ("RJN") [Dkt. No. 24], and parties filed a variety of responsive briefings, *see* [Dkt. No. 31, 33, 34]. The Court heard oral argument on May 16, 2024 and took the Motion under submission [Dkt. No. 49].

3

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Only where a plaintiff fails to "nudge[] [their] claims . . . across the line from conceivable to plausible" is the complaint properly dismissed. *Id.* at 680.

While the plausibility requirement is not a probability assessment, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV. DISCUSSION

### A. Subject Matter Jurisdiction And Standing[2]

Defendants initially move to dismiss for lack of subject matter jurisdiction and standing under Rule 12(b)(1) on the ground that Plaintiff "cannot show that any federal statutory violation has occurred" and because Plaintiff "lacks standing" to assert any of his claims. *See* Motion at 4–6.

The CFAA is a federal statute that "subjects to criminal liability anyone who 'intentionally accesses a computer without authorization or exceeds authorized access,' and thereby obtains computer information." *Van Buren v. United* States, 593 U.S. 374, 379 (2021) (citing 18 U.S.C. § 1030(a)(2)). The CFAA contains a private cause of action, which allows persons suffering "damage" or "loss" to sue for money damages and equitable relief. *Id.* (citing 18 U.S.C. § 1030(g)). The CFAA "defines the term 'exceeds authorized access' to mean 'to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter." *Id.* (citing 18 U.S.C. § 1030(e)(6)). Section 1030(a)(2)'s prohibition initially only applied to certain financial information, but "has since been expanded to cover any information from any computer 'used in or affecting interstate or foreign commerce or communication'" *Id.* (citing 18 U.S.C. § 1030(e)(2)(B)). Thus, "the prohibition now applies—at a

---

[2] As a preliminary matter, the Court denies Defendants' Request for Judicial Notice of nineteen exhibits. [Dkt. No. 24]. After reviewing the Request, opposition and reply briefing, the Court in its discretion declines to take judicial notice of these exhibits, as none bear on the issues raised in Defendants' Motion.

minimum—to all information from all computers 'used in or affecting interstate or foreign commerce or communication.'" *Id.* (citing 18 U.S.C. § 1030(e)(2)(C, (e)(2)(B)).

Plaintiff's CFFA claim is not "devoid of any merit" as to be wholly insubstantial or frivolous. *See*, *e.g.*, *Custom Packaging Supply, Inc. v. Phillips*, No. 215CV04584ODWAGR, 2015 WL 8334793, at *5 (C.D. Cal. Dec. 7, 2015) (citing *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1490 (9th Cir. 1985)). Defendants assert that "[n]either the CFAA nor the CCDAFA authorizes a party whose data has been copied to assert a civil action over any computer, device or system not in their possession." Motion at 5. But Defendants fail to point to language in these statutes that require possession of the physical device. Neither the CFAA nor the CCDAFA contain any requirement that Plaintiff must "own," "possess," or "control" the physical device or computer that Defendants accessed. The statute concerns the ownership of the data accessed. Both statutes allow Plaintiff to assert claims based on the facts asserted. *See* 18 U.S.C. § 1030(g) (extending civil remedy to "any person" who suffers damage or loss); Cal. Pen. Code § 502(e)(1) (extending civil remedy to owners of "data" who suffer damage or loss). In fact, Defendants' ownership-and-control argument has been rejected by the Ninth Circuit. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004) (reversing "district court [that] erred by reading ownership or control requirement into the [CFAA] . . . . Individuals other than the computer's owner may be proximately harmed by unauthorized access, particularly if they have rights to data stored on it.").

Lastly, Defendants attack subject matter jurisdiction on the grounds that Plaintiff's CFAA claim is untimely. But this argument fails because Plaintiff has asserted his claim for violation of the CFAA "within 2 years of the date of the act complained of or the date of the discovery of the damage," as required under 18 U.S.C. § 1030(g). Plaintiff asserts that Defendants spent many months "accessing" and "analyzing" the data, from at least "September 2021 through October 2022." Complaint ¶ 21; *see also* Declaration of Garret Ziegler ("Ziegler Decl.") ¶ 6 [Dkt. No. 23-1]. Plaintiff filed this lawsuit on September 13, 2023, which satisfies the statute of limitations. Most, if not all, of Defendants' acts of unauthorized access to Plaintiff's data occurred within the statute. Thus, the Court has federal question jurisdiction based on Defendants' alleged violation of the

5

CFAA.[3]

## B. Personal Jurisdiction

Defendants contest that the Court has personal jurisdiction over Defendants due to insufficient contacts with California.  *See* Motion at 7–12.  The plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  To survive a motion to dismiss under Rule 12(b)(2) without an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdictional facts.  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("[W]e only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction.") (citation omitted).  "[U]ncontroverted allegations in the complaint must be taken as true." *Id.*

Personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process."  *Pebble Beach*, 453 F.3d at 1154–55 (citation omitted).  California authorizes jurisdiction on any basis consistent with federal due process requirements.  Cal. Civ. Proc. Code § 410.10; *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991).  The Fourteenth Amendment's Due Process Clause requires that a defendant have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A district court's exercise of personal jurisdiction over a nonresident defendant does not violate due process when the defendant has at least minimum contacts with the forum, and when subjecting the defendant to suit in the forum will "not offend traditional notions of fair play and substantial justice."  *See*, *Ayla LLC v. Ayla Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (internal citations omitted).

---

[3] The Court also finds a second basis for subject matter jurisdiction based on diversity jurisdiction under 28 U.S.C. § 1332.  *See* Complaint ¶¶ 7–8.  Plaintiff is a citizen of the State of California and resides in Los Angeles, California.  Defendant Ziegler is a citizen of and is residing in the State of Illinois.  Defendant ICU is a corporation organized under the laws of Wyoming.  Thus, complete diversity exists between parties.  The amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiff claims exceed $75,000.  *Id.* ¶ 8.

APP 0103

Personal jurisdiction over a nonresident defendant may be general or specific. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). In this case, Plaintiff argues that the Court has specific jurisdiction over Defendant. Opp. at 9–14. A court has specific jurisdiction over a claim that arises out of a defendant's forum-related activities. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). To establish specific jurisdiction, the following three-part test must be met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which she purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation omitted). Plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* The burden then shifts to Defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

### 1. Purposeful Direction

Where a plaintiff's claims are based in tort, as they are here, courts use the "purposeful direction" test, which is satisfied where the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *See Ayala LLC*, 11 F.4th at 979–80 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).[4] Under such a test, courts apply an "effects" test and focus "on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). Even though express aiming requires "conduct directly targeting the forum" beyond mere knowledge that the plaintiff lives in the forum state, *Ayla LLC*, 11 F. 4th at 980, "all of a defendant's contacts with the forum state" must be examined in the jurisdictional analysis, "whether or not those contacts involve

---

[4] *See also AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (the plaintiff "alleges copyright and trademark infringement claims, which sound in tort, so we apply a 'purposeful direction' analysis and ask whether [the defendant] has purposefully directed activities at the United States").

7

1   wrongful activity by the defendant." *Yahoo! Inc.*, 433 F.3d at 1207.[5]

2          Defendants contest the second prong[6] of the purposeful direction test.  More specifically,

3   Defendants contend that Plaintiff can adequately "show that Defendants committed any alleged

4   intentional act that was 'expressly aimed' at California because there was no 'individualized

5   targeting' of California residents by Defendants."  Motion at 11.  The Court disagrees.

6          The express aiming inquiry centers on whether the defendant specifically targeted the forum

7   state.  *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017) (citation omitted).  The

8   Supreme Court has explained that the contacts supporting purposeful direction "must be the

9   defendant's own choice and not random, isolated or fortuitous."  *Ford Motor Co. v. Montana Eighth*

10  *Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (citations omitted).  The defendant must have "reached out

11  beyond its home—by, for example, exploiting a market in the forum state."  *Id.* (citations omitted).

12  Therefore, a defendant does not purposefully direct its activities at the forum state when the

13  unilateral activity of the plaintiff or a third party is all that connects the defendant to the forum state.

14  *See Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (citations omitted).  Rather, the focus is on the

15  defendant's "own contacts," e.g., "contacts that the defendant *himself* creates with the forum state."

16  *See id.* at 284 (citations omitted) (emphasis in original).  "[M]ere injury to a forum resident is not a

17  sufficient connection to the forum."  *Id.* at 290.  Thus, "[t]he proper question is not where the

18  plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him

19  to the forum in a meaningful way."  *Id.*  Courts are to focus on the defendant's actual contacts with

20  the forum, and the "quality and nature" of those activities.  *Hanson v. Denckla*, 357 U.S. 235, 253

21  (1958).

22         Defendant Ziegler notes that the report Defendants prepared using Plaintiff's data is available

23  at the website www.bidenreport.com.  Ziegler Decl. ¶ 8 & n.1.  On this website, a "Purchase" button

24

---

25  [5] Nor is it required that the "brunt" of the harm occurred in the forum state.  *Id.*  "If a jurisdictionally
    sufficient amount of harm is suffered in the forum state, it does not matter that even more harm
26  might have been suffered in another state."  *Id.*

27  [6] Defendants do not dispute the first prong that it committed intentional acts by collecting and
28  circulating Plaintiff's data.

APP 0105

1  is prominently displayed, allowing users to spend $50.00 for a hardcopy of the Biden report.

2  Declaration of Gregory A. Ellis ("Ellis Decl.") ¶ 6, Ex. A [Dkt. No. 30-2].  Clicking the purchase

3  button then links to a purchase page operated by Stripe.com, a California-based entity whose

4  purchase terms are governed by California law.[7]  Defendants' argument that this website is purely

5  passive lacks merit.  The website, owned and operated by Defendants, allows continuing regular

6  sales from California residents.  *C.f. Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008)

7  (finding the sale of one item to California resident was insufficient for personal jurisdiction because

8  the "listing temporarily advertised a good for sale and that listing closed once the item was sold,

9  thereby extinguishing the Internet contact for this transaction within the forum state").

10       Moreover, Defendant Ziegler declares that over six million unique IP addresses have

11  reviewed the report on the Marco Polo website, and that "less than ten percent of Marco Polo's

12  supports reside in California."  Ziegler Decl. ¶¶ 12, 16.  The question of the exact number of

13  California residents that have purchased the report is unclear, but Ziegler's declaration does not state

14  that no Californians have purchased the physical report.  *See* Supplemental Declaration of Garrett

15  Ziegler ("Ziegler's Supp. Decl.") [Dkt. No. 32-1] ¶ 3 ("our supporters can donate funds to secure a

16  hard copy of the Biden Report").  Indeed, with hundreds of thousands of California residents visiting

17  the site, it is more than plausible to assume that California residents have also purchased and

18  continue to purchase a report of Plaintiff's data.[8]  Taken together, the Court finds Defendants'

19  statements support targeting into the forum state.  The cases cited by Defendants are distinguishable

20  and do not involve a site analogous to that operated by Defendants, which conducts business that

21  allows individuals to purchase copies of the report that compiles Plaintiff's data.[9]

---

22  [7] *See* www.stripe.com/legal/consumer, Section 12.

23

24  [8] The Court need not order further jurisdictional discovery to learn more about the exact details of

25  the financial support from California residents, as the contacts discussed herein are more than
sufficient to find specific personal jurisdiction.

26  [9] *See* Motion at 10–12; *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)

27  (defendant hotel's website included only an inquiry form and did not allow visitors to make
reservations); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (defendant's

28

APP 0106

Contacts with the forum are also supported by Ziegler's purported actions after publishing the report to verify the facts and promote the report.  For example, he sent copies to multiple California residents to verify Plaintiff's information.  Ziegler said in interviews that his team talked with each person named in the report.  Ellis Decl. Exs. C at 12 ("I took the time to call each and every person that is in this report") [Dkt. No. 30-5]; D at 8 ("we've sent the dossier to all 4,000 contacts on Hunter's laptop) [Dkt. No. 30-6].  He even includes a table of alleged Plaintiff family crimes with California area codes, many listing "where (venue)" as C.D. Cal.  Ellis Decl. Ex. E at 233–35, 400–01.  Other California residents include an FBI agent in the San Francisco field office, Ellis Decl. Ex. E at 22.  And Ziegler even sent the Report to the personal residence of one of Plaintiff's California-based attorneys.  Ellis Decl. ¶ 12.

Ziegler also promoted the Report in California.  Ziegler posted a photo of himself holding a copy of the Report in December 2023 on Instagram in front of the Chateau Marmont Hotel in West Hollywood with the caption: "The activities in & around this infamous bungalow are captured for posterity in BidenReport.com."  Ellis Decl. Ex. H.  He also posted a Rumble video of himself in San Francisco in November 2022, entitled "Report on the Biden Laptop CA Field Trip," again promoting the Report.  Ellis Decl. Ex. I.  In sum, his entry into California and social media posts reflecting such promotion in California support the exercise of jurisdiction.  *See Yue v. Yang*, 62 Cal. App. 5th 539, 543–48 (2021) ("California-focused" social medial messages, including statement that defendant "arrived in California," support specific jurisdiction).  Taken together, these contacts with California are more than adequate to satisfy the purposeful direction test.

### 2.  "Arise out of or result from"

Defendants next contest that Plaintiff can show that his claims "arise out of" Defendants' contacts with California.  Motion at 11.  To satisfy the "arising out of" prong, a plaintiff need only show that a "direct nexus exists between the defendant's contacts and the cause of action."  *See Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 894 (9th Cir. 1996).

---

website only allowed users to email the defendant); *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) (finding website was not passive where it allowed users to purchase the product at issue).

APP 0107

Ziegler's own statements are sufficient to satisfy the required nexus.  In an interview, Ziegler specifically stated that he called "each and every person that is named in this report," which would have included multiple California-based contacts.  Ellis Decl. Ex. C. at 13.  He tied the credibility of the Report to his verification of the information, tying the manipulation of data at issue to California-based contacts.  Further, Plaintiff, a resident of California, is alleged to have suffered harm from Defendants' misuse of his data, supporting this prong.  *See Yahoo! Inc.*, 433 F.3d at 1206.

### 3.  Reasonableness

Lastly, Defendants contest personal jurisdiction by arguing that other factors would lead jurisdiction to be unreasonable.  Motion at 11–12.  This burden is held by Defendants.  In evaluating whether jurisdiction would be unreasonable, the Court balances seven factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1487–88 (9th Cir.1993) (citations omitted).  But Defendants only address a few factors, claiming that they "did not intentionally target California" and that "the evidence is located in Illinois."  Motion at 12.  The Court rejects the first argument, as Defendant financially benefitted by accepting purchases of the report by California residents and relied on California residents in creating and promoting the report.  The second argument is not enough to tip the scale of reasonableness in their favor, especially considering that Plaintiff lives in California.  Balancing the seven factors, the Court finds that jurisdiction is not unreasonable.  "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured."  *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831, 836 (9th Cir. 1996).

### C.  Venue

Next, Defendants move to dismiss for lack of venue.  Here, facts supporting personal jurisdiction also support venue.  "A plaintiff's choice of venue is generally given substantial weight and a defendant normally 'must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.'"  *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp.

APP 0108

3d 733, 751 (N.D. Cal. 2015) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Defendant argues that "[w]hile Plaintiff is allegedly a California resident, it is doubtful whether any alleged injuries occurred in California." Motion at 12. But when looking at the entire sequence of events underlying the claim, as Defendants implore the Court to do, *see* Motion at 13, the relevant events include the creation and publication of the website that included Plaintiff's data. These events did not just include Ziegler's decisions but also include California contacts that Ziegler made in developing and publicizing the content of his website and trips to California to promote the report made with Plaintiff's data.

### D. Failure to State a Claim

#### 1. CCFA

Plaintiff's first cause of action alleges that Defendants violated the CFAA. Defendants seek dismissal of this claim under Rule 12(b)(6) on the grounds that (1) Plaintiff has not alleged the elements of a CFAA violation; (2) Plaintiff has not alleged that Defendants' access was "without authorization"; and (3) Plaintiff does not allege a "recoverable loss" within the meaning of the statute. *See* Motion at 14–17.

Plaintiff's Complaint alleges that Defendants violated the CFAA in various ways, including Section 1030(a)(2)(A) (unauthorized access of records of "financial institution," "card issuer," or "consumer reporting agency"), *see* Complaint ¶ 34; Section 1030(a)(2)(C) (unauthorized access of "information from any protected computer"), *see* Complaint ¶ 35; and Section 1030(a)(4) (unauthorized access of protected computer "knowingly and with intent to defraud" where access furthers the fraud and accessor obtains one or more things of value), *see* Complaint ¶ 36. Plaintiff seeks redress for these violations pursuant to Section 1030(g), which provides that:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

APP 0109

18 U.S.C.A. § 1030(g).  Plaintiff alleges that Defendants' conduct involves the factor described in subsection (c)(4)(A)(i)(I), which proscribes conduct that causes "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value."  Complaint ¶ 37.

In the Ninth Circuit, the essential elements of a civil claim for violations of Sections 1030(a)(2) and 1030(a)(4) are as follows:

> [T]o bring an action successfully under 18 U.S.C. § 1030(g) based on a violation of 18 U.S.C. § 1030(a)(2), [plaintiff] must show that [defendant]: (1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that he (3) thereby obtained information (4) from any protected computer (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value. To bring an action successfully under § 1030(g) based on a violation of § 1030(a)(4), [plaintiff] must show that [defendant]: (1) accessed a "protected computer," (2) without authorization or exceeding such authorization that was granted, (3) "knowingly" and with "intent to defraud," and thereby (4) "further[ed] the intended fraud and obtain[ed] anything of value," causing (5) a loss to one or more persons during any one-year period aggregating at least $5,000 in value.

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009) (citing 18 U.S.C. § 1030(a)).

Applying these statutes to the claims here, the Court finds that Plaintiff has sufficiently alleged each of these elements.  *See* Complaint ¶¶ 2, 16–18, 20–22, 24–29 (access); *id.* ¶¶ 4, 17–18, 21–23, 28–30, 34–36 (without authorization); *id.* ¶¶ 22, 24, 27–29 (information obtained); *id.* ¶¶ 2, 16, 18–22, 24–26, 28–29, 35–36 (protected computer); *id.* ¶ 37 (economic "loss" of type recoverable under the statute).  Plaintiff's allegations do not merely recite the elements of a CFAA claim; they include sufficient allegations of underlying facts to give fair notice to Defendants.

Defendants' other attacks to the sufficiency of the Complaint fare no better.

First, Defendants insist that Plaintiff cannot state a viable CFAA claim because he has not alleged that "Defendants accessed any computer, storage, or service which Plaintiff either owns or has exclusive control over."  Motion at 15.  But "ownership" and "control" of the physical device is not a required element.  *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004) (finding that "[t]he district court erred by reading an ownership or control requirement into the Act.  The civil remedy extends to '*[a]ny person* who suffers damage or loss by reason of a violation of this section.' 18 U.S.C. § 1030(g)").

APP 0110

Second, Defendants argue that it is "questionable whether Plaintiff has adequately alleged that Defendants accessed a 'protected computer'" as defined in the CFAA.  *See* Motion at 14.  A "protected computer" is "any computer used in or affecting interstate or foreign commerce or communication."  18 U.S.C. § 1030(e)(2)(B).  "[T]he term 'computer' means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.…"  18 U.S.C. § 1030(e)(1).  This statute's prohibition "now applies—at a minimum—to all information from all computers that connect to the internet."  *Van Buren v. United States*, 593 U.S. 374, 379 (2021) (citing §§ 1030(a)(2)(C), (e)(2)(B)).  Here, Plaintiffs allege that Defendants accessed a "hard drive" containing Plaintiff's data and created "an online searchable database of 128,000 emails found on the Biden laptop" and public website to house "almost 10,000 photos," and provided the public with metadata and access to password-protected files stored on Plaintiff's iPhone backup.  Complaint ¶¶ 22, 24, 25, 29.  These allegations are sufficient at this point to allege that Defendants accessed a "computer" that is "used in or affecting interstate or foreign commerce or communication."  18 U.S.C. §§ 1030(e)(1), (e)(2).  To go from the hard drive to the public website and database requires internet connectivity, and thus, Plaintiff's allegations are adequate to satisfying this prong.

Third, Defendants claim that "Plaintiff does not allege unlawful access to a computer within the meaning of the CFAA."  Motion at 14.  But the Complaint contains many factual allegations establishing the unauthorized and unlawful nature of Defendants' data access.  Indeed, Plaintiff asserts that Defendants have "accessed" and "analyzed" Plaintiff's data from at least September 2021 until at least October 2022.  Complaint ¶ 21.  Plaintiff sent a cease-and-desist demand that Defendants did not respond to.  *Id.* ¶ 30.  Ziegler even admits that with respect to some data, Defendants gained access by circumventing technical barriers.  Ziegler Decl. ¶ 21.  This is sufficient to allege that Defendants access was authorized and without permission.

Lastly, Defendants argue that Plaintiff has failed to allege a "recoverable loss."  Motion at 16–17.  The CFAA permits the recovery of losses incurred as a result of investigating and

14

responding to Defendants' violations of the CFAA.  18 U.S.C. § 1030(e)(11) ("the term 'loss' means

any reasonable cost to any victim, including the cost of responding to an offense, conducting a

damage assessment, and restoring the data, program, system or information … and any revenue lost,

cost incurred, or other consequential damages incurred because of interruption of service").  Plaintiff

has specifically alleged this, asserting that he suffered "direct costs, incurred during any one-year

period, of investigating and responding to Defendants violations of the CFAA in excess of $5,000 in

value."  Complaint ¶ 37.  That is enough for pleading purposes.

## 2.  CCDAFA

Plaintiff's second cause of action is brought under California's Comprehensive Computer

Data Access and Fraud Act, and is codified in California Penal Code § 502.  The CCDAFA is

broader than CFAA in many respects, and the Court finds that Plaintiff has plead a viable CCDAFA

claim.  The Complaint alleges violations of California Penal Code Sections 502(c)(1), (c)(2), (c)(3),

and (c)(7) of the CCDAFA, which provide that:

> (c) Except as provided in subdivision (h)[10], any person who commits any of the
> following acts is guilty of a public offense:
>
> (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or
> otherwise uses any data, computer, computer system, or computer network in order to
> either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B)
> wrongfully control or obtain money, property, or data.
>
> (2) Knowingly accesses and without permission takes, copies, or makes use of any data
> from a computer, computer system, or computer network, or takes or copies any
> supporting documentation, whether existing or residing internal or external to a
> computer, computer system, or computer network.
>
> (3) Knowingly and without permission uses or causes to be used computer services.…
>
> (7) Knowingly and without permission accesses or causes to be accessed any computer,
> computer system, or computer network.

Cal. Pen. Code § 502(c).  CCDAFA also contains a private right of action under California Penal

Code § 502(e)(1).  The CCDAFA is less stringent in its requirements.

> In contrast to the CFAA, the California statute does not require *unauthorized* access. It
> merely requires *knowing* access. *Compare* 18 U.S.C. § 1030(a)(2) *with* Cal. Penal Code
> § 502(c)(2).  What makes that access unlawful is that the person 'without permission

---

[10] Subdivision (h) exempts "acts which are committed by a person within the scope of his or her
lawful employment."  Cal. Pen. Code § 502(h)(1).

APP 0112

takes, copies, or makes use of' data on the computer. Cal. Penal Code § 502(c)(2). A plain reading of the statute demonstrates that its focus is on unauthorized taking or use of information. In contrast, the CFAA criminalizes unauthorized *access*, not subsequent unauthorized *use*.

*United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (emphasis in original). The term "access" under the CCDAFA has been defined broadly and "includes logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly." *Id.*; *see also Facebook Inc. v. Power Ventures*, 844 F.3d 1058, 1069 (9th Cir. 2016) (once defendant was told to cease and desist it "knew that it no longer had permission to access [plaintiff's] computers at all").

Defendants argue that Plaintiff cannot state a CCDAFA claim because the statute "requires a defendant to access a computer or device belonging to, or controlled by, Plaintiff." Motion at 17. Not so. The statute specifically refers to "***data*** from a computer," and here Plaintiff plainly asserts a violation of its data by Defendants. Defendants argue that such access was with permission, but Plaintiffs sufficiently contend and allege that they used his passwords to access password-protected files and ignored prelitigation demands to cease and desists.

Defendants also argue that Plaintiff has not suffered damages. That argument fails as well. The CCDAFA provides that the owner of data who suffers "damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief." *See* Cal. Pen. Code § 502(e)(1). Compensatory damages include but are not limited to "any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damages, or deleted by the access." *Id.* Plaintiff asserts, as the owner of the data, he has suffered damages caused by the Defendant in an amount to be proven in trial. Complaint ¶¶ 39, 44. Plaintiff alleges entitlement to damages, injunctive and other equitable relief. *Id.* ¶¶ 44, 45, 46. Examining Plaintiff's Complaint in its entirety, the Court

APP 0113

finds that damages have been asserted.[11]

### E. Anti-SLAPP

Defendants' final argument is that the lawsuit should be dismissed pursuant to California's anti-SLAPP statute. But the anti-SLAPP statute does not apply to federal claims. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010). Thus, Plaintiff's CFAA claim cannot be dismissed on anti-SLAPP grounds.

As for Plaintiff's state law claims, the anti-SLAPP argument lacks merit because Defendants cannot make the prima facie showing that the anti-SLAPP statute requires. *See, e.g., Governor Gray Davis Comm. v. Am. Taxpayers Alliance*, 102 Cal. App. 4th 449, 456 (2002) (citations omitted). Defendants must first make an initial prima facie showing that Plaintiff's claims arise from a protected activity. In determining this, "the critical consideration is whether the cause of action is based on defendant's protected free speech or petitioning activity." *Navellier v. Sletten,* 29 Cal. 4th 82, 89 (2002). At this first step, courts should "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." *Park v. Bd. of Trustees of California State Univ.*, 2 Cal. 5th 1057, 1063 (2017). The burden of the defendants "is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." *Bonni v. St. Joseph Health Sys.,* 11 Cal. 5th 995, 1009 (2021) (internal citation omitted). Importantly, "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." *Id.* at 1012*; see also Park,* 2 Cal. 5th at 1060 ("claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted").

In this case, Defendants cannot show that Plaintiff's claims "arise from" Defendants' free speech. Defendants argue that their website is a "public forum," that Plaintiff is a "person in the public eye," that this data has been "a topic of widespread, public interest", and that the report of the

---

[11] Defendants also attack Plaintiff's third cause of action for violation of California's Unfair Competition Law, arguing that it fails because Plaintiff's CFAA and CCDAFA claims are deficient. Motion at 18–19. The Court rejects such arguments, as the CFAA and CCDAFA claims survive.

17

data that they created and host online has been viewed millions of times. Motion at 21–22.

But these assertions do not support the application of the anti-SLAPP statute in this case. Plaintiff did not sue Defendants for creating a report or website. Defendants are being sued for "accessing, tampering with, manipulating, altering, copying and damaging" Plaintiff's computer data. Complaint ¶ 27. Stated differently, the gravamen of the lawsuit is not predicated on protected speech and certainly does not arise from or rely on Defendants' free speech. The anti-SLAPP statute simply does not apply. *See Malin v. Singer,* 217 Cal. App. 4th 1283, 1303 (2013) (claims based on allegations of illegal wiretapping and computer hacking "do not fit one of the categories of protected activities defined by the Legislature in section 425.16, subdivision (e)" and, therefore, are not subject to anti-SLAPP dismissal). Were it otherwise, every data hack of a public figure would be fair game. That is not what California's anti-SLAPP allows.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion is ***denied.***

Dated:    June 20, 2024

_____
Hernán D. Vera
United States District Judge

APP 0115

PAUL B. SALVATY (171507)
PSalvaty@winston.com
**WINSTON & STRAWN LLP**
333 S. Grand Ave.
Los Angeles, CA 90071-1543
Telephone:    (213) 615-1700
Facsimile:    (213) 615-1750

ABBE DAVID LOWELL (pro hac vice)
AbbeLowellPublicOutreach@winston.com
**WINSTON & STRAWN LLP**
1901 L St., N.W.
Washington, DC 20036-3508
Telephone:    (202) 282-5000
Facsimile:    (202) 282-5100

BRYAN M. SULLIVAN (209743)
bsullivan@earlysullivan.com
ZACHARY C. HANSEN (325128)
**EARLY SULLIVAN WRIGHT GIZER & McRAE LLP**
6420 Wilshire Boulevard, 17th Fl.
Los Angeles, CA 90048
Telephone:    (323) 301-4660
Facsimile:    (323) 301-4676

Attorneys for Plaintiff
ROBERT HUNTER BIDEN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HUNTER BIDEN, | **Case No. 2:23-cv-07593-HVD-KS** |
| Plaintiff, | *Honorable Hernan D. Vera*<br>*Magistrate Judge Karen L. Stevenson* |
| vs. | |
| GARRETT ZIEGLER, an individual, ICU, LLC, a Wyoming limited liability company d/b/a Marco Polo, and DOES 1 through 10, inclusive, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(1), 12(b)(2), 12(b)(3), AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND SECTION 425.16 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE** |
| Defendants. | |
| | Hearing Date:   March 21, 2024<br>Time:              10:00 a.m.<br>Place:             5B |

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND ................................................................................................3

    A.    The Parties ................................................................................................3

    B.    Plaintiff's Allegations of Defendants' Illegal Data Access ...................3

    C.    Plaintiff's Complaint, and Defendants' Motion to Dismiss....................6

III.    ARGUMENT ................................................................................................6

    A.    The Court Has Subject Matter Jurisdiction Because Plaintiff Has Alleged Violation of a Federal Statute and Because There Is Complete Diversity Under 28 U.S.C. § 1332(a). ................................................................................................6

    B.    The Court Has Personal Jurisdiction Over Defendants, and Venue in the Central District of California Is Proper. ................................................................................................9

        1.    Plaintiff Easily Establishes Specific Personal Jurisdiction Here. .....................9

        2.    Venue Is Proper in the Central District........................................14

    C.    Plaintiff's Factual Allegations, As Well As Defendants' Admissions, Support Liability Under Federal and State Anti-Hacking Laws. ...............................................15

        1.    Plaintiff Has Pled a Violation of the CFAA. ...................................15

        2.    Plaintiff Has Pled a Violation of the CCDAFA...............................20

        3.    Plaintiff Has Pled a Valid UCL Claim............................................22

    D.    Plaintiff's Claims Are Not Subject to California's Anti-SLAPP Statute Because the Allegations Do Not Arise from Protected Activity....................................................23

        1.    Plaintiff's Claims Do Not Arise from Protected Activity.............................23

        2.    Plaintiff's Claims Are Likely to Succeed ...............................24

IV.    CONCLUSION................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)............................................................................................1

*Ayla LLC v. Ayla Skin Pty Ltd.,*
11 F.4th 972 (9th Cir. 2021) ........................................................................9, 10

*Bancroft & Masters v. Augusta Nat'l, Inc.,*
223 F.3d 1082 (9th Cir. 2000) .........................................................................11

*Baral v. Schnitt,*
1 Cal. 5th 376 (2016*)* ................................................................................24, 25

*Benalcazar v. Genoa Twp.,*
1 F.4th 421 (6th Cir. 2021) ................................................................................7

*Bonni v. St. Joseph Health Sys.,*
11 Cal. 5th 995 (2021) .....................................................................................23

*Calder v. Jones,*
465 U.S. 783 (1984)..........................................................................................12

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) .....................................................................................22

*Christie v. Nat'l Inst. for Newman Studies,*
258 F. Supp. 3d 494 (D.N.J. 2017) ..................................................................13

*College Source, Inc. v. AcademyOne, Inc.,*
653 F.3d 1066 (9th Cir. 2011) ....................................................................11, 12

*Committee on Children's Television, Inc. v. Gen. Foods Corp.,*
35 Cal. 3d 197 (1983) ......................................................................................22

*Core-Vent Corp. v. Nobel Indus. AB,*
11 F.3d 1482 (9th Cir. 1993) ...........................................................................14

*Custom Packaging Supply, Inc. v. Phillips,*
2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ....................................................7

*Cybersell, Inc. v. Cybersell, Inc.,*
130 F.3d 414 (9th Cir. 1997) ......................................................................10, 11

*Facebook Inc. v. Power Ventures,*
844 F.3d 1058 (9th Cir. 2016) .........................................................................21

*Facebook, Inc. v. Power Ventures, Inc.*,
   2010 WL 3291750 (N.D. Cal. July 20, 2010)................................................2, 19

*Famous Birthdays, LLC v. SocialEdge, Inc.*,
   2022 WL 1591723 (C.D. Cal. Apr. 15, 2022) ...........................................22

*Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*,
   103 F.3d 888 (9th Cir. 1996) ....................................................................13

*Gerbosi v. Gaims, Weil, West & Epstein, LLP*,
   193 Cal. App. 4th 435 (2011) ..................................................................24

*Gordy v. Daily News, L.P.*,
   95 F.3d 829 (9th Cir. 1996) ............................................11, 12, 13, 14

*Governor Gray Davis Comm. v. Am. Taxpayers Alliance*,
   102 Cal. App. 4th 449 (2002) ..................................................................23

*Hagans v. Lavine*,
   415 U.S. 528 (1974)...................................................................................7

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) .............................................................23, 25

*Hudson Martin v. Forsyth*,
   2017 WL 1315576 (N.D. Cal. Apr. 7, 2017) ...........................................24

*King v. Rubenstein*,
   825 F.3d 206 (4th Cir. 2016) ....................................................................2

*LVRC Holdings LLC v. Brekka*,
   581 F3d 1127 (9th Cir. 2009) .............................................................16, 17

*Malin v. Singer*,
   217 Cal. App. 4th 1283 (2013) ................................................................24

*McCoy v. Iberdrola Renewables, Inc.*,
   760 F.3d 674 (7th Cir. 2014) ....................................................................7

*Mintz v. Mark Bartelstein & Assocs.*,
   906 F. Supp. 2d 1017 (2012) ....................................................................2

*Monster Energy Co. v. Schechter*,
   7 Cal. 5th 781 (2019)...............................................................................25

*Musacchio v. United States*,
   577 U.S. 237 (2016)...................................................................................8

*Myers v. Bennett Law Offices*,
   238 F.3d 1068 (9th Cir. 2001) ...........................................................14, 15

iii

*Navellier v. Sletten*,
    29 Cal. 4th 82 (2002) ...............................................................................23

*Netapp, Inc. v. Nimble Storage*,
    41 F. Supp. 3d 816 (N.D. Cal. 2014) ......................................................17

*Orchid Biosciences, Inc. v. St. Louis Univ.*,
    198 F.R.D. 670 (S.D. Cal. 2001) .............................................................11

*Park v. Bd. of Trustees of California State Univ.*,
    2 Cal. 5th 1057 (2017) ............................................................................23

*Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017) .....................................................................1

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) .................................................................10

*Phreesia, Inc. v. Certify Glob., Inc.*,
    2022 WL 911207 (D. Md. Mar. 29, 2022).............................................9, 19

*Rio Props., Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ....................................................12, 13, 14

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ...............................................................9, 11

*Sebelius v. Auburn Reg'l Med. Ctr.*,
    568 U.S. 145 (2013) ..................................................................................8

*Shapiro v. McManus*,
    577 U.S. 39 (2015) ....................................................................................7

*Sherles v. Fox*,
    2018 WL 3046429 (W.D. Wash. June 20, 2018)......................................14

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) .................................................................17

*Stomp, Inc. v. NeatO, LLC*,
    61 F. Supp. 2d 1074 (C.D. Cal. 1999) .....................................................10

*Supermail Cargo, Inc. v. U.S.*,
    68 F.3d 1204 (9th Cir. 1995) ..............................................................19, 20

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004) ........................................................1, 8, 18

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ..............................................................20, 21

iv

*United Tactical Sys. LLC v. Real Action Paintball, Inc.*,
    108 F. Supp. 3d 733 (N.D. Cal. 2015) ...................................................... 14

*Van Buren v. United States*,
    141 S. Ct. 1648, 210 L. Ed. 2d 26 (2021) .......................................... 7, 18

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) ................................................... 10, 13, 14

*Yue v. Yang*,
    62 Cal. App. 5th 539 (2021) ................................................................. 12

**Statutes**

18 U.S.C. § 1030 ............................................................................... *passim*

28 U.S.C. § 1332(a) ..................................................................................... 6

28 U.S.C. § 1391(b)(2) .............................................................................. 14

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................................. 6, 22

Cal. Civ. Proc. Code § 425.16 ........................................................ 1, 6, 24

Cal. Pen. Code § 502 ....................................................................... *passim*

**Other Authorities**

CACI No. 1812 .......................................................................................... 21

Fed. R. Civ. P. 12(b)(1) ...................................................................... *passim*

Fed. R. Civ. P. 12(b)(2) ..................................................................... 1, 2, 6

Fed. R. Civ. P. 12(b)(3) ........................................................................ 1, 6

Fed. R. Civ. P. 12(b)(6) ...................................................................... *passim*

U.S. Const., amend. I .................................................................................. 2

## I.  **INTRODUCTION**

Defendants Garrett Ziegler ("Ziegler") and ICU, LLC ("ICU") readily admit that for months, if not years, they have been accessing, tampering with, and manipulating Plaintiff Robert Hunter Biden's data without his authorization or consent.  Yet they insist they cannot be held responsible for their actions because, according to them, they accessed, tampered with, and manipulated a "copy" of Plaintiff's data while it was stored on a "hard drive" they obtained from a third party, rather than accessing Plaintiff's data while it was stored on a "computer" or "device" that was "owned" and "exclusively controlled" by Plaintiff himself.

Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(3) and 12(b)(6) and Section 425.16 of the California Code of Civil Procedure ("Motion") is baseless.  For one thing, Defendants' ownership-and-control argument is contrary to Ninth Circuit and California law.  Neither the federal Computer Fraud and Abuse Act ("CFAA") nor California's Comprehensive Computer Data Access and Fraud Act ("CCDAFA") requires Plaintiff to plead or prove "ownership" or "control" of the physical "computer" or "device" that Defendants accessed.  With respect to the CFAA, the Ninth Circuit specifically has held that ownership or control of a "computer" is <u>not</u> required and that a plaintiff may seek redress where, as here, he is "proximately harmed by unauthorized access, particularly if [he has] rights to the *data* stored on it."  *See Theofel v. Farey-Jones,* 359 F.3d 1066, 1078 (9th Cir.  2004) (emphasis added).  Similarly, the CCDAFA prohibits knowingly accessing and without permission taking and using "any data" from a computer; it does not require a plaintiff to own or control a physical device.  Cal. Pen. Code § 502(c)(2); *see also* Cal. Pen. Code § 502(e)(1) (authorizing civil action by "owner or lessee of . . . *data* who suffers damage or loss by reason of a violation") (emphasis added).

At this early stage, Plaintiff needs only to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Park v. Thompson,* 851 F.3d 910, 918 (9th Cir. 2017) (generally, court must accept factual allegations as true and view them in light most favorable to plaintiff)).  Here, Plaintiff has pled uncontroverted facts to support the Court's exercise of federal question and diversity jurisdiction, which precludes dismissal under Rule 12(b)(1).

Plaintiff also has alleged—and readily can establish—extensive facts to support the Court's exercise of personal jurisdiction over Defendants, which prevents dismissal under Rule 12(b)(2). With respect to Defendants' arguments under Rule 12(b)(6), Plaintiff has factually alleged each of his claims in precisely the manner specified by the Ninth Circuit. Defendants spend most of the Motion arguing the merits, which is improper at this stage, particularly because Defendants' counternarrative is contrary to the Complaint's well-pleaded allegations, unsupported by evidence, and inconsistent with facts that have come to light in other proceedings. *See, e.g., King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (internal citation and quotation omitted) (Rule 12(b)(6) motion generally cannot be used to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses").

To the extent the Motion is supported by admissible evidence, that evidence bolsters Plaintiff's position, not Defendants'. Defendants present a sworn declaration from Ziegler in which he admits under oath—perhaps without realizing the consequences of doing so—that Defendants spent months "locating" Plaintiff's passwords and then used one or more of those passwords to access Plaintiff's password-protected data. Ziegler states:

> Also contained on the external hard drive given to me were files containing passcodes, which are essentially similar in function to passwords designed to allow access to password-protected files. Although it took months of examination, we were able to locate the passcode which allowed access to the iPhone backup file. Those files existed on the external hard drive when it was first given to me.

*See* Declaration of Garrett Ziegler ("Ziegler Decl.") ¶ 21. This surprisingly frank admission proves Defendants' unlawful data access as a matter of law. It is precisely the type of "hacking" activity that the statutes are intended to punish. *See, e.g., Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010) (access that circumvents technical or code-based barriers is "without permission" as a matter of law); *Mintz v. Mark Bartelstein & Assocs.*, 906 F. Supp. 2d 1017, 1032 (2012) (use of plaintiff's password without consent to access email constituted CCDAFA violation as a matter of law).

Finally, Defendants' arguments based on California's anti-SLAPP statute fail because Plaintiff's claims do not "arise from" protected First Amendment activity. Plaintiff sued Defendants for their

1  unlawful and unauthorized access to data, not for their use of the data to engage in data-related speech.

2  This is clear from the first paragraph of the Complaint.  (Compl. ¶ 1 ("While Defendant Ziegler is

3  entitled to his extremist and counterfactual opinions, he has no right to engage in illegal activities to

4  advance his right-wing agenda")).  Moreover, Plaintiff's claims are not subject to anti-SLAPP dismissal

5  because they are likely to succeed at trial.  Accordingly, the Court should deny Defendants' Motion.

## II.  BACKGROUND

### A.  The Parties

Plaintiff is an attorney and businessman and is the second-born son of President Joseph R. Biden,
Jr.  Although Plaintiff is and always has been a private citizen, political opponents of President Biden
have used him as a surrogate to attack his father.  For the past several years, Plaintiff has been the target
of relentless personal attacks and the subject of countless baseless conspiracy theories, particularly from
extreme right-wing members of Congress and the media.

Defendant Ziegler is a former Trump White House aide who worked, from February 2019 until
January 2021, as a Policy Analyst and, later, as an Associate Director of the Office of Trade and
Manufacturing Policy under the supervision of Dr. Peter Navarro  Since having his White House
credentials revoked in or around January 2021, Ziegler, by his own admission, has devoted most of his
waking time and energy to accessing, tampering with, manipulating, altering, copying, and otherwise
using data contained on a copy of a hard drive that Defendants claim to be of Plaintiff's "laptop"
computer.  (Compl. ¶¶ 15-16.)

On or about July 8, 2021, Defendant Ziegler organized Defendant ICU and caused Defendant
ICU to begin doing business under the name "Marco Polo."  (*Id.* ¶ 20.)  Defendants claim to have spent
at least 13 months—from September 2021 through October 2022—"analyzing the voluminous material
from the Biden Laptop," and their unlawful access, manipulation, and analysis of Plaintiff's data
continues to this day.  (*Id.* ¶ 21.)

### B.  Plaintiff's Allegations of Defendants' Illegal Data Access

The precise manner by which Defendants obtained Plaintiff's data remains unclear.  (Compl. ¶¶
17-18.)  In their Motion, Defendants are vague on this point, stating only that Ziegler "received a copy
from an associate of former New York City mayor Rudy Giuliani."  (Ziegler Decl. ¶ 5.)  In published

reports, Ziegler has claimed to have obtained one copy of a hard drive containing Plaintiff's data from Jack Maxey, a former co-host on convicted felon Steve Bannon's *War Room* podcast, and another copy of a hard drive containing Plaintiff's data from another source. (Compl. ¶ 18.) Defendants will have to explain how many copies of Plaintiff's data they received and from whom, as well as the precise data they came to possess, during discovery in this case.

Regardless of how Defendants, without his permission, came to possess Plaintiff's data, once Plaintiff's data was in their custody, they accessed, tampered with, analyzed, and manipulated the data over an extended period of time. Defendant Ziegler used Plaintiff's data to create a voluminous report entitled "Report on the Biden Laptop" ("Report"), which Defendants first published on or about October 19, 2022. (Compl. ¶ 22.) Defendants have sold and sent copies of the Report throughout the United States, including California. In addition, in or around May 2022, Defendants used Plaintiff's data to create what Defendant Ziegler has described as "an online searchable database of 128,000 emails found on the Biden Laptop." (*Id.*) Plaintiff has never authorized or consented to any access of his data by any Defendant or anyone working with any Defendant at any time or for any purpose. To the contrary, Plaintiff notified Defendants that they are not authorized to access any of his data, that they should cease doing so, and that they should return any of Plaintiff's data to Plaintiff immediately. (Compl. ¶ 30.)

Defendants regularly brag about their illegal access of Plaintiff's data in interviews with members of the media, on social media, and on right-wing podcasts. For example, in December 2022, Ziegler described the activities of his team, which he said includes "digital forensics folks," as follows: "[I]t took us a year to go through [the data] . . . Usually, when you have this much data to go through, it's as if it's after a presidential library has been opened, right?" (Compl. ¶¶ 23-24.) In another interview published in or around June 2023, Ziegler discussed his and his team's efforts to create a website to house "almost 10,000 photos" that he claims to have extracted from Plaintiff's data. (*Id.*)

According to Ziegler, Defendants spent "a couple of months" going through photos stored in Plaintiff's data, organizing and modifying the photos (through what he characterizes as "redactions"), and subjecting the data to a "photo viewing app" to allow Defendants and others to "view the metadata in the photos." (*Id.* ¶ 25.) Ziegler claims these activities are designed to allow members of the public who log onto Defendants' website and access Defendants' servers "to be able to see where the photo

was taken, what time it was taken, if it has latitude and longitude coordinates attached to it. . . They're going to be able to see if it has metadata like aperture, lighting." (*Id*.) Ziegler further has stated that Defendants' efforts to upload videos from Plaintiff's data to Defendants' website required more time and effort than uploading photos from Plaintiff's data because Defendants needed "to use AI tools" on the data to "censor" portions of videos that Defendants consider to be "pornographic." (*Id*. ¶ 26.)

The data Defendants have unlawfully accessed, manipulated, and damaged includes tens of thousands of emails, thousands of photos, and dozens of videos and recordings. (*Id*. ¶ 27.) The data also includes Plaintiff's credit card details, Plaintiff's financial and bank records, and information of the type contained in the files of a consumer reporting agency. (*Id*.) At least some of the data originally was stored on Plaintiff's iPhone and backed-up to Plaintiff's iCloud storage. (*Id*. ¶ 28.) Defendants gained unlawful access to Plaintiff's iPhone data by circumventing technical or code-based barriers that were specifically designed and intended to prevent such access. (*Id*.)

In an interview that occurred in or around December 2022, Defendant Ziegler bragged that Defendants had hacked their way into data purportedly stored on or originating from Plaintiff's iPhone: "And we actually got into [Plaintiff's] iPhone backup, we were the first group to do it in June of 2022, we cracked the encrypted code that was stored on his laptop." (*Id*. ¶ 29.) After "cracking the encrypted code that was stored on [Plaintiff's] laptop," Defendants illegally accessed the data and then uploaded it to their website, where it remains accessible to this day. (*Id*.) It appears that data Defendants uploaded to their website from Plaintiff's encrypted "iPhone backup," like data Defendants uploaded from their copy of the hard drive of the purported "laptop," has been manipulated, tampered with, altered, and/or damaged by Defendants. (*Id*.)[1]

Defendants have refused to comply with Plaintiff's demands to cease and desist. As recently as September 2023, Defendant Ziegler declared on social media that efforts by Plaintiff to serve him with legal process in the future would be met with violence: "If the US pResident's son sends a proxy [i.e., a process server] to illegally trespass on my property I will blow their f---ing brains out." (*Id*. ¶ 31.)

---

[1] The nature and extent of Defendants' manipulation, tampering, alteration, and damage to Plaintiff's data, either from their copy of the hard drive of the claimed "Biden laptop" or from Plaintiff's encrypted "iPhone backup" (or from some other source), is unknown to Plaintiff due to Defendants' continuing refusal to return the data to Plaintiff. (Compl. ¶ 29.)

C. **Plaintiff's Complaint, and Defendants' Motion to Dismiss**

Plaintiff commenced this lawsuit on September 13, 2023. The Complaint alleges one federal claim and two state claims: (1) Violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (2) Violation of the California's Comprehensive Computer Data Access and Fraud Act ("CCDAFA"), Cal. Penal Code § 502; and (3) Violation of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200 *et seq.*

In their Motion, Defendants seek dismissal of the Complaint pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure and pursuant to California's Anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16. The Motion should be denied in its entirety.

III. **ARGUMENT**

A. **The Court Has Subject Matter Jurisdiction Because Plaintiff Has Alleged Violation of a Federal Statute and Because There Is Complete Diversity Under 28 U.S.C. § 1332(a).**

Defendants' first argument is that the Complaint must be dismissed for lack of subject matter jurisdiction because Plaintiff "cannot show that any federal statutory violation has occurred" and because Plaintiff "lacks standing" to assert any of his claims. *See* Mot. at 4-6. Defendants' position appears to be based on a fundamental misunderstanding of federal jurisdiction and a failure to read or acknowledge the jurisdictional allegations of the Complaint.

Plaintiff pleads two separate bases for subject matter jurisdiction: (1) federal question jurisdiction based on Defendants' violation of the CFAA; and (2) complete diversity of citizenship. (Compl. ¶¶ 6-8); *see also* 18 U.S.C. § 1030(g); 28 U.S.C. § 1332(a). Defendants inexplicably ignore diversity jurisdiction in their Motion. They do not dispute the sufficiency of Plaintiff's diversity allegations; and they make no attempt to show that, as a factual matter, the requirements for diversity jurisdiction are not present in this case. To the extent their papers address diversity-related issues at all, the Motion bolsters Plaintiff's allegations of diversity and supports the exercise of jurisdiction under 28 U.S.C. § 1332(a). (*See, e.g.,* Ziegler Decl. ¶¶ 4, 17 (confirming Defendants' Illinois and Wyoming residences).)

Even if diversity jurisdiction did not exist, the Court would have subject matter jurisdiction based on Plaintiff's claim for violation of the CFAA. The CFAA is a federal statute that "subjects to criminal liability anyone who 'intentionally accesses a computer without authorization or exceeds authorized access,' and thereby obtains computer information." *Van Buren v. United States,* 141 S. Ct. 1648, 210 L. Ed. 2d 26, 33 (2021), *citing* 18 U.S.C. § 1030(a)(2). "It defines the term 'exceeds authorized access' to mean 'to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter.'" *Id.*, *citing* 18 U.S.C. § 1030(e)(6). Subsection (a)(2)'s prohibition initially barred accessing only certain financial information. *Id*. But it "has since been expanded to cover any information from any computer 'used in or affecting interstate or foreign commerce or communication.'" *Id., citing* 18 U.S.C. § 1030(e)(2)(B). "As a result, the prohibition now applies—at a minimum—to all information from all computers that connect to the internet." *Id.*, *citing* 18 U.S.C. §§ 1030(a)(2)(C), (e)(2)(B). In addition to criminal penalties, violators face civil liability under the CFAA's private cause of action, which allows persons suffering "damage" or "loss" to sue for money damages and equitable relief. *Id., citing* 18 U.S.C. § 1030(g).

Defendants claim federal question jurisdiction should be deemed not to exist in this case because Plaintiff "cannot show that any federal statutory violation has occurred." *See* Mot. at 4. At this stage, Plaintiff is not required to prove the merits of his federal claim. Plaintiff need only show his federal claim is not "absolutely devoid of any merit." *See, e.g., Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) (*citing In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1490 (9th Cir. 1985); *see also Hagans v. Lavine,* 415 U.S. 528, 538, 548 (1974) (federal claim is insubstantial only if it is clearly foreclosed by prior decisions or otherwise patently without merit). Merely alleging that a federal claim lacks merit is not sufficient to affect jurisdiction. *Shapiro v. McManus*, 577 U.S. 39, 45 (2015); *see also Benalcazar v. Genoa Twp*., 1 F.4th 421, 425 (6th Cir. 2021) (explaining that the "threshold question" is "do the federal questions raised by this complaint legitimately create federal court jurisdiction because they are not so frivolous as to be a contrived effort to create such jurisdiction?"); *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 681 (7th Cir. 2014) ("When it comes to invoking federal jurisdiction, the bar is low.").

Here, Defendants argue that Plaintiff's CFAA claim is "frivolous," that Plaintiff "lacks standing," and that Plaintiff somehow is "not a real party in interest" because "[n]either the CFAA nor the CCDAFA authorize a party whose data has been copied to assert a civil action over any computer, device or system not in their possession." Mot. at 5. This argument, which appears throughout the Motion, is simply wrong. Neither the CFAA nor the CCDAFA contain any requirement that Plaintiff must "own," "possess," or "control" the physical device that Defendants accessed. To the contrary, both statutes authorize Plaintiff to assert claims under the circumstances of this case. *See* 18 U.S.C. § 1030(g) (extending civil remedy to "any person" who suffers damage or loss); Cal. Pen. Code § 502(e)(1) (extending civil remedy to owners of "data" who suffer damage or loss). Likewise, neither statute insulates Defendants from liability merely because they claim to have accessed a "copy" of Plaintiff's data on a "hard drive" obtained from a third party, rather than accessing data stored on a physical device "exclusively" owned and controlled by Plaintiff. *See, e.g.,* 18 U.S.C. § 1030(a)(2) and (a)(4); Cal. Pen. Code § 502. Defendants' ownership-and-control argument is inconsistent with both the language and purpose of the CFAA and the CCDAFA, and it has been rejected by the Ninth Circuit. *See Theofel,* 359 F.3d at 1078 (holding "district court erred by reading ownership or control requirement into the [CFAA]").

Finally, Defendants attack subject matter jurisdiction on the grounds that Plaintiff's CFAA claim is untimely. This argument fails for multiple reasons. For one thing, statutes of limitations "ordinarily are not jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.,* 568 U.S. 145, 154 (2013). Where, as here, the statute of limitations is not expressly identified as "jurisdictional," it must be treated as not affecting the court's subject matter jurisdiction. *Id.* at 153-154*; see also Musacchio v. United States*, 577 U.S. 237, 246 (2016) (time bar jurisdictional "only if Congress has 'clearly stated' that it is"). Moreover, the untimeliness of a federal claim would not deprive the Court of subject matter jurisdiction over state law claims, where, as here, Plaintiff's state claims are timely, and the requirements of diversity jurisdiction have been met.

More fundamentally, Defendants' untimeliness argument fails because Plaintiff asserted his claim for violation of the CFAA "within 2 years of the date of the act complained of or the date of the discovery of the damage," as required. 18 U.S.C. § 1030(g). Plaintiff alleges—and Defendants

1  concede—that Defendants spent many months "accessing" and "analyzing" the data, from at least

2  "September 2021 through October 2022."  (Compl. ¶ 21; *see* Ziegler Decl. ¶ 6.)  Defendants have

3  refused to cease and desist, and they appear to be continuing to engage in unlawful data access.  Thus,

4  by their own admission, most, if not all, of Defendants' "acts" of unauthorized access to Plaintiff's data

5  occurred within the statute; and separate CFAA violations are continuing to accrue every day.

6  Defendants' limitations defense provides no basis for dismissal, whether under Rule 12(b)(1) or

7  otherwise.  *See Phreesia, Inc. v. Certify Glob., Inc.*, 2022 WL 911207, at *10 (D. Md. Mar. 29, 2022)

8  (holding "separate accrual" approach applies to CFAA claims and refusing to dismiss where Plaintiff

9  "alleges potential CFAA violation occurring within the limitations period").

10  **B.**  **The Court Has Personal Jurisdiction Over Defendants, and Venue in the Central**

11  **District of California Is Proper.**

12  **1.**  ***Plaintiff Easily Establishes Specific Personal Jurisdiction Here.***

13  A district court's exercise of personal jurisdiction over a nonresident defendant comports with

14  due process when the defendant has at least minimum contacts with the forum and subjecting the

15  defendant to suit in the forum will "not offend traditional notions of fair play and substantial justice."

16  *See, e.g., Ayla LLC v. Ayla Skin Pty Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (internal citation omitted).

17  Specific jurisdiction exists where a defendant (1) purposefully directed his activities toward or

18  purposefully availed himself of conducting business with the forum; (2) the plaintiff's claims "arise out

19  of or result from" the defendant's forum-related activities; and (3) the exercise of jurisdiction is

20  reasonable.  *See id.*  The plaintiff bears the burden on the first two prongs, and if they are established,

21  the defendant "must come forward with a 'compelling case' that the exercise of jurisdiction would not

22  be reasonable."  *Id.* (quoting *Boschetto v. Hansing,* 539 F.3d 1011, 1016 (9th Cir. 2008)).  And where a

23  motion to dismiss is based on written materials rather than an evidentiary hearing, "the plaintiff need

24  only make a prima facie showing of jurisdictional facts" to defeat the motion.  *Id.* at 978 (quoting

25  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

26  Where, as here, Plaintiff's claims sound in tort, courts use the "purposeful direction" test to

27  evaluate the first prong, which is satisfied where the defendant (1) committed an intentional act, (2)

28  expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in

9

the forum state.  *See Ayla LLC*, 11 F.4th at 980 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).  Under

this test, courts focus "on the forum in which the defendant's actions were felt, whether or not the

actions themselves occurred within the forum."  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et

L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).  Although express aiming requires "conduct

directly targeting the forum" beyond mere knowledge that the plaintiff lives in the forum state, *Ayla

LLC*, 11 F.4th at 980, "*all* of a defendant's contacts with the forum state" must be examined in the

jurisdictional analysis.  *Yahoo! Inc.* 433 F.3d at 1207 (emphasis added).

Defendants do not dispute that Plaintiff lives in California and suffered the relevant harm in

California due to Defendants' wrongful hacking and publication of his private data.  Nor could they,

given that Defendants' "Report" repeatedly mentions Plaintiff's purported conduct in California and

Plaintiff's California residency has been publicized since at least 2019.  (Declaration of Gregory A. Ellis

("Ellis Decl.") Ex. A.)  And although the moving papers try to cast Defendants' contacts with California

as being limited to the availability of their purportedly passive website within the state (Mot. at 8, 10-

11), the evidence belies that notion.  Rather, Ziegler's own declaration, his own internet postings, and

statements out of his own mouth all demonstrate that Defendants repeatedly and expressly aimed their

conduct at California in their wrongful exploitation of Plaintiff's private data.

<u>Ziegler's Declaration Admissions Establishing California Contacts</u>:  Ziegler notes that the

"Report" Defendants prepared using Plaintiff's data is available at the website bidenreport.com.

(Ziegler Decl. ¶ 8 & n.1.)  Prominently displayed on that website is a "Purchase" button, allowing users

to spend $50.00 for a hardcopy of the report.  (Ellis Decl. ¶ 6 & Ex. E).  Clicking the purchase button,

in turn, links to a purchase page operated by Stripe.com, a California-based entity whose purchase terms

are governed by California law.  *See* www.stripe.com/legal/consumer, Section 12.  The fact that the

website allows purchases precludes any claim by Defendants that their website is purely passive, as their

own case authority establishes.  *See Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal.

1999) (cited in Motion at. 11, finding website not passive where it allowed users to purchase the product

at issue).[2]

---

[2] Defendants' other "website" cases are similarly distinguishable, or help Plaintiff.  In *Pebble Beach Co. v. Caddy*,
the defendant hotel's website only included an inquiry form and did not allow visitors to make reservations.  *See*
453 F.3d 1151, 1154 (9th Cir. 2006).  The website in *Cybersell, Inc. v. Cybersell, Inc.* likewise only allowed users

10

1    Ziegler also admits that "over six million unique IP addresses have reviewed the *Report* on the

2    *Marco Polo* website," (Ziegler Decl. ¶ 12) and that "less than ten percent of *Marco Polo's* supporters

3    reside in California." (*Id.* ¶ 16.) Although Ziegler uses the intentionally-vague term "supporters," the

4    figures in his declaration indicate that nearly 600,000 people may have viewed the Report from

5    California. And if Defendants argue that "supporters" refers to financial donors, the Ninth Circuit has

6    found as few as 13 subscribers of a publication in California were sufficient to support personal

7    jurisdiction in the tort context. *See Gordy v. Daily News, L.P.*, 95 F.3d 829, 831, 834 (9th Cir. 1996) (13

8    to 18 subscribers – or 0.0017% of *New York Daily News* subscriber base – were sufficient to support

9    personal jurisdiction); *see also College Source, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1071 (9th Cir.

10   2011) (reversing grant of motion to dismiss in case alleging violations of CFAA and CCDAFA, holding

11   personal jurisdiction existed where 300 subscribers in California).[3]

12   <u>Defendants' Express Direction Toward California in Preparing the Report:</u> In multiple interviews

13   with right-wing broadcasters, Ziegler claimed that he and his team[4] called "each and every person that is

_____

to email the defendant. *See* 130 F.3d 414, 415-416 (9th Cir. 1997). In *Schwarzenegger*, the defendant had a website that was "available for viewing" but apparently did not allow for purchases through the site. 374 F.3d at 799. And in *Bancroft & Masters v. Augusta Nat'l, Inc.*, the Ninth Circuit *reversed* a grant of a motion to dismiss, holding that personal jurisdiction existed where the defendant had a website available in California and also sent a cease and desist letter from Georgia to Virginia that was intended to affect plaintiff in California. 223 F.3d 1082, 1087-88 (9th Cir. 2000). Here, Defendants acted in both Illinois and California to affect Plaintiff in California.

[3] Moreover, Ziegler has indicated in interviews that he tracks *where* and *who* accesses the Marco Polo website – and has called out site visitors from California. In his interview on the Steve Bannon *War Room* podcast, Ziegler stated that a California state legislator had visited one of Marco Polo's websites to search for her name. (Ellis Decl. Ex. B at 2.)

Ziegler's assertions about Defendants' website views and support from California also demonstrate that the Court should exercise its discretion to allow jurisdictional discovery, should it still have questions about jurisdiction even after reviewing Plaintiff's evidence. *See, e.g., Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672-73 (S.D. Cal. 2001) (noting that courts have broad discretion in allowing jurisdictional discovery, citing multiple authorities). Here, discovery would be appropriate to address the following issues, at a minimum: the total number of Defendants' financial supporters based in California; the percentage of their total financial supporters based in California; the total amount of money donated from California; the percentage of Defendants' monetary donations emanating from California; the total number of unique website viewers from California; the percentage of unique website viewers from California; the number and percentages of website purchases of hardcopies of the Report emanating from California locations; and the number of California residents Ziegler sent hardcopies of the Report to in his "carpet-bombing" campaign, discussed *infra*.

[4] It is unclear whether the "team" of individuals who assisted Defendants with their data-related activities includes any California residents. In his declaration, Ziegler attests he has "hired no employees or independent contracts [sic] to conduct business in California, nor do any of *Marco Polo's* board members reside in California." (Ziegler Decl. ¶ 13.) But this careful wording leaves open many potential California connections, including the possibility that some aspects of Defendants' unlawful data-related activities occurred in California and/or were perpetrated by California residents who were assisting Defendants in a capacity other than as "employees or independent

11

named in this report" in the course of its preparation. (Ellis Decl. Exs. C at 13; D at 8-9.)  These contacts
included numerous California residents.  The Report includes tables of purported "crimes," several of
which supposedly took place in "C.D. Cal." and "N.D. Cal."  Of those, the table sets out, in the "Who"
column, fifteen telephone numbers with California area codes.  (*Id*. Ex. E at 233-35, 400-01.)  Ziegler
knew full well these contacts were based in California.  Ziegler also has bragged about an elaborate
"catfishing" operation he and his associates performed on Plaintiff's attorney and friend, California
resident Kevin Morris, in preparing the Report.  (Ellis Decl. Exs. F at 4-5; G at 9-12.)  The operation
included Defendants using "two private investigators" to "look into Kevin Morris for about a month"
(presumably in California), posing to Morris as someone friendly to Plaintiff "over the course of
weeks," and then "feeding" Morris with what Ziegler now claims to be "false information" about
manipulation of the data belonging to Plaintiff.  (Ellis Decl. Ex. G at 10.)

These sixteen-plus contacts are more than enough to establish express, purposeful direction
toward California.  *See, e.g., College Source, Inc.*, 653 F.3d at 1078-79 (9th Cir. 2011) (pointing to
defendant's calls to plaintiff in California as supporting jurisdiction); *Calder*, 465 U.S. at 785, 788
(using sources of information in California supported exercise of jurisdiction); *Gordy*, 95 F.3d at 831
(using California sources for defamatory article supported exercise of jurisdiction).

<u>Ziegler's Express Direction Toward California in Promoting the Report:</u>  On or about December
16, 2023, Ziegler posted a photo of himself on Instagram in front of the Chateau Marmont Hotel in West
Hollywood, holding a copy of the Report.  (Ellis Decl. Ex. H.)  Likewise, on or about November 1,
2022, Ziegler posted a Rumble video of himself in San Francisco, entitled "Report on the Biden Laptop:
CA Field Trip," again promoting the Report. (*Id*. Ex. I.)  On top of physically entering into California,
Ziegler's social media posts reflecting his entry into California support the exercise of jurisdiction.  *See
Yue v. Yang*, 62 Cal. App. 5th 539, 543, 547-48 (2021) ("California-focused" social media messages,
including statement that defendant "arrived in California," supported jurisdiction).  Ziegler also reached
into California virtually, appearing on a YouTube broadcast run by two Southern California residents, to
promote the Report.  (Ellis Decl. Ex. G; *see Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020

---

contractors."  The location of Defendants' "team" members is another appropriate topic for jurisdictional
discovery.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:23-cv-07593-HVD-KS

APP 0133

(9th Cir. 2002) (advertising in forum state, combined with even a passive website, justified exercise of jurisdiction). Defendants also sent the Report to a substantial number of Californians. In a podcast with pardoned felon Roger Stone, Ziegler said that he sent the Report to "all 4,000 contacts on Hunter's laptop." (Ellis Decl. Ex. D at 8.) In addition to the sixteen California contacts noted above, Ziegler thus sent the Report to other California residents identified in the Report, including but not limited to an FBI agent in the San Francisco field office. (*Id*. Ex. E at 22.) Defendants even sent the Report to the personal residence of one of Plaintiff's California-based attorneys. (*Id*. ¶ 12.) Likewise, Ziegler told conservative commentator Eric Metaxas that he was "carpet bombing" the Report by sending it to media outlets around the country, likely adding to the total copies Defendants sent to California. (*Id*. Ex. C at_1-2.) Courts in the Ninth Circuit have held that as few as thirteen to eighteen mailings into the forum state are sufficient to support jurisdiction—fewer than what Defendants admit to sending here. *See e.g.*, *Gordy*, 95 F.3d at 834 ("13 or 18 subscriptions are enough to count as a connection when distributed in the state where the target is domiciled and will suffer most from damage to his reputation."). Taken together, all these contacts with California demonstrate "physical entry into the State – either by the defendant in person . . . goods, mail, *or some other means*," *Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494, 501 (D.N.J. 2017) (emphasis in original, exercising personal jurisdiction in CFAA case), and are more than sufficient to satisfy the "purposeful availment. . . purposeful direction of activities at the forum; or. . . some combination thereof" to create personal jurisdiction. *Yahoo, Inc.!*, 433 F.3d at 1206.

<u>The Claim "Arises Out of" Defendants' California Contacts:</u> To satisfy the "arising out of" prong, a plaintiff need only show that a "direct nexus exists between the defendant's contacts and the cause of action." *See Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 894 (9th Cir. 1996). Ziegler's own statements again evidence that nexus. In his interview with Metaxas, Ziegler expressly tied the credibility of the Report to Defendants' contacts with the persons listed in the Report, claiming that because he called "each and every person that is named in this report" (including the multiple California-based contacts noted above), "It's all real." (Ellis Decl. Ex. C at 13.) Moreover, Plaintiff suffered harm in California from Defendants' misuse of his data, further supporting this prong. *See Rio Props., Inc.*, 284 F.3d at 1021; *see also Yahoo! Inc.*, 433 F.3d at 1206. This harm to Plaintiff is

something that Defendants specifically intended, as is apparent from Ziegler's public statements in which he frequently celebrates his data theft as a "digital colonoscopy."  (Ellis Decl. Ex. J at 2, 7.)

<u>Exercising Jurisdiction in California is Reasonable</u>:  Defendants concede that they have the burden of presenting a "compelling case" on the reasonableness prong to avoid the exercise of jurisdiction (Mot. at 10-11), but they do not come close to doing so.  They cite the seven-factor "reasonableness" test set forth in *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993), but only address two of the factors in passing, claiming they "did not intentionally target California" and "the evidence is located in Illinois."  Mot. at 12.  The first assertion is false, and the second is incomplete. As demonstrated above, Ziegler admits he repeatedly and intentionally targeted California, knowing that Plaintiff lives here.  And the fact that Plaintiff lives in California and will offer critical testimony regarding the data at issue and the injuries he suffered due to Defendants' hacking, makes the "evidence" factor a wash at best.  Moreover, "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured." *Gordy*, 95 F.3d at 836 (internal citation omitted).  Jurisdiction is proper here.

### 2.  *Venue Is Proper in the Central District.*

Many of the facts supporting personal jurisdiction—Ziegler's calls to people in the Central District, his visit to the Chateau Marmont to promote the Report, and his contacts with webcasters in Southern California—also support venue here.  Just as importantly, courts in the Ninth Circuit have determined that in a tort claim, the venue where a plaintiff suffered harm is sufficient to support venue under 28 U.S.C. § 1391(b)(2).  *See, e.g., Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001); *Sherles v. Fox*, 2018 WL 3046429, at *8 (W.D. Wash. June 20, 2018); *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 755 (N.D. Cal. 2015).  As discussed above, Plaintiff suffered injury in the Central District.

"A plaintiff's choice of venue is generally given substantial weight and a defendant normally 'must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.'" *Id.* at 751 (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).  Defendants fail to make any showing, let alone a strong one, to defeat venue.  Their argument largely parrots general venue factors, but they concede that in evaluating venue, the "entire sequence of events

1   underlying the claim" is relevant—and that here, the relevant sequence of events includes their website

2   "and publications" of Plaintiff's data.  (Mot. at 13.)  To the extent they mention *any* facts, Defendants

3   mischaracterize both their own conduct and the nature of Plaintiff's harm.  Defendants claim that their

4   only relevant acts were "Ziegler's decisions about what content to post on his website" (*Id.*)—

5   conveniently ignoring the bevy of California contacts Ziegler made in developing and publicizing the

6   content of his website.  And in describing the harm at issue, Defendants myopically focus only on the

7   physical location of Plaintiff's devices from which his data was taken, even though Plaintiff suffered

8   other harms, including, for example, investigative costs, and even though the CCDFA allows for the

9   recovery of "compensatory damages" generally.  *See* Cal. Penal Code § 502(e)(1); *cf. Myers v. Bennett*

10  *Law Offices*, 238 F.3d at 1074 (internal citation omitted) (noting that in "'right of privacy' cases the

11  primary damage is the mental distress from having been exposed to public view" and that such harm

12  "can only be felt" where plaintiff resides).[5]

13          **C.      Plaintiff's Factual Allegations, As Well As Defendants' Admissions, Support**

14                  **Liability Under Federal and State Anti-Hacking Laws.**

15          Defendants' arguments under Rule 12(b)(6) are similar to their arguments under Rule 12(b)(1).

16  For the most part, they ignore Plaintiff's allegations and insist in sweeping terms that Plaintiff cannot

17  allege any viable theory against them because they accessed a "copy" of Plaintiff's data files rather than

18  accessing a physical "computer" that Plaintiff "owns" or "exclusively controls."  *See* Mot. at 15 (arguing

19  no CFAA claim because "Plaintiff alleges no facts which demonstrate Defendants ever accessed any

20  computer, storage, or service which Plaintiff either owns or has exclusive control over"); Mot. at 17

21  (arguing CCDAFA "requires a defendant to access a computer or device belonging to, or controlled by,

22  the Plaintiff").  This argument is wrong.  For the reasons discussed below, Plaintiff properly and

23  sufficiently has alleged each of his claims.

24          ***1.      Plaintiff Has Pled a Violation of the CFAA.***

25          Plaintiff's first cause of action alleges Defendants violated the CFAA.  Defendants seek

26  dismissal of this claim under Rule 12(b)(6) on the grounds that: (1) Plaintiff has not alleged the elements

27

28  ---
    [5] Ziegler himself tries to protect his own privacy on this Motion: his declaration does not identify his hometown, or
    where he executed the declaration.  (Ziegler Decl.)

of a CFAA violation; (2) Plaintiff has not alleged that Defendants' access was "without authorization"; and (3) Plaintiff does not allege a "recoverable loss" within the meaning of the statute.  None of these arguments has merit.

In the Complaint, Plaintiff alleges that Defendants violated the CFAA in three respects: (1) section 1030(a)(2)(A) (unauthorized access of records of "financial institution," "card issuer," or "consumer reporting agency") (Compl. ¶ 34); (2) section 1030(a)(2)(C) (unauthorized access of "information from any protected computer") (Compl. ¶ 35); and (3) section 1030(a)(4) (unauthorized access of protected computer "knowingly and with intent to defraud" where access furthers the fraud and accesser obtains thing of value) (Compl. ¶ 36).  Plaintiff seeks redress for these violations pursuant to section 1030(g), which provides in relevant part:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.  A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (I), (II), (III), (IV) or (V) of subsection (a)(4)(A)(i).

18 U.S.C. § 1030(g).  Here, Plaintiff alleges that Defendants' conduct involves the factor described in subsection (a)(4)(A)(i)(I), which proscribes conduct that causes "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." (Compl. ¶ 37.)

Defendants insist that Plaintiffs have not pled the elements of a CFAA violation, but their arguments are refuted by the CFAA's statutory language and Plaintiff's factual allegations, which align precisely with Ninth Circuit requirements.  In *LVRC Holdings,* the Ninth Circuit stated the essential elements of a civil claim for violations of sections 1030(a)(2) and 1030(a)(4);

> "[T]o bring an action successfully under 18 U.S.C. § 1030(g) based on a violation of 18 U.S.C. § 1030(a)(2), [plaintiff] must show that [defendant]:  (1) intentionally accessed a computer,[6] (2) without authorization or exceeding authorized access, and that he (3)

---

[6] The term "computer" is defined broadly to include "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device."

16

thereby obtained information (4) from any protected computer (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value.  To bring an action successfully under § 1030(g) based on a violation of § 1030(a)(4), [plaintiff] must show that [defendant]:   (1) accessed a 'protected computer,' (2) without authorization or exceeding such authorization that was granted, (3) 'knowingly' and with 'intent to defraud,' and thereby (4) further[ed] the intended fraud and obtain[ed] anything of value,' causing (5) a loss to one or more persons during any one-year period aggregating at least $5,000 in value.

*See LVRC Holdings LLC v. Brekka,* 581 F3d 1127, 1132 (9th Cir. 2009), *citing* 18 U.S.C. § 1030(a).

Plaintiff has alleged each of these elements in detail.  (Compl. ¶¶ 2, 16-18, 20-22, 24-29 (access); ¶¶ 4, 17-18, 21-23, 28-30, 34-36 (without authorization); ¶¶ 22, 24, 27-29 (information obtained); ¶¶ 2, 16, 18-22, 24-26, 28-29, 35-36 (protected computer); ¶ 37 (economic "loss" of type recoverable)). Plaintiff's allegations do not simply recite the elements of a CFAA claim.  Rather, they "contain sufficient allegations of underlying facts to give fair notice and to enable [Defendants] to defend [themselves] effectively. . . [and they] plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Nothing more is required.  *Id; see also Netapp, Inc. v. Nimble Storage,* 41 F. Supp. 3d 816, 833-834 (N.D. Cal. 2014) (no requirement that CFAA claims be pled with particularity unless "fraudulent conduct is specifically alleged as the basis for the wrongdoing").

Defendants attack the sufficiency of the CFAA claim for Plaintiff's purported failure to plead facts that need not be pled.  For example, Defendants insist that Plaintiff cannot state a viable CFAA claim because he has not alleged that "Defendants accessed any computer, storage, or service which Plaintiff either owns or has exclusive control over."  *See* Mot. at 15.  This is the same erroneous argument Defendants raise under Rule 12(b)(1).  As discussed, the CFAA says nothing about

---

18 U.S.C. § 1030(e)(1).  A "protected computer" is a "computer" which is "used in or affecting interstate or foreign commerce or communication…"  18 U.S.C. § 1030(e)(2)(B).

"ownership" and "control" of the physical device that is accessed, and the Ninth Circuit expressly held that ownership and control are not required:

> "The district court erred by reading an ownership or control requirement into the Act. The civil remedy extends to '*[a]ny person* who suffers damage or loss by reason of a violation of this section.' 18 U.S.C. § 1030(g) (emphasis added). '"[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.' . . . Nothing in the provision's language supports the district court's restriction. Individuals other than the computer's owner may be proximately harmed by unauthorized access, particularly if they have rights to data stored on it."

*Theofel,* 359 F.3d at 1078 (internal citations omitted); *see also* Model Jury Instr. 8.94A.

Defendants also argue it is "questionable whether Plaintiff has adequately alleged that Defendants accessed a 'protected computer'" as defined in the CFAA. *See* Mot. at 14. A "protected computer" is "any computer used in or affecting interstate or foreign commerce or communication." *Id.*; *citing* 18 U.S.C. § 1030(e)(2)(B). The term "computer" includes any "electronic, magnetic, optical, electrochemical, or other high speed data processing device performing . . . storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device. . . ." 18 U.S.C. § 1030(e)(1). As the Supreme Court recently explained, the statute's prohibition "now applies—at a minimum—to all information from all computers that connect to the internet." *Van Buren,* 141 S. Ct. at 1652. Here, Plaintiff alleges—and Defendants appear to admit—facts establishing that Defendants accessed a "protected computer." At a minimum, they admit to having accessed a "hard drive" containing data belonging to Plaintiff, including data allegedly stored on Plaintiff's iPhone backup. The data at issue was sent and received over the internet before Defendants accessed it. And after accessing the data, Defendants connected it to the internet so that it could be accessed by the public. They created "an online searchable database of 128,000 emails found on the Biden laptop" as well as a public website to house "almost 10,000 photos"; and they provided the public with metadata and ready access to the password-protected files stored on the iPhone backup. (Compl. ¶¶ 22, 24, 25, 29.) These allegations are more than sufficient to allege Defendants accessed a

"computer" that is "used in or affecting interstate or foreign commerce or communication." *See* 18 U.S.C. §§ 1030(e)(1), (e)(2).

Next, Defendants claim that "Plaintiff does not allege unlawful access to a computer with the meaning of the CFAA." Mot. at 14. But the Complaint includes many factual allegations establishing the unauthorized and unlawful nature of Defendants' data access. Defendants admit to having "accessed" and "analyzed" Plaintiff's data from at least September 2021 until at least October 2022. (Compl. ¶ 21; *see also* Ziegler Decl. ¶ 6.) Plaintiff sent a cease-and-desist demand, which Defendants ignored. (Compl. ¶ 30.) Moreover, Defendants admit that, with respect to at least some data, they gained access by circumventing technical and code-based barriers. (Ziegler Decl. ¶ 21.) Thus, Defendants' own evidence proves their access was "unauthorized" and "without permission" as a matter of law. *See, e.g., Facebook, Inc. v. Power Ventures, Inc.*, *supra,* 2010 WL 3291750, at *11.

Finally, Defendants argue that Plaintiff has failed to allege a "recoverable loss." The CFAA permits the recovery of losses incurred as a result of investigating and responding to Defendants' violations of the CFAA. *See* 18 U.S.C. § 1030(e)(11) ("the term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service"). This is precisely what Plaintiff has alleged. Plaintiff alleges that he suffered "direct costs, incurred during any one-year period, of investigating and responding to Defendants violations of the CFAA in excess of $5,000 in value." (Compl. ¶ 37.) Contrary to Defendants' claims, Plaintiff is not seeking "legal expenses, lost profits or other consequential damages" in connection with his CFAA claim; Plaintiff's request for those damages is asserted in connection with the state law claims. (*Cf.* Compl. ¶ 37 with Compl. ¶¶ 44-47.)[7]

---

[7] Defendants raise their statute of limitations defense as a basis for dismissing Plaintiff's CFAA claim under Rule 12(b)(6) as well as under Rule 12(b)(1). For reasons discussed above, the defense is inapplicable because the Complaint alleges—and Defendants appear to admit—that they engaged in numerous acts of unlawful access within the limitations period. *See supra* at 9-10, *citing Phreesia, Inc.*, 2022 WL 911207, at *29; *see also Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1207 (9th Cir. 1995) ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.")

### 2.    *Plaintiff Has Pled a Violation of the CCDAFA.*

Plaintiff's second cause of action alleges Defendants violated the CCDAFA, which is codified in California Penal Code § 502.  The CCDAFA is broader than the CFAA in several respects, and Plaintiff's allegations are more than adequate to state a viable CCDAFA claim.

The Complaint alleges violations of Sections 502(c)(1), (c)(2), (c)(3), and (c)(7) of the CCDAFA, which provide as follows:

(c) Except as provided in subdivision (h),[8] any person who commits any of the following acts is guilty of a public offense:

(1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

(2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

(3) Knowingly and without permission uses or causes to be used computer services. . . .

(7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Cal. Pen. Code § 502(c).  The statute's private right of action is provided in Section 502(e).  *See* Cal. Pen. Code § 502(e)(1).

The Ninth Circuit has distinguished the CCDAFA from the CFAA:

"The statutes are different.  In contrast to the CFAA, the California statute does not require *unauthorized* access.  It merely requires *knowing* access.  *Compare* 18 U.S.C. § 1030(a)(2) *with* Cal. Penal Code § 502(c)(2).  What makes that access unlawful is that the person 'without permission takes, copies or makes use of data on the computer.  A plain reading

---

[8] Subdivision (h) exempts "acts which are committed by a person within the scope of his or her lawful employment." Cal. Pen. Code § 502(h)(1).

of the statute demonstrates that its focus on unauthorized taking or use of information. In contrast, the CFAA criminalizes unauthorized *access*, not subsequent unauthorized use. *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). The term "access" as used by the CCDAFA has been defined broadly, and it plainly includes activities such as those alleged here. *Id.* (term "access" as used in CCDAFA "includes logging into a database with a valid password and subsequently taking, copy, or using the information in the database improperly"); *see also Facebook Inc. v. Power Ventures*, 844 F.3d 1058, 1069 (9th Cir. 2016) (once defendant was told to cease and desist it "knew that it no longer had permission to access [plaintiff's] computers at all").

Defendants argue (again) that Plaintiff cannot state a CCDAFA claim because the statute "requires a defendant to access a computer or device belonging to, or controlled by, Plaintiff." Mot. at 17. For support, they point to the California jury instructions governing CCDAFA claims, claiming that the instruction "specifically requires a showing of ownership and control of the accessed computer as a prerequisite of liability." *Id., citing* CACI No. 1812. The jury instruction says no such thing. The instruction tracks the language of the statute, which applies to anyone who "knowingly accesses" another person's "*data*," not merely to those who access another person's device or computer. *See* CACI No. 1812 (first element requires plaintiff to prove that he is the **[owner/lessee] of the** [*specify computer, computer system, computer network, computer program, and/or data*]; *see also* Cal. Penal Code § 502(e)(1) (authorizing "owner or lessee of computer, computer system, computer network, computer program, or data who suffers damage or loss" to bring civil action).

Defendants also argue that Plaintiff "does not present any facts that Defendants acted without permission." Mot. at 23. But this argument also is based on their mischaracterization of the CCDAFA jury instruction. There is nothing in the instruction that requires Plaintiff to plead or prove "ownership of the hard drive in Defendants' possession [as] a necessary prerequisite to" showing that Defendants' data was "without permission." Liability can arise from proof that Plaintiff owns "data" that Defendants "knowingly accessed" and used "without permission." *See* CACI No. 1812. Moreover, any argument that Defendants acted "with permission" would be specious, given their use of Plaintiff's passwords to access his password-protected files and their disregard of Plaintiff's prelitigation demand to cease and desist.

21

Finally, Defendants claim "Plaintiff does not allege that he suffered damages" under Section 502. But the Complaint contains factual allegations that contradict their argument. (*See, e.g.*, Compl. ¶¶ 19-21, 25, 27-29, 39-44.) The CCDAFA provides, in addition to any other civil remedy available, the owner of data who suffers "damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief." *See* Cal. Pen. Code § 502(e)(1). Compensatory damages include but are not limited to "any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." *Id*. The statute authorizes an award of reasonable attorneys' fees as well as punitive damages in appropriate cases.

### 3. Plaintiff Has Pled a Valid UCL Claim.

Defendants present a cursory attack on Plaintiff's third cause of action for violation of California's UCL, arguing primarily that the UCL claim fails because Plaintiff's CFAA and CCDAFA claims are deficient. For reasons already discussed, Plaintiff's CFAA and CCDAFA claims are, in fact, supported by Plaintiff's well-pleaded allegations and Defendants' admissions. Plaintiff is entitled to pursue his UCL claim based on Defendants' unlawful activities. *See Committee on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 209-10 (1983) (an unlawful business activity includes anything that can properly be called a business practice and that at the same time is forbidden by law); *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable"); *see also Famous Birthdays, LLC v. SocialEdge, Inc.*, 2022 WL 1591723, at *6 (C.D. Cal. Apr. 15, 2022) (denying dismissal of UCL claim because it is "based on all the prior causes of action including . . .the CFAA and CDAFA claims, and those prior claims can be construed to form separate and independent bases for the UCL claim.")

//

//

//

//

**D.** **Plaintiff's Claims Are Not Subject to California's Anti-SLAPP Statute Because the Allegations Do Not Arise from Protected Activity.**

Defendants' final argument is that the entire lawsuit should be dismissed pursuant to California's anti-SLAPP statute. Defendants fail to appreciate that the anti-SLAPP statute does not apply to federal claims. *See Hilton v. Hallmark Cards,* 599 F.3d 894, 901 (9th Cir. 2010). To the extent Defendants seek dismissal of Plaintiff's CFAA claim on anti-SLAPP grounds, their motion must be denied. As far as Plaintiff's state law claims, they cannot be dismissed because Defendants cannot make the requisite prima facie showing that anti-SLAPP statute applies and, regardless, the claims have much more than "minimal merit." *See, e.g., Governor Gray Davis Comm. v. Am. Taxpayers Alliance,* 102 Cal. App. 4th 449, 456 (2002) (internal citation omitted) ("Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning activity *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.")

**1.** *Plaintiff's Claims Do Not Arise from Protected Activity.*

Defendants cannot make their initial "prima facie" showing that Plaintiff's claims arise from protected activity.

In determining whether Defendants have shown that Plaintiff's claims "arise from" protected activity, "the critical consideration is whether the cause of action is *based* on defendant's protected free speech or petitioning activity." *Navellier v. Sletten,* 29 Cal. 4th 82, 89 (2002). At this first step, courts should "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." *Park v. Bd. of Trustees of California State Univ.*, 2 Cal. 5th 1057, 1063 (2017). "The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." *Bonni v. St. Joseph Health Sys.,* 11 Cal. 5th 995, 1009 (2021) (internal citation omitted). Importantly, "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." *Id.* at 1012*; see also Park,* 2 Cal. 5th at 1060 ("claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted").

Here, Defendants do not even attempt to show that Plaintiff's claims, as alleged in the Complaint, "arise from" Defendants' free speech.  Defendants insist that their website is a "public forum," that Plaintiff is a "person in the public eye," and that the so-called "Biden Laptop" has been "a topic of widespread" public interest for some time.  Mot. at 21-22.  They claim that there have been "thousands of news articles" about the "laptop," and they proudly trumpet the "[m]ore than six million unique IP addresses [that allegedly] have reviewed the report on Defendants' website."  *Id.* at 22.  But none of these purported "facts" supports application of the anti-SLAPP statute in this case.  Plaintiff did not sue Defendants for creating a website, for publishing their "Report," or for any of the many false, defamatory, and malicious statements they have made about Plaintiff over the past two-plus years.  Plaintiff carefully pleaded his claims to ensure that they are based solely on Defendants' "accessing, tampering with, manipulating, altering, copying and damaging" of Plaintiff's computer data," and not on Defendants' free speech.  Therefore, the anti-SLAPP statute does not apply.  *See Malin v. Singer,* 217 Cal. App. 4th 1283, 1303 (2013) (claims based on allegations of illegal wiretapping and computer hacking "do not fit one of the categories of protected activities defined by the Legislature in section 425.16, subdivision (e)" and, therefore, are not subject to anti-SLAPP dismissal); *Gerbosi v. Gaims, Weil, West & Epstein, LLP,* 193 Cal. App. 4th 435, 444 (2011) (alleged criminal conduct including wiretapping and privacy invasions "does not fall within 'protected activity' as defined by the anti-SLAPP statute"); *cf. Hudson Martin v. Forsyth,* 2017 WL 1315576, at *3 (N.D. Cal. Apr. 7, 2017) (defendant's alleged conduct in "*accessing* the firm's computers and *taking* data" did not constitute protected activity; alleged conduct in using the data to gain an advantage in litigation did).

### 2.  *Plaintiff's Claims Are Likely to Succeed*

Even if Defendants could somehow show that some aspect of Plaintiff's claims arises from protected activity, they would not be entitled to dismissal because the evidence obtained already shows Plaintiff is likely to succeed on the merits of his CCDAFA and UCL claims.

If the court determines that relief is sought based on allegations arising from protected activity, then "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated."  *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016*)*.  "The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if

24

1   accepted by the trier of fact, would be sufficient to sustain a favorable judgment." *Id.* Where there is a

2   conflict in evidence, the Court may grant the motion only "if, as a matter of law, the defendant's

3   evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the

4   claim." *Hilton,* 599 F. 3d at 901 (internal citations and quotation omitted).

5        Here, there is ample evidence already to sustain a favorable judgment on Plaintiff's CCDAFA

6   and UCL claims.  The evidence available to date indicates that, through means that are not entirely clear,

7   Defendants came to possess data belonging to Plaintiff.  (Ziegler Decl. ¶ 5.)  After gaining possession of

8   Plaintiff's data, Defendants proceeded to access the data without Plaintiff's authorization or consent.

9   (Declaration of Robert Hunter Biden ("Biden Decl.")[9] ¶¶ 2-3; Ziegler Decl. ¶¶ 5-6, 21.)  Defendants'

10  activities included locating Plaintiff's password and using the password to gain access to Plaintiff's

11  password-protected data.  (Ziegler Decl. ¶¶ 20-21.)  Plaintiff never authorized or consented to

12  Defendants' activities.  (Biden Decl. ¶¶ 2-3.)  To the contrary, Plaintiff demanded that Defendants cease

13  and desist their unlawful activities, but this demand has been ignored.  (Biden Decl. ¶ 3.)  Defendants

14  have refused to cease or desist and continuously have accessed, tampered with, and manipulated data

15  belonging to Plaintiff, as proven by Defendant Ziegler's own sworn testimony in this case.  (Biden Decl.

16  ¶ 4; Ziegler Decl. ¶¶ 8, 11, 12, and 24.)

17  ## IV.   **CONCLUSION**

18       Much of Defendants' Motion to Dismiss is argument on their version of facts and bald assertions

19  regarding the merits of the claims made.  This is not a proper argument for dismissing a well-pled

20  Complaint at this initial stage of a case.  Where there is an attack of a legal issue, such as jurisdiction,

21  Defendants misread or misapply the law.  This too defeats the argument.  For all the reasons addressed

22  in this filing, Defendants' Motion to Dismiss must be denied.

---

[9] Plaintiff's declaration, filed concurrently herewith, is submitted solely for the purpose of addressing the second prong of the anti-SLAPP inquiry.  *See, e.g., Monster Energy Co. v. Schechter*, 7 Cal. 5th 781, 788 (2019) (if defendant meets initial burden, then court moves to second step "accept[ing] the plaintiff's evidence as true, and evaluat[ing] the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.").

APP 0146

Dated: February 29, 2024

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Paul B. Salvaty*
    Paul Salvaty
    Abbe David Lowell
    Attorneys for Plaintiff

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By: */s/ Bryan M. Sullivan*
    Bryan M. Sullivan
    Zachary C. Hansen
    Attorneys for Plaintiff

APP 0147

1  TYLER LAW, LLP
   Robert W. Tyler (SBN 179572)
2  rtyler@tylerlawllp.com
3  Nathan R. Klein (SBN 306268)
   nklein@tylerlawllp.com
4  Mariah R. Gondeiro (SBN 323683)
5  mgondeiro@tylerlawllp.com
   25026 Las Brisas Road
6  Murrieta, California 92562
   Telephone: (951) 600.2733
7  Facsimile:  (951) 600.4996

8  Attorneys for Attorneys for Defendants **Garrett
   Ziegler** and **ICU, LLC**
9

10           **UNITED STATES DISTRICT COURT**

11          **CENTRAL DISTRICT OF CALIFORNIA**

12

13 | ROBERT HUNTER BIDEN, an | Case No.: 2:23-cv-07593-HVD-KS |
   individual,

14                                   *Honorable Hernan D. Vera*
             Plaintiff(s)            *Magistrate Judge Karen L. Stevenson*

15
        v.                          **DEFENDANTS' NOTICE OF
16                                   MOTION AND MOTION TO
   GARRETT ZIEGLER, an individual;   DISMISS PURSUANT TO RULES
17 ICU, LLC, a Wyoming limited liability   12(b)(1), 12(b)(2), 12(b)(3), AND
   company d/b/a Marco Polo, and DOES   12(b)(6) OF THE FEDERAL RULES
18 1 through 10, inclusive,           OF CIVIL PROCEDURE AND
                                     SECTION 425.16 OF THE
19           Defendant(s)            CALIFORNIA CODE OF CIVIL
                                     PROCEDURE**

20
                                     Date:   February 15, 2024
21                                   Time:   10:00 a.m.
                                     Ctrm:   5B
22

23        **TO EACH PARTY AND THEIR ATTORNEYS OF RECORD:**

24        **PLEASE TAKE NOTICE** that on February 15, 2024, at 10:00 a.m., in

25 Courtroom 5B of the above-mentioned courthouse, Defendants Garrett Ziegler and

26 ICU, LLC, a Wyoming limited liability company (collectively "Defendants"), will

27 and hereby move to dismiss Plaintiff Robert Hunter Biden's complaint ("Complaint")

28 in its entirety.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on Monday, December 11, 2023.

This motion is made pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure and section 425.16 of the California Code of Civil Procedure and is supported by the concurrently filed memorandum of points and authorities, request for judicial notice and exhibits attached thereto, the [proposed] order, oral argument to be presented at the time of the hearing, and on all other such items the Court may consider.

DATED:  December 21, 2023

TYLER LAW, LLP

By: /s/ Robert H. Tyler
Robert H. Tyler, Esq.
Attorneys for Defendants **Garrett Ziegler**
and **ICU, LLC**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

III. ARGUMENT

   A.   Plaintiff's Lawsuit Is Subject To Dismissal Under Rule 12(b)(1) For Lack Of Subject Matter Jurisdiction. .................................................... 4

   B.   Plaintiff's Lawsuit Is Further Subject To Dismissal Under Rule 12(b)(1) For Lack Of Standing. ................................................................ 5

   C.   Plaintiff's Lawsuit Is Subject To Dismissal Under Rule 12(b)(2) For Lack Of Personal Jurisdiction. ................................................................ 7

      1.   Defendants Do Not Have the Necessary "Continuous and Systematic Contacts" with California to Confer General Jurisdiction over It. ........ 7

      2.   Plaintiff Cannot Satisfy the Three-Part Test for Limited Jurisdiction over Defendants. ................................................................ 9

   D.   Plaintiff's Lawsuit Is Subject To Dismissal Under Rule 12(b)(3) For Improper Venue. ................................................................ 12

   E.   Plaintiff's Lawsuit Is Subject To Dismissal Under Rule 12(b)(6) For Failure To State A Claim. ................................................................ 13

      1.   Plaintiff's Claim Falls Outside the Statute of Limitations of the Computer Fraud And Abuse Act, 18 U.S.C. § 1030. .......................... 13

      2.   Plaintiff Does Not State A Claim under the Computer Fraud And Abuse Act, 18 U.S.C. § 1030 ................................................................ 14

      3.   Plaintiff Does Not State A Claim under the Comprehensive Computer Data Access and Fraud Act ................................................................ 17

      4.   Plaintiff Does Not State A Claim for Unfair Businesses Practices under California Business and Professions Code § 17200 ................. 18

   F.   Plaintiff's Lawsuit Is Subject To Dismissal Under Rule 12(b)(6) And California Code Of Civil Procedure § 425.16. ....................................... 19

      1.   Defendants' Speech Constitutes Protected Activity ........................... 20

      2.   Plaintiff Does Not Have A Probability of Prevailing on the Merits ... 22

III. CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

Cases

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
  666 F. Supp. 2d 1109 (C.D. Cal. 2009) ...................................................... 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 16

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
  223 F.3d 1082 (9th Cir. 2000) ....................................................... 8, 10, 11

*Barrett v. Rosenthal*,
  40 Cal.4th 33 (2006) ............................................................................. 21

*Beneficial Nat'l Bank v. Anderson*,
  539 U.S. 1 (2003) .................................................................................... 5

*Boaz v. Boyle & Co.*,
  40 Cal.App.4th 700 (1995) .................................................................. 8, 9

*Brill Media Co., LLC v. TCW Group, Inc.*,
  132 Cal. App. 4th 324 (2005) .............................................................. 19

*Brown Jordan v. Carmicle*,
  846 F.3d 1167 (11th Cir. 2017) ........................................................... 16

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .............................................................................. 10

*Calder v. Jones*,
  465 U.S. 783 (1984) .............................................................................. 10

*Camacho v. Automobile Club of Southern California*,
  142 Cal.App.4th 1394 (2006) ............................................................... 18

*Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
  20 Cal.4th 163 (1999) ........................................................................... 18

*Clark v. Burleigh*,
  4 Cal. 4th 474 (1992) ............................................................................ 21

*Cooper v. Simpson Strong-Tie Company, Inc.*,
  460 F. Supp. 3d 894 (N.D. Cal. 2020) ................................................. 6, 7

*Coremetrics, Inc. v. AtomicPark.com, LLC*,
  370 F.Supp.2d 1013 (N.D. Cal. 2005) ..................................................... 8

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir.1993) ......................................................... 7, 11, 12

*Cottman Transmission Sys., Inc. v. Martino*,
  36 F.3d 291 (3d Cir. 1994) ................................................................... 12

*Cybersell, Inc. v. Cybersell, Inc.*,
  130 F.3d 414 (9th Cir. 1997) ................................................................ 11

DEFENDANTS' MOTION TO DISMISS COMPLAINT

*Daimler v. AG Bauer*,
134 S. Ct. 746 (2014) ........................................................................................7

*Damon v. Ocean Hills Journalism Club*,
85 Cal. App. 4th 468 (2000) ...........................................................................21

*Doe v. American Nat'l Red Cross*,
112 F.3d 1048 (9th Cir. 1997) ........................................................................11

*Equilon Enterprises, LLC v. Consumer Cause, Inc.*,
29 Cal. 4th 53 (2002) ................................................................................19, 20

*FilmOn.com Inc. v. DoubleVerify Inc.*,
7 Cal. 5th 133 (2019) ..........................................................................20, 21, 22

*In re Apple Inc. Device Performance Litig.*,
347 F. Supp. 3d 434 (N.D. Cal. 2018) ...........................................................14

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945) ...........................................................................................7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ...........................................................................................4

*Lawler v. Tarallo*,
No. C 13-03284 MEJ, 2013 WL 5755685 (N.D. Cal. Oct. 23, 2013)............12

*Lieberman v. KCOP Television, Inc.*,
110 Cal. App. 4th 156 (2003) .........................................................................22

*Louisville & Nashville R. Co. v. Mottley*,
211 U.S. 149 (1908) ...........................................................................................5

*Matson v. Dvorak*,
40 Cal. App. 4th 539 (1995) ...........................................................................21

*Miller v. 4Internet, LLC*,
433 F. Supp. 3d 1188 (D. Nev. 2020) .............................................................14

*Mintz v. Mark Bartelstein & Assoc. Inc.*,
906 F. Supp. 2d 1017 (C.D. Cal. 2012) ..........................................................17

*Oneida Indian Nation of N.Y. v. County of Oneida*,
414 U.S. 661 (1974) ...........................................................................................5

*Pac. Surrogacy U.S., L.L.C. v. Bai*,
No. SA CV 19-01456-DOC (JDEx), 2019 WL 8129615 (C.D. Cal. Nov. 5, 2019)
...........................................................................................................................19

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ........................................................................10

*Rivero v. American Federation of State, County, and Municipal Employees, AFL-
CIO*,
105 Cal. App. 4th 913 (2003) .........................................................................20

*Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*,
974 F.3d 756 (6th Cir. 2020) ..........................................................................16

*Salu, Inc. v. Original Skin Store*,

DEFENDANTS' MOTION TO DISMISS COMPLAINT

2008 WL 3863434, Case No. CIV. S-08- 1035 FCD/KJM (E.D. Cal. August 13, 2008), ...................................................................................................9, 10

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ....................................................................9, 10

*Sewell v. Bernardin*,
795 F.3d 337 (2d Cir. 2015) ......................................................................5, 13

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)...............................................................................................5

*Stomp, Inc. v. NeatO, LLC*,
61 F.Supp.2d 1074 (C.D. Cal. 1999) ...............................................................11

*Van Buren v. United States*,
141 S. Ct. 1648, (2021).................................................................14, 15, 17, 22

*Vogel v. Felice*,
127 Cal. App. 4th 1006 (2005) .........................................................................21

*Wilcox v. Superior Court*,
27 Cal. App. 4th 809 (1994) ..............................................................................19

*Wong v. Tai Jing*,
189 Cal.App.4th 1354 (2010) ...........................................................................21

*Woodke v. Dahm*,
70 F.3d 983 (8th Cir. 1995) ...............................................................................12

Statutes

18 U.S.C. § 1030.........................................................................................i, 13, 14
18 U.S.C. § 1030(a)(2)(A) and (C)..................................................................2
18 U.S.C. § 1030(a)(2)(C) ...............................................................................5
18 U.S.C. § 1030(a)(2)(C) and (a)(4) ...........................................................14
18 U.S.C. § 1030(c)(a)(4)(A)(i)(I).................................................................16
18 U.S.C. § 1030(e)(1) ......................................................................................14
18 U.S.C. § 1030(e)(1)-(2)...............................................................................14
18 U.S.C. § 1030(e)(2)(B) ...............................................................................14
18 U.S.C. § 1030(e)(11) ....................................................................................16
18 U.S.C. § 1030(g) .......................................................................................5, 13
28 U.S.C. § 1391(b)(2) .....................................................................................12
Cal. Bus. Prof. Code § 17200 ......................................................................i, 18
Cal. Code Civ. Proc.§ 425.16(b)(l)...............................................................20
Cal. Penal Code § 502 .........................................................................17, 18, 19
Cal. Penal Code § 502(a) .............................................................................5, 17
Cal. Penal Code § 502(e)(1) ............................................................................18

DEFENDANTS' MOTION TO DISMISS COMPLAINT

# I. INTRODUCTION

Plaintiff filed this action in retaliation against Defendants for publishing information, media, and emails originating from the files of the infamous "Biden Laptop." The Plaintiff, a public figure and son of the current U.S. President, abandoned his laptop computer at a Delaware repair shop. The shop owner turned the Biden Laptop over to the FBI on or around October 2019 after discovering disturbing material. Soon after, media outlets gained access to emails and documents found on the Biden Laptop, resulting in a media storm of allegations against Hunter Biden and President Biden regarding potential foreign compromise. By April 2021, Plaintiff appeared in a TV interview discussing the Biden Laptop files found in Delaware and distributed across the internet. Over two years after the dissemination of the Biden Laptop files, Plaintiff inexplicably files this lawsuit against Defendants. Instead of challenging the media outlets, Plaintiff filed half-baked legal challenges against Defendants right before an election season involving his father. Plaintiff's challenges are largely premised on a report Defendants prepared about Hunter Biden as part of their mission of investigating foreign compromise within government. Defendants relied on copies of files from the Biden Laptop that have been widely circulated since the public learned about the Biden Laptop. This Court should dismiss Plaintiff's lawsuit for the following reasons.

*First*, the Court lacks subject matter jurisdiction because Plaintiff does not state a viable claim under the Computer Fraud and Abuse Act. Plaintiff also lacks standing to bring any claim against Defendants, as he cannot establish a causal connection between Defendants' conduct and his alleged injuries.

*Second*, Plaintiff cannot establish personal jurisdiction. Defendants do not have the necessary continuous and systematic contacts with California to confer general jurisdiction over it. Plaintiff cannot establish specific jurisdiction either, as Defendants have not purposely directed their activities towards California.

*Third*, Plaintiff has not stated a claim for relief under the Computer Fraud and

APP 0154

1 Abuse Act and its analog, the Comprehensive Computer Data and Access Fraud Act.

2 Plaintiff's claim for unfair business practices also fails because it is predicated on the

3 first two causes of action.

4     *Fourth*, Plaintiff's lawsuit is subject to an anti-SLAPP. Defendants' conduct

5 constitutes protected activity because it involves a public figure and is a matter of

6 public importance. Plaintiff cannot demonstrate meritorious claims either.

7     Accordingly, this Court should dismiss the Complaint with prejudice under

8 Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil

9 Procedure and section 425.16 of the California Code of Civil Procedure.

10 ## II. FACTUAL AND PROCEDURAL BACKGROUND

11     Plaintiff filed this action on September 13, 2023, alleging that Defendants

12 violated the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. § 1030(a)(2)(A)

13 and (C) for "intentionally accessing a computer without authorization or exceeding

14 authorized access, and thereby obtaining information," along with a claim under its

15 California analog, the Comprehensive Computer Data and Access Fraud Act

16 ("CCDAFA"), and a claim for unfair business practices. (Complaint ("Compl."), ECF

17 No. 1). Defendants now respond with a motion to dismiss pursuant to Rule 12(b) of

18 the Federal Rules of Civil Procedure and section 425.16 of the California Code of

19 Civil Procedure.

20     On April 12, 2019, Plaintiff visited a computer repair shop in Wilmington,

21 Delaware, owned by John Paul Mac Isaac, requesting the shop recover information

22 on a laptop computer he dropped off earlier. (RJN, Ex. 1, ¶ 19). The following day,

23 Plaintiff returned to the shop with an external hard drive, requesting Plaintiff transfer

24 the recovered data, as evidenced by a quote sent by Mac Isaac to Plaintiff. (*Id.*, ¶ 20;

25 Ex. 2).

26     In the process of copying the files, Mac Isaac noticed alarming evidence on

27 Plaintiff's computer and eventually contacted the FBI. (*Id.*, Ex. 4, p. 12). The FBI

28 served Mac Isaac on December 9, 2019 with a Grand Jury Subpoena. (*Id*, Ex. 3). The

1  electronics remain in possession of the FBI, who analyzed the electronics as part of a

2  criminal investigation that was included in the Congressional testimony of IRS

3  Criminal Supervisory Special Agent Gary A. Shapley, Jr. (*Id.*, Ex. 4, pp. 3, 12-16).

4  Information found on the Biden Laptop is now relevant in a criminal case involving

5  alleged tax crimes by Plaintiff and is pending before this Court. (*Id.*, Ex. 20).

6      Prior to the FBI taking possession of Plaintiff's damaged laptop and the

7  external hard drive, on or around August 28, 2020, Mac Isaac sent a copy of the laptop

8  data to Robert Costello, an attorney for Rudy Giuliani. (*Id.*, Ex. 1, ¶¶ 26, 28; Ex. 17,

9  ¶¶ 24-26). By October 13, 2020, Plaintiff's attorney, George Mesires, wrote to Mac

10  Isaac asking for the return of the laptop. (*Id.*, Ex. 1, ¶ 31; Ex. 17, ¶ 31). On October

11  14, 2020, the New York Post published an article about an email found in the Biden

12  Laptop files that suggested that Joe Biden met with Hunter Biden's foreign business

13  partners. (*Id.*, Ex. 6). Thousands of news articles have been published, sourced from

14  countless copies of the data, widely available in the public domain, including a

15  complete duplicate at a publicly accessible website named "MEGA NZ." (Compl. at

16  ¶ 18). MEGA.NZ is a web-based file hosting service operated by MEGA LIMITED,

17  a registered New Zealand Limited Company. (RJN, Exhs. 14-16.)

18      Despite this extensive dissemination, Plaintiff selectively chose to file a

19  lawsuit against Defendants. More than two years before filing this action, on or around

20  April 4, 2021, Plaintiff appeared in a TV interview discussing a laptop found in

21  Delaware that: included information about him. (*Id.*, Ex. 18). Although Plaintiff

22  asserts "the precise manner by which Defendant Ziegler obtained Plaintiff's data

23  remains unclear", he admits that Jack Maxey, Rudy Giuliani, and MEGA NZ have

24  copies of his Laptop files and further admits these parties are sources of Defendants'

25  copy of the Biden Laptop. (Compl. at ¶¶ 17-18). Plaintiff fails to allege, and cannot

26  allege, that he had any ownership or exclusive right of control over any of the Laptop's

27  files or drives now possessed by third parties. In fact, Plaintiff plainly admits that his

28  data was *first* possessed by third parties, stating that the Laptop's "data appears to

have been tampered with, manipulated, altered and damaged *both before Defendants received it* and after it was obtained by Defendants." (Compl. at ¶ 19 (emphasis added)).

The Complaint lacks specific details about any computer Plaintiff claims Defendants hacked. It mentions an iPhone backup, but a backup is a "copy of files and programs made to facilitate recovery if necessary", not a computer or storage system itself. (Compl. at ¶¶ 40-41; RJN, Ex. 10). Plaintiff accuses Defendants of "knowingly accessing and without permission taking and using data from" Plaintiff's devices or "cloud" storage (Compl. at ¶¶ 40, 41), computer service (*id.* at ¶ 42), or protected computer (*id.* at ¶ 35) but fails to identify a single device Defendants accessed without authorization. The Complaint blithely disregards the publication and possession of the Biden Laptop files, including entities that possessed and circulated the data long before Defendants ever obtained a copy. (RJN, Exhs. 6-8).

Plaintiff selectively cites to Defendant Ziegler's December 2022 remarks about decrypting a specific file which stored the passcode to the iPhone backup file, both of which were on Defendants' copy of the Laptop. (Compl. at ¶ 29). The Complaint falsely suggests Defendants "hacked" into Plaintiff's iPhone backup. (Zeigler Decl. at ¶ 19). Defendants received a copy of Plaintiff's iPhone backup file which existed as part of the files. (*Id.* at ¶ 20). When Defendants received the external hard drive, it contained passcodes, which allowed access to the iPhone backup file. (*Id.* at ¶ 21).

### III. ARGUMENT

**A.** **Plaintiff's Lawsuit Is Subject To Dismissal Under Rule 12(b)(1) For Lack Of Subject Matter Jurisdiction.**

The Court lacks subject matter jurisdiction because Plaintiff cannot show that any federal statutory violation has occurred. "It is to be presumed that a cause lies outside [of federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). When determining whether

4

a claim arises under federal law, a court must "examine the 'well pleaded' allegations of the Complaint and ignore potential defenses: '[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.'" *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (jurisdiction upheld) (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) (jurisdiction lacking)). A federal court lacks jurisdiction over a purported claim involving federal law "when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citing *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)).

A plaintiff must bring a CFAA action within two years from either: the date of defendant's act or the date plaintiff discovers the unauthorized computer access or damage. 18 U.S.C. § 1030(g). The key inquiry in determining when the limitation period accrues is when the plaintiff learns of the unauthorized access or damage, even if the identity of the perpetrator is unknown. *Sewell v. Bernardin*, 795 F.3d 337, 340 (2d Cir. 2015). The Complaint discloses no violation of the CFAA within the statute of limitations period, and this Court should therefore dismiss this case for lack of subject matter jurisdiction. *See Infra*, at 12-15.

**B.  Plaintiff's Lawsuit Is Further Subject To Dismissal Under Rule 12(b)(1) For Lack Of Standing.**

Neither the CFAA nor the CCDAFA authorize a party whose data has been copied to assert a civil action over any computer, device, or system not in their possession. *See* 18 U.S.C. § 1030(a)(2)(C); Cal. Penal Code § 502(a); *Infra*, at 12-16. Causation of injury must be predicated upon the ability to show a right of ownership and control over the computer, device, or system. *Id.* Without it, Plaintiff lacks standing to maintain an action, as he is not a real party in interest under either statute.

Plaintiff rests the gravamen of his Complaint upon a repeated mantra of

DEFENDANTS' MOTION TO DISMISS COMPLAINT

"access," "copying," and "damage" to his computer files in an attempt to persuade the Court that he has suffered a tangible, redressable injury. (Compl. at ¶¶ 16-21, 27-30). Plaintiff lacks standing in this case because, as both Plaintiff's admissions and Defendants' evidence indicate, there is no causal connection between Defendants' conduct and Plaintiff's alleged injuries. Indeed, Plaintiff alleges he is unaware of how the public accessed his data. (*Id.* at ¶¶ 16-21, 27-30).

Additionally, Plaintiff's repeated assertions of lack of knowledge render him unable to plausibly contest the well-documented circumstances that every party in litigation concerning the Laptop have testified in various fora, including investigating law enforcement officials for the U.S. Government. (RJN, Exhs. 4, 6). As described in the facts above, Plaintiff delivered his damaged computer and external hard drive to repairman John Paul Mac Isaac at his shop in Delaware. (*Id.*, Ex. 1, ¶¶ 19-20). Mac Isaac was responsible for transferring the file contents from Plaintiff's computer onto the external hard drive. Mac Isaac has proffered a signed work order invoice that is evidence in a Delaware lawsuit between he and Plaintiff. (*Id.*, Ex. 2).

Plaintiff further admits that Defendants merely possess a copy of the Biden Laptop and that other parties gave copies of the Biden Laptop to Defendants. (Compl. at ¶ 18; Zeigler Decl. at ¶ 5). Plaintiff cannot demonstrate that the device in Defendants' possession ever belonged to him. Absent that ownership right, Plaintiff cannot prove that Defendants caused him any injury under either the CFAA or CCDAFA and, therefore, does not have standing to bring the first two causes of action.

This Court should also dismiss Plaintiff's claim regarding unfair business practices for lack of standing as well. "In determining whether the UCL . . . [applies] to non-California residents, courts consider where the defendant does business, whether the defendant's principal offices are located in California, where class members are located, and the location from which advertising and other promotional literature decisions were made." *Cooper v. Simpson Strong-Tie Company, Inc.*, 460

6

F. Supp. 3d 894, 911 (N.D. Cal. 2020). The critical issues [ ] are whether the injury occurred in California and whether the conduct of Defendants occurred in California." *Id.* Defendants do not conduct business in California, nor is their principal place of business in California. (Ziegler Decl. at ¶¶ 13-17). Plaintiff cannot establish that his injury transpired in California either. (*Id.* at ¶¶ 5, 17). Plaintiff, therefore, does not have standing to sue under section 17200.

**C.  Plaintiff's Lawsuit Is Subject To Dismissal Under Rule 12(b)(2) For Lack Of Personal Jurisdiction.**

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Core-Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1484 (9th Cir.1993) (citation omitted). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.* at 1484 (citation omitted). As the United States Supreme Court has long held, the assertion of personal jurisdiction over a nonresident defendant will comport with constitutional due process only if the defendant has sufficient "minimum contacts" with the state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

**1.  Defendants Do Not Have the Necessary "Continuous and Systematic" Contacts" with California to Confer General Jurisdiction over the State.**

This Court lacks general jurisdiction over Defendants under the Supreme Court's decision in *Daimler v. AG Bauer*, 134 S. Ct. 746 (2014). To determine whether general jurisdiction exists, the relevant inquiry is whether "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* at 761 (cleaned up). The Ninth Circuit has held that when determining whether a court's exercise of general jurisdiction over a defendant is

appropriate, "[f]actors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

Defendant Ziegler resides in Illinois. (Compl. at ¶ 12). Defendants hired no employees or independent contractors to conduct business in California, has made no sales in California, and does not have a California agent for service of process or any California license or incorporation. (Ziegler Decl. at ¶ 14). Plaintiff seeks to link Defendants to California through Plaintiffs' operation of a website accessible across the world. (Compl. at ¶ 12). However, the operation of a website does not satisfy the physical presence necessary for general jurisdiction.

Federal courts in California have consistently held that the maintenance of even a highly interactive website, by itself, is not enough to establish general jurisdiction. *Coremetrics, Inc. v. AtomicPark.com*, LLC, 370 F.Supp.2d 1013, 1019-20 (N.D. Cal. 2005). "[I]t is now common for businesses of all types to have an internet website, typically with interactive capability through which customers can communicate with the business and order products. If general jurisdiction were to be predicated on these types of contacts alone, most businesses would be subject to personal jurisdiction in every forum." *Id.* at 1020 (citations omitted); *see also Love v. The Mail on Sunday*, 2006 U.S. Dist. LEXIS 95469, Case No. CV 05-7798 ABC (PJWx) at *11-*12 (C. D. Cal. July 18, 2006) ("[P]ersonal jurisdiction should not be based solely on the ability of forum state residents to access an Internet site within the forum state because that does not by itself show any persistent course of conduct by the defendants.") (citations omitted).

Indeed, courts have declined to exercise general jurisdiction even where the defendant's contact with the forum was more extensive and specific. For example, in *Boaz v. Boyle & Co.*, 40 Cal.App.4th 700, 715-17 (1995), the nonresident defendant's contact consisted of targeting mailers to physicians, advertising principally in national

8

medical publications, and deriving 9% of its sales from the forum's physicians. The court found that the defendant's level of activity in the forum did not justify the assertion of general jurisdiction. *Id.* at 717-18. Likewise, in *Salu, Inc. v. Original Skin Store*, 2008 WL 3863434, Case No. CIV. S-08- 1035 FCD/KJM, at *3 (E.D. Cal. August 13, 2008), the court refused to exercise general jurisdiction over a website that sold products through an eBay virtual store accessible to consumers across the country. "Plaintiff's contention that 14% of a $50,000 business operation is comprised of sales to California and that business cards are sent in conjunction with delivery of product shipments falls far short of establishing the equivalence of physical presence under the 'exacting standard' required to demonstrate general jurisdiction." *Id.*

Plaintiff claims jurisdiction in California is appropriate because Defendants' website "includes specific disclosures incorporating California consumer protection and privacy laws and purporting to exercise rights under those laws…." (Compl. at ¶ 12). This allegation is woefully inadequate to establish jurisdiction and is not supported by case law.

## 2. Plaintiff Cannot Satisfy the Three-Part Test for Limited Jurisdiction over Defendants.

The Court may exercise "limited" or "specific" personal jurisdiction if each part of the three prong test is satisfied: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the

9

plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

*First*, "[e]vidence of availment is typically action taking place *in* the forum that invokes the benefits and protections of the laws in the forum," whereas "[e]vidence of direction generally consists of action taking place *outside* the forum that is directed at the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (emphasis added). Plaintiff does not allege that Defendants took any action from inside California. Rather, Plaintiff alleges that Defendants have taken actions outside California by operating a website that was accessible in California. (Compl. at ¶ 12). Therefore, the purposeful availment test is inapplicable. *Salu*, 2008 WL 3863434 at *4.

Defendants have not purposefully directed their activities toward California either. The purposeful direction test is evaluated under the three-part "effects" test based on *Calder v. Jones*, 465 U.S. 783 (1984). The test "requires that the defendant allegedly have: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (citations omitted). The Plaintiff must show that there was an "individualized targeting" of California residents by the defendant. *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). For example, in *Pebble Beach Co.*, the court held that the defendant engaged in no "individualized targeting" by registering the domain name "pebblebeach-uk.com" and operating a passive website at that domain, even though he knew that plaintiff resided in the forum. 453 F.3d at 1157. The Court held that the operation of a website that is not expressly aimed at California does not give rise to jurisdiction. *Id.*

In analyzing Internet contacts, the Ninth Circuit has adopted a "sliding scale" approach under which jurisdiction is "directly proportionate to the nature and quality

10

of commercial activity that an entity conducts over the Internet." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997). A mere web presence is insufficient to establish jurisdiction. Thus, "passive" websites, which the Ninth Circuit has described as those that merely post information, or on which consumers cannot make purchases, do not give rise to jurisdiction. *Bancroft & Masters*, 223 F.3d at 1086; *Cybersell*, 130 F.3d at 418.

Plaintiff cannot show that Defendants committed any alleged intentional act that was "expressly aimed" at California because there was no "individualized targeting" of California residents by Defendants. (Ziegler Decl. at ¶ 16). Defendants do not charge users, nor do they engage in for-profit sales of products. (*Id.* at ¶ 15). Defendants' website was passive because it solely existed for "informational purposes." *Stomp, Inc. v. NeatO, LLC*, 61 F.Supp.2d 1074, 1078 (C.D. Cal. 1999).

*Second*, even if Plaintiff satisfied the first prong, he cannot satisfy the second prong, which requires he show that his claims would not have arisen but for Defendants' contacts with California. *Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997). Defendants' display of information on their website cannot satisfy this test because the infringement alleged by Plaintiff would have occurred even if Defendants' website was not accessible in California.

*Third*, even if Plaintiff satisfied the first two prongs, Defendants can defeat jurisdiction by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Core-Vent*, 11 F.3d at 1487. Courts balance the following seven factors:

(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7)

DEFENDANTS' MOTION TO DISMISS COMPLAINT

1    the existence of an alternative forum.

2  *Id.* at 1487-88 (internal citation omitted).

3        Defendants' contacts with California are attenuated. Defendants did not

4  intentionally target California, nor did the alleged data breaches occur in California.

5  (Ziegler Decl. at ¶¶ 5, 16-17). Litigating this case in Illinois also serves the interests

6  of justice because the evidence is located in Illinois. (*Id.* at ¶ 17). Even if litigating

7  outside the state will inconvenience Plaintiff, neither the Supreme Court nor Ninth

8  Circuit gives much weight to this factor. *Core-Vent*, 11 F.3d at 1490. Plaintiff has not

9  met the burden of proving that he is unable to sue Defendants in Illinois. Thus, the

10  factors tip in Defendants' favor.

11  **D.    Plaintiff's Lawsuit Is Subject To Dismissal Under Rule 12(b)(3) For**

12        **Improper Venue.**

13        Under Federal Rule of Civil Procedure 12(b)(3), a party may file a motion to

14  dismiss for improper venue. *Royal Hawaiian Orchards, L.P. v. Olson*, No. CV 14-

15  8984 RSWL (RZx), 2015 WL 3948821, at *1 (C.D. Cal. June 26, 2015) (citing Fed.

16  R. Civ. P. 12(b)(3)). Plaintiff seeks to establish venue under 28 U.S.C. § 1391(b)(2),

17  which states that venue is proper in the district where "a substantial part of the events

18  or omissions giving rise to the claim occurred." (Compl. at ¶ 9). This substantiality

19  inquiry focuses on the "relevant activities of the defendant, not of the plaintiff."

20  *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). And "[o]nly the events that

21  directly give rise to a claim are relevant." *Lawler v. Tarallo*, No. C 13-03284 MEJ,

22  2013 WL 5755685, at *3 (N.D. Cal. Oct. 23, 2013) (simplified). Venue is "intended

23  to preserve the element of fairness so that a defendant is not haled into a remote district

24  having no real relationship to the dispute." *Cottman Transmission Sys., Inc. v.*

25  *Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

26        While Plaintiff is allegedly a California resident, it is doubtful whether any

27  alleged injuries occurred in California. Plaintiff has not alleged that any devices from

28  which the alleged data breaches occurred were located in California at the time of the

12

DEFENDANTS' MOTION TO DISMISS COMPLAINT

1   alleged breaches. Further, Defendants did not obtain copies of Plaintiff's hard drive
2   in California or access his iPhone back-up in California. (Compl. at ¶ 18).

3       Even if Plaintiff did suffer harm in Los Angeles County, that "is not by itself
4   sufficient to warrant transactional venue there." Wright & Miller, 14D Fed. Prac. &
5   Proc. Juris. § 3806. Otherwise, "venue almost always would be proper at the place of
6   the plaintiff's residence, an option that Congress abolished in the general venue
7   statute." *Id.* Courts thus must look "not to a single triggering event prompting the
8   action, but to the entire sequence of events underlying the claim." *Norsworthy v. Diaz*,
9   20-CV-01859-JST, 2020 WL 10965424, at *2 (N.D. Cal. June 10, 2020) (simplified).

10      Applying this standard, Plaintiff's claims did not transpire in this District.
11  Plaintiffs' claims all arise from Defendants' website and publications. At the heart of
12  those claims are Defendant Ziegler's decisions about what content to post on his
13  website. All decision-making occurred in Illinois, the nerve center of operations for
14  ICU and the place where Ziegler resides. (Ziegler Decl. at ¶ 17). Therefore, this Court
15  should dismiss this lawsuit or transfer the case to Illinois. *See Allstar Mktg. Grp., LLC*
16  *v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009).

17  **E.   Plaintiff's Lawsuit Is Subject To Dismissal Under Rule 12(b)(6) For**
18        **Failure To State A Claim.**

19      **1.   Plaintiff's Claim Falls Outside the Statute of Limitations of the**
20            **Computer Fraud And Abuse Act, 18 U.S.C. § 1030.**

21      As an initial matter, a Plaintiff must bring a CFAA action within two years from
22  either: the date of defendant's act or the date plaintiff discovers the unauthorized
23  computer access or damage. 18 U.S.C. § 1030(g). The key inquiry in determining
24  when the limitation period accrues is when the plaintiff learns of the unauthorized
25  access or damage, even if the identity of the perpetrator is not known. *Sewell*, 795
26  F.3d at 340. While the precise date when Plaintiff first became aware of access to his
27  data by a third party is presently unknown, it must have indisputably occurred at some
28  date before Plaintiff discussed the contents of his Laptop in a TV interview on or

13

DEFENDANTS' MOTION TO DISMISS COMPLAINT

1    around April 4, 2021. (RJN, Ex. 18). Plaintiff should have filed this action by April

2    2023. Therefore, the action should be dismissed with prejudice.

3        **2.    Plaintiff Does Not State A Claim under the Computer Fraud And**

4             **Abuse Act, 18 U.S.C. § 1030.**

5        It is questionable whether Plaintiff has adequately alleged that Defendants

6    accessed a "protected computer" under 18 U.S.C. § 1030(a)(2)(C) and (a)(4). The

7    CFAA defines a computer as "an electronic, magnetic, optical, electrochemical, or

8    other high speed data processing device performing logical, arithmetic, or storage

9    functions, and includes any data storage facility or communications facility directly

10   related to or operating in conjunction with such device." 18 U.S.C. § 1030(e)(1). This

11   definition also includes cellular devices. *See In re Apple Inc. Device Performance*

12   *Litig.*, 347 F. Supp. 3d 434, 451 (N.D. Cal. 2018) (quoting 18 U.S.C. § 1030(e)(1)-

13   (2)) (holding cellular phones are protected). A "protected computer" under 1030(a)(4)

14   is a computer "which is used in or affecting interstate or foreign commerce or

15   communication." 18 U.S.C. § 1030(e)(2)(B). Courts have found this definition to

16   include "any computer connected to the internet, including servers, computers that

17   manage network resources and provide data to other computers." *Miller v. 4Internet*,

18   LLC, 433 F. Supp. 3d 1188, 1198 (D. Nev. 2020). Plaintiff's Laptop and iPhone

19   backup do not satisfy this definition because Plaintiff does not allege that the devices

20   were connected to the Internet when Defendants accessed them.

21       Moreover, Plaintiff does not allege unlawful access to a computer within the

22   meaning of the CFAA. A computer user "without authorization" is one who accesses

23   a computer the user has no permission to access whatsoever—an "outside hacker[ ]."

24   *Van Buren v. United States*, 141 S. Ct. 1648, 1658, (2021). Here, Plaintiff admitted

25   that Defendants accessed and used a hard drive that Plaintiff never possessed.

26   Specifically, Plaintiff alleges that Defendants accessed a hard drive provided by a

27   third party which contains a copy (duplicates) of files. (Compl. at ¶ 18). Plaintiff does

28   not allege that Defendants possessed or accessed Biden's computer or original files.

Plaintiff alludes to his actual iPhone and iCloud account when he alleges that "at least some of the data that Defendants have accessed, tampered with, manipulated, damaged and copied without Plaintiff's authorization or consent originally was stored on Plaintiff's iPhone and backed-up to Plaintiff's iCloud storage." (*Id.* at ¶ 28). However, Plaintiff alleges no facts which demonstrate Defendants ever accessed any computer, storage, or service which Plaintiff either owns or has exclusive control over. Likewise, the Complaint also shows facts which conclusively prove that Defendants had no need to access any service or storage because the laptop copy in their possession admittedly contained all of the necessary information, including the passcode to view all of the files contained on the Biden Laptop regardless of encryption. (*Id.* at ¶ 18). Put simply, both the encrypted iPhone backup file and the passcode to open the iPhone backup file were on the Laptop copy.

Plaintiff also attempts to conflate use of his data with unauthorized access. In *Van Buren*, the Supreme Court held the following:

> In sum, an individual "exceeds authorized access" when he accesses a computer with authorization but then obtains information located in particular areas of the computer — such as files, folders, or databases — that are off limits to him. The parties agree that Van Buren accessed the law enforcement database system with authorization.

141 S. Ct. at 1662.

This holding demonstrates that use of data from a computer is immaterial in determining liability. The Ninth Circuit expressed concern about broadening the scope of the CFAA in *U.S. v. Nosal*, as doing so would "transform the CFAA from an anti-hacking statute into an expansive misappropriation statute." 676 F.3d 854, 857 (9th Cir. 2012).

Plaintiff invites the Court to speculate as to wrongdoing on the Defendants' part – while blithely ignoring that many acknowledged copies of Plaintiff's Laptop exist, and contents have been published by other parties. (RJN, Ex. 6). Plaintiff's

15

"[t]hreadbare recitals of the elements of [the CFAA], supported by merely conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).

Finally, Biden does not allege any recoverable "loss." The CFAA defines "loss" to include: (1) "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense" and (2) "any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11); *see Brown Jordan v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017) (finding that either or both categories may suffice). Furthermore, the "loss" must amount to at least $5,000 in a one-year period. 18 U.S.C. § 1030(c)(a)(4)(A)(i)(I).

Provisions defining "damage" and "loss" specify what a plaintiff in a civil suit can recover. "[D]amage" means "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8). The term "loss" likewise relates to costs caused by harm to computer data, programs, systems, or information services. *Id.* § 1030(e)(11). The statutory definitions of "damage" and "loss" focus on technological harms – such as the corruption of files – of the type of unauthorized users cause to computer systems and data. Limiting "damage" and "loss" in this way makes sense in a scheme "aimed at preventing the typical consequences of hacking." *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 762 (6th Cir. 2020). The term's definitions are unsuitable, however, to remediate "misuse" of sensitive information that an individual permissibly accesses using their computers. *Ibid.*

Here, Plaintiff primarily alleges he incurred loss as a result of "investigating and responding to Defendants' violations of the CFAA". (Compl. at ¶ 37). But the CFAA does not provide for recovery of legal expenses, lost profits, or other consequential damages untethered to a service interruption or restoration and/or response effort. *See* 18 U.S.C. 1030(e)(11). The CFAA prohibits unauthorized access

16

to a computer, not misuse of information obtained therefrom. *See Van Buren*, 141 S. Ct. at 1659–60. Plaintiff's single reference to "direct costs, incurred during any one-year period, of investigating and responding to Defendants' violations of the CFAA" is conclusory and unsupported by any factual allegations. (Compl. at ¶ 37). This Court should therefore dismiss Plaintiff's CFAA claim because he does not allege recoverable damages.

### 3.     Plaintiff Does Not State A Claim under the Comprehensive Computer Data Access and Fraud Act.

The CCDAFA, codified in California Penal Code § 502, is intended to protect individuals from "from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). The CCDAFA is analogous to the CFAA in that it requires a defendant to access a computer or device belonging to, or controlled by, the Plaintiff. As stated in CACI No. 1812. Comprehensive Computer Data and Access Fraud Act - Essential Factual Elements (Pen. Code, § 502), Plaintiff's Complaint specifically requires a showing of ownership and control of the accessed computer as a prerequisite of liability. Judicial Council of California Civil Jury Instructions (2023).

Plaintiff does not present any facts that Defendants acted "without permission." (Compl. at ¶ 40). As the CCDAFA jury instruction indicates, ownership of the hard drive in Defendants' possession would be a necessary prerequisite to assert the right to grant or deny permission to the Defendants in order to access the files it contains. Defendants did not possess or access Plaintiff's computer or devices, let alone his original files; the Defendants, again, only possess duplicates as Plaintiff admits. And Plaintiff has not asserted (and logically cannot assert) that he ever owned or exercised any right of control over the hard drive possessed by Defendants.

Moreover, Plaintiff does not allege that he suffered damages. Section 502 "permits 'the owner or lessee' of the computer or data 'who suffers damage or loss by reason of a violation' to bring a civil action." *Mintz v. Mark Bartelstein & Assoc.*

17

*Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012); Cal. Penal Code § 502(e)(1). The Complaint does not demonstrate what actions, if any, Plaintiff did to prevent any alleged violations of section 502. The Complaint alleges that Plaintiff "notified Defendants that Defendants are not authorized to access any of his data, that they should cease doing so, and that they should return any of Plaintiff's data in their possession to Plaintiff immediately." (Compl. at ¶ 22). This assertion is meaningless and proves no damages under the CCDAFA.

In sum, the Complaint is merely an invitation to speculate and is nothing more than an attempt to use the CFAA and CCDAFA as a meritless surrogate for a deficient misappropriate claim. The Complaint states formulaic and conclusory conjecture, rather than setting forth a plain statement of facts describing actions or events giving rise to a claim under the CFAA and CCDAFA.

### 4.  Plaintiff Does Not State A Claim for Unfair Businesses Practices under California Business and Professions Code § 17200.

"To state a claim for unfair business practices, plaintiff . . . must allege that defendant . . . engaged in business conduct that was unfair, unlawful or fraudulent." Cal. Bus. & Prof. Code § 17200. Regarding the "unfairness" prong, "there is some uncertainty about the appropriate definition of the word 'unfair' in consumer cases brought under section 17200." *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1400 (2006). "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*., 20 Cal.4th 163, 187 (1999).

Here, Plaintiff has not alleged that Defendants' actions were unfair to consumers or violative of anti-trust laws. Plaintiff claims Defendants violated section

18

17200 because they "have engaged in unfair and unlawful activities in violation of the CFAA and California Penal Code section 502." (Compl. at ¶ 22). Because Plaintiff does not state a claim for relief regarding his first two causes of action, this Court should dismiss the third cause of action.

**F.    Plaintiff's Lawsuit Is Subject To Dismissal Under Rule 12(b)(6) And California Code Of Civil Procedure § 425.16.**

Additionally, the Court should note that Plaintiff's action is, quintessentially, a SLAPP action. California Code of Civil Procedure § 425.16 allows a defendant to dismiss an action aimed at chilling the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. "[T]he conceptual features which reveal themselves as SLAPP's are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 815-17 (1994). Stated another way, "SLAPP suits are brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff." *Id.* at 816. "A Court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry. First, a defendant must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech..... Second, once the defendant has made a prima facia showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Pac. Surrogacy U.S., L.L.C. v. Bai*, No. SA CV 19-01456-DOC (JDEx), 2019 WL 8129615, at *6 (C.D. Cal. Nov. 5, 2019) (internal citation omitted).

In determining whether Defendants have sustained their initial burden, the Court shall consider the pleadings, declarations, and matters that may be judicially noticed. *Brill Media Co., LLC v. TCW Group, Inc.*, 132 Cal. App. 4th 324, 339 (2005). Defendants need not show that Plaintiff's lawsuit was brought with the subjective intent to "chill" their rights of petition and free speech. *Equilon Enterprises, LLC v.*

19

1  *Consumer Cause, Inc.*, 29 Cal. 4th 53, 58 (2002). Moreover, Defendants need not
2  demonstrate that Plaintiff's Complaint actually had a "chilling" effect. *Id.* at 59.

3        **1.**     **Defendants' Speech Constitutes Protected Activity**

4        At the first step, Defendants can demonstrate that their speech encompasses the
5  "right of petition or free speech under the United States Constitution or the California
6  Constitution in connection with a public issue... " Cal. Code Civ. Proc.§ 425.16(b)(l).
7  Sections 425.16(e)(3) and (4) of the anti-SLAPP statute protects speech or non-speech
8  conduct made or done "in connection with a public issue or an issue of public
9  interest." To determine whether speech or non-speech conduct is "in connection with"
10  an issue of public interest, a court must consider both the context and the content of
11  the statements or non-speech conduct at issue through a two-part process.
12  *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149 (2019). Under the *FilmOn*
13  analysis, first, "the court is to examine what 'public issue or … issue of public interest'
14  the speech in question implicates." *Id.* In this step, the court examines the content of
15  the speech." *Id.* In the second step, the court examines the functional relationship
16  between speech and the public conversation about the matters of public interest
17  implicated. *Id.* at 149-50. In this step, the court examines the context of the speech or
18  non-speech conduct. *Id.* at 150.

19        The speech and non-speech conduct at issue in the Complaint were made in
20  connection with an issue of public interest. As discussed below, Defendants satisfy
21  both the "public issue" step and the "functional relationship" step.

22            a.    *The speech and conduct at issue in the Complaint were made or*
23  *done in connection with a public issue or an issue of public interest.*

24        *First*, an "issue of public interest" has been defined using three categories: (1)
25  a person or entity in the public eye; (2) conduct that could directly affect a large
26  number of people beyond the direct participants; or (3) a topic of widespread, public
27  interest*. See Rivero v. American Federation of State, County, and Municipal*
28  *Employees, AFL-CIO*, 105 Cal. App. 4th 913, 924 (2003). "A 'public forum' is

20

TYLERLAW ᴸᴸᴾ

traditionally defined as a place that is open to the public where information is freely exchanged." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468,475 (2000), citing *Clark v. Burleigh*, 4 Cal. 4th 474, 482 (1992). "In articulating what constitutes a matter of public interest, courts look to certain specific considerations, such as whether the subject of the speech or activity was a person or entity in the public  eye or could affect large numbers of people beyond the direct participants; and whether the activity occurred in the context of an ongoing controversy, dispute or discussion or affected a community in a manner similar to that of a governmental entity." *FilmOn*, 7 Cal.5th at 145-46. "The right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech." *Matson v. Dvorak*, 40 Cal. App. 4th 539, 548 (1995).

Defendants' website is a public forum because it is open to the public and free of charge. Courts have repeatedly held that websites that circulate newsworthy materials are public forums. *See Barrett v. Rosenthal*, 40 Cal.4th 33, 41 n. 4 (2006) ("Web sites accessible to the public, like ... 'newsgroups' ... are 'public forums' for purposes of the anti-SLAPP statute."); *see also Wong v. Tai Jing*, 189 Cal.App.4th 1354, 1366 (2010) ("It is settled that 'Web sites accessible to the public ... are public forums for purposes of the anti-SLAPP statute.' ").

The public is entitled to Defendants' comments and reports about Plaintiff Hunter Biden because they implicate President Joe Biden's "character and fitness for public office…." *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1015-16 (2005) (collecting cases). Hunter Biden is undoubtedly a person in the public eye. The Biden Laptop has been "a topic of widespread, public interest" since at least October 14, 2020, when the New York Post published an article entitled, "Smoking-gun email reveals how Hunter Biden introduced Ukrainian businessman to VP dad." (RJN, Ex. 6). The Biden Laptop was still the subject of public discussion in 2022. Thousands of news articles have been published regarding the Biden Laptop. (Compl. at ¶ 22; Ziegler Decl. at ¶¶ 10-11).

DEFENDANTS' MOTION TO DISMISS COMPLAINT

*Second*, in addressing the context of the speech under the "functional test," the *FilmOn* Court emphasized that it does not look to the substance of the speech or its social utility, by stating:

> our inquiry does not turn on a normative evaluation of the substance of the speech. We are not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction; rather, we examine whether a defendant—through public or private speech or conduct–participated in, or furthered, the discourse that makes an issue one of public interest.

7 Cal.5th at 151. "It is at the latter stage that context proves useful." *Id.* at 150.

Here, Defendants participated in the discourse that makes the Biden Laptop an issue of public interest. Defendant Ziegler created a voluminous report detailing potential violations of state and federal law. (Zeigler Decl. at ¶¶ 6-8). He also created a website to house thousands of photos and emails from the Biden Laptop and shared this information with members of the media and on social media. (*Id.* at ¶¶ 8-10). Defendants' conduct required significant "newsgathering, which therefore can be constructed as undertaken in furtherance of the news media's right to free speech." *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 166 (2003). Indeed, mainstream media has cited Defendants' report over 300 times. (Ziegler Decl. at ¶ 10). More than six million unique IP addresses have reviewed the report on Defendants' website. (*Id.* at ¶ 12). Consequently, the speech and conduct at issue in this case satisfies the second test under the *FilmOn* inquiry.

**2. Plaintiff Does Not Have A Probability of Prevailing on the Merits**

At the second step, the burden shifts to Plaintiff to demonstrate "a probability that [he] will prevail" on the merits. Cal. Code Civ. Proc. § 425.l 6(b)(l ). Defendants will not prevail on the merits for the following reasons.

*First*, a computer user "without authorization" is one who accesses a computer the user has no permission to access whatsoever—an "outside hacker[ ]." *Van Buren*,

141 S. Ct. at 1658. As a threshold matter, Plaintiff's CFAA claim fails because he did not raise the claim within the statute of limitations, rendering the entire lawsuit illegitimate for lack of subject matter jurisdiction. (RJN, Ex. 18). Defendants did not possess or access Biden's computer or original files. (Ziegler Decl. at ¶ 5). No person associated with Marco Polo has "accessed or attempted to access any computer, device, service, or system owned or controlled by Plaintiff." (*Id.* at ¶ 22). Plaintiff cannot demonstrate that he had dominion or control over the devices in the Defendants' possession. Plaintiff, therefore, will not prevail on the merits of his CFAA claim.

*Second*, and for related reasons, Plaintiff's CCDAFA claim is meritless because Plaintiff does not present any facts that Defendants acted without permission. Defendants, again, only accessed duplicate files, and never hacked into Plaintiff's backup. (*Id.* at ¶¶ 5, 19-22). Defendants' report on the Biden Laptop concerns the materials found in Defendants' copy of Plaintiff's duplicated files. (*Id.* at ¶ 23). As explained above, Plaintiff did not suffer damages under the CCDAFA. *See Supra*, at 17-18. Thus, Plaintiff's CCDAFA claim is untenable.

*Third*, Plaintiff will not prevail on his unfair business practices claim because it hinges on the first two causes of action, which are devoid of merit. Plaintiff cannot demonstrate that Defendants' actions were unfair to consumers or violated anti-trust laws either.

In sum, Defendants have demonstrated that their conduct is a protected activity because it involves a matter of significant public interest. Plaintiff cannot satisfy his burden of demonstrating meritorious claims. This lawsuit is therefore subject to anti-SLAPP.

### IV. CONCLUSION

Considering the foregoing, this Court should dismiss the Complaint with prejudice under Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the federal rules of civil procedure and section 425.16 of the California Code of Civil Procedure.

DEFENDANTS' MOTION TO DISMISS COMPLAINT

TYLERLAW LLP

DATED:  December 21, 2023

TYLER LAW, LLP

By: /s/ Robert H. Tyler
Robert H. Tyler, Esq.
Attorneys for Defendants **Garrett Ziegler**
and **ICU, LLC**

1  PAUL B. SALVATY (State Bar No. 171507)
   PSalvaty@winston.com
2  WINSTON & STRAWN LLP
   333 S. Grand Ave., 38th Fl.
3  Los Angeles, CA 90071-1543
   Telephone:  (213) 615-1700
4  Facsimile:  (213) 615-1750

5  ABBE DAVID LOWELL (*pro hac vice* forthcoming)
   AbbeLowellPublicOutreach@winston.com
6  WINSTON & STRAWN LLP
   1901 L St., N.W.
7  Washington, DC 20036-3508
   Telephone:  (202) 282-5000
8  Facsimile:  (202) 282-5100

9  BRYAN M. SULLIVAN (State Bar No. 209743)
   bsullivan@earlysullivan.com
10 ZACHARY C. HANSEN (State Bar No. 325128)
   zhansen@earlysullivan.com
11 EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
   6420 Wilshire Boulevard, 17th Fl.
12 Los Angeles, California 90048
   Telephone: (323) 301-4660
13 Facsimile: (323) 301-4676

14 Attorneys for Plaintiff
   ROBERT HUNTER BIDEN

15

16                    **UNITED STATES DISTRICT COURT**

17                   **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 18  ROBERT HUNTER BIDEN, an individual, | **Case No.**  2:23-cv-07593 |
| 19 | **COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF:** |
| 20         Plaintiff, | |
| 21           vs. | **1. VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)** |
| 22  GARRETT ZIEGLER, an individual, ICU, LLC, a Wyoming Limited Liability | |
| 23  Company d/b/a Marco Polo, and DOES 1 through 10, inclusive; | **2. VIOLATION OF THE CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT (CAL. PENAL CODE § 502)** |
| 24 | |
| 25         Defendants. | |
| 26 | **3. BUS. & PROF. CODE SECTIONS 17200 *et seq.*** |
| 27 | **DEMAND FOR JURY TRIAL** |
| 28 | |

Plaintiff Robert Hunter Biden ("Plaintiff"), for his claims against Defendant Garrett Ziegler ("Ziegler") and Defendant ICU LLC ("ICU") (collectively, "Defendants") alleges upon knowledge with respect to his own acts and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1.  Garrett Ziegler is a zealot who has waged a sustained, unhinged and obsessed campaign against Plaintiff and the entire Biden family for more than two years.  While Defendant Ziegler is entitled to his extremist and counterfactual opinions, he has no right to engage in illegal activities to advance his right-wing agenda.  Yet that is precisely what Defendant Ziegler and his so-called "nonprofit research group," Defendant ICU, d/b/a/ Marco Polo, have done and have asserted they will continue to do in the future.

2.  Since approximately December 2020, Defendant Ziegler, Defendant ICU and their "team" of volunteers and independent contractors have spent countless hours accessing, tampering with, manipulating, altering, copying and damaging computer data that they do not own and that they claim to have obtained from hacking into Plaintiff's iPhone data and from scouring a copy of the hard drive of what they claim to be Plaintiff's "laptop" computer.

3.  Defendants' actions are unlawful under the Computer Fraud and Abuse Act (18 U.S.C. § 1030), California's Computer Data Access and Fraud Act (Cal. Penal Code § 502) and California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*).

4.  Plaintiff has demanded Defendants cease their unlawful activities with respect to Plaintiff's data and return any data in their possession belonging to Plaintiff, but they have flatly and publicly refused to do so.  Rather than comply, Defendants have doubled down on their illegal actions and have vowed to continue violating the law with impunity, thereby necessitating this action.

1

APP 0179

Case 2:23-cv-05039-JVS-Document 1-0 Filed 09/23/23 Page 184 of 195

1 **JURISDICTION AND VENUE**

2      5.     This Court has jurisdiction over the subject matter of this action pursuant

3 to 28 U.S.C. §§ 1331 and 1332. This Court also has supplemental jurisdiction over

4 Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5      6.     The dispute arises as a federal question because it involves the violation

6 of a federal statute, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

7      7.     The parties are of diverse citizenship. Plaintiff is a citizen of the State of

8 California and resides in Los Angeles, California. Defendant Ziegler is a citizen of and

9 is residing in the State of Illinois. Defendant ICU is a corporation organized under the

10 laws of the State of Wyoming. Plaintiff is informed and believes and thereon alleges

11 that the members of Defendant ICU are not citizens of California.

12      8.     The amount in controversy exceeds $75,000, exclusive of interest and

13 costs. Damages that Plaintiff has suffered and will continue to suffer as a result of the

14 violations of the federal statute referenced above and the other claims asserted herein

15 exceed $75,000.

16      9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2)

17 and (b)(3), as it is where a substantial part of the events giving rise to the claim alleged

18 in this complaint occurred and because Defendants are subject to the court's personal

19 jurisdiction with respect to this action.

20 **PARTIES**

21      10.    Plaintiff is a citizen of the State of California and resides in Los Angeles,

22 California.

23      11.    Plaintiff is informed and believes that Defendant Ziegler is a citizen of and

24 is residing in Illinois. Further, Plaintiff is informed and believes that Defendant Ziegler

25 intentionally directed illegal conduct to occur in California and has therefore subjected

26 himself to jurisdiction in California.

27      12.    Plaintiff is informed and believes that Defendant ICU is an LLC whose

28 members include Defendant Ziegler, with its principal place of business located at 30

COMPLAINT AND DEMAND FOR JURY TRIAL

APP 0180

N. Gould Street, Ste 12323, Sheridan, WY 82801. Plaintiff is further informed and believes that Defendant Ziegler serves as an officer, manager or director of Defendant ICU and is primarily responsible for the management of Defendant ICU. Plaintiff is further informed and believes that Defendant ICU engages in regular activities in California and the County of Los Angeles, including, among other actions, operating a website which includes specific disclosures incorporating California consumer protection and privacy laws and purporting to exercise rights under those laws, demonstrating that Defendants directed their actions to California and purposely availed themselves of California law.

13. Defendants sued herein as Does 1 through 10, inclusive, are sued in their fictitious names and capacities as their identities have not yet been determined. Plaintiff is informed and believes and thereon alleges that each of such Defendants is responsible in some way for the acts alleged herein. Plaintiff will seek leave to amend this complaint to allege such Defendants' true names and capacities when they have been ascertained.

14. Upon information and belief, at all times herein mentioned, each Defendant acted individually and/or as the agent, co-conspirator, aider, abettor, joint venturer, alter ego, third-party beneficiary, employee, officer, director or representative of the other Defendants and, in doing the things hereinafter averred, acted within the course and scope of such agency, employment or conspiracy and with the consent, permission and authorization of each of the remaining Defendants. Upon information and belief, all actions of each Defendant as averred in the claims for relief stated herein were ratified and approved by every other Defendant or their officers, directors or managing agents.

## **FACTUAL ALLEGATIONS**

15. Defendant Ziegler is a former Trump White House aide who worked, from February 2019 until January 2021, as a Policy Analyst and, later, as an Associate Director of the Office of Trade and Manufacturing Policy under the supervision of Dr.

COMPLAINT AND DEMAND FOR JURY TRIAL

1    Peter Navarro.

2          16.    Plaintiff is informed and believes and thereon alleges that, since having

3    his White House credentials revoked by former White House Chief of Staff Mark

4    Meadows in or around January 2021, Defendant Ziegler has devoted most of his waking

5    time and energy to accessing, tampering with, manipulating, altering, copying and

6    otherwise using data contained on a copy of a hard drive that Defendants claim to be

7    of Plaintiff's "laptop" computer and data that Defendants admit to have obtained by

8    hacking into Plaintiff's data, specifically an encrypted iPhone backup.

9          17.    Although the precise manner by which Defendant Ziegler obtained

10   Plaintiff's data remains unclear, there is no dispute that Defendants have, to at least

11   some extent, accessed, tampered with, manipulated, altered, copied and damaged

12   Plaintiff's data, and that their actions are illegal, unauthorized, and without Plaintiff's

13   consent.

14         18.    According to published reports, Defendant Ziegler claims to have obtained

15   one copy of a hard drive from what he claims was Plaintiff's "laptop" computer in

16   December 2020 from Jack Maxey, a former co-host on Steve Bannon's *War Room*

17   podcast who has described himself publicly as "Hunter's Laptop King."  In or around

18   early 2021, Defendant Ziegler claims to have obtained another copy of a hard drive

19   from what he claims to be Plaintiff's "laptop" computer from an associate of Rudy

20   Giuliani, the former New York mayor who previously represented former President

21   Trump.  Plaintiff is informed and believes and thereon alleges that Defendant Ziegler

22   also illegally accessed, tampered with, manipulated and copied data belonging to

23   Plaintiff by means of a "cloud" storage and file hosting service offered by MEGA NZ.

24         19.    Plaintiff's data appears to have been tampered with, manipulated, altered

25   and damaged both before Defendants received it and after it was obtained by

26   Defendants and they began illegally accessing and tampering with it themselves.

27   Plaintiff is informed and believes and thereon alleges that Defendants intentionally

28   altered at least some of Plaintiff's data and that they severely damaged Plaintiff's data

COMPLAINT AND DEMAND FOR JURY TRIAL

1    through sloppy and inept handling of the data, by disregarding forensically sound
2    methods for data preservation and analysis, and by engaging generally in reckless,
3    incompetent and malicious activities with respect to the data that have impaired the
4    ability of Plaintiff and others to verify all of the data's authenticity and to determine the
5    precise extent of tampering, alteration and damage.

6        20.    On or about July 8, 2021, Defendant Ziegler organized Defendant ICU and
7    caused Defendant ICU to begin doing business under the name *Marco Polo*.  According
8    to Defendant Ziegler's own public statements, a chief focus of Defendant ICU has been
9    accessing and analyzing Plaintiff's data.  In addition to illegally accessing and
10   analyzing the data, Defendants also have tampered with, manipulated and copied the
11   data so that others could unlawfully access, tamper with and manipulate Plaintiff's data
12   as well.

13       21.    Plaintiff is unaware of the precise dates on which Defendants have
14   accessed, altered, tampered with, manipulated, damaged and/or copied Plaintiff's data.
15   According to Defendant Ziegler himself, Defendants spent at least 13 months – from
16   September 2021 through October 2022 – "analyzing the voluminous material from the
17   Biden Laptop."  On information and belief, Defendants' unlawful access, tampering
18   with, manipulation, damage and copying of Plaintiff's data has continued beyond
19   October 2022 and is ongoing to this day.

20       22.    Defendant Ziegler has stated publicly that Defendants used Plaintiff's data
21   from what he calls Plaintiff's "laptop" computer to create a voluminous report entitled
22   *Report on the Biden Laptop*, which Defendants first published on or about October 19,
23   2022.  In addition, in or around May 2022, Defendants used Plaintiff's data from the
24   claimed Plaintiff's "laptop" computer to create what Defendant Ziegler has described
25   as "an online searchable database of 128,000 emails found on the Biden Laptop."
26   Plaintiff has never authorized or consented to any access of his data by any Defendant
27   (or anyone working with any Defendant) at any time or for any purpose.  To the
28   contrary, Plaintiff has notified Defendants that Defendants are not authorized to access

COMPLAINT AND DEMAND FOR JURY TRIAL

APP 0183

1   any of his data, that they should cease doing so, and that they should return any of

2   Plaintiff's data in their possession to Plaintiff immediately.

3       23.   Defendants not only admit to accessing, tampering with, manipulating and

4   copying Plaintiff's data from their claimed Plaintiff's "laptop" computer without

5   Plaintiff's authorization or consent, they regularly brag about their illegal activities in

6   interviews with members of the media, on social media, and on right-wing podcasts.

7       24.   For example, in December 2022, Defendant Ziegler described the

8   activities of his team, which he said includes "digital forensics folks," as follows: "[I]t

9   took us a year to go through [the data] . . . Usually, when you have this much data to

10  go through, it's as if it's after a presidential library has been opened, right?"  In another

11  interview published in or around June 2023, Defendant Ziegler discussed his and his

12  team's efforts to create a website to house "almost 10,000 photos" that he claims to

13  have extracted from Plaintiff's data.

14      25.   According to Defendant Ziegler, Defendants spent "a couple of months"

15  going through photos stored in Plaintiff's data, organizing and modifying the photos

16  (through what he characterizes as "redactions"), and subjecting the data to a "photo

17  viewing app" to allow Defendants and others to "view the metadata in the photos."

18  Defendant Ziegler claims that Defendants' activities are designed to allow members of

19  the public who log onto Defendants' website and access Defendants' servers "to be

20  able to see where the photo was taken, what time it was taken, if it has latitude and

21  longitude coordinates attached to it. . . They're going to be able to see if it has metadata

22  like aperture, lighting."

23      26.   Defendant Ziegler further has stated that Defendants' efforts to upload

24  videos from Plaintiff's data to Defendants' website required more time and effort than

25  uploading photos from Plaintiff's data because Defendants needed "to use AI tools" on

26  the data as part of their purported efforts to "censor" portions of videos that Defendants

27  consider to be "pornographic."

28      27.   Plaintiff is informed and believes and thereon alleges that the data

6

COMPLAINT AND DEMAND FOR JURY TRIAL

Defendants have accessed, tampered with, manipulated, damaged and copied includes tens of thousands of emails, thousands of photos, and dozens of videos and recordings. Plaintiff is informed and believes and thereon alleges that the data Defendants have accessed, tampered with, manipulated and copied also includes Plaintiff's credit card details, Plaintiff's financial and bank records, and information of the type contained in a file of a consumer reporting agency.

28.  Plaintiff further is informed and believes and thereon alleges that at least some of the data that Defendants have accessed, tampered with, manipulated, damaged and copied without Plaintiff's authorization or consent originally was stored on Plaintiff's iPhone and backed-up to Plaintiff's iCloud storage.  On information and belief, Defendants gained their unlawful access to Plaintiff's iPhone data by circumventing technical or code-based barriers that were specifically designed and intended to prevent such access.

29.  In an interview that occurred in or around December 2022, Defendant Ziegler bragged that Defendants had hacked their way into data purportedly stored on or originating from Plaintiff's iPhone: "And we actually got into [Plaintiff's] iPhone backup, we were the first group to do it in June of 2022, we cracked the encrypted code that was stored on his laptop."  After "cracking the encrypted code that was stored on [Plaintiff's] laptop," Defendants illegally accessed the data from the iPhone backup, and then uploaded Plaintiff's encrypted iPhone data to their website, where it remains accessible to this day.  It appears that data that Defendants have uploaded to their website from Plaintiff's encrypted "iPhone backup," like data that Defendants have uploaded from their copy of the hard drive of the "Biden laptop," has been manipulated, tampered with, altered and/or damaged by Defendants.  The precise nature and extent of Defendants' manipulation, tampering, alteration, damage and copying of Plaintiff's data, either from their copy of the hard drive of the claimed "Biden laptop" or from Plaintiff's encrypted "iPhone backup" (or from some other source), is unknown to Plaintiff due to Defendants' continuing refusal to return the data to Plaintiff so that it

APP 0185

1    can be analyzed or inspected.

2         30.    Plaintiff has demanded that Defendants cease and desist from their

3    unlawful accessing of Plaintiff's data and that they return any data in their possession

4    that was sent to them or that they obtained from any account, device/hard drive, back

5    up files, "cloud" files or copies of the same belonging to Plaintiff.  Rather than comply,

6    Defendants have derided Plaintiff and Plaintiff's counsel for making the demands, and

7    they have vowed to continue violating the law with impunity.

8         31.    Within the last two weeks, Defendant Ziegler went so far as to declare on

9    social media that efforts by Plaintiff to serve him with legal process in the future would

10   met with violence: "If the US pResident's son sends a proxy [*i.e.*, a process server] to

11   illegally trespass on my property I will blow their f---ing brains out."

12        32.    In light of the foregoing illegal activities by Defendants, their repeated

13   refusals to cease and desist in their unlawful behavior, and their stated intention to

14   continue violating the law in the future, Plaintiff has no alternative but to commence

15   this lawsuit and to seek all available and appropriate legal and equitable relief.

16                          **FIRST CLAIM FOR RELIEF**

17                   **(Violation of the Computer Fraud and Abuse Act)**

18                             **(18 U.S.C. § 1030)**

19                            **(Against all Defendants)**

20        33.    Plaintiff incorporates herein by this reference the allegations in paragraphs

21   1 through 32 above.

22        34.    Upon information and belief Plaintiff alleges that Defendants have

23   violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), specifically

24   section 1030(a)(2)(A) of the CFAA, by intentionally accessing a computer without

25   authorization or exceeding authorized access, and thereby obtaining information

26   contained in financial records of one or more financial institutions or of one or more

27   card issuers as defined in section 1602(n) of title 15, or contained in one or more files

28   of a consumer reporting agency on a consumer, as such terms are defined in the Fair

8

1 | Credit Reporting Act (15 U.S.C. 1681, *et seq.*).

2 |      35.    Upon information and belief, Plaintiff further alleges that Defendants have

3 | violated the CFAA, specifically section 1030(a)(2)(C) of the CFAA, by intentionally

4 | accessing a computer without authorization or exceeding authorized access, and

5 | thereby obtaining information from any protected computer which, pursuant to the

6 | CFAA, is a computer used in or affecting interstate commerce or communication.

7 |      36.    Upon information and belief, Plaintiff further alleges that Defendants have

8 | violated the CFAA, specifically section 1030(a)(4) of the CFAA, by knowingly and

9 | with intent to defraud, accessing a protected computer without authorization or

10 | exceeding authorized access, and by means of such conduct furthering the intended

11 | fraud and obtaining one or more things of value.

12 |      37.    Plaintiff has suffered damages or losses as a result of Defendants'

13 | violations of the CFAA far in excess of $5,000. These damages and losses to Plaintiff

14 | include but are not limited to direct costs, incurred during any one-year period, of

15 | investigating and responding to Defendants' violations of the CFAA in excess of

16 | $5,000 in value.

17 | **SECOND CLAIM FOR RELIEF**

18 | **(Violation of the California Computer Data Access and Fraud Act)**

19 | **(Cal. Penal Code § 520)**

20 | **(Against all Defendants)**

21 |      38.    Plaintiff incorporates herein by this reference the allegations in paragraphs

22 | 1 through 32 above.

23 |      39.    Plaintiff owns data that is stored on a copy of a hard drive or other

24 | device(s) that Defendants own and operate and claim to have obtained of Plaintiff's

25 | computer and that Defendants claim to have obtained by hacking into Plaintiff's

26 | encrypted iPhone backup.

27 |      40.    Defendants have violated California Penal Code § 502(c)(1) by knowingly

28 | accessing and without permission taking and using data from Plaintiff's devices or

COMPLAINT AND DEMAND FOR JURY TRIAL

APP 0187

1   "cloud" storage, including but not limited to, Plaintiff's encrypted iPhone backup to

2   devise or execute a scheme to defraud or deceive, or to wrongfully obtain money,

3   property, or data.

4       41.   Defendants also have violated California Penal Code § 502(c)(2) by

5   knowingly and without permission accessing, taking, copying, and making use of

6   programs, data, and files from Plaintiff's devices or "cloud" storage, including but not

7   limited to, Plaintiff's encrypted iPhone backup.

8       42.   Defendants also have violated California Penal Code § 502(c)(3) by

9   knowingly and without permission using or causing to be used computer services as

10  that term is defined in the statute.

11      43.   Defendants also have violated California Penal Code§ 502(c)(7) by

12  knowingly and without permission accessing, or causing to be accessed, data and files

13  from Plaintiff's devices or "cloud" storage, including but not limited to, Plaintiff's

14  encrypted iPhone backup.

15      44.   As a direct and proximate result of Defendants' unlawful conduct within

16  the meaning of California Penal Code § 502, Defendants have caused damage to

17  Plaintiff in an amount to be proven at trial.

18      45.   The aforementioned acts of Defendants were willful and malicious in that

19  they were done with the deliberate intent to injure Plaintiff.  Plaintiff is therefore

20  entitled to punitive damages in an amount to be proven at trial.

21      46.   Plaintiff has also suffered irreparable injury from these acts, and due to the

22  continuing threat of such injury, has no adequate remedy at law, entitling Plaintiff to

23  injunctive and other equitable relief.

24      47.   Plaintiff is also entitled to recover his reasonable attorneys' fees pursuant

25  to California Penal Code § 502(e).

26

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL

APP 0188

1    **THIRD CLAIM FOR RELIEF**

2    **(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

3    **(Against All Defendants)**

4    48.    Plaintiff incorporates herein by this reference the allegations in paragraphs

5    1 through 32 above.

6    49.    California Business & Professions Code sections 17200 *et seq.* state that

7    no business may engage in unfair competition.  According to section 17200, "unfair

8    shall mean and include any unlawful, unfair or fraudulent business act or practice and

9    unfair, deceptive, untrue or misleading advertising."

10   50.    By engaging in the conduct alleged herein, Defendants have engaged in

11   unfair and unlawful activities in violation of the CFAA and California Penal Code

12   section 502

13   51.    Plaintiff is informed and believes and thereon alleges that the Defendants

14   will continue to do these acts unless the Court orders Defendants to cease and desist,

15   and, therefore, Plaintiff requests injunctive relief pursuant to California Business and

16   Professions Code section 17203.

17   52.    Based on the above allegations, including the alleged violations of the

18   CFAA and California Penal Code section 502, Plaintiff is entitled to injunctive and

19   equitable relief to stop Defendants from continuing to engage in their unlawful and

20   unfair conduct with respect to Plaintiff and as necessary to restore to Plaintiff any

21   money or property which Defendants have acquired by means of such unlawful and

22   unfair conduct; restitution in an amount to be determined at trial; attorneys' fees and

23   costs as may be permitted by law; and any other relief as may be proper.

24   **JURY TRIAL DEMAND**

25   Plaintiff hereby respectfully demands a jury trial in this action for all causes of

26   action for which a jury trial is available.

27

28

APP 0189

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

A. For general damages to be proven at trial;

B. For punitive damages to be proven at trial for Defendants' willful and deliberate actions including their unauthorized access, tampering with, manipulation and copying of, and damage to Plaintiff's data;

C. For disgorgement of all money obtained by Defendants as a result of their unlawful and otherwise wrongful conduct;

D. For prejudgment interest;

E. For an order awarding Plaintiff his reasonable attorneys' fees and costs;

F. For a preliminary and permanent injunction restraining Defendants, their officers, agents, employees, and attorneys, and those in active concert or participation with any of them, from:

   (1) Accessing, tampering with, manipulating or copying Plaintiff's data; and

   (2) Restoring to Plaintiff any money or property which Defendants have acquired by means of such unlawful and unfair conduct including but not limited to any data in their possession that was sent to them or that they obtained from any account, device/hard drive, back up files, "cloud" files or copies of the same belonging to Plaintiff;

G. For such other and further relief as this Court may deem to be just and proper.


Dated: September 13, 2023

Respectfully submitted,

WINSTON & STRAWN LLP

By: _____
Paul B. Salvaty
Abbe David Lowell
Attorneys for Plaintiff

---

12

COMPLAINT AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By: _____
Bryan M. Sullivan
Zachary C. Hansen
Attorneys for Plaintiff

COMPLAINT AND DEMAND FOR JURY TRIAL

APP 0191